## IN THE CIRCUIT COURT OF JACKSON COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| BARRE EUGENE HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1416-CV00681 |
| | ) | |
| ADVANCE MORTGAGE CORP., ET AL. | ) | Div. 13 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank National Trust

Company, hereby give notice to this Court that this case has been removed to the United States

District Court for the Western District of Missouri by filing a Notice of Removal with said Court.

A copy of the Notice of Removal is attached hereto as Exhibit "1"

THE BOYD LAW GROUP, L.C.

Michael E. Boyd, #53870
Charles H. Nitsch, #50971
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376
Telephone: (636) 447-8500
Fax: (636) 447-8505
mboyd@boydlawlc.com
ATTORNEY FOR DEFENDANTS
OCWEN LOAN SERVICING, LLC
And DEUTSCHE BANK
NATIONAL TRUST COMPANY

1

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the above and foregoing was served on this 20th day of February, 2015, by first-class mail, postage prepaid, addressed to:

Elizabeth A. Marr
200 Northeast Missouri Road #200.
Lee's Summit, MO 64086
Attorney for Plaintiff

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

**BARRE EUGENE HUNTER,** and
**VENDA MARIE HUNTER,**

        Plaintiffs,

v.

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2007-3 MORTGAGE BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-3,** and **Ocwen Loan Servicing, LLC**

        Defendants.

CASE NO.: _____

## NOTICE OF REMOVAL

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Asset Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 ("Deutsche Bank," collectively "Defendants") and pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, hereby remove this action from the Circuit Court of Jackson County, Missouri to the United States District Court for the Western District of Missouri, Western Division. The removal of this action is based on the following:

1.     Plaintiffs Barre Hunter and Venda Hunter ("Plaintiffs") filed their original petition on January 9, 2014 in the Circuit Court of Jackson County, Missouri. Plaintiffs' original petition contained various state law claims regarding the execution of a promissory note and deed of trust and foreclosure sale on the property located at 3020 S. Fields Road, Oak Grove, Missouri



EXHIBIT

1

1

("Property"). A true and correct copy of all processes, pleadings and orders entered in this action to date are attached as Exhibit A.

2.      On February 17, 2015, Plaintiffs filed their Fourth Amended Petition claiming, for the first time, violations of a federal statute—specifically the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961-1968. *See* Exhibit A

3.      Removal of this case is timely in accordance with 28 U.S.C. § 1446(b), because this Notice is filed within 30 days of February, 2015, the date Defendants received an amended pleading from which it was first ascertained that the case was removable.

4.      As more fully set out below, this case is properly removed to this court pursuant to 28 U.S.C. § 1441 because Defendants have satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

<div align="center">BASIS FOR REMOVAL—FEDERAL QUESTION JURISDICTION</div>

5.      This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction).

6.      Plaintiffs' Fourth Amended Petition alleges that Defendants schemed to defraud Plaintiffs and deprived them of ownership of the Property in violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961-1968. Fourth Am. Pet. ¶¶59-65.

7.      Defendants deny each and every substantive allegation made by Plaintiffs and denies they can state a claim under RICO. However, because Plaintiffs purport to assert violation of the laws of the United States, this Court possess jurisdiction over the matter pursuant to 28 U.S.C. § 1331.

8.      Plaintiffs also purport to allege state law claims of quiet title, declaratory judgment and violations of the Missouri Merchandising Practices Act. These claims should be removed as

well, under 28 U.S.C. § 1367. This Court has supplemental jurisdiction over Plaintiffs' state law claims because these claims arise out of the same operative facts as the Plaintiffs' RICO claim and "form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a).

<p style="text-align:center"><strong>VENUE</strong></p>

9.      Venue for removal is proper in this district and division under 28 U.S.C. § 1441(a) because this district and division embrace the Circuit Court of Jackson County, Missouri, the forum in which the removed action was pending.

WHEREFORE, Ocwen and Deutsche Bank respectfully submit that this Notice complies with the statutory removal requirements; that this action should proceed in this Court as a properly removed action; and that Ocwen and Deutsche Bank should have such other and further relief as this Court may deem just and proper.

THE BOYD LAW GROUP, L.C.

_/s/ Michael E. Boyd_
Michael E. Boyd, #53870
Charles H. Nitsch, #50971
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376
Telephone: (636) 447-8500
Fax: (636) 447-8505
Attorney for Defendants

3

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the above and foregoing was served on this 20th day of February, 2015, by first-class mail, postage prepaid, addressed to:

Elizabeth A. Marr
200 Northeast Missouri Road #200.
Lee's Summit, MO 64086

4

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

BARRE E. HUNTER,  )
                  )
       Plaintiff,  )
                  )    Case No. 1416-CV00681
vs.               )    Division 16
                  )
ADVANCE MORTGAGE CORPORATION,)
                  )
       Defendant.  )

## ORDER

NOW, on this 19th day of February, 2015, the Court considers Plaintiff's Motion for Extension of Time to File Dispositive Motions. After careful consideration, the Court being duly advised in the premises orders as follows:

IT IS HEREBY ORDERED that the Plaintiff's Motion for Extension of Time to File Dispositive Motions is GRANTED.

IT IS FURTHER ORDERED, that Plaintiff shall have until March 16, 2015, to file dispositive motions.

IT IS SO ORDERED.

Date: February 19, 2015

_Marco a. Roldan_

Judge Marco Roldan
Division 16

## CERTIFICATE OF MAILING

It is hereby certified that a copy of the forgoing was sent via the E-Filing System this 19th day of February, 2015, to the following:

MICHAEL ERNEST BOYD
THOMAS M FRANKLIN
MICHAEL J WAMBOLT
ELIZABETH A MARR

_____
Law Clerk

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

INDEPENDENCE, MISSOURI

| | | |
|---|---|---|
| BARRE EUGENE HUNTER, AND<br>VENDA MARIE HUNTER<br>Plaintiffs, | )<br>)<br>)<br>) | |
| v. | )<br>) | Case No. 1416-CV00681 |
| Deutsche Bank National Trust Company | )<br>) Division 13 | |
| American Home Mortgage Assets Trust<br>2007-3, Mortgage-Backed Pass-Through<br>Certificates, Series 2007-3 | )<br>)<br>)<br>) | |
| Ocwen Loan Servicing, LLC fka<br>Homeward Residential, Inc., fka<br>American Home Mortgage Servicing | )<br>)<br>)<br>) | |
| The Residence At: 3020 S Fields Road<br>Oak Grove, MO 64075 | )<br>) | |
| Defendants. | | |

## FOURTH AMENDED PETITION

### QUIET TITLE

### DECLARATORY JUDGMENT – NO STANDING AS PERSON ENTITLED TO ENFORCE PROMISSORY NOTE OR FORECLOSE

### VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT

### FRAUDULENT MISREPRESENTATION

### CIVIL CLAIM UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

COME NOW Plaintiffs, Barre Hunter and Venda Hunter, and for their causes of action against

Defendants herein, state as follows:

### JURISDICTIONAL STATEMENT

1

Proper jurisdiction and venue lie in the courts of Jackson County, Missouri.

## ALLEGATIONS COMMON TO ALL COUNTS

That at all times material hereto, the following have been, and continue to be, true:

1. Plaintiffs, Barre Eugene Hunter and Venda Marie Hunter, are husband and wife, married on 7/21/1977.

2. The residence of each of the Plaintiffs is 3020 S. Fields Road, Oak Grove, Jackson County, MO 64075.

3. The Plaintiffs own the residential real property at 3020 S. Fields Road, Oak Grove, Missouri as husband and wife, as shown in a warranty deed delivered and thereafter recorded on 6/5/1997 in Jackson County, Missouri as Instrument 3199710034124 (hereafter the "property," "residential real property," or the "home.") Attached is a copy of the Warranty Deed which is incorporated herein by reference as Exhibit 1.

4. The legal description of the Residential Real Property is as shown in Exhibit 1, is Lot 1, SMITH'S LAKE VIEW, a subdivision of land in Jackson County, Missouri, according to the recorded plat thereof, and as otherwise may be noted in the electronic records of the Recorder of Deeds as UNINCORPORATED SMITH LAKE GV 08-0510 GV Lots 1-1.

5. In 1997, at the time of the purchase of the Property Plaintiffs purchased the Property to use as their residence and continuously thereafter have lived in the home.

6. The residential real property is the only real property involved in this action.

7. In March of 2007, Plaintiffs signed a Deed of Trust which was recorded on 3/22/2007 in Jackson County, Missouri as #2007E0038241. On page 2 the document identified the Lender as Advance Mortgage Corporation and the Trustee as J. Roger Irvin. (See Exhibit 2, attached hereto and incorporated herein by reference).

2

8. Defendant Deutsche Bank National Trust Company (hereinafter "Deutsche") is a Real Estate Mortgage Investment Trust (REMIC) with addresses at 6501 Irvine Center Dr., Irvine, CA and at 1761 East St. Andrew Place, Santa Ana, CA 92705.

9. Defendant American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 (hereinafter "American Home Trust" or "Trust") is a REMIC trust, established pursuant to the laws of the State of New York, with an address of 1761 East St. Andrew Place, Santa Ana, CA 92705, which is registered with the United States Security and Exchange Commission.

10. Defendant Ocwen Loan Servicing, LLC (hereinafter "Ocwen") is a Delaware foreign limited liability company, registered with a Missouri Secretary of State as Charter #FL0065258 and registered office at 221 Bolivar Street, Jefferson City, MO 65101.

11. That Defendant(s) have each expressed an intent to enforce collection of a debt or promissory note against Plaintiffs.

12. On or about 1/11/2013 that one or all of the Defendants wrongfully and fraudulently caused and thereafter failed to withdraw or retract the recording with the Jackson County Recorder of Deeds a document entitled, Assignment of Deed of Trust, which on its face shows the Grantor as "Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns" and Grantee as "Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3." (Exhibit 3 is attached hereto and incorporated herein by reference).

13. The Trust could not have purchased or received the Assignment or Deed of Trust or any related loan documents or debt as reflected in Exhibit 3 on the dates 10/1/12 or on 1/11/2013 as shown in Exhibit 3, because the Trust lacked authority and ability to do so.

14. The legal ability and authority of the Trust to receive, possess, act upon, or give directions regarding a loan of the Plaintiffs is strictly governed by its own governing documents, including,

3

but not limited to its Pooling and Servicing Agreement (PSA), State of New York Trust Laws, and laws and regulations of the SEC and IRS.

15. The terms of the PSA specifically identify June 5, 2007 as the closing date for the Trust's ability to purchase and deposit loans into the pool. According to the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the Closing Date of 6/7/2007, with a window of 90 days thereafter for completion of documents and no new loans could be added later. There was not a promissory note of Plaintiffs or other loan documents of Plaintiffs' loan transferred to Deutsche or Trust before the Closing Date or within 90 days thereafter.

16. The Mortgage Loan Purchase Agreement (MLPA), an attachment to and incorporated as part of the PSA in Section 2.01, states:

"With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser or its designee, and which shall be delivered to the Purchaser or its designee pursuant to the terms of this Agreement. (a) The Original Mortgage Note, including any riders thereto, endorsed without recourse to the order of Advance Mortgage Corporation, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, and showing to the extent available to the related Mortgage Loan Seller an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee;"

17. The MLPA required endorsements to be:

(A) In blank or to the order of Deutsche, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, or
(B) In the case of a loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee.

18. Exhibit 3 recorded by Defendants purports to represent and claim an assignment to the Trust of the ownership of a deed of trust with debt related to Plaintiffs Home on October 10, 2012 or January 11, 2013, which more than five years after the closing date of the Trust.

19. The loan of Plaintiffs was not owned by, and was not made a part of, the Trust pursuant to records of the Trust, the Trust's lists of loans, or representations to the SEC or others regarding

4

Electronically Filed - Jackson - Independence - February 17, 2015 - 09:38 PM

the legitimate assets of the Trust. Such documents are not readily available to the Plaintiffs for this filing, but are under the control of Defendants or third parties and will be sought in discovery. The Trust lacked the requisite legal ability and authority to have purchased the loan of the Plaintiffs and have it and its documents as assets by its own terms and the laws governing the Trust.

20. The alleged assignment of the deed of trust of Exhibit 3 is void and otherwise a nullity.

21. The purported conveyance of a loan with assignment of deed of trust to Trust did not in fact legally occur, and Defendants claim and representation that it did is intentionally false and each of the Defendants knew or should have known it was false.

22. Deustche, the Trust and Ocwen each lack the requisite legal ability and authority to collect a debt against Plaintiffs or to direct another to do so.

23. Plaintiffs have made a clear challenge to Defendants as to the validity of the claims of Defendants in Exhibit 3 and otherwise regarding a debt owed to any of them and regarding any promissory note, deed of trust and the validity of assignments or conveyances of same and have requested that the original promissory note with valid endorsements be exhibited to them as required by the UCC, R.S.Mo. 400.3.501 and otherwise required by law.

24. None of the Defendants are a lender, the holder in due course of a promissory note of Plaintiffs, and none have a contractual relationship with either Plaintiff, nor are any one of the Defendants otherwise a person entitled to enforce an instrument against Plaintffs. (UCC, R.S.Mo. 400-003.302, Holder in Due Course.)

25. Advance Mortgage Corporation did not provide funds or consideration to Plaintiffs, and any promissory note to Advance Mortgage Corporation was an offer by Plaintiffs to pay back money if it was loaned to them, but such offer was not accepted by Advance Mortgage Corporation by funding the loan and the promissory note fails and is unenforceable for lack of consideration.

26. Similarly, no consideration was paid from the funds of Advance Mortgage Corporation, or of MERS, or of any other Defendant named herein, or by any party identified in Exhibit 3 filed with

5

the Jackson County Recorder of Deeds and claims of entitlement to should fail for lack of consideration and because transfers of the original note only carry the rights of the transferor.

27. Documents to prove the foregoing are not readily available to the Plaintiffs, but are under the control of Defendants or third parties and will be sought in discovery.

28. That Plaintiffs were never in default with Defendants Ocwen, Deutsche, or the Trust because none held the right to enforce the alleged Promissory Note because none paid for, or were assigned a promissory note and any purported transfer not supported by consideration paid.

29. Plaintiff Barre Hunter and Venda Hunter did not consent to the negotiation, sale or transfer of a promissory note or deed of trust or other loan documents using replicas of their signatures, loan instruments, as originals as required in the Uniform Electronics Transactions Act (UETA) and Defendants' transfers, attempts to transfer or acceptance of transfers are in violation of UETA and are therefore should be declared void and a nullity.

**(RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act" UETA).**
*Transferable records. (432.275. 1) As used in this section, transferable record'means an electronic record that:*

*(1) Would be a note under sections 400.3-101 to 400.3-605 or a document under sections 400.7-101 to 400.7-604 if the electronic record were in writing; and*

*(2) The issuer of the electronic record expressly has agreed is a transferable record.*

30. The American Home Trust cannot claim to be the Holder in Due Course because the American Home Trust has never held the right to enforce the alleged Promissory Note because American Home Trust never paid for, or was assigned the Promissory Note. Without the rights of Holder in Due Course, the American Home Trust 2007-3 the American Home Trust had no right to collect against an alleged Note that they did not have. With no right to collect, it follows that there is no right to declare default. Plaintiffs have never been in default with any Defendant herein for the same reasons.

6

31. That the promissory note and deed of trust, whether valid or not, have, at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., MERS was named as an agent with special powers of sales and assignments in the terms of the alleged Deed of Trust, but MERS was never given these powers or even mentioned in the terms of a Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Therefore the Assignment of the Deed of Trust should be declared a nullity.

32. None of the Defendants have a right to declare default under the assignment of deed of trust as no such right can exist without the right to collect upon the promissory note.

33. That the Promissory Note belongs to the obligor or issuer of the Note. Plaintiffs' Note was to be held by the actual lender which "funded" Plaintiff's loan. The issuer here, the Plaintiffs, are entitled to know who is holding their Note at any time. Defendants have claimed in writing that the whereabouts of Plaintiffs' Note is "proprietary information."

34. If the Promissory Note is a negotiable instrument, it must be presented to its maker for exhibit (examination) for collection. There can be no secrets concerning the Plaintiffs as makers of the alleged note. It is not proprietary information.

35. That any promissory note related to the property or title in question which Defendant(s) claim to possess has been altered and is not original and/or authentic and/or has been transferred by an individual or entity not authorized to do so or electronically in manner which violates UETA and cannot be enforced. **RSMo 400-303.404, Imposters—fictitious payees; RSMo 400-003.407, Alteration) (RSMo 400-303.306 Claims to an Instrument) ( RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)**

36. The Plaintiffs have made written demand and requested Defendants to provide valid proof of ownership and/or possession of a promissory note, a debt and/or a deed of trust or other evidence

7

Electronically Filed - Jackson - Independence - February 17, 2015 - 09:38 PM

of its right to collect and or foreclose as claimed, previously and by its previous filings in this lawsuit, but Defendants have not exhibited the original promissory note to Plaintiffs.

37. That Plaintiffs do not have control of, or are they in possession of, all documents needed to prove these allegations as most are in the control of Defendants or third parties and will be sought in discovery.

38. The Plaintiffs are contracting parties and third party beneficiaries with an interest in transfers of the promissory note and deed of trust which are claimed to have been signed by them, and therefore have rights with regard to challenging the validity and legality of such transactions.

39. Plaintiffs have been and continue to be damaged by the Defendants actions.

40. The acts of Defendants have been intentional and with reckless disregard and punitive damages should be awarded.

41. Plaintiffs have incurred costs and attorney's fees in this action.

42. That the wrongful creation and recording of the Assignment of Deed of Trust has created a cloud upon the title and Plaintiffs have suffered damages thereby.

43. The claim of Defendants of legal ownership of a debt and entitlement to collect upon a debt or promissory by Defendants to Plaintiffs is a misrepresentation of fact.

44. The documents recorded (Exhibit 3) have clouded the title by recording an intentional fraudulent assignment from MERS as sole nominee for Advance Mortgage, the originator.

45. Deutsche as Trustee for the Trust does not have the power or the right under the PSA to enforce the promissory note or to declare default of debt related to the deed of trust.

46. That no Defendant herein has, now or at any time, claimed a loss of its money on the alleged subject loan or from actions of Plaintiffs. No Defendant has claimed injury due to Plaintiffs' actions or Plaintiffs' loan documents.

47. That Defendants working in concert created the illusion that an alleged loan contract which named Advance Mortgage Corporation as lender, had actually been funded by Advance Mortgage Corporation when it had not, and that an assignment of debt and deed of trust had been duly authorized and executed by Advance Mortgage Corporation when it had not.

<div align="center">

### COUNT I – QUIET TITLE

</div>

COME NOW Plaintiffs, pursuant to Chapter 527 of the R.S.Mo. and for their petition for an order and judgment of this Court quieting title to the subject property and confirming *(granting)* title in fee simple to Plaintiffs, and otherwise removing the cloud upon the title to the Property comprised of invalid liens, claims and assertions by Defendants, state to the Court as follows:

48. Plaintiffs incorporate the allegations of each of the Paragraphs above as though fully set forth herein.

49. Plaintiffs have incurred damages, costs and attorneys fees as a result of the cloud on the title of the property caused by the actions of each of the Defendants, and otherwise.

50. The 2013 Assignment of Deed of Trust should be declared a nullity and void.

51. The 2007 Deed of Trust should be declared a nullity and void.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that the recorded 2013 Assignment of Deed of Trust is a nullity, voided, unenforceable and otherwise of no effect, setting aside such document and directing that the records of the Recorder of Deeds be caused to reflect same; and

WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that the ownership of the 2007 promissory note and the 2007 deed of trust were

Electronically Filed - Jackson - Independence - February 17, 2015 - 09:38 PM

bifurcated, and that the 2007 deed of trust is therefore a nullity, voided, unenforceable and otherwise of no effect, setting aside such document and directing that the records of the Recorder of Deeds be caused to reflect same; and

WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that Plaintiffs to be seized of an interest and estate in the said land, according to the allegations and prayer of the Plaintiffs and directing that the records of the Recorder of Deeds be caused to reflect same; and

WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants for a monetary award of damages, punitive damages, costs and attorneys fees and for such other award to Plaintiffs as the Court deems just in the circumstances.

## COUNT II – DECLARATORY JUDGMENT

52. Plaintiffs hereby incorporate the allegations contained in each of the Paragraphs above, as though fully set out herein.

53. None of the Defendants are the person entitled to enforce the promissory note or to declare default under a deed of trust, and the Court should declare same.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that neither Deutsche Bank National Trust Company nor American Home Mortgage Assets Trust 2007-3, Mortgage-Backed-Pass-Through Certificates, Series 2007-3 are the holder in due course of a promissory note or debt instrument signed or issued by Plaintiffs under the UCC.

10

Electronically Filed - Jackson - Independence - February 17, 2015 - 09:38 PM

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that Plaintiffs do not owe a debt to either Defendant Deutsche Bank National Trust Company or to Defendant American Home Mortgage Assets Trust 2007-3, Mortgage-Backed-Pass-Through Certificates, Series 2007-3 nor any of their assignees, predecessors, successors, representatives or agents as such Defendants have claimed.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that neither Deutsche Bank National Trust Company nor American Home Mortgage Assets Trust 2007-3, Mortgage-Backed-Pass-Through Certificates, Series 2007-3 nor any of their assignees, predecessors, successors, representatives or agents are the person entitled to enforce a debt or promissory note against Plaintiffs, or to declare a default of Plaintiffs under a deed of trust, and

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that the ownership and/or possession of the 2007 promissory note and the 2007 deed of trust were bifurcated, and that the 2007 deed of trust is a nullity, voided and otherwise unenforceable, and of no effect, and that any debt related to the 2007 promissory note is unsecured. WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants for a monetary award of damages, costs and attorneys fees and for such other award to Plaintiffs as the Court deems just in the circumstances.

Electronically Filed - Jackson - Independence - February 17, 2015 - 09:38 PM

## COUNT IV – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

54. That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to All Counts as though fully set forth herein.

55. That each of the Defendants have engaged in unfair practices in connection with a mortgage loan of Plaintiffs and with wrongfully creating a cloud on the title to their real property, including the allegations above, the creation and recording of documents purporting to represent authorized assignments and transfers of the promissory note and deeds of trust on the property when such were not authorized or legally possible or when the individuals or organizations purporting to have executed same were not authorized or entitled to do so, failing to withdraw or correct such recorded documents, the use of replicas of Plaintiffs' signatures in connection with the transfers and assignments without the consent of Plaintiffs as required under UETA, maintaining debt collection and enforcement activity against Plaintiffs regarding a promissory note when not entitled to do so, misrepresenting to the Plaintiffs and the courts that the transfers and assignments of the promissory note and deed of trust were authorized and legitimate, and otherwise unnecessarily causing Plaintiffs to defend themselves against the debt collection and enforcement activities of Defendants.

56. Plaintiffs have incurred damages, costs and attorneys fees as a result of the wrongful actions of each of the Defendants, and otherwise.

57. That the transactions of Plaintiffs were not for commercial purposes, but were for personal, residential and household purposes.

58. The acts of Defendants have been intentional and with reckless disregard and punitive damages should be awarded.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants finding Defendants, or any one or combination of them, to have violated the Missouri

Merchandising Practices Act, and to award to Plaintiff and against Defendants damages, punitive damages, costs and attorneys fees.

## COUNT V – CIVIL VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

For their civil claim against Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. Sections 1961-68, Plaintiffs state as follows:

59. That Plaintiffs incorporate the allegations contained in 1-58 above as though fully set forth herein.

60. That the Defendants acted willfully or with actual knowledge of illegal activity.

61. That each of the Defendants participated and associated with each other in an ongoing enterprise relationship for the common purpose to engage in a course of conduct and scheme or artifice to defraud Plaintiffs as a purported loan mortgage holder and loan servicer to pursue debt collection against Plaintiffs and deprive them of the ownership of the title to their real property through foreclosure or otherwise establish a lien on their property without the required authorizations, endorsements and valid documentation to create an entitlement to do so.   Defendants scheme to defraud included misrepresentations to the public through county record filings and to the courts in asserting documents of endorsement, transfer and assignment are valid and that the individuals and organizations appearing in such documents possessed the authority and right to make such endorsement, transfer or assignment on the date indicated.

62. That each of the Defendants conspired to draft and execute and hold out as true, false endorsements, assignments and transfers and to cause such assignments to be recorded with the County, and to make material representations to Plaintiffs and the Courts that the transfers of the promissory note and deed of trust were genuine, valid and authorized.

63. That each of the Defendants used the U.S. mail, wire communications, telephone, public filings and the Internet in furtherance of the schemes and activity with an intent to deprive Plaintiffs of their money and property.

13

64. That each of the Defendants have engaged in similar activity with regard to the mortgage loans and real property of others with a purpose to collect on a promissory note and obtain title to real property when not legally entitled to do so.

65. That Plaintiffs have incurred expenses, costs, a cloud on the title of their real property and attorneys fees by reason of Defendants activity and have suffered and continue to suffer pecuniary loss therefrom, and that but for the activity of Defendants, Plaintiffs would not have suffered such expenses, costs, a cloud on the title of their real property and attorneys fees.

WHEREFORE, Plaintiffs pray the Court enter its judgment in its favor and against Defendants and to award attorneys fees, expenses, costs and other pecuniary loss as damages, treble damages, punitive damages and such other relief against Defendants and for Plaintiffs as the Court deems just.

Respectfully submitted,

MARR LAW, LLC

_/s/ Elizabeth A. Marr_____
Elizabeth A. Marr, MO Bar #30594
200 N.E. Missouri Road, #200
Lee's Summit, MO 64086
(816) 830-5427
1.866.281.5665 – fax
marrlawllc@gmail.com
*Attorney for Plaintiffs*

Certificate of Service

I hereby certify that on this 17th day of February, 2015 a copy of the foregoing will be submitted to, and service to counsel of record will occur through, the Court's efiling system.

_/s/ Elizabeth A. Marr_____

14

Respectfully submitted,

/s/
_____
Barre E. Hunter - Plaintiff
3020 S. Fields Road
Oak Grove, MO 64075

/s/_____
Venda M. Hunter - Plaintiff
3020 S. Fields Road
Oak Grove, MO 64075

15

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE, MISSOURI

| | | |
|---|---|---|
| BARRE HUNTER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1416-CV00681 |
| | ) | |
| ADVANCE MORTGAGE CORPORATION, et al. | ) | |
| | ) | |
| Defendants | ) | |

## MOTION FOR EXTENSION OF TIME TO FILE DISPOSITIVE MOTIONS

COME NOW Plaintiffs, by and through the undersigned counsel, pursuant to Rule 44 of the Missouri Rules of Civil Procedure and move and request the Court to enter its order for an extension of the time for Plaintiffs to file dispositive motions in this matter. In support of this motion and request, Plaintiffs state the following:

1. February 12, 2015 is the date established for the parties to file all dispositive motions in the Scheduling Order dated December 12, 2014.

2. The Court by its recent Order dated February 5, 2015 granted Plaintiffs' motion for leave to file its amended petition on or before February 15, 2015.

3. In order to appropriately address the correct version of the pleadings after the filing of the amended petition, an extension of time is needed and requested for Plaintiffs to prepare and submit its dispositive motions.

WHEREFORE, Plaintiffs pray the Court enter its order granting this motion and an extension of time for the Plaintiffs to file dispositive motions on or before March 16, 2015.

Respectfully submitted,
MARR LAW, LLC

*/s/ Elizabeth A. Marr*

Elizabeth A. Marr, MO Bar #30594
200 N.E. Missouri Road, #200
Lee's Summit, MO 64086
(816) 830-5427; 1.866.281.5665 – fax
marrlawllc@gmail.com

<u>CERTIFICATE OF SERVICE</u>

In addition to notice via the electronic filing system, I hereby certify that the foregoing was served on

February 12, 2015 to counsel of record via:

_X___ U.S. Mail postage prepaid

_____ Fascimile

_____ Electronic Mail

_____ Hand-Delivery

To:

Michael E. Boyd/
Charles H. Nitsch
300 St. Peters Centre Blvd., Ste. 230
St. Peters, MO 63376
(636) 447-8500
Fax: (636) 447-8505
mboyd@boydlawlc.com

           __/s/ Elizabeth A. Marr_____
           Elizabeth A. Marr
           *Attorney for Plaintiffs*

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

BARRE E. HUNTER, )
)
      Plaintiff, )
)
        Case No. 1416-CV00681
vs. )    Division 16
)
ADVANCE MORTGAGE CORPORATION,)
)
      Defendant. )

## ORDER

    NOW on this 5th day of February, 2015, the Court considers *Defendants' Motion to Dismiss Plaintiffs' Third Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted*, filed November 17, 2014, *Plaintiffs' Motion for Leave to File Amended Petition*, filed January 12, 2015, and the Court being duly advised in the premises orders as follows:

    IT IS HEREBY ORDERED that the *Defendants' Motion to Dismiss Plaintiffs' Third Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted* is **DENIED.**

    IT IS FURTHER ORDERED that *Plaintiffs' Motion for Leave to File Amended Petition* is **GRANTED.** Plaintiffs shall have ten (10) days from the date of this Order to file their Fourth Amended Petition.

    IT IS SO ORDERED.

Date: February 5, 2015

                    *Marco A. Roldan*
                    Judge Marco Roldan
                    Division 16

## CERTIFICATE OF MAILING

    It is hereby certified that a copy of the forgoing was sent via the E-Filing System this _6th_ day of _February_____, 2015, to the following:

MICHAEL ERNEST BOYD
THOMAS M FRANKLIN
MICHAEL J WAMBOLT
ELIZABETH A MARR

                    *Serena Ko*
                    Judicial Administrative Assistant

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

BARRE E HUNTER
**Plaintiff/Petitioner**

VS                                              Case No.    1416-CV00681

ADVANCE MORTGAGE CORPORATION
Defendant/Respondent

---

## TRANSFER NOTICE

. Pursuant to Circuit Court Administrative Order, the above case has been transferred from Judge Charles H Mckenzie, Division 13, to Judge Marco Roldan, Division 16 effective January 1, 2015.

Case Management Conferences, Trials or Hearings previously scheduled before Judge Charles H Mckenzie, Division 13 will be heard in Division 16 by Judge Marco Roldan, on the date and time previously scheduled unless you are advised otherwise.

### Department of Civil Records

This is to certify that a copy of the foregoing was hand delivered/faxed/emailed/mailed and/or sent through the eFiling system to the following on January 2, 2015:

MICHAEL ERNEST BOYD, Attorney for Defendant, THE BOYD LAW GROUP, L.C., 300 ST. PETERS CENTRE BLVD., STE. 230, SAINT PETERS, MO 63376
(636) 447-8505, mboyd@boydlawlc.com
THOMAS M FRANKLIN, Attorney for Defendant, 9140 WARD PARKWAY, SUITE 200, KANSAS CITY, MO 64114
(816) 822-8222, tom.franklin@tmflaw.com
MICHAEL J WAMBOLT, Attorney for Defendant, 11460 TOMAHAWK CREEK PKWY, SUITE 300, LEAWOOD, KS 66211
(913) 339-9045, mwambolt@msfirm.com
ELIZABETH A MARR, Attorney for Plaintiff, MARR LAW LLC. 200 NE MISSOURI RD, #200, LEES SUMMIT, MO 64086
(816) 281-5665, MARRLAWLLC@GMAIL.COM

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 27 of 491

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

BARRE E HUNTER,                          )
                    Plaintiff,         )          Case No. 1416-CV00681
                           )
v.                                       )          Division  13
                           )
 ADVANCE MORTGAGE                        )
CORPORATION,                             )
                    Defendants.        )

## <u>ORDER</u>

NOW, on this 18th day of December, 2014, the Court takes up for consideration and rules upon the following:

1. Defendant's Motion to Strike, filed with the Court on June 26, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as MOOT.**

2. Plaintiff's Motion for Leave to File Response, filed with the Court on August 6, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as MOOT.**

3. Plaintiff's Motion for Extension of Time, filed with the Court on September 26, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as MOOT.**

4. Plaintiff's Motion for Leave to File Response, filed with the Court on December 12, 2014. This Motion is Unopposed. Therefore, After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **SUSTAINED.** Plaintiff shall file a Response to Defendants' Motion to

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 28 of 491

Dismiss Plaintiff's Third Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted within 10 days of this Order.

**IT IS SO ORDERED.**

_____
**CHARLES H MCKENZIE**, Judge

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 29 of 491

Certificate of Service

This is to certify that a copy of the foregoing was hand delivered/faxed/emailed/mailed and/or sent through the eFiling system to the following on 12/18/2014.

MICHAEL ERNEST BOYD, Attorney for Defendant, THE BOYD LAW GROUP, L.C., 300 ST. PETERS CENTRE BLVD., STE. 230, SAINT PETERS, MO 63376
(636) 447-8505, mboyd@boydlawlc.com
THOMAS M FRANKLIN, Attorney for Defendant, 9140 WARD PARKWAY, SUITE 200, KANSAS CITY, MO 64114
(816) 822-8222, tom.franklin@tmflaw.com
MICHAEL J WAMBOLT, Attorney for Defendant, 11460 TOMAHAWK CREEK PKWY, SUITE 300, LEAWOOD, KS 66211
(913) 339-9045, mwambolt@msfirm.com
ELIZABETH A MARR, Attorney for Plaintiff, MARR LAW LLC, 200 NE MISSOURI RD, #200, LEES SUMMIT, MO 64086
(816) 281-5665, MARRLAWLLC@GMAIL.COM

Adam Mehl, Law Clerk Division 13

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 30 of 491

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

BARRE E HUNTER,                          )
                Plaintiff,          )    Case No. 1416-CV00681
                                )
v.                                       )    Division 13
                                )
ADVANCE MORTGAGE                         )
CORPORATION,                             )
                Defendant.          )

## SCHEDULING ORDER

NOW, on this December 12, 2014, the Court being fully advised, and pursuant to the agreement by counsel for the parties enters the following Scheduling Order:

### Introduction

    This Court, as well as the other judges of the 16th Judicial Circuit, are committed to the concept of case management. With that in mind, counsel is given great latitude in selecting their trial date. With the volume of cases pending in the 16th Judicial Circuit, rearranging trial dates can be very difficult. **Counsel should be aware that once this Scheduling Order is entered the trial date shall not be changed absent a showing of good cause based on exceptional circumstances. Failure to complete Discovery consistent with this Order shall not be a basis for continuance. Counsel should carefully read this Scheduling Order upon its receipt.**

1. The above cause is Specially Set for bench trial on May 14, 2015 at 9am (one day trial). The parties orally waived their Constitutional right to jury trial on the record. This setting is considered a **NO CONTINUANCE** setting.

2. The parties should contact the Court prior to filing any written pleadings regarding discovery disputes. After hearing the arguments of all parties, the Court may request a motion, but it is hoped that the Court will be able to facilitate a resolution to any discovery dispute without further delay of motion and response times.

3. Plaintiff(s) shall designate all expert witnesses on or before March 14, 2015.

4. Defendant(s) shall designate all expert witnesses on or before April 14, 2015.

5. The deadline for filing motion to amend pleadings is January 12, 2015.

6. The deadline for filing a motion to add parties January 12,, 2015.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 31 of 491

7. All discovery will be completed on or before May 1, 2015.

8. All dispositive motions, especially motions for summary judgment, will be filed on or before February 12, 2015. It is the Court's strong belief that summary judgment motions play a meaningful role in the processing of litigation. However, it is the Court's view that lengthy summary judgment motions filed with voluminous deposition excerpts, from both sides frequently create a situation where there is a genuine factual issue. The Court will attempt to thoughtfully look at any summary judgment that is filed but asks counsel to also be thoughtful in their judgment as to whether or not summary judgment is an appropriate remedy to utilize in this cause.

9. Any of the above time deadlines, save the trial date, pretrial conference and filing of dispositive motions, may be changed by agreement of the parties without notice to the Court, as long as such changes do not affect the trial date. Any desire to make changes without the agreement of the parties will require leave of Court. A word to the wise for counsel: if you choose to deviate from the Scheduling Order, make sure you define what those changes are. Should any dispute arise over what accommodations or changes were made or agreed to, the contents of the Scheduling Order will be strictly enforced.

10. Should circumstances arise that substantially alter the feasibility of the dates set forth in the scheduling order the parties should immediately contact the Court. The failure of the parties to follow the dates set forth in the order without prompt notice to the Court shall not serve as a basis for a continuance and in appropriate cases may serve as a reason for the Court to consider sanctions.

**IT IS SO ORDERED.**

CHARLES H MCKENZIE, Judge

## Certificate of Service

This is to certify that a copy of the foregoing was hand delivered/faxed/emailed/mailed and/or sent through the eFiling system to the following on 12/16/2014.

MICHAEL ERNEST BOYD, Attorney for Defendant, THE BOYD LAW GROUP, L.C., 300 ST. PETERS CENTRE BLVD., STE. 230, SAINT PETERS, MO 63376
(636) 447-8505, mboyd@boydlawlc.com
THOMAS M FRANKLIN, Attorney for Defendant, 9140 WARD PARKWAY, SUITE 200, KANSAS CITY, MO 64114
(816) 822-8222, tom.franklin@tmflaw.com
MICHAEL J WAMBOLT, Attorney for Defendant, 11460 TOMAHAWK CREEK PKWY, SUITE 300, LEAWOOD, KS 66211
(913) 339-9045, mwambolt@msfirm.com
ELIZABETH A MARR, Attorney for Plaintiff, MARR LAW LLC, 200 NE MISSOURI RD, #200, LEES SUMMIT, MO 64086
(816) 281-5665, MARRLAWLLC@GMAIL.COM

Adam Mehl, Law Clerk Division 13

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE, MISSOURI

| | |
|---|---|
| BARRE HUNTER, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1416-CV00681 |
| | ) |
| ADVANCE MORTGAGE CORPORATION, et al. | ) |
| | ) |
| Defendants | ) |

**PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED PETITION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED WITH SUGGESTIONS IN SUPPORT**

COME NOW, Plaintiffs by and through the undersigned counsel and for their Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted with Suggestions in Support do respectfully submit to the Court as follows:

## 1. **General Response.**

In general response in opposition to the Motion to Dismiss (Motion), the Plaintiffs Third Amended Petition (Petition) contains adequate/sufficient allegations that meet the elements of recognized causes of action or of a cause that might be adopted in this case. A discussion of each of the causes of action with suggestions in support appear in Paragraphs 3 – 5 which follow. A discussion of the standard of review regarding motions to dismiss appears in Paragraph 6 below.

The Motion to Dismiss contains arguments and comments on matters not related to whether the Petition fails to state a claim upon which relief may be granted, which are not addressed point

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 34 of 491

for point herein. Defendants' Motion in its sections entitled "Background" and "Arguments and Authorities" makes reference to facts which are not in the Petition or any current pleading, and which are contested by Plaintiffs, including but not limited to "Plaintiffs defaulted" (page 1); "attempt to unwind the foreclosure" (page 2); "…Deutsche Bank holds the note endorsed in blank and is assignee of the accompanying deed of trust…and has a valid first lien…" (7). Such contested facts may not and should not be considered as true for the purpose of this motion to dismiss.

 The Plaintiffs request that this Court not convert this Motion to Dismiss to a motion for summary judgment or otherwise rule on the merits of the claims, as there has been no notice of such treatment and the facts and arguments have not been fully developed for such. The Motion vaguely argues that the Petition somehow must be dismissed because it may have similarities to other petitions, however the allegations to the Petition are specific to the Plaintiffs case and Defendants arguments provide no basis upon which this Court must or should dismiss the Petition as failing to state a claim upon which relief can be granted or on any other grounds.

 Defendants' Motion on page 7 generally argues that "…Deutsche Bank holds the note endorsed in blank and is assignee of the accompanying deed of trust…and has a valid first lien…" which is a cursory reference to facts not contained in the Petition or other current responsive pleadings in this matter and facts which Plaintiffs definitely contest and challenge, and therefore such facts may not be considered as the basis for dismissal of the Petition. Furthermore, the Petition alleges specifically otherwise, that none of Defendants own or hold or are the holders in due course of or are the authorized representatives or are persons entitled to enforce an original, valid, authorized, unaltered, properly endorsed, or properly transferred

promissory note or deed of trust executed by Plaintiffs. (Petition paragraphs 13-36, 45-47.) Proof of one or any combination of those allegations through litigation could be the basis for a finding that: the assignment of the deed of trust is not valid or is void; the deed of trust is not valid or void; the promissory note is not valid, is altered, not properly transferred or void; and/or that neither of these named Defendants have a right to enforce collection or declare default against Plaintiffs or foreclose under the deed of trust.

Despite a reference to it in the Motion, there was no copy of a note attached as Exhibit A to the Motion to Dismiss received by Plaintiffs. However, even if a copy of a note is attached to a version of the Motion submitted to the Court, Plaintiffs still do not agree or acquiesce that the copy is accurate or reliable or that either of Defendants is in possession of an authentic an unaltered original which bears authorized and genuine dated signatures of endorsement or transfer to either of the Defendants and Plaintiffs' maintain their challenges regarding such note. Further, the attachment of a copy of a note to the Motion does not establish the history, authenticity or possession of the unaltered original. Therefore, the reference to an attached note is not dispositive for purposes of the motion to dismiss.

## 2. **Standing.**

Plaintiff homeowners in this case have standing with regard to each of their claims and also are particularly noted to have standing with regard to the assignments and transfers by Defendants in this matter because a non-party homeowner most definitely has standing and may challenge the validity of a putative assignment to establish the assignee's lack of title, among other defects. The statement of the law with regard to homeowners' standing to question the validity of mortgage industry assignments and transfers has recently been clarified and corrections to misunderstanding or misapplication of earlier decisions has been made and explained in *Slorp v. Lerner, Sampson & Rothfuss*, 2014 U.S. App. LEXIS 18816 (6th Cir. Sept. 29, 2014).

On September 29, 2014 the United States Sixth Circuit Court of Appeals entered this decision and in its opinion purposely goes to great length to attempt to correct the widespread, misplaced, and overblown use and misunderstanding of its earlier decision in *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102, (6th Cir. 2010) from 717 F. Supp. 2d 724 (E.D. Mich. 2010). It is noted that to the extent that cases referenced by Defendant are related to Livonia or its progeny, they may no longer be reliable.

The Sixth Circuit Court of Appeals stated in *Slorp* at Page 8:

"The district court held, and the defendants now maintain, that Slorp lacked standing to assert his claims because an individual who is not a party to an assignment may not attack the assignment's validity. We differ with this interpretation of *Livonia Properties*. The sweeping rule that the district court extrapolated from *Livonia Properties* dwarfs our actual holding in that case. The district court in *Livonia Properties* stated that an individual "who is not a party to an assignment lacks standing to challenge that assignment," and our *Livonia Properties* opinion quoted and endorsed that general statement, perhaps inartfully. 399 F. App'x at 102. But we quickly limited the scope of that rule, clarifying that a non-party homeowner may challenge the validity of an assignment to establish the assignee's lack of title, among other defects. *Id.* (citing 6A C.J.S. *Assignments* § 132); *see also Carmack v. Bank of N.Y. Mellon*, 534 F. App'x 508, 511—12 (6th Cir. 2013) ("*Livonia's* statement on standing should not be read broadly to preclude all borrowers from challenging the validity of mortgage assignments under Michigan law."). Thus a non-party homeowner may challenge a putative assignment's validity on the basis that it was not effective to pass legal title to the putative assignee. *See Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 361 (6th Cir. 2013); *Livonia Props.*, 399 F. App'x at 102; *see also Woods v. Wells Fargo*

4

*Bank, N.A.*, 733 F.3d 349, 353-54 (1st Cir. 2013); 6A C.J.S. *Assignments* § 132 ("The debtor may also question a plaintiff's lack of title or the right to sue.")."

The Plaintiffs in this matter most certainly have alleged facts sufficient to support standing to proceed on their claims. The requirements for standing in Missouri as stated above are not unlike those established for the federal courts by Article III of the United States Constitution which are discussed in *Slorp*:

"Article III of the United States Constitution limits the power of the federal judiciary to the adjudication of certain "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. From this textual limitation and "the separation-of-powers principles underlying that limitation," the federal courts have "deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386-88 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Three components comprise this "irreducible constitutional minimum": (1) the plaintiff must have suffered an "injury in fact," (2) that injury must be "fairly traceable" to the defendant's challenged conduct, and (3) it must be likely that the plaintiff's injury would be redressed by the requested relief. *Lujan*, 504 U.S. at 560-61. At its essence, Article III standing requires the plaintiff to have some personal and particularized stake in the dispute. *See Raines v. Byrd*, 521 U.S. 811, 818-19 (1997)."

This Court should not find that Plaintiffs lack standing to challenge the validity of the assignment of the deed of trust and transfer of the underlying promissory note.

Despite the view that from a state contract law perspective that non-party homeowners may not bring a challenge to enforce the Pooling and Servicing Agreement (PSA) or otherwise insert themselves into the matters between the contracting parties, they most certainly may inquire and present evidence about the arrangements of those contracting parties to show that legal title or rights have not passed to a putative assignee or holder when it relates to the homeowners' property.

The argument of Standing as presented by Defendants Motion in IV and V is limited to: the lack of a right of the Plaintiffs to challenge the conduct of Defendants and transfers and assignment of deeds of trust or notes as not authorized or legally possible under the Pooling and

5

Servicing Agreement (PSA) because they are not parties to or third party beneficiaries of the PSA. It is noted that Plaintiffs' interest in the property or other standing regarding the other allegations in its Petition have not been challenged in the Motion to Dismiss, and therefore the Petition should certainly not be wholly dismissed based upon a view that there is a lack of standing to challenge the PSA.

Defendants also appear to argue that there is such uniform agreement among Missouri courts regarding the: effect of splitting the note and deed of trust; effect of who holds a promissory note; and no standing for a homeowner to challenge a mortgage assignment that the Plaintiffs' Petition must be dismissed. Plaintiffs respectfully disagree and submit that these are fact specific situations in which the who, what, when, where and how of transfers and assignments can change the resulting legal effect and that the legal interests of the parties can change with the facts, therefore there is no absolute prohibition or impossibility for Plaintiffs to succeed on their claims or for the Court to determine the interests of the parties. In *Bellistri v. Ocwen Loan Servicing*, LLC, 284 S.W. 3d 619 (Mo. Ct. App. 2009), the discussion reveals that there are still circumstances under which assignments or transfers might have no effect or an obligation such as when a requisite agency relationship is lacking in the event of a split, especially when MERS is involved. The MERS system has created a lot of confusion and has been very disruptive to long established law and practices regarding land and mortgages, with resulting litigation across the country and the criticism of MERS and the ill-effects of its and its members' practices is well described by the United States Court of Appeals for the Ninth Circuit opinion dated June 12, 2014 in *In Re: Mortgage Electronic Registration Systems, Inc.*, 11-17615, 2:09-md-02119-JAT. That 2014 case also shows the law is not absolutely settled on these matters and is still evolving. Also see *Graham v. Oliver*, 659 S.W.2d 601 (Mo. Ct. App. 1983) which also

6

demonstrates that the rights and powers related to mortgages are dependent on the circumstances. There would also be an examination of who is a holder or holder in due course, and who is a person entitled to enforce, however, those issues are not helpful for a determination at this point for Motion to Dismiss purposes as they are not dispositive or instructive of the case in themselves.

There has been no argument with regard to standing of Plaintiffs to pursue a finding on other deficiencies in the documents or transfers/assignments in this case on other grounds such as altered or forged documents, failure of consideration, unauthorized electronic use of signatures and other matters as alleged. The Court should not find a lack of standing on the part of these Plaintiffs.

### 3. **Quiet Title**

With regard to Count I for quiet title, the Petition contains the elements for a quiet title action which are established in R.S.Mo. §527.150.

> *"527.150. 1. Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property."*

Each of the plaintiffs and each of the defendants is a "person" under R.S.Mo. §527.150.1.

Plaintiffs petition has alleged and claimed that Plaintiffs have title to, own, possess and reside in real property (Petition paragraphs 2, 3, 5, Exhibit 1 – warranty deed.)

Plaintiffs Petition has alleged that each of the Defendants have claimed to have interest in that same real property related to a deed of trust, or assignments of a deed of trust or related debt (Petition paragraphs 11, 12, 18, Exhibits 2-3).

7

The Petition has alleged facts which relate to the validity or enforceability of a claim of interest in the real property by each of the named Defendants. (Petition paragraphs 11-26, 28-36, 42-47, Exhibit 1-3).

Plaintiffs' Petition has requested the Court to make determinations and enter orders regarding Plaintiffs' and Defendants' interest in the real property, the 2013 Assignment of Deed of Trust and the 2007 Deed of Trust (Petition Paragraphs 50- 51 and Count I prayers).

Plaintiffs Petition alleges sufficient standing of Plaintiffs as owners of the real property to bring the action under R.S.Mo. §527.150.1.

> "The statute relating to suits to determine interest and quiet title is remedial and is to be liberally construed." *Wallis v. St. Louis County, 563 S.W. 2d 93, 95 (Mo. App. 1978) citing RSMo §527.150 (1969), Bailey v. Williams, 326 S.W.2d 115 (Mo. 1959).*

The Court in *Wallis* also said:

> "In reviewing the dismissal of a petition for failure to state a claim or cause of action, this court is required to construe the petition favorably and to give the pleader every reasonable and fair intendment in view of the facts alleged. If the allegations invoke principles of substantive law which may entitle the pleader to relief, the petition is not to be dismissed. If the facts pleaded and the reasonable inferences to be drawn therefrom looked at most favorably from the pleader's standpoint show any ground upon which relief may be granted, the plaintiff has a right to proceed. Watson v. Franklin Finance, 540 S.W.2d 186 (Mo.App.1976); Laclede Gas Company v. Hampton Speedway Company, 520 S.W.2d 625 (Mo.App.1975). A petition is not to be held insufficient merely because of a lack of definiteness or certainty. Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52 (1952); § 509.250, RSMo 1969. Wallis, at page 95. See also, Danforth v Danforth, 663 S.W. 2d 288 (Mo. App. W.D. 1983)."

At page 96 of its opinion, the *Wallis* court summarized as follows:

> "Section 527.150, RSMo 1969 permits any person who claims any title or interest in real property to institute an action against any other person or persons having or claiming to have any title, estate or interest in the property to ascertain and determine the estate, title and interest of the parties in the real property, and to define and adjudge the rights of the respective parties in the real property."

Based upon the above, the Plaintiffs Petition for quiet title should not be dismissed and the case should be permitted to be heard on the merits.

8

## 4. **Declaratory Judgment**

With regard to Count II for declaratory judgment, the Plaintiffs' Petition contains allegations that they each are owners of, possess, and reside in real property, and further, that each have been subjected to threats of collection, foreclosure and enforcement of a promissory note or debt and which is claimed by Defendants to be secured by and related to their real property, therefore each has a "legally protectable interest."

The Petition alleges that Defendants have taken steps toward, and communicated their intention toward, collection and foreclosure on Plaintiffs real property including recording and relying upon documents which include an assignment of a deed of trust with a power of sale. (Petition paragraphs 11, 12, 21, Exhibits 2-3). Defendants' motion does not deny an intention to foreclose. The authority to collect through foreclosure pursuant to an assignment of deed of trust contains legal requirements and is dependent upon the existence of and status of a valid underlying debt and promissory note. Missouri permits foreclosure under a power of sale contained in a deed of trust without a judicial determination as to the authority of the person causing the foreclosure to do so. Therefore Plaintiffs' legally protectable interests are currently and immediately at risk from these Defendants. Therefore, there is a justiciable controversy that presents a real, substantial, presently existing controversy as to which specific relief is sought. This controversy is ripe for determination. They have no other adequate remedy at law for relief, as litigation after the loss of title and possession of the real property which is their home will not provide adequate relief.

> "In the context of a declaratory judgment action, "[a] justiciable controversy exists where the plaintiff has a legally protectible interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination." *Mercy Hospitals East Communities v. Missouri Health Facilities Review Committee,* 362 S.W.3d 415,

9

417-418 (Mo. App. 2013) *citing Barron v. Shelter Mut. Ins. Co.,* 220 S.W.3d 746, 748 (Mo. banc 2007).

*Missouri Health Care Association v. Attorney General of the State of Missouri,* 953 S.W.2d 617, 620 (Mo. Sup. Ct. en banc 1997) "A declaratory judgment action requires a justiciable controversy. Akin v. Director of Revenue, 934 S.W.2d 295, 298 (Mo. banc 1996). A justiciable controversy exists where the plaintiff has a legally protectable interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination. State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 129, 221 S.W.2d 172, 176 (banc 1949). "

In *Murdaugh v Patterson*, SD32619 (Mo. App. 2014) the court said:

"Ripeness is determined by whether 'the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character.'" *Schweich v. Nixon,* 408 S.W.3d 769, 774 (Mo. banc 2013) (quoting *Mo. Health Care Assn v. Attorney Gen. of Mo.,* 953 S.W.2d 617, 621 (Mo. banc 1997)."

In *Vowell v. Kander,* WD 77591, page 4 (Mo. App. 2014) the court said:

"We determine "standing as a matter of law on the basis of the petition along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued." *State ex rel. Christian Health Care of Springfield, Inc. v. Mo. Dep't of Health & Senior Servs.,* 229 S.W.3d 270, 276 (Mo. App. W.D. 2007) (internal quotation omitted)."

"A declaratory judgment action requires a justiciable controversy." *Mo. Alliance for Retired Ams. v. Dep't of Labor & Indus. Relations,* 277 S.W.3d 670, 676 (Mo. banc 2009). "A justiciable controversy exists where (1) the plaintiff has a legally protectable interest at stake, (2) a substantial controversy exists between the parties with genuinely adverse interests, and (3) that controversy is ripe for judicial determination." *Schweich v. Nixon,* 408 S.W.3d 769, 773 (Mo. banc 2013) (internal quotation omitted). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Id.*

Plaintiffs' Petition contains sufficient allegations regarding standing to pursue its causes of action.

In *Lebeau v. Commissioners of Franklin County,* SC93618, (Mo. Sup. Ct. 2014) the Court stated:

"A party must have standing to bring an action in a Missouri court. Standing, at its most basic level, simply means that the party or parties seeking relief must have some stake in the litigation. *Ste. Genevieve Sch. Dist. v. Bd. of Alderman of Ste. Genevieve,* 66 S.W.3d 6, 10 (Mo. banc 2002). In the context of a declaratory judgment action, the plaintiff must have a legally protectable interest at stake in the outcome of the litigation. *Id.* "A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *Weber,* 342 S.W.3d at 323 (internal quotation marks omitted)."

Therefore, although Defendants Motion argues that Plaintiffs lack standing, that argument has been made related to whether Plaintiffs may challenge the Pooling and Servicing Agreement (PSA), and that limited argument on standing should not be considered by this Court to be dispositive of all of the matters alleged

in the Petition. Further, and as noted above in the discussion of the Slorp case, that homeowners do indeed have standing to make challenges to the validity of assignments.

### 5. Violations of Missouri Merchandising Practices Act

With regard to its Count regarding violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010-407.130, the parties are persons under 407.010.2 and the Petition identifies the subject matter of real property and actions by Defendants related to the real property, which is included in the definition of "merchandise" in 407.010.3. (Petition paragraphs 1-47)

The Petition alleges conduct of Defendants which is unfair, deceptive, fraudulent, wrongful, misrepresentation, and concealment, suppression, and omission of material fact by Defendants related to a mortgage loan (Petition paragraphs 11, 12-18, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30, 36, 40, 43, 44, 47, 57) which could be then be considered unlawful practice pursuant to Mo. Rev. Stat. §407.020.1 which states:

> "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice."

The Missouri Supreme Court has very recently in 2014 ruled on the subject of the Missouri Merchandising Practices Act and mortgage loans. In Conway v. CitiMortgage, Inc., 438 S.W.3d 410 (SC93951 -August 19, 2014 Mo. Sup. Ct. en banc) the Court squarely applied the Missouri Merchandising Practices Act to acts of mortgage lenders and those involved with the servicing, collection or enforcement of real property loans even after the initial purchase or financing of real property. The Court said at page 7 of the slip opinion:

> "A loan is composed of both the initial extension of credit and the bundle of related services. It creates a long-term relationship in which the borrower and the lender continue to perform various

11

duties, such as making and collecting payments over an extended period of time. Because each party must continue to perform these duties for the life of the loan, the sale continues throughout the time the parties perform their duties. A party's right to collect a loan is part of that sale and is, therefore, "in connection with" the loan."

The Court also stated at pages 8-9:

"Even if the loan servicer was not an original party when the lender and borrower agreed to the services and responsibilities each would perform, enforcing the terms of the loan is in connection with the ongoing sale of the loan, as discussed above. Because a loan is an ongoing transaction, loan collection procedures, whether initiated by a loan originator or a loan servicer, are done "in connection with" the original procurement of the loan."

Then the Court at page 10 said:

"Looking at the plain meaning of "unfair practice," this Court noted the words themselves were unrestricted, all-encompassing and exceedingly broad." 37 S.W.3d at 240. It further found that "the literal words cover every practice imaginable and every unfairness to whatever degree." *Id.* Given the potentially broad scope of what is prohibited under the MMPA, it would seem incongruous to limit "in connection with" to only apply to the original parties in a transaction." Citing *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001).

At page 6, the Court in *Conway* stated:

"While the MMPA states that a violation can happen at any time before, during or after a sale, it does not set out when an unlawful act is committed "in connection with" the sale. When a statute does not include a definition for a term, courts consider its plain and ordinary meaning. *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). While the full phrase "in connection with" is not in the dictionary, "to connect" is defined as "to have a relationship." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 480 (1993). In this light, section 407.020.1 prohibits the use of the enumerated deceptive practices if there is a relationship between the sale of merchandise and the alleged unlawful action. According to the statute, the unlawful action may occur at any time before, during or after the sale and by any person."

It is especially important to note that the Supreme Court in Conway at page 9 specifically overruled previous holdings on the meaning of "in connection with" to extend the scope of the MMPA to conduct after the initial sale.

"To the extent *Professional Debt* and *Portfolio Recovery Assets* conflict with this holding, they should no longer be followed."

The above reference is to two 2011 cases with **now overruled holdings** that third party collectors actions after the initial sale were not "in connection with" the sale. (*State ex rel. Koster v. Professional Debt Management, LLC*, 351 S.W.3d 668 (Mo. App. 2011), and *State ex rel. Koster v. Portfolio Recovery Associates, LLC*, 351 S.W.3d 661.)

12

The Petition also makes sufficient allegations required by the MMPA that: the Plaintiffs have incurred damages, costs and attorneys fees; that the transactions were for personal, residential and household purposes; and that Defendants acts were intentional and with reckless disregard. (Petition paragraphs 55-57).

6. **Standard for Review**

The standard of review for motions to dismiss in Missouri establish that the trial court should: assume that facts alleged in the petition are true; construe allegations liberally in favor of the plaintiff; avoid consideration of matters outside of the pleadings; avoid making a ruling based upon the merits of the allegations or cause of action; and not dismiss a petition if the allegations are consistent with any possible theory or cause of action.

The Missouri Supreme Court in the 2014 *Conway* case at 4-5 of the slip opinion also provided the following with regard to the standard of review for a motion to dismiss:

> "Appellate courts review a trial court's grant of a motion to dismiss *de novo. Ward v. W. Cnty. Motor Co., Inc.*, 403 S.W.3d 82, 84 (Mo. banc 2013). A motion to dismiss for failure to state a claim tests the adequacy of a plaintiff's petition. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993). The petition is reviewed in an almost academic manner to determine if the plaintiff has alleged facts that meet the elements of a recognized cause of action or of a cause that might be adopted in that case. *Id.* The facts alleged in the petition are assumed to be true and are construed liberally in favor of the plaintiff. *Ward*, 206 S.W.3d at 84."

In *Phillips v. CitiMortgage, ED100289 (Mo. App. May 6, 2014)* at 5-6, the court said:

> "Our review of the trial court's decision to grant a motion to dismiss for failure to state a claim is *novo. Thomas v. City of Kansas City,* 92 S.W.3d 92, 96 (Mo. App. W.D. 2002). We view the pleadings liberally, and we accept all facts alleged as true and view them in the light most favorable to the pleader. *Id.* We do not address the merits of the case, or consider evidence outside the pleadings. *Id.* The law generally favors trial upon the merits, and therefore, the criteria used to determine the sufficiency of the petition is designed to further this purpose. *Id.* If the allegations sufficiently advise the defendant of the claim asserted and the relief demanded, the petition sufficiently states a claim. *Id.*　A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the petition. *Bromwell v. Nixon,* 361 S.W.3d 393, 398

13

(Mo. banc 2012) (citing *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 306 (Mo. banc 1993)). We do not weigh the factual allegations contained in the petition, and we do not determine whether those allegations are credible or persuasive. *Id.* We simply review the petition to determine whether facts are alleged to meet the elements of a recognized cause of action. *Id.*"

In *Thomas v City of Kansas City,* 92 S.W.3d 92, (Mo. App. WD 2002) at page 96 the court said:

> "We review *de novo* the grant of a motion to dismiss for failure to state a claim, examining the petition to determine whether it invokes principles of substantive law. *See Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 409-10 (Mo.App.W.D. 2000). The pleadings are liberally construed, and all alleged facts are accepted as true and construed in a light most favorable to the pleader. *See Id.* at 410. "In making our determination, we may not address the merits of the case or consider evidence outside the pleadings." *Brennan By and Through Brennan v. Curators of the Univ. of Mo.,* 942 S.W.2d 432, 434 (Mo.App. W.D.1997).

> The law generally favors trial upon the merits, and the criteria by which the sufficiency of petitions is judged have been developed to promote this purpose. *Goe v. City of Mexico,* 64 S.W.3d 836, 839 (Mo. App.2001). A pleading is sufficient where the facts necessary to constitute a cause of action can be obtained by a liberal construction of its averments. *Scheibel v. Hillis,* 531 S.W.2d 285, 289 (Mo. banc 1976). This is true even though the allegations may be uncertain or defective, or may be stated in an unskillful manner, but contain the necessary allegations to advise the defendant of the claim and the relief demanded. 71 C.J.S. Pleading § 257; *See C. Bennett Bldg. Supplies, Inc. v. Jenn Air Corp.,* 759 S.W.2d 883, 890 (Mo.App.1988).

> A trial court should not dismiss a petition merely because the factual allegations seem more consistent with something other than plaintiff's stated legal theory. The court must examine the petition to determine whether the allegations provide for relief on any possible theory. 71 C.J.S. Pleading § 259; *Goe v. City of Mexico,* 64 S.W.3d 836, 840 (Mo.App.2001). The character of a cause of action is determined from the facts stated in the petition and not by the name given the action. *Goe,* 64 S.W.3d at 840."

It is not appropriate for a trial court to use a ruling on a motion to dismiss "as a vehicle to enter judgment on the merits." City of Hannibal v. Marion County, 745 S.W.2d 842, 846 (Mo.App.E.D. 1988). Once a motion to dismiss is overruled, a party is "entitled to win or lose after a submission on the merits." Id.

WHEREFORE, Plaintiffs pray the Court enter its Order to deny the Defendants' Motion to Dismiss Plaintiffs' Third Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted, or in the alternative in the event of a finding of correctible deficiencies, that the Court permit amendment to the Plaintiffs' petition to correct such deficiencies.

Respectfully submitted,
Marr Law, LLC
/s/ Elizabeth A. Marr

Elizabeth A. Marr, MO Bar #30594
200 N.E. Missouri Road, #200
Lee's Summit, MO 64086
(816) 830-5427
1.866.281.5665 – fax
marrlawllc@gmail.com

*Attorney for Plaintiffs*

Electronically Filed - Jackson - Independence - December 12, 2014 - 05:34 AM

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on this __12th____day of December, 2014 to

counsel of record via:

_X___ U.S. Mail postage prepaid

_____ Fascimile

___x___ Electronic Mail (via electronic filing)

_____ Hand-Delivery

To:

Michael E. Boyd/
Charles H. Nitsch
300 St. Peters Centre Blvd., Ste. 230
St. Peters, MO  63376
(636) 447-8500
Fax:  (636) 447-8505
mboyd@boydlawlc.com

_/s/ Elizabeth A. Marr_____
Elizabeth A. Marr
*Attorney for Plaintiffs*

16

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE, MISSOURI

| | | |
|---|---|---|
| BARRE HUNTER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1416-CV00681 |
| | ) | |
| ADVANCE MORTGAGE CORPORATION, et al. | ) | |
| | ) | |
| Defendants | ) | |

## MOTION FOR LEAVE TO FILE RESPONSE

COME NOW, Plaintiffs by and through the undersigned counsel move the Court for leave to file

Plaintiffs Response in Opposition with Suggestions to Defendants' Motion to Dismiss Plaintiffs'

Third Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted filed by

Defendants Ocwen Loan Servicing, LLC and Deutsche Bank National Trust Company, as

Trustee for American Home Mortgage Asset Trust 2007-3 ("Deutsche Bank")

Respectfully submitted,
Marr Law, LLC
/s/ Elizabeth A. Marr

Elizabeth A. Marr, MO Bar #30594
200 N.E. Missouri Road, #200
Lee's Summit, MO  64086
(816) 830-5427
1.866.281.5665 – fax
marrlawllc@gmail.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on this ___12___ day of December, 2014 to

counsel of record via:

__X___ U.S. Mail postage prepaid

_____ Fascimile

___x___ Electronic Mail (via electronic filing)

_____ Hand-Delivery

To:

Michael E. Boyd/
Charles H. Nitsch
300 St. Peters Centre Blvd., Ste. 230
St. Peters, MO  63376
(636) 447-8500
Fax:  (636) 447-8505
mboyd@boydlawlc.com

__/s/ Elizabeth A. Marr_____
Elizabeth A. Marr
*Attorney for Plaintiffs*

Electronically Filed - Jackson - Independence - December 12, 2014 - 05:32 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY
STATE OF MISSOURI**

| | |
|---|---|
| BARRE EUGENE HUNTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1416-CV00681 |
| | ) |
| ADVANCE MORTGAGE CORP., ET AL. | ) Div. 13 |
| | ) |
| Defendant. | ) |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED PETITION
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Asset Trust 2007-3 ("Deutsche Bank," collectively "Defendants") hereby moves this to Court dismiss the Third Amended Petition for failure to state a claim upon which relief can be granted pursuant to Missouri Rule of Civil Procedure 55.27(a). Deutsche Bank and Ocwen provide the following suggestions in support of its motion:

## BACKGROUND

Plaintiffs defaulted on their mortgage loan. In response to the foreclosure of the property at 3020 S. Fields Road, Oak Grove, Missouri, Plaintiffs bring this action in an attempt to prevent the foreclosure sale of the subject property and avoid their contractual obligations under the subject note and deed of trust altogether. Plaintiffs filed their original Petition on or about January 9, 2014. On or about February 11, 2014, Plaintiffs filed their First Amended Petition asserting claims of quiet title, violation of Missouri Statute 400.30, breach of fiduciary duty and violations of the Missouri Merchandising Practices Act. On or about May 15, 2014, Plaintiffs filed their Second Amended Petition again asserting claims of quite title, violation of Missouri Statute 400.30 and

1

violations of the Missouri Merchandising Practices Act. Plaintiffs have now filed their Third Amended Complaint asserting the same claims of quiet title, declaratory judgment and violations of the Missouri Merchandising Practices Act.

Plaintiffs attempt to unwind the foreclosure, avoid their obligations under the note and deed of trust and quiet title to the subject property in their name. Yet, Plaintiffs are not entitled to the relief they seek. Plaintiffs contend that the subject note and deed of trust were not properly transferred under the Pooling and Servicing Agreement and that the subject note and deed of trust were bifurcated thus voiding both documents to support their claims. However, Plaintiffs lack standing to challenge the transfer of the note and deed of trust or the failure to comply with the terms of a pooling and servicing agreement. Further, Missouri Courts have rejected the "split-the-note theory." Moreover, Plaintiffs fail to state any plausible factual allegations to support their individual claims against Deutsche Bank and Ocwen. Plaintiffs' Third Amended Petition fails as a matter of law and consists solely of unintelligible and unsupported claims. Thus, Plaintiffs' Third Amended Petition must be dismissed.

## ARGUMENTS AND AUTHORITIES

### I. Standard For Dismissal For Failure To State A Claim Upon Which Relief Can Be Granted.

"[A] trial court may dismiss a claim when a party fails to state a cause of action or fails to state facts entitling him to relief." *Capital Group, Inc. v. Collier*, 365 S.W.3d 644, 647–48 (Mo. Ct. App. 2012. To survive a motion to dismiss, a petition must invoke substantive principles of law entitling the plaintiff to relief. *Scheibel v. Hillis*, 531 S.W.2d 285, 290 (Mo. 1976). "Mere conclusions of the pleader not supported by factual allegations are disregarded in determining whether a petition states a claim on which relief can be granted." *Commercial Bank of St. Louis County v. James*, 658 S.W.2d 17, 22 (Mo. 1983). Rather, the Petition must "demonstrate a right of

2

recovery against the defendant which the law recognizes." *Deutsche v. Boatmen's Nat. Bank of St. Louis, N.A.*, 991 S.W.2d 206, 208 (Mo. Ct. App. 1999).

## II. Plaintiffs' Third Amended Petition Is A Form Pleading Presumably Obtained From The Internet And Bears No Relationship To Any Relevant Fact In This Case.

Plaintiffs' Third Amended Petition is a form pleading as petitions with verbatim language and claims have been filed by other borrowers and is thus frivolous and without merit. *See* 4:13-cv-01049-HFS, Doc. 13; 1416-CV24463, Petition for Quiet Title. Plaintiffs did at least change the names and alter it from referencing a past foreclosure to a future foreclosure, but otherwise copied the other pleading almost verbatim. Defendants respectfully suggest that causes of action are based more on the copy/paste features in a word processing program than on any relevant fact should be dismissed.

## III. Deutsche Bank Possesses the Note, Which Is Endorsed In Blank, And Is Thus Entitled To Enforce It.

Plaintiffs assert throughout their Third Amended Petition that the Defendants do not hold the original note, thus preventing them from enforcing said note and foreclosing on the subject property. But Deutsche Bank holds the original note, endorsed in blank, and is thus entitled to enforce it and foreclose on the property.[1] *See* Note, attached hereto as **Exhibit A**.[2] As such, Plaintiffs' claims, which rely on the conclusory (and false) assertion that Defendants fail to hold the note, clearly fail and must be dismissed.

---

[1] Counsel for Defendants is currently in possession of the note, and it could be produced upon demand with reasonable notice.

[2] As Plaintiffs' Amended Petition focuses on Defendants ability to enforce the subject note and whether an original copy exists, the subject note is "embraced by the complaint" and is not a matter outside of the pleadings. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Additionally, "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and central to plaintiff's claim." *Anheuser Busch, Inc., v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 4:11-CV-1220-JAR, 2001 WL 6716628, *2 (E.D. Mo. Dec. 21, 2011)(citing *Venture Assoc's Corp. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

3

**IV.** **Plaintiffs Lack Standing To Challenge The Pooling And Servicing Agreement As Plaintiffs Are Neither Parties Nor Third Party Beneficiaries Of Any Such Agreement.**

Plaintiffs assert that the subject Pooling and Servicing Agreement was not complied with, which invalidates the transfer of the subject note and assignment of the subject deed of trust thus prohibiting Deutsche Bank to collect under the subject note and deed of trust and eventually foreclose. Yet courts around the country have roundly and soundly rejected borrowers' attempts to evade their obligations by attacking contracts to which they were not a party, such as pooling and servicing agreements and related grants of authority. *In re Meis*, 10-13207, 2011 WL 6148654 at *4 (Bankr. D. Kan. Dec. 9, 2011) ("As Meis is not a party to the Pooling Agreement, he cannot rely on its having been breached as a defense to his own liability on the note itself."); *Abubo v. Bank of N. Y. Mellon*, CIV. 11-00312 JMS, 2011 WL 6011787 at *8-9 (D. Haw. Nov. 30, 2011) (same); *In re Smoak*, 09-30421, 2011 WL 4502596 at *5-6 (Bankr. S.D. Ohio Sept. 28, 2011) (holding that plaintiffs lack standing to challenge violations of the PSA and that any such violations are irrelevant to questions of standing to enforce the note); *Correia v. Deutsche Bank Nat'l Trust Co.*, 452 B.R. 319, 324 (Bankr. 1st Cir. 2011) (holding that debtors lack "standing to challenge the mortgage's chain of title under the PSA"). Plaintiffs may not rely on the conformance or lack thereof with the Pooling and Servicing Agreement in support if their claims. Therefore, Plaintiffs' claims that rely on this argument must fail and be dismissed.

**V.** **Plaintiffs' "Split-The-Note" Theory Has Been Rejected By Missouri Courts, And They Lack Standing To Assert Such A Theory.**

Plaintiffs wish to prevent enforcement of the note and deed of trust, and ultimately void the foreclosure judgment, by contending that they were split or bifurcated in such a way as to void both documents. Plaintiffs assert that because Mortgage Electronic Registration Systems, Inc. ("MERS") was named as nominee for Lender and Lender's successors and assigns in the subject deed of trust, but not the note, the documents were split at origination and are void. However,

4

Electronically Filed - Jackson - Independence - November 17, 2014 - 01:28 PM

courts have expressly rejected this theory: "MERS's role as beneficiary on the Deed of Trust did not invalidate the Deed of Trust by splitting the Note and Deed of Trust." *Caranchini v. Bank of America, N.A.*, Nos. 4:10-CV-00672-DGK, 4:11-CV-0464, 2013 WL 5407206, at *4 (W.D. Mo. Sept. 26, 2013). *See also Commonwealth v. Mortg. Elec. Regis. Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011) (upholding MERS's right to initiate foreclosure when it serves as beneficiary of a deed of trust, as nominee for the original lender and its successors and assigns, even when the promissory note has been securitized); *In re Tucker*, 441 B.R. 638, 645–46 (Bankr. W.D. Mo. 2010) ("Assuming that the note-holder is a member of MERS, thereby creating an agency relationship, the fact that MERS is identified as the beneficiary under a deed of trust for the benefit of the note-holder does not create a split between the note and deed of trust.").

Further, to the extent Plaintiffs suggest the subject note and deed of trust were split due to separate assignments, Plaintiffs lack standing to make such a bizarre and baseless claim. Courts have routinely held that debtors lack standing to question assignments or the agreements by which their mortgage loans were securitized. *See, e.g., Schwend v. U.S. Bank, N.A.*, No. 4:10CV1590 CDP, 2013 WL 686592 (E.D. Mo. Feb. 26, 2013) (stating there is judicial consensus that borrowers lack standing to challenge the validity of a mortgage securitization); *In re Washington*, 468 B.R. 846, 852–53 (Bankr. W.D. Mo. 2011) (stating that alleged violations of a pooling and servicing agreement were irrelevant to the holder's standing to enforce the note); *In re Smoak*, 461 B.R. 510, 518–21 (Bankr. S.D. Ohio 2011) (finding that debtors had no standing to question the transfers effected by a PSA or a mortgage assignment); *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009) (observing that debtors lacked standing to challenge the PSA because they were neither parties to nor third-party beneficiaries of that agreement). Additionally, under Missouri law, only parties to a contract and third-party beneficiaries have standing to enforce the agreement.

5

*Verni v. Cleveland Chiropractic College*, 212 S.W. 3d 150, 153 (Mo. 2007) (multiple citations omitted). Therefore, Plaintiffs' "split-the-note" theory, as well as the various challenges to the transfer of the subject note and assignment of the subject deed of trust, fails as a matter of law and Plaintiffs are not entitled to a judgment contrary to this well settled law.

Moreover, the subject note is a negotiable instrument transferred through endorsement and possession rather than a written, recorded assignment. MO. STAT. ANN. § 400.3-104; MO. STAT. ANN. § 400.3-204. *See also Willard v. Moies*, 30 Mo. 12 (1860) ("no written assignment was necessary in order to enable the holder of the promissory note to sue thereon.") The note is endorsed in blank and currently held by Deutsche Bank. Ex. A. As such, any alleged defect with the assignment of the deed of trust is irrelevant and does not affect the enforceability of the note. Missouri law is settled that "[w]hen the holder of the promissory note assigns or transfers the note, the deed of trust is also transferred." *Overton v. Wells Fargo Bank, N.A.*, 4:11CV1957 JAR, 2012 WL 2326117 (E.D. Mo. June 19, 2012) (citing *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, n.5 (Mo. Ct. App. 2009)). *See also See Federal Nat'l Mortg. Ass'n v. Conover*, Nos. WD76276, WD 76347, 2014 WL 113555, at *5 (Mo. Ct. App. Jan. 14, 2014) (stating that when the holder of a note transfers said note, the deed of trust is also transferred). As such, the execution or recording of an assignment of deed of trust is not the action that serves to transfer ownership of the note. Rather, the recording of an assignment of deed of trust is notice to the world that the entity who holds the note is the owner of the deed of trust and the only party to enforce the note and foreclose on the deed of trust.

Therefore, Plaintiffs assertions regarding the defects with the assignment of the deed of trust are irrelevant as the deed of trust transferred as soon as Deutsche Bank took possession of the subject note. Plaintiffs' claims otherwise are clearly nonsensical and fail as a matter of law.

6

**VI.   Each Individual Claim Fails To State A Plausible Claim For Relief And Should Be Dismissed As A Matter of Law.**

Plaintiffs' fail to state—even in a conclusory manner or by formulaic recitations of the elements—a claim upon which relief can be granted. As such, Plaintiffs claims are deficiently plead or fail as a matter of law and must be dismissed.

**A.   Plaintiff's Quiet Title Claim Fails as a Matter of Law and Should be Dismissed.**

Plaintiffs' claim for quiet title simply fails. To succeed on a claim for quiet title a plaintiff must allege: While not a model of clarity, Plaintiffs appear to base their claim on a defect with the assignment of deed of trust and Deutsche Bank's ability to enforce the note. However, Deutsche Bank is unequivocally entitled to enforce the note. Deutsche Bank holds the note, endorsed in blank, and is assignee of the accompanying deed of trust. Plaintiffs lack standing to challenge the assignment of deed of trust, regardless of their claims otherwise, as they were neither a party nor third party beneficiary to the assignment. Deutsche Bank has a valid first lien on the subject property. As such, Plaintiffs cannot establish that Deutsche Bank is unable to enforce the note and deed of trust, so Plaintiffs' claim fails as a matter of law and must be dismissed.

**B. Plaintiffs Are Not Entitled To The Declaratory Relief They Seek.**

Plaintiffs request this Court to declare that Defendants are not entitled to enforce the subject note or declare default under the subject deed of trust. Plaintiffs further request this Court declare the note and deed of trust bifurcated and thus void. However, Plaintiffs are not entitled to the relief they seek. To prevail in an action for declaratory judgment, the plaintiff must establish: (1) "a justiciable controversy that presents a real, substantial, presently existing controversy as to which specific relief is sought; (2) a legally protected interest directly at issue and subject to immediate or prospective relief; (3) the question is ripe for judicial determination; and (4) the claimant does

7

not have an adequate remedy at law." *Lyman v. Missouri Employers Mut. Ins. Co.*, 407 S.W.3d 130, 132 (Mo. Ct. App. 2013) (citation and internal quotations omitted); *see also Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. 2003) (same); *Grewell v. State Farm Mut. Auto. Ins. Co.*, 102 S.W.3d 33, 36 (Mo. banc 2003) (same). "A declaratory judgment must declare a fixed right and accomplish a useful purpose." *Mo. Soybean*, 102 S.W.3d at 25. Plaintiffs fail to allege any facts that suggest they are entitled to declaratory judgment. As established above, Deutsche Bank holds the note endorsed in blank and therefore, in accordance with Missouri law, is the assignee of the deed of trust—regardless of any alleged defects with the assignment of the deed of trust. Additionally, as established above, the note and deed of trust were not bifurcated as such theories have roundly and soundly been rejected by Missouri courts and the note automatically transfers with the note. As such, Plaintiffs are not entitled to the declaratory judgment they seek and such claims must be dismissed.

### C. Plaintiffs Fail To Allege Any Factual Basis For Their Claim For Violations Of Missouri Merchandising Practices Act.

To state a claim under the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. §§ 407.010 *et seq.*, the purported violation must have occurred "in connection with" the sale or advertisement of merchandise. Here, Plaintiffs fail to assert any factual allegations—beyond mere conclusory statements—what the alleged violations were yet alone that those alleged violations were in connection with the sale of the loan. Plaintiffs litter their Third Amended Petition with incoherent facts unsupported by law regarding the assignment of deed of trust and negotiation of the note, but fail to allege how these actions result in a violation of the MMPA. In Plaintiffs make no allegations as to how Defendants' alleged actions constitute a violation of the MMPA. Nor do Plaintiffs point to any section of the MMPA actually violated. To the extent Plaintiffs could ever support their claim with the contention that Deutsche Bank never held the

8

original note, Plaintiffs' claim must fail as Deutsche Bank possesses the original endorsed note and therefore became assignee of the deed of trust pursuant to long standing Missouri law.

### D. Plaintiffs Are Not Entitled To Any Punitive Damages.

Plaintiffs appear to make a claim for punitive damages; however, Plaintiffs are not entitled to such relief. Typically "punitive damages require clear and convincing proof that the defendant intentionally acted either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)." *Smith v. Brown & Williamson Tobacco Corp.,* 410 S.W.3d 623, 630 (Mo. 2013), *reh'g denied* (Oct. 29, 2013). Plaintiffs fail to allege, beyond mere conjecture and conclusory assertions, any intentional or willful acts on the part of Deutsche Bank or Ocwen. Further, Plaintiffs fail to address what statutory provisions provide such relief. As such, claims for punitive damages fail and should be stricken.

### CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted. Defendants Deutsche Bank and Ocwen respectfully request that this Court dismiss Plaintiffs' Third Amended Petition with prejudice and for any further relief this Court deems just and equitable.

THE BOYD LAW GROUP, L.C.

Michael E. Boyd, #53870
Charles H. Nitsch, #50971
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376
Telephone: (636) 447-8500
Fax: (636) 447-8505
mboyd@boydlawlc.com
ATTORNEY FOR DEFENDANTS
OCWEN LOAN SERVICING, LLC
And DEUTSCHE BANK
NATIONAL TRUST COMPANY

9

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the above and foregoing was served on this ___17th___ day of ___November___, 2014, by first-class mail, postage prepaid, addressed to:

Elizabeth Marr
MARR LAW LLC
200 NE MISSOURI RD, #200
LEES SUMMIT, MO 64086
Attorney for Plaintiff

10

9705122

97-◼ I 34124
APPROVED BY LEGAL COUNSEL

13015P 306
DEMAREE INC., Kansas City, Mo.
J-127066

FORM NO. R-2 CLASS E © 1991

**Reserved for Recorder of Deeds**
STATE OF MISSOURI } SS
COUNTY OF JACKSON
I CERTIFY INSTRUMENT RECEIVED

1997 JUN -5 P 3: 17.5
13015P 306
RECORDED BOOK____PAGE____

DIRECTOR OF RECORDS

500
300
400
500

1500

# Missouri Warranty Deed

**This Indenture,** Made on the 2nd **day of**
June **A. D., One Thousand Nine Hundred and**
ninety-seven **by and between**
Ronald C. Smith and Judith A. Smith, husband
and wife

**of the County of** Jackson **, State of**
Missouri **part** ies **of the first part, and**
Barre Eugene Hunter and Venda Marie Hunter, husband
and wife

**of the County of** Jackson **, State of**
Missouri **part** ies **of the second part,**

(*Mailing address of said first named grantee is* 3020 S. Fields Road Oak Grove, MO 64075 ).

**WITNESSETH: THAT THE SAID PART** IES **OF THE FIRST PART, in consideration of the**

*sum of* Ten Dollars and Other Valuable Considerations----------------------XXDOLLARS,

*to* them *paid by said part* ies *of the second part (receipt of which is hereby acknowledged), do*

*by these presents, Grant, Bargain and Sell, Convey and Confirm unto the said part* ies *of the second*

*part* their *heirs and assigns, the following described lots, tracts and parcels of land*

*lying, being and situate in the County of* Jackson *and State of Missouri, to wit:*
Lot 1, SMITH'S LAKE VIEW, a subdivision of land in Jackson County, Missouri, according
to the recorded plat thereof.

Subject to easements and restrictions of record, if any.

*TO HAVE AND TO HOLD The premises aforesaid with all and singular, the rights, privileges, appur-*
*tenances and immunities thereto belonging or in any wise appertaining unto the said part* ies *of the*
*second part and unto* their *heirs and assigns forever; the said* Ronald C. Smith and
Judith A. Smith
*hereby covenanting that* they *are*
*lawfully seized of an indefeasible estate in fee of the premises herein conveyed; that* they *ha* ve
*good right to convey the same; that the said premises are free and clear from any incumbrance done or suffered*
*by* them *or those under whom* they *claim , and that* they *will*
*warrant and defend the title to the said premises unto the said part* ies *of the second part and unto*
their *heirs and assigns forever, against the lawful claims and demands of all persons*
*whomsoever*

*IN WITNESS WHEREOF, The said part* ies *of the first part ha* ve *hereunto set* their
*hand* s *and seal* s *the day and year above written.*

Ronald C. Smith _____ (SEAL)

Judith A. Smith _____ (SEAL)

(SEAL)

(SEAL)

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/04/15   Page 62 of 491

DIRECTOR OF RECORDS

of the County of     Jackson     , State of
    Missouri     part ies of the first part, and
Barre Eugene Hunter and Venda Marie Hunter, husband
and wife

of the County of     Jackson     , State of
    Missouri     part ies of the second part,

*(Mailing address of said first named grantee is*     3020 S. Fields Road Oak Grove, MO   64075     ).

*WITNESSETH: THAT THE SAID PART* IES     *OF THE FIRST PART, in consideration of the*

*sum of*    Ten Dollars and Other Valuable Considerations---------------------XXDOLLARS,

*to*    them    *paid by said part* ies*of the second part (receipt of which is hereby acknowledge), do*

*by these presents, Grant, Bargain and Sell, Convey and Confirm unto the said part* ies     *of the second*

*part*    their    *heirs and assigns, the following described lots, tracts and parcels of land*

*lying, being and situate in the County of*     Jackson     *and State of Missouri, to wit:*
Lot 1, SMITH'S LAKE VIEW, a subdivision of land in Jackson County, Missouri, according
to the recorded plat thereof.

Subject to easements and restrictions of record, if any.

*TO HAVE AND TO HOLD The premises aforesaid with all and singular, the rights, privileges, appur-*
*tenances and immunities thereto belonging or in any wise appertaining unto the said part*   ies    *of the*
*second part and unto*    their    *heirs and assigns forever; the said*   Ronald C. Smith and
Judith A. Smith                *hereby covenanting that*    they   *are*
*lawfully seized of an indefeasible estate in fee of the premises herein conveyed; that*    they    *ha* ve
*good right to convey the same; that the said premises are free and clear from any incumbrance done or suffered*
*by* them    *or those under whom*    they    *claim* , *and that*    they *will*
*warrant and defend the title to the said premises unto the said part*   ies    *of the second part and unto*
   their    *heirs and assigns forever, against the lawful claims and demands of all persons*
*whomsoever*

*IN WITNESS WHEREOF, The said part* ies   *of the first part ha* ve *hereunto set*    their
*hand* s *and seal* s *the day and year above written.*

Ronald C. Smith    *(SEAL)*          Judith A. Smith    *(SEAL)*

_____ *(SEAL)*          _____ *(SEAL)*

*In the State of*    Missouri    , *County of*    Lafayette    , *on this*    2nd   *day*
*of*    June    , 19   97 , *before me, the undersigned, a Notary Public in and for said County and State,*
*personally appeared*    Ronald C. Smith   and   Judith A. Smith, husband and wife

*to me known to be the person* s *described in and who executed the foregoing instrument, and acknowledged that*   they
*executed the same as*    their    *free act and deed,* XXXXXXXXXXXXXX

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

*Witness my hand and Notarial Seal, subscribed and affixed in said County and State, the day and year in this certificate above*
*written.*

SARAH JANE LINVILLE
Notary Public - Notary Seal
STATE OF MISSOURI

Case 4:14-cv-00424-DW   Document 1-1   Filed 02/21/15   Page 63 of 491

Mid-West

REALTY TITLE COMPANY
110 N. LIBERTY
INDEPENDENCE MO 64050

STATE OF ............
COUNTY OF ............ } ss.

IN THE RECORDER'S OFFICE

I, ............, Recorder of said County, do hereby certify that the within instrument of writing was, at ........o'clock and ........minutes ........M., on the........day of ............ A.D., 19......, duly filed for record in my office, and is recorded in the records of this office, in book ........, at page........

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at........ this........day of........A.D., 19........

........Recorder.

97 - I 34124

# Warranty Deed

FROM

TO

Filed for record this______day of______, A. D., 19____ at______o'clock______minutes______M.

Recorded in Book______at Page______

______Recorder.

By______ Deputy.

Recorder's Fee, $______

~~MID-WEST TITLE COMPANY
204 S. 1st STREET
P.O. BOX 141
ODESSA, MO 64076~~

Electronically Filed - Jackson - Independence - October 15, 2014 - 12:00 AM

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

INDEPENDENCE, MISSOURI

| | | |
|---|---|---|
| BARRE EUGENE HUNTER, AND<br>VENDA MARIE HUNTER<br>Plaintiffs, | )<br>)<br>)<br>) | |
| v. | )<br>) | Case No. 1416-CV00681 |
| Deutsche Bank National Trust Company | )<br>) | Division 13 |
| American Home Mortgage Assets Trust<br>2007-3, Mortgage-Backed Pass-Through<br>Certificates, Series 2007-3 | )<br>)<br>)<br>) | |
| Ocwen Loan Servicing, LLC fka<br>Homeward Residential, Inc., fka<br>American Home Mortgage Servicing | )<br>)<br>)<br>) | |
| The Residence At:  3020 S Fields Road<br>Oak Grove, MO 64075 | )<br>)<br>)<br>) | |
| Defendants. | | |

## THIRD AMENDED PETITION

### QUIET TITLE

### DECLARATORY JUDGMENT – NO STANDING AS PERSON ENTITLED TO ENFORCE

### PROMISSORY NOTE OR FORECLOSE

### VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT

### FRAUDULENT MISREPRESENTATION

COME NOW Plaintiffs, Barre Hunter and Venda Hunter, and for their causes of action against Defendants herein, state as follows:

## JURISDICTIONAL STATEMENT

Proper jurisdiction and venue lie in the courts of Jackson County, Missouri.

## ALLEGATIONS COMMON TO ALL COUNTS

That at all times material hereto, the following have been, and continue to be, true:

1. Plaintiffs, Barre Eugene Hunter and Venda Marie Hunter, are husband and wife, married on 7/21/1977.

2. The residence of each of the Plaintiffs is 3020 S. Fields Road, Oak Grove, Jackson County, MO 64075.

3. The Plaintiffs own the residential real property at 3020 S. Fields Road, Oak Grove, Missouri as husband and wife, as shown in a warranty deed delivered and thereafter recorded on 6/5/1997 in Jackson County, Missouri as Instrument 3199710034124 (hereafter the "property," "residential real property," or the "home." ) Attached is a copy of the Warranty Deed which is incorporated herein by reference as Exhibit 1.

4. The legal description of the Residential Real Property is as shown in Exhibit 1, is Lot 1, SMITH'S LAKE VIEW, a subdivision of land in Jackson County, Missouri, according to the recorded plat thereof, and as otherwise may be noted in the electronic records of the Recorder of Deeds as UNINCORPORATED SMITH LAKE GV 08-0510 GV Lots 1-1.

5. In 1997, at the time of the purchase of the Property Plaintiffs purchased the Property to use as their residence and continuously thereafter have lived in the home.

6. The residential real property is the only real property involved in this action.

7.  In March of 2007, Plaintiffs signed a Deed of Trust which was recorded on 3/22/2007 in Jackson County, Missouri as #2007E0038241.  On page 2 the document identified the Lender as, Advance Mortgage Corporation and the Trustee as J. Roger Irvin.  (See Exhibit 2).

8.  Defendant Deutsche Bank National Trust Company (hereinafter "Deutsche") is a Real Estate Mortgage Investment Trust (REMIC)  with addresses at 6501 Irvine Center Dr., Irvine, CA and at 1761 East St. Andrew Place, Santa Ana, CA  92705.

9.  Defendant American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 (hereinafter "American Home Trust" or "Trust") is a REMIC trust, established  pursuant to the laws of the State of New York, with an address of 1761 East St. Andrew Place, Santa Ana, CA  92705, which is registered with the United States Security and Exchange Commission.

10. Defendant Ocwen  Loan Servicing, LLC (hereinafter "Ocwen")  is a Delaware foreign  limited liability company,  registered with a Missouri Secretary of State as Charter #FL0065258 and registered office at 221 Bolivar Street, Jefferson City, MO  65101.

11. That Defendant(s) have each expressed an intent to enforce collection of a debt or promissory note against Plaintiffs.

12. On or about 1/11/2013 that one or all of the Defendants  wrongfully and fraudulently caused and thereafter failed to withdraw or retract the recording with the Jackson County Recorder of Deeds a document entitled, Assignment of Deed of Trust, which on its face shows the Grantor as "Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns" and Grantee as "Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3." (Exhibit 3).

13. The Trust could not have purchased or received the Assignment or Deed of Trust or any related loan documents or debt as reflected in Exhibit 3 on the dates 10/1/12 or on 1/11/2013 as shown in Exhibit 3, because the Trust lacked authority and ability to do so.

14. The legal ability and authority of the Trust to receive, possess, act upon, or give directions regarding a loan of the Plaintiffs is strictly governed by its own governing documents, including, but not limited to its Pooling and Servicing Agreement (PSA), State of New York Trust Laws, and laws and regulations of the SEC and IRS.

15. The terms of the PSA specifically identify June 5, 2007 as the closing date for the Trust's ability to purchase and deposit loans into the pool. According to the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the Closing Date of 6/7/2007, with a window of 90 days thereafter for completion of documents and no new loans could be added later. There was not a promissory note of Plaintiffs or other loan documents of Plaintiffs' loan transferred to Deutsche or Trust before the Closing Date or within 90 days thereafter.

16. The Mortgage Loan Purchase Agreement (MLPA) an attachment to and incorporated as part of the PSA in Section 2.01, states:

"With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser or its designee, and which shall be delivered to the Purchaser or its designee pursuant to the terms of this Agreement. (a) The Original Mortgage Note, including any riders thereto, endorsed without recourse to the order of Advance Mortgage Corporation, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, and showing to the extent available to the related Mortgage Loan Seller an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee;"

17. The MLPA required endorsements to be:

(A) In blank or to the order of Deutsche, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, or
(B) In the case of a loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee.

18. Exhibit 3 recorded by Defendants purports to represent and claim an assignment to Trust of the ownership of a deed of trust with debt related to Plaintiffs Home on October 10, 2012 or January 11, 2013, which more than five years after the closing date of the Trust.

19. The loan of Plaintiffs was not owned by, and was not made a part of, the Trust pursuant to records of the Trust, the Trust's lists of loans, or representations to the SEC or others regarding the legitimate assets of the Trust. Such documents are not readily available to the Plaintiffs for this filing, but are under the control of Defendants or third parties and will be sought in discovery. The Trust lacked the requisite legal ability and authority to have purchased the loan of the Plaintiffs and have it and its documents as assets by its own terms and the laws governing the Trust.

20. The alleged assignment of the deed of trust of Exhibit 3 is void and otherwise a nullity.

21. The purported conveyance of a loan with assignment of deed of trust to Trust did not in fact legally occur, and Defendants claim and representation that it did is intentionally false and each of the Defendants knew or should have known it was false.

22. Deustche, the Trust and Ocwen each lack the requisite legal ability and authority to collect a debt against Plaintiffs or to direct another to do so.

23. Plaintiffs have made a clear challenge to Defendants as to the validity of the claims of Defendants in Exhibit 3 and otherwise regarding a debt owed to any of them and regarding any promissory note, deed of trust and the validity of assignments or conveyances of same and have requested that the original promissory note with valid endorsements be exhibited to them as required by the UCC, R.S.Mo. 400.3.501 and otherwise required by law.

24. None of the Defendants are a lender, the holder in due course of a promissory note of Plaintiffs, and none have a contractual relationship with either Plaintiff, nor are any one of the Defendants otherwise a person entitled to enforce an instrument against Plaintiffs. (UCC, R.S.Mo. 400-003.302, **Holder in Due Course.**)

25. Advance Mortgage Corporation did not provide funds or consideration to Plaintiffs, and any promissory note to Advance Mortgage Corporation was an offer by Plaintiffs to pay back money if it was loaned to them, such offer was not accepted by Advance Mortgage Corporation by funding the loan and the promissory note fails and is unenforceable for lack of consideration.

26. Similarly, no consideration was paid from the funds of Advance Mortgage Corporation, or of MERS, or of any other Defendant named herein, or by any party identified in Exhibit 3 filed with the Jackson County Recorder of Deeds and claims of entitlement to should fail for lack of consideration and because transfers of the original note only carry the rights of the transferor.

27. Documents to prove the foregoing are not readily available to the Plaintiffs, but are under the control of Defendants or third parties and will be sought in discovery.

28. That Plaintiffs were never in default with Defendants Ocwen, Deutsche, or the Trust because none held the right to enforce the alleged Promissory Note because none paid for, or were assigned a promissory note and any purported transfer not supported by consideration paid.

29. Plaintiff Barre Hunter and Venda Hunter did not consent to the negotiation, sale or transfer of a promissory note or deed of trust or other loan documents using replicas of their signatures, loan instruments, as originals as required in the Uniform Electronics Transactions Act (UETA) and Defendants transfers or attempts to transfer are a violation of UETA and are therefore should be declared void and a nullity.

**(RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act" UETA).**
*Transferable records. (432.275. 1) As used in this section, transferable record'means an electronic record that:*

*(1) Would be a note under sections 400.3-101 to 400.3-605 or a document under sections 400.7-101 to 400.7-604 if the electronic record were in writing; and*

*(2) The issuer of the electronic record expressly has agreed is a transferable record.*

30. The American Home Trust cannot claim to be the Holder in Due Course because the American Home Trust has never held the right to enforce the alleged Promissory Note because American Home Trust never paid for, or was assigned the Promissory Note. Without the rights of Holder in Due Course, the American Home Trust 2007-3 the American Home Trust had no right to collect against an alleged Note that they did not have. With no right to collect, it follows that there is no

right declare default. Plaintiffs have never been in default with any Defendant herein for the same reasons.

31. That the promissory note and deed of trust, whether valid or not, have, at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., MERS was named as an agent with special powers of sales and assignments in the terms of the alleged Deed of Trust, but MERS was never given these powers or even mentioned in the terms of a Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Therefore the Assignment of the Deed of Trust should be declared a nullity.

32. None of the Defendants have a right to declare default under the assignment of deed of trust as no such right can exist without the right to collect upon the promissory note.

33. That the Promissory Note belongs to the obligor or issuer of the Note. Plaintiffs' Note was to be held by the actual lender which "funded" Plaintiff's loan. The issuer here, the Plaintiffs, are entitled to know who is holding their Note at any time. Defendants have claimed in writing that the whereabouts of Plaintiffs' Note is "proprietary information."

34. If the Promissory Note is a negotiable instrument, it must be presented to its maker for exhibit (examination) for collection. There can be no secrets concerning the Plaintiffs as makers of the alleged note. It is not proprietary information.

35. That any promissory note related to the property or title in question which Defendant(s) claim to possess has been altered and is not original and/or authentic and/or has been transferred by an individual or entity not authorized to do so or electronically in manner which violates UETA and cannot be enforced. **RSMo 400-303.404, Imposters—fictitious payees; RSMo 400-003.407,**

Alteration) (RSMo 400-303.306 Claims to an Instrument) ( RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)

36. The Plaintiffs have made written demand and requested Defendants to provide valid proof of ownership and/or possession of a promissory note, a debt and/or a deed of trust or other evidence of its right to collect and or foreclose as claimed, previously and by its previous filings in this lawsuit, but Defendants have not exhibited the original promissory note to Plaintiffs.

37. That Plaintiffs do not have control of, or are they in possession of, all documents needed to prove these allegations as most are in the control of Defendants or third parties and will be sought in discovery.

38. The Plaintiffs are contracting parties and third party beneficiaries with an interest in transfers of the promissory note and deed of trust which are claimed to have been signed by them, and therefore have rights with regard to challenging the validity and legality of such transactions.

39. Plaintiffs have been and continue to be damaged by the Defendants actions.

40. The acts of Defendants have been intentional and with reckless disregard and punitive damages should be awarded.

41. Plaintiffs have incurred costs and attorney's fees in this action.

42. That the wrongful creation and recording of the Assignment of Deed of Trust has created a cloud upon the title and Plaintiffs have suffered damages thereby.

43. The claim of Defendants of legal ownership of a debt and entitlement to collect upon a debt or promissory by Defendants to Plaintiffs is a misrepresentation of fact.

44. The documents recorded (Exhibit 3) have clouded the title by recording an intentional fraudulent assignment from MERS as sole nominee for Advance Mortgage, the originator.

45. Deutsche as Trustee for the Trust does not have the power or the right under the PSA to enforce the promissory note or to declare default of debt related to the deed of trust.

Electronically Filed - Jackson - Independence - October 15, 2014 - 12:00 AM

46. That no Defendant herein has, now or at any time, claimed a loss of its money on the alleged subject loan or from actions of Plaintiffs. No Defendant has claimed injury due to Plaintiffs' actions or Plaintiffs' loan documents.

47. That Defendants working in concert created the illusion that an alleged loan contract which named Advance Mortgage Corporation as lender, had actually been funded by Advance Mortgage Corporation when it had not.

## COUNT I – QUIET TITLE

COME NOW Plaintiffs, pursuant to Chapter 527 of the R.S.Mo. and for their petition for an order and judgment of this Court quieting title to the subject property and confirming (*granting*) title in fee simple to Plaintiffs, and otherwise removing the cloud upon the title to the Property comprised of invalid liens, claims and assertions by Defendants, state to the Court as follows:

48. Plaintiffs incorporate the allegations of each of the Paragraphs above as though fully set forth herein.

49. Plaintiffs have incurred damages, costs and attorneys fees as a result of the cloud on the title of the property caused by the actions of each of the Defendants, and otherwise.

50. The 2013 Assignment of Deed of Trust should be declared a nullity and void.

51. The 2007 Deed of Trust should be declared a nullity and void.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that the recorded 2013 Assignment of Deed of Trust is a nullity, voided, unenforceable and otherwise of no effect, setting aside such document and directing that the records of the Recorder of Deeds be caused to reflect same; and

WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that the ownership of the 2007 promissory note and the 2007 deed of trust were bifurcated, and that the 2007 deed of trust is therefore a nullity, voided, unenforceable and otherwise of no effect, setting aside such document and directing that the records of the Recorder of Deeds be caused to reflect same; and

WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that Plaintiffs to be seized of an interest and estate in the said land, according to the allegations and prayer of the Plaintiffs and directing that the records of the Recorder of Deeds be caused to reflect same; and

WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants for a monetary award of damages, punitive damages, costs and attorneys fees and for such other award to Plaintiffs as the Court deems just in the circumstances.

## COUNT II – DECLARATORY JUDGMENT

52. Plaintiffs hereby incorporate the allegations contained in each of the Paragraphs above, as though fully set out herein.

53. None of the Defendants are the person entitled to enforce the promissory note or to declare default under a deed of trust, and the Court should declare same.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that neither Deutsche Bank National Trust Company nor American Home Mortgage Assets Trust 2007-3, Mortgage-Backed-Pass-Through Certificates, Series 2007-3 are the holder in due course of a promissory note or debt instrument signed or issued by Plaintiffs under the UCC.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that Plaintiffs do not owe a debt to either Defendant Deutsche Bank National Trust Company or to Defendant American Home Mortgage Assets Trust 2007-3, Mortgage-Backed-Pass-Through Certificates, Series 2007-3 nor any of their assignees, predecessors, successors, representatives or agents as such Defendants have claimed.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that neither Deutsche Bank National Trust Company nor  American Home Mortgage Assets Trust 2007-3, Mortgage-Backed-Pass-Through Certificates, Series 2007-3 nor any of their assignees, predecessors, successors, representatives or agents are the person entitled to enforce a debt or promissory note against Plaintiffs,  or to declare a default of Plaintiffs under a deed of trust, and

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants and declare that the ownership and/or possession of the 2007 promissory note and the 2007

deed of trust were bifurcated, and that the 2007 deed of trust is a nullity, voided and otherwise unenforceable, and of no effect, and that any debt related to the 2007 promissory note is unsecured. WHEREFORE, Plaintiffs further pray the Court enter its order and judgment for Plaintiffs and against Defendants for a monetary award of damages, costs and attorneys fees and for such other award to Plaintiffs as the Court deems just in the circumstances.

## COUNT IV – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

54. That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to All Counts as though fully set forth herein.

55. Plaintiffs have incurred damages, costs and attorneys fees as a result of the wrongful actions of each of the Defendants, and otherwise.

56. That the transactions of Plaintiffs were not for commercial purposes, but were for personal, residential and household purposes.

57. The acts of Defendants have been intentional and with reckless disregard and punitive damages should be awarded.

WHEREFORE, Plaintiffs pray the Court enter its order and judgment for Plaintiffs and against Defendants finding Defendants, or any one or combination of them, to have violated the Missouri Merchandising Practices Act, and to award to Plaintiff and against Defendants damages, punitive damages, costs and attorneys fees.

Electronically Filed - Jackson - Independence - October 15, 2014 - 12:00 AM

Respectfully submitted,

/s/
_____
Elizabeth A. Marr, MO Bar #30594
200 N.E. Missouri Road, #200
Lee's Summit, MO  64086
(816) 830-5427
1.866.281.5665 – fax
marrlawllc@gmail.com
*Attorney for Plaintiffs*

## Certificate of Service

I hereby certify that on this 14th day of October, 2014 a copy of the foregoing will be submitted to, and service to counsel of record will occur through,  the Court's efiling system.

/s/Elizabeth A. Marr

Respectfully submitted,

/s/

_____
Barre E. Hunter - Plaintiff
3020 S. Fields Road
Oak Grove, MO  64075

_/s/_____
Venda M. Hunter - Plaintiff
3020 S. Fields Road
Oak Grove, MO  64075

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

BARRE E HUNTER,                              )
                Plaintiff,          )      **Case No. 1416-CV00681**
                                )
v.                                           )      **Division  13**
                                )
**ADVANCE MORTGAGE**                          )
**CORPORATION,**                              )
                Defendants.        )

## ORDER

NOW, on this 26th day of September, 2014, the Court takes up for consideration and rules upon the following:

1. Defendant Millsap & Singer, LLC's Motion to Dismiss Plaintiff's Amended Petition, filed with the Court on April 7, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as moot.**

2. Motion of Advance Mortgage Corporation to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, filed with the Court on April 15, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as moot.**

3. Plaintiff's Motion for Clarification of Defendant Ocwen Loan Service's Answer to Plaintiff's Petition in the Above Styled Case and a More Clear and Definite Statement from Defendant as to its List of Affirmative Defenses, filed with the Court on April 16, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as moot.**

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 79 of 491

4. Plaintiff's Motion to Voluntarily Dismiss Advance Mortgage Corporation Without Prejudice, filed with the Court on May 15, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **SUSTAINED.** Advance Mortgage Corporation is hereby dismissed from the case without prejudice.

5. Defendant Millsap & Singer, LLC's Motion to Strike Plaintiff's Second Amended Petition by Defendant Millsap & Singer, LLC, filed with the Court on May 15, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's Motion should be, and is hereby, **DENIED as moot.**

6. Plaintiff's Motion for Judgment on the Pleadings as to Count II Specific Performance of this Petition Including Allegations Common to All Counts, filed with the Court on May 29, 2014. At a hearing of the Court on September 26, 2014, Plaintiff's Motion was withdrawn on the record. Defendant agreed that no prejudice will be incurred so long as any subsequent motion for judgment on the pleadings is filed by Plaintiff on or before October 21, 2014. Therefore, any subsequent filing of a motion for judgment on the pleadings by Plaintiff shall be filed on or before October 21, 2014. Because Plaintiff's Motion has been withdrawn, the Court determines that Defendant's motion should be, and is hereby, **DENIED as moot.**

7. Plaintiff's Motion to Voluntarily Dismiss Millsap and Singer, LLC Without Prejudice, filed with the Court on June 6, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as moot.**

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 80 of 491

8. Plaintiff's Corrected Motion to Voluntarily Dismiss Millsap and Singer, LLC Without Prejudice, filed with the Court on June 9, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **DENIED as moot.**

9. Plaintiff's Motion to Voluntarily Dismiss Millsap and Singer, LLC Without Prejudice, filed with the Court on July 21, 2014. After full consideration of the matter, and being duly advised of the same, the Court determines that Defendant's motion should be, and is hereby, **SUSTAINED.**

10. The Court determines that Plaintiff's Second Amended Petition was filed without leave of Court. As such, it is not considered by the Court as being before the Court. The Plaintiff is granted leave to File a Third Amended Petition on or before October 14, 2014.

11. The Court will hold a Case Management Conference or hear oral arguments on pending Motions on December 12, 2014 at 8:00 AM.

**IT IS SO ORDERED.**

**CHARLES H MCKENZIE**, Judge

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 81 of 491

**Certificate of Service**

This is to certify that a copy of the foregoing was hand
delivered/faxed/emailed/mailed and/or sent through
the eFiling system to the following on 9/26/2014.

MICHAEL ERNEST BOYD, Attorney for Defendant, THE BOYD LAW GROUP, L.C., 300
ST. PETERS CENTRE BLVD., STE. 230, SAINT PETERS, MO 63376
(636) 447-8505, mboyd@boydlawlc.com
THOMAS M FRANKLIN, Attorney for Defendant, 9140 WARD PARKWAY, SUITE 200,
KANSAS CITY, MO 64114
(816) 822-8222, tom.franklin@tmflaw.com
MICHAEL J WAMBOLT, Attorney for Defendant, 11460 TOMAHAWK CREEK PKWY,
SUITE 300, LEAWOOD, KS 66211
(913) 339-9045, mwambolt@msfirm.com
ELIZABETH A MARR, Attorney for Plaintiff, 206 S GARR STREET, P.O. BOX 257, LONE
JACK, MO 64070
(866) 281-5665,

Adam Mehl, Law Clerk Division 13

IN THE 16ᵗʰ JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE, MISSOURI

BARRE HUNTER, et al.                      )
                                          )
Plaintiffs,                               )
                                          )
v.                                        )        Case No. 1416-CV00681
                                          )
ADVANCE MORTGAGE CORPORATION, et al.      )
                                          )
Defendants                                )

MOTION FOR EXTENSION OF TIME AND/OR LEAVE TO FILE SUPPLEMENTAL RESPONSE
TO DEFENDANTS MOTION TO STRIKE PLAINTIFFS SECOND AMENDED PETITION AND
DISMISS THE FIRST AMENDED PETITION OR IN THE ALTERNATIVE TO DISMISS
PLAINTIFFS' SECOND AMENDED PETITION FOR FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED

COME NOW, Plaintiffs by and through the undersigned counsel and move the Court for an extension of

time and leave to file Plaintiffs Supplemental Response to Defendants' Motion to Strike Plaintiffs'

Second Amended Petition and Dismiss the First Amended Petition or in the Alternative To Dismiss

Plaintiffs' Second Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted

filed by Defendants Ocwen Loan Servicing, LLC and Deutsche Bank National Trust Company, as Trustee

for American Home Mortgage Asset Trust 2007-3 ("Deutsche Bank").

1. Plaintiffs were pro se until counsel's Entry of Appearance on August 22, 2014.

2. A pro se motion for leave to file response which contained response was filed by

   Plaintiffs on August 6, 2014.

3. More time is needed by Plaintiffs' counsel to prepare a supplemental response to the

   Defendants Motion.

4.  Plaintiffs request an extension of time and leave to file a supplemental response by October 21, 2014.

5.  Plaintiffs further request an opportunity for hearing on the Defendants' June 26, 2014 Motion to Strike/Motion for Dismissal prior to a court ruling adverse to Plaintiffs.

Respectfully submitted,

Designated Attorney of Record for Plaintiffs
Marr Law, LLC

/s/
_____
Elizabeth A. Marr, MO Bar #30594
200 N.E. Missouri Road, #200
Lee's Summit, MO 64086
(816) 830-5427
1.866.281.5665 – fax
marrlawllc@gmail.com

## Certificate of Service

I hereby certify that on this 26th day of September, 2014 this Designation of Lead Attorney of Record will be submitted to, and service to counsel of record will occur through, the Court's efiling system.

/s/ Elizabeth A. Marr

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE, MISSOURI

BARRE HUNTER, et al.                    )
                                         )
Plaintiffs,                              )          Case No. 1416-CV00681
                                         )
v.                                       )
                                         )
ADVANCE MORTGAGE CORPORATION, et al. )
                                         )
Defendants                               )

## CASE MANAGEMENT CONFERENCE STATEMENT - PLAINTIFFS

COME NOW, Plaintiffs by and through the undersigned counsel, and for its Case Management Conference Statement states and proposes as follows:

1. Plaintiffs were pro se until counsel's Entry of Appearance on August 22, 2014.

2. Pursuant to this Court's order of January 10, 2014 and Local Rule 3.5.2, Plaintiffs have filed a Designation of Lead Attorney of Record with Notice of Change of Address. Please note counsel's address has changed since the Entry of Appearance, as counsel moved her offices and her home from Springfield, MO to Jackson County, MO on or about August 31, 2014.

3. Counsel for Plaintiffs initiated contact by telephone to the office of counsel Boyd for Defendants on September 24, 2014 to discuss this case with dates and mediation, but the parties have not yet developed a joint proposal for this case management conference.

4. Plaintiffs propose and request the following:

    a. Trial Setting: Plaintiffs propose April 2014.

    b. Expert Witness Disclosure Cutoff Date: Parties to Propose a joint scheduling order to the Court by October 10, 2014.

    c. A schedule for the orderly preparation of the case for trial: Plaintiffs propose that the parties present a joint proposed scheduling order by OCTOBER 10, 2014 to include dates for completion of mediation, expert witness disclosure and discovery.

    d. Issues which require input or action by the Court: Plaintiffs request an extension of time and leave to file a supplemental response by October 21, 2014 and thereafter to request an opportunity for hearing to the Defendants' June 26, 2014 Motion to Strike/Motion for Dismissal prior to a court ruling adverse to Plaintiffs. A pro se motion for leave to file response which contained response was filed by Plaintiffs on August 6, 2014.

    e. The status of settlement negotiations: Plaintiffs counsel has initiated contact and will informally discuss the case with counsel for defendants and will propose at least three mediators with contact information and rates to counsel for Defendants by September 30, 2014.

Respectfully submitted,

Designated Attorney of Record for Plaintiffs
Marr Law, LLC

/s/

_____
Elizabeth A. Marr, MO Bar #30594
200 N.E. Missouri Road, #200
Lee's Summit, MO 64086
(816) 830-5427
1.866.281.5665 – fax
marrlawllc@gmail.com

Certificate of Service

I hereby certify that on this 26th day of September, 2014 this Designation of Lead Attorney of Record will
be submitted to, and service to counsel of record will occur through, the Court's efiling system.

/s/ Elizabeth A. Marr

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE, MISSOURI

BARRE HUNTER, et al.                    )
Plaintiffs,                             )
                                        )
v.                                      )        Case No. 1416-CV00681
                                        )
ADVANCE MORTGAGE CORPORATION, et al.    )
Defendants                              )

## DESIGNATION OF LEAD ATTORNEY OF RECORD
### With Notice of Change of Attorney Address

COME NOW, Plaintiffs, by and through the undersigned counsel, pursuant to Local Rule 3.5.2 and this

Court's order of January 10, 2014 in its Notice of Case Management Conference for Civil Case and

provide this Designation of Lead Attorney of Record and also provide Notice of Change of Attorney

Address:

1.  Lead attorney of record for Plaintiffs is:

    Elizabeth A. Marr
    Marr Law, LLC
    200 N.E. Missouri Road, #200
    Lee's Summit, MO 64086
    (816) 830-5427
    (866) 281-5665 – fax
    marrlawllc@gmail.com

2.  Please note that the above information is a change of address and phone for the attorney.

                                        Respectfully submitted,

                                        /s/
                                        _____
                                        Elizabeth A. Marr, MO Bar #30594
                                        200 N.E. Missouri Road, #200
                                        Lee's Summit, MO 64086
                                        (816) 830-5427
                                        1.866.281.5665 – fax
                                        marrlawllc@gmail.com

<u>Certificate of Service</u>

I hereby certify that on this 26th day of September, 2014 this Designation of Lead Attorney of Record will be submitted to, and service to counsel of record will occur through, the Court's efiling system.

<u>/s/ Elizabeth A. Marr</u>

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

BARRE E HUNTER, )
                Plaintiff, )      **Case No. 1416-CV00681**
)
v. )      **Division 13**
)
ADVANCE MORTGAGE )
CORPORATION, )
                Defendant. )

## NOTICE OF HEARING

**JUDGE:**              **Honorable Charles H. McKenzie**

**DATE:**              **September 26, 2014**

**TIME:**              **8:30 A.M.**

**LOCATION:**      **Division 13 - 2nd Floor**
                          **Independence Courthouse Annex**
                          **308 W. Kansas**
                          **Independence, Missouri 64050**

Please note that the above titled cause has been set for a **case management conference** on the date, time and location mentioned above. Please direct questions to Adam Mehl. Phone: 816-881-3624; Email: adam.mehl@courts.mo.gov.

Copies to:

MICHAEL ERNEST BOYD, Attorney for Defendant, THE BOYD LAW GROUP, L.C., 300 ST. PETERS CENTRE BLVD., STE. 230, SAINT PETERS, MO 63376
(636) 447-8505, mboyd@boydlawlc.com
THOMAS M FRANKLIN, Attorney for Defendant, 9140 WARD PARKWAY, SUITE 200, KANSAS CITY, MO 64114
(816) 822-8222, tom.franklin@tmflaw.com
MICHAEL J WAMBOLT, Attorney for Defendant, 11460 TOMAHAWK CREEK PKWY, SUITE 300, LEAWOOD, KS 66211
(913) 339-9045, mwambolt@msfirm.com

Case 4:15-cv-00141-DW  Document 1-1  Filed 02/24/15  Page 90 of 491

ELIZABETH A MARR, Attorney for Plaintiff, 206 S GARR STREET, P.O. BOX 257, LONE
JACK, MO 64070
(866) 281-5665,

Adam Mehl, Law Clerk Division 13

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 91 of 491

IN THE 16th JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE, MISSOURI

| | |
|---|---|
| BARRE HUNTER, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Case No. 1416-CV00681 |
| | ) |
| ADVANCE MORTGAGE CORPORATION, et al. | ) |
| | ) |
| Defendants | ) |

## ENTRY OF APPEARANCE

COMES NOW, Elizabeth A. Marr, of Marr Law, LLC and enters her appearance on behalf of the

Plaintiffs herein.

Respectfully submitted,

_____

Elizabeth A. Marr, MO Bar #30594
1530 E. Erie Street, #A203
Springfield, MO 65804
417.655.5895
1.866.281.5665 – fax
marrlawllc@gmail.com

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

BARRE E HUNTER,                        )
               Plaintiff,        )        **Case No. 1416-CV00681**
                                 )
v.                                     )        **Division 13**
                                 )
 ADVANCE MORTGAGE                     )
CORPORATION,                           )
               Defendant.        )

## NOTICE OF HEARING

**JUDGE:**        **Honorable Charles H. McKenzie**

**DATE:**         **Friday August 22, 2014**

**TIME:**         **8:30 A.M.**

**LOCATION:**     **Division 13 - 2nd Floor**
                       **Independence Courthouse Annex**
                       **308 W. Kansas**
                       **Independence, Missouri 64050**

Please note that the above titled cause has been set for **a case management conference** on the date, time and location mentioned above. Please direct questions to Adam Mehl. Phone: 816-881-3624; Email: adam.mehl@courts.mo.gov.

Copies to:

BARRE E HUNTER, Plaintiff Acting Pro Se, 3020 S FIELDS RD, OAK GROVE, MO 64075 -,
VENDA M HUNTER, Plaintiff Acting Pro Se, 3020 S FIELDS RD, OAK GROVE, MO 64075 -,
MICHAEL ERNEST BOYD, Attorney for Defendant, THE BOYD LAW GROUP, L.C., 300 ST. PETERS CENTRE BLVD., STE. 230, SAINT PETERS, MO 63376
(636) 447-8505, mboyd@boydlawlc.com
THOMAS M FRANKLIN, Attorney for Defendant, 9140 WARD PARKWAY, SUITE 200, KANSAS CITY, MO 64114
(816) 822-8222, tom.franklin@tmflaw.com

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 93 of 491

MICHAEL J WAMBOLT, Attorney for Defendant, 11460 TOMAHAWK CREEK PKWY, SUITE 300, LEAWOOD, KS 66211
(913) 339-9045, mwambolt@msfirm.com

Adam Mehl, Law Clerk Division 13

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 94 of 491

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
)
PLAINTIFFS ) Case No. 1416-CV00681
V )
Advance Mortgage Corporation et. al, ) Division 13
)

FILED-CIRCUIT COURT
JACKSON CO., MO-1
2014 AUG -6 PM 12:27

## PLAINTIFFS' MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANTS' MO-TION TO STRIKE PLAINTIFFS' SECOND AMENDED PETITION AND DISMISS THE FIRST AMENDED PETITION
## OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' SECOND AMENDED PETITIONFOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OUT OF TIME

COMES NOW the Plaintiffs and for their MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANTS' MO-TION TO STRIKE PLAINTIFFS' SECOND AMENDED PETITION AND DISMISS THE FIRST AMENDED PETITION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' SECOND AMENDED PETITIONFOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED do state:

(1) That Plaintiffs strategy has narrowed to only trying to prosecute the case as related to De-fendants which continue to insist on enforcing a false lien on the Title of Plaintiffs home. Plain-tiffs still contend that a declaration of Quiet Title to Plaintiffs of the subject property is the proper pleading.

(2) That Plaintiffs have had to restate the pleading in the Second Amended Petition with superior new findings and rulings of law that are proper to introduce into this instant case.

Wherefore, Plaintiffs pray the court for a Denial of Defendants' Motion to Strike Plaintiffs' Plead-ings in entirety.

Respectfully Submitted

Barre Hunter

Venda Hunter
By Barre Hunter

1

# IN THE CIRCUIT COURT OF JACKSON COUNTY MO

| | | |
|---|---|---|
| **Barry Hunter and Venda Hunter** | ) | |
| | ) | |
| **Plaintiffs** | ) | **Case No. 1416-CV00681** |
| | ) | |
| **V** | ) | |
| | ) | **Division 13** |
| **Advance Mortgage et. al** | ) | |
| | ) | |
| **Defendants** | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED PETITION AND DISMISS THE FIRST AMENDED PETITION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' SECOND AMENDED PETITION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### Plaintiffs' response to "Background":

Plaintiffs' deny that their "motive" is to prevent a foreclosure sale. Plaintiffs' were threatened with a fraudulent declaration of default and foreclosure proceedings in November of 2012 by Ocwen Loan Servicing (Ocwen) soon to become somehow, the "American Home Mortgage Assets Trust 2007-3" without notice of any kind. Plaintiffs' contend that only the Holder in Due Course has the right to collect money from Plaintiffs. Plaintiffs aver that it is impossible for Deutsche National Trust Company (Deutsche) as an appointed agent, of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 (American Home Trust) to have ever become the Holder in Due Course of the Plaintiffs' alleged original Promissory Note. Plaintiffs also note that Defendant Deutsche is the constructor of this Motion and never mentions the name of this unique Trust in this Motion. The role of the Trustee of a Real Estate Mortgage Investment Conduit (REMIC) Trust is not defined in the PSA as our traditional definition of a Trustee of traditional trusts. The Trustee's duties as defined by the Pooling and Servicing Agreement (PSA) of the SEC registered American Home Trust do not provide for the Trustee to run the Trust's business as appears to be the case here. The Trustee's duties for this trust is limited to representing the interest of the investors in the bonds issued by the trust. It is highly unlikely that Deutsche can name the investors in this trust. (See Exhibit

1

American Home Trust PSA)

(Ex A, 400.3-302. Holder in Due Course) (RSMo 432.010 Statute of Frauds-Contracts Required to be in Writing) (Ex C, RSMo 400-003.501 Presentment) (Ex D, RSMo 400-003.303 Value and Consideration) (Ex E, RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)

## MOTION TO STRIKE

### Plaintiffs' Response to Motion to Strike:

Plaintiffs deny Defendants' claims in the motion to strike. Plaintiffs do have new information and evidence. Attached to this Response is the Pooling and Servicing Agreement for the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3. It includes the Cutoff Date of May 1, 2007 and the Closing Date of June 6, 2007. There is also a description of the "Trustees Duties", which is narrowly defined as "representing the investors' interests". It defines the "Master Servicer" as the entity responsible for collections from the asset mortgages. The Master Servicer of this American Home Trust is Wells Fargo Bank. Foreclosure is an act of collection.

a. The alleged valid Deed of Trust was dated March 13, 2007. This is within the margin of the Closing Date of the American Home Trust which was June 6, 2007, so it was possible for the alleged originator to have negotiated and transacted a sale to the trust on time. But, with only 90 days to clean up paperwork after the transaction (which was not conducted by the Trustee) the purchase of Plaintiffs loan had to be negotiated and transacted before September 6th of 2007. There are no rules allowing for extensions etc. According to the PSA, SEC and IRS regulations any later purchases cannot be negotiated and transacted because of the change in the Risk of the pool. Therefore, Plaintiffs assert that they are not a 3rd party disputing a transaction between the genuine owner of the alleged loan (which is not Deutsche) and a Buyer of the alleged loan. Plaintiffs are asserting that the assignment from MERS on behalf Advance Mortgage was an intentionally fraudulent act, perpetrated to disguise from Plaintiffs an assignment that could not have occurred as described five years after the Closing Date.

b. The alleged date of the Deed of Trust was March 13, 2007. The closing date is June 6, 2007. The date of the fraudulent assignment is October 1st, 2012. This is more than five years too late. The Trustee of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 is an Imposter and Fictitious Payee and never had a right to enforce the alleged Promissory Note as a Holder in Due Course and never had a right to collect against that alleged Promissory Note. The paper work at closing was never fully disclosed to Plaintiffs.

2

c. Plaintiffs assert that there was a negotiation and transaction of the alleged loan and that it must have happened before the PSA Closing Date of the American Home Trust in 2007. Advance Mortgage did assign the alleged loan to a REMIC Trust, but it must have happened in 2007. If so, then it is Advance Mortgage that has been the alleged Lender since the March 13, 2007 closing until today. Therefore Advance Mortgage will have in their possession the accounting of payments records to verify this more than five year period of owning the loan in portfolio. All other claimants must then be Servicers only. A fraudulent lien with no Consideration paid (MERS, Advance Mortgage, and Deutsche will have these records if the lien is valid) was addressed very recently by the UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT in its review of a Multi-Jurisdictional Decision regarding the validity of MERS as a Holder in Due Course while being an agent for the Holder of Due Course and the actual conflict this relationship creates. The relevancy to this case is the court's firm conclusion that the filing of an invalid or fraudulent document in order to place a lien on real property cannot be accepted any longer and that a borrower which prevails in a Quiet Title action may be awarded damages for the time that the fraudulent lien wrongfully clouded the Title to the property.

(See attached ruling from the Court of Appeals for the Ninth Circuit No. 11-17615, D.C. No. 2:09-md-02119-JAT)

d. This new information and physical evidence of finding the trust documents and receiving this very recent Federal Appeals Court case are compelling arguments for amending the petition in this instant case.

(Ex A, 400.3-302. Holder in Due Course) (RSMo 432.010 Statute of Frauds-Contracts Required to be in Writing) (Ex C, RSMo 400-003.501 Presentment) (Ex D, RSMo 400-003.303 Value and Consideration) (Ex E, RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)

### Plaintiffs' Response to I. Standard For Dismissal For Failure To State Claim Upon Which Relief Can Be Granted:

Plaintiffs deny a lack of claim, Plaintiffs are indeed making a claim for which relief can be granted. A fraudulent lien has been placed on Plaintiffs' Title. Plaintiffs will lose all equity to a Stranger to the Deal if this lien is not removed. The fraudulent circumstances of the lien demand that the lien be removed and that Quiet Title and damages be awarded to the Plaintiffs.

### Plaintiffs' Response to: II. Plaintiff's Second Amended Petition Is A Form Pleading Presumably Obtained From The Internet And Bears No Relationship To Any Relevant Fact In This Case.

3

Plaintiffs deny that the Second Amended Petition is a form and contend that it is entirely relevant to this case. Plaintiffs admit that research was done on the internet, in fact, a great deal. But, Plaintiffs are astonished that counsel for Defendant Deutsch didn't know that there is a great deal of valuable information to be obtained on the internet by doing a Google search. This is being done by millions of people at any moment. Plaintiffs deny that information obtained through research on the internet can be categorized as frivolous and without merit. Plaintiff contends that this Motion was written with a template on its counsel's computer. If the information is correct it cannot matter from where it was found.

## Plaintiffs Response to: III. Deutsche Bank Possesses the Note, Which Is Endorsed In Blank, And Is Thus Entitled To Enforce It.

Plaintiffs' deny that Defendant(s) and the blank endorsement which is not dated on the alleged original Promissory Note give them entitlement to enforcement. Plaintiffs cannot accept what they have not seen after multiple requests in writing. Plaintiffs also would point out that the Defendant always identifies its position as a "holder". Plaintiffs contend that the term that Defendant is searching for is "Holder in Due Course". This is clearly defined in the Uniform Commercial Code statute regarding Negotiable Instruments and Secured Instruments. Plaintiffs contend that Defendant and MERS constructed the fraudulent assignment without either one having any money in the deal (Consideration) and although the Defendant has been asked in writing to provide the contract pertaining to the purchase of the alleged loan along with support materials such as copies of wires, the Lender's letter of instruction, copies of Cashier's checks etc. None of this has been received. Plaintiffs contend that any alleged "original" Note will prove to have been Photo Shopped by a neutral 3rd party laboratory.

## Plaintiffs' Response to: IV   Plaintiffs Lack Standing To Challenge The Pooling And Servicing Agreement As Plaintiffs Are Neither Parties Nor Third Party Beneficiaries Of Any Such Agreement.

Plaintiffs deny any challenge to the Pooling and Servicing Agreement on their part and do not contend that they are a party of that document, in fact, Plaintiffs contend that the PSA rules cannot be challenged. The PSA is a higher authority for parties to it than statute unless it conflicts with statute. Plaintiff contends that fraudulent acts with their instrument (alleged Promissory Note) are a concern to Plaintiffs and can be challenged. Plaintiffs are not challenging whether these Defendants and their co-conspirators have a right to validly

4

negotiate and transact a Promissory Note. But, claiming to own an instrument when there is no
ownership is illegal.

(Ex G, RSMo 400-003. 404 Imposters –fictitious payees) (Ex H, RSMo 400-003.407 Alteration) (Ex I, RSMo 400-303.306 Claims to
an Instrument)

### Plaintiffs' Response to:  IV  Plaintiffs' "Split-The-Note" Theory Has Been Rejected By Missouri Courts, And They Lack Standing To Assert Such A Theory.

Plaintiffs do not need to rebut this outrageous claim directly.  Plaintiffs respond that the
Supreme Court of the United States defined Bifurcation of the Note and Security Instrument in
1872 and that august body has not deemed it necessary to overturn itself regarding splitting of
the Note and Security instrument.  Therefore, whether it is right or wrong that ruling is **supreme**
and is **binding** on all of the courts in the land.

(Ex F, Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREMECOURT OF
COLORADO TERRITORY)

( Ex F-1  The decisions of the United States Supreme Court, whether right or wrong, are supreme: they are
binding on all courts of this land, Hoover v. Holston Valley Community Hospital, 545 F. Supp. 8, 13 (E. D.Á
Tenn. 1981) (quoting Jordan V. Gilligan, 500 2 F.3d 701, 707(6th Cir. 1974)).

(Ex F-2  The lower courts are bound by Supreme Court precedent, Adams v. Department of Juvenile Justice
of New York City, 143 F.3d, 61, 65(2nd Cir. 1998)

(Exhibit F-3 Walker v. Quality Loan Service Corp. of Washington et al., No. 65975-8-1

(Exhibit F=3 Washington State Supreme Court, Bain v. Metro. Mortg. Group, Inc., et al.175 Wn.2d 83, 285 P.3d 34

### Plaintiff's Response to: VI. Each Individual Claim Fails To State A Plausible Claim For Relief And Should Be Dismissed As A Matter of Law

Plaintiffs deny that they have not made a plausible claim for relief.  Plaintiffs' have stated that they
were never in default with Defendant Deutsche Bank National Trust Company or the American
Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3.
Plaintiffs state neither of those Defendant ever had equity ownership in any loan to Plaintiffs.
Plaintiffs state that these Imposters and Fictitious Payees have wrongfully collected money from
Plaintiffs and have misrepresented their ownership of the alleged loan and therefore a declaration by
the court of Quiet Title for Plaintiffs will certainly fit the definition of relief.

### Plaintiffs Response to:  A.  Plaintiff's Quiet Title Claim Fails as a Matter of Law and Should be Dismissed.

Plaintiffs contend that it is the burden of the Defendants that as a matter of law to

5

prove the right of any Defendant to collect money owed on any loan of Plaintiffs.

**Plaintiffs Response to: A. Plaintiff's Quiet Title Claim Fails as a Matter of Law and Should be Dismissed**

Plaintiffs deny that the claim of Quiet Title fails as a matter of law. So far, the only evidence presented by Deutsche is a written description of an alleged Promissory Note and endorsements that may or may not be on it. Defendant Deutsche will never acknowledge the UCC statute of Presentment of the instrument before collection. But, the theatrics and use of the word "unequivocally" does not make that statute go away. It is very simply, the law. An original instrument must be presented before collection. Plaintiffs have been told many times that Deutsche did not have to present the Note to foreclose non-judicially and Plaintiffs are familiar with that statute. But, Plaintiffs contend that Presentment is made before collection. Foreclosure is a very late act of collection.

Excerpt from: **RSMo 400-003.501 Presentment:** "Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule."

**Plaintiffs' Response to: B. Plaintiffs Claim For Specific Performance Under V.A.M.S. §400.3 Fails To State A Claim And Must Be Dismissed**

Plaintiffs do assert a claim for Specific Performance under V.A.M.S. §400.3, and it is based on the obvious fraud of recording a lien that cannot have happened under very stringent law regarding the Closing Date of REMIC Trusts, none of the bodies of law, including New York state law, Securities and Exchange Commission and Internal Revenue Service and Missouri law allow fraudulent liens and assignments. All public trusts of this type are governed by New York state law as described in great detail in Plaintiffs' Petition. Defendant Deutsche claims for the 3rd time in this Motion that Defendants hold the original endorsed note, this is just whistling past grave yard. There is no proof in a heresay claim of an object unseen. Plaintiffs Warranty Deed is

6

recorded at the Jackson County recorder's office. Plaintiffs have no contractual agreement between themselves and the Defendants described herein. There is no valid reason why Plaintiffs should not have their day in court. Defendants' blind eyes toward UCC code does not diminish the fact that those are the laws as adopted by the state of Missouri regarding Negotiable Instruments.

### Plaintiffs' Response to: Missouri Merchandising Practices Act.

Plaintiffs deny that Defendant's liberal definitions are being construed in accordance with this instant case. For example:

MMPA Missouri UCC excerpts:

### Definitions : within the MMPA

407.010. As used in sections 407.010 to 407.130, the following words and terms mean:

(4) "Merchandise", any objects, wares, goods, commodities, intangibles, real estate or services

(7) "Trade" or "commerce", the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms "trade" and "commerce" include any trade or commerce directly or indirectly affecting the people of this state.

### Unlawful practices, penalty--exceptions.

407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise (See (4) above) in trade or commerce in or from the state of Missouri, is declared to be an unlawful practice.

### Civil action to recover damages--class actions authorized, when--procedure.

407.025. 1. Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court

7

of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

Plaintiffs contend that their claims of misrepresentation, fraud, alteration of an instrument, etc. fit quite well with this UCC statute. Defendants have now claimed four times without proof of their possession of the Original endorsed in blank. Defendants are claiming that this makes the alleged Note a "Bearer" instrument. But, the lack of a money trail and question of time and place of endorsement will render the instrument voided. Third party experts can and will prove this if a legitimate Promissory Note is Presented for Exhibit as required by Missouri Statute.

**Plaintiffs Response to: Plaintiffs Are Not Entitled To Any Punitive Damages.**

Plaintiffs look to the earlier mentioned United States Court of Appeals for the Ninth Circuit's decision on the Multi-Jurisdictional appeals case concerning MERS, Quiet Title and Damages, as well as other related issues. A copy is attached to this Motion.

## D. If the Second Amended Petition is Struck and the First Amended Petition is the Operative Petition: Plaintiffs' Breach of Fiduciary Duty Claim Fails Because Plaintiffs Acknowledge They Have No Valid Claim and Because it Fails to State a Plausible Claim Upon Which Relief Can Be Granted

Plaintiffs did drop the Notice of Breach of Fiduciary Duty because it was not central to the Quiet Title petition. However, Plaintiffs will address the citations noted by Defendant freeing them of responsibility of duty to an alleged borrower. Those cases did not include claims of fraud. Defendants do indeed have the duty of performing their business in a legal manner.

**CONCLUSION**

Defendants or Defendant have failed to properly address their claim that Plaintiffs' claim is insufficient cause upon which Relief Can Be Granted. Quite the opposite, the fraudulent actions of the Defendant or Defendants leave a wide margin of relief for the court to act upon. Relying on the answers herein Plaintiffs respectfully pray for the court to deny this Motion to Strike.

Respectfully submitted,

*Barre Hunter    Venda Hunter    by Barre Hunter*

Barre Hunter and Venda Hunter Pro Se Plaintiffs by Barre Hunter with permission

8

# Exhibits of Relevant Missouri UCC Law

Page

2      (Ex A, 400.3-302. Holder in Due Course)

3      RSMo 432.010 Statute of Frauds-Contracts Required to be in Writing)

5      (Ex C, RSMo 400-003.501 Presentment)

7      (Ex D, RSMo 400-003.303 Value and Consideration)

8      (Ex E, RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)

9      (Ex F, Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall, 271 271 (1872) APPEAL FROM THE SUPREMECOURT OF COLORADO TERRITORY)

( Ex F-1  The decisions of the United States Supreme Court, whether right or wrong, are supreme: they are binding on all courts of this land, Hoover v. Holston Valley Community Hospital, 545 F. Supp. 8, 13 (E. D.Â Tenn. 1981) (quoting Jordan V. Gilligan, 500 2 F.3d 701, 707(6th Cir. 1974)).

(Ex F-2  The lower courts are bound by Supreme Court precedent, Adams v. Department of Juvenile Justice of New York City, 143 F.3d, 61, 65(2nd Cir. 1998)

(Exhibit F-3 Walker v. Quality Loan Service Corp. of Washington et al., No. 65975-8-1

(Exhibit F=3 Washington State Supreme Court, Bain v. Metro. Mortg. Group, Inc., et al.175 Wn.2d 83, 285 P.3d 34 (2012)

That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri.  Plaintiffs signed no documents giving permission or agreement for the Originating Lender, or its successors to send a replica of the Copping's original loan documents and signatures electronically to be used as originals to any entity.

*432.200. Sections 432.200 to 432.295 shall be known and may be cited as the Uniform Electronic Transactions Act"(L. 2003 H.B. 254)*

*Transferable records.*
*432.275. 1. As used in this section, transferable record'hmeans an electronic record that:*

*(1) Would be a note under sections 400.3-101 to 400.3-605 or a document under sections 400.7-101 to 400.7-604 if the electronic record were in writing; and (2) The issuer of the electronic record expressly has agreed is a transferable record.*

15      (Ex G, RSMo 400-003. 404 Imposters –fictitious payees)

17      (Ex H, RSMo 400-003.407 Alteration)

18      (Ex I, RSMo 400-303.306 Claims to an Instrument)

19      (EX J RSMo 400-003.307 Notice of breach of fiduciary duty)

1

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 104 of 491

21    (Ex K  RSMo  400-003.309   Enforcement of lost, destroyed, or stolen instrument)

22    (Ex L,  RSMo 400-003.405  Employer's responsibility  for fraudulent endorsement by employee)

24    (Ex M,  RSMo 400-003.420  Conversion of Instrument)

25.    (Ex N   Critical assignments the Deed of Trust)

26.    (Ex O   Mortgage Backed Security Information, this case)

27.    (EX P RSMo  407.020 Missouri Merchandising Practices Act

28.    Ex P RSMo  408.695  Statute of limitations)  An action to enforce any provision of sections 408.675 to 408.700
       may be brought in the circuit court within three years from the date on which the violation occurs or on the
       date of discovery of such violation, whichever is later.
       (L. 1989 H.B. 82 § 14)  Statute of limitations.

29.    Ex R RSMo Section *527.150* Declaratory Judgments; Actions Involving Land Titles; Lis Pendens; August 28, 2013
       Suits to determine interest and quiet title, how instituted—effect of judgment.

Missouri employs the rule that equity will not aid a party who comes into court with unclean hands.  The triggering of
the "unclean hands" doctrine does not require the party against whom it applies to have engaged in fraudulent conduct.
Instead, one who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his
action barred by his own misconduct.

2

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 105 of 491

# Exhibit A

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.302*

August 28, 2013

**Holder in due course.**

400.3-302. (a) Subject to subsection (c) and Section 400.3-106(d), "holder in due course" means the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 400.3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 400.3-305(a).

(b) Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under subsection (a), but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment, or claim to the instrument.

(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale

3

or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.

(d) If, under Section 400.3-303(a)(1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

(e) If (i) the person entitled to enforce an instrument has only a security interest in the instrument and (ii) the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

(f) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

(g) This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

(L. 1963 p. 503 § 3-302, A.L. 1992 S.B. 448)

4

# EXHIBIT B

# *Missouri Revised Statutes*

### Chapter 432
### Contracts Required to Be in Writing
### Section *432.010*

August 28, 2013

---

**Statute of frauds--contracts to be in writing.**

432.010. No action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

(RSMo 1939 § 3354)

Prior revisions: 1929 § 2967; 1919 § 2169; 1909 § 2783

CROSS REFERENCES:

Actions on contract barred, revived by written promise, 516.320

Marriage contracts affecting property to be in writing, acknowledged, 451.220

5

# Exhibit C

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.501*

August 28, 2013

**Presentment.** 400.3-501. (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

(b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:

(1) Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.

(2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

(3) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

6

(4) The party to whom presentment is made may treat presentment as occurring on the next business day after the day of presentment if the party to whom presentment is made has established a cut-off hour not earlier than 2 p.m. for the receipt and processing of instruments presented for payment or acceptance and presentment is made after the cut-off hour.

(L. 1992 S.B. 448)

*No continuity with § 400.3-501 as repealed by L. 1992 S.B. 448.

© Copyright

 Missouri General Assembly

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 110 of 491

# Exhibit D

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.303*

August 28, 2013

**Value and consideration.**

400.3-303. (a) An instrument is issued or transferred for value if:

(1) the instrument is issued or transferred for a promise of performance, to the extent the promise has been performed;

(2) the transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;

(3) the instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due;

(4) the instrument is issued or transferred in exchange for a negotiable instrument; or

(5) the instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.

(b) "Consideration" means any consideration sufficient to support a simple contract. The drawer or maker of an instrument has a defense if the instrument is issued without consideration. If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed. If an instrument is issued for value as stated in subsection (a), the instrument is also issued for consideration.

(L. 1963 p. 503 § 3-303, A.L. 1992 S.B. 448)

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 111 of 491

# EXHIBIT E

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.203*

August 28, 2013

**Transfer of instrument--right acquired by transfer.** 400.3-203. (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this Article and has only the rights of a partial assignee.

(L. 1992 S.B. 448)

*No continuity with § 400.3-203 as repealed by L. 1992 S.B. 448.

9

# Exhibit F

## Carpenter v. Longan - 83 U.S. 271 (1872)

## (Bifurcation: Splitting of the Note and Deed of Trust)

Syllabus
Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)
APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY

Syllabus

1. The assignment of a negotiable note before its maturity raises the presumption of a want of notice of any defense to it, and this presumption stands till it is overcome by sufficient proof.

2. When a mortgage given at the same time with the execution of a negotiable note and to secure payment of it, is subsequently, but before the maturity of the note, transferred bona fide for value, with the note, the holder of the note when obliged to resort to the mortgage is unaffected by any equities arising between the mortgagor and mortgagee subsequently to the transfer, and of which he, the assignee, had no notice at the time it was made. He takes the mortgage as he did the note.

MR. JUSTICE SWAYNE stated the case, and delivered the opinion of the Court.

On the 5th of March, 1867, the appellee, Mahala Longan, and Jesse B. Longan, executed their promissory note to Jacob B. Carpenter, or order, for the sum of $980, payable six months after date, at the Colorado National Bank, in Denver City, with interest at the rate of three and a half percent per month until paid. At the same time Mahala Longan executed to Carpenter a mortgage upon certain real estate

10

therein described. The mortgage was conditioned for the payment of the note at maturity, according to its effect.

On the 24th of July, 1867, more than two months before the maturity of the note, Jacob B. Carpenter, for a valuable consideration, assigned the note and mortgage to B. Platte Carpenter, the appellant. The note not being paid at maturity, the appellant filed this bill against Mahala Longan, in the District Court of Jefferson County, Colorado territory, to foreclose the mortgage.

She answered and alleged that when she executed the mortgage to Jacob B. Carpenter, she also delivered to him certain wheat and flour, which he promised to sell, and to apply the proceeds to the payment of the note; that at the maturity of the note she had tendered the amount due upon it, and had demanded the return of the note and mortgage and of the wheat and flour, all which was refused. Subsequently she filed an amended answer, in — which she charged that Jacob B. Carpenter had converted the wheat and flour to his own use, and that when the appellant took the assignment of the note and mortgage, he had full knowledge of the facts touching the delivery of the wheat and flour to his assignor. Testimony was taken upon both sides. It was proved that the wheat and flour were in the hands of Miller & Williams, warehousemen, in the City of Denver, that they sold, and received payment for, a part, and that the money thus received and the residue of the wheat and flour were lost by their failure. The only question made in the case was, upon whom this loss should fall, whether upon the appellant or the appellee. The view which we have taken of the case renders it unnecessary to advert more fully to the facts relating to the subject. The district court decreed in favor of the appellant for the full amount of the note and interest. The supreme court of the territory reversed the decree, holding that the value of the wheat and flour should be deducted. The complainant thereupon removed the case to this Court by appeal.

It is proved and not controverted that the note and mortgage were assigned to the appellant for a valuable consideration

before the maturity of the note. Notice of anything touching the wheat and flour is not brought home to him.

The assignment of a note underdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was nonnegotiable, or had been

11

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 114 of 491

assigned after maturity. The question presented for our determination is, whether an assignee, under the circumstances of this case, takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative. [Footnote 1] The contract as regards the note was that the maker should pay it at maturity to any bona fide endorsee, without reference to any defenses to which it might have been liable in the hands of the payee. The mortgage was conditioned to secure the fulfillment of that contract. To let in such a defense against such a holder would be a clear departure from the agreement of the mortgagor and mortgagee, to which the assignee subsequently, in good faith, became a party. If the mortgagor desired to reserve such an advantage, he should have given a nonnegotiable instrument. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who "puts trust and confidence in the deceiver should be a loser rather than a stranger." [Footnote 2]

Upon a bill of foreclosure filed by the assignee, an account must be taken to ascertain the amount due upon the instrument secured by the mortgage. Here the amount due was the face of the note and interest, and that could have been recovered in an action at law. Equity could not find that

Page 83 U. S. 274

less was due. It is a case in which equity must follow the law. A decree that the amount due shall be paid within a specified time, or that the mortgaged premises shall be sold, follows necessarily. Powell, cited supra, says:

"But if the debt were on a negotiable security, as a bill of exchange collaterally secured by a mortgage, and the mortgagee, after payment of part of it by the mortgagor, actually negotiated the note for the value, the endorsee or assignee would, it seems, in all events, be entitled to have his money from the mortgagor on liquidating the account, although he had paid it before, because the endorsee or assignee has a legal right to the note and a legal remedy at law, which a court of equity ought not to take from him, but to allow him the benefit of on the account."

A different doctrine would involve strange anomalies. The assignee might file his bill and the court dismiss it. He could then sue at law, recover judgment, and sell the mortgaged premises under execution. It is not pretended that equity would interpose against him. So if the aid of equity were properly invoked to give effect to the lien of the judgment upon the same premises for the full amount, it could not be refused. Surely such an excrescence ought not to be permitted to disfigure any system of enlightened jurisprudence. It is the policy of the law to avoid circuity of action, and parties ought not to be driven from one forum to obtain a remedy which cannot be denied in another.

12

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 115 of 491

The mortgaged premises are pledged as security for the debt. In proportion as a remedy is denied the contract is violated, and the rights of the assignee are set at naught. In other words, the mortgage ceases to be security for a part or the whole of the debt, its express provisions to the contrary notwithstanding.

The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. [Footnote 3]

Page 83 U. S. 275

It must be admitted that there is considerable discrepancy in the authorities upon the question under consideration.

In Baily v. Smith [Footnote 4] -- a case marked by great ability and fullness of research -- the Supreme Court of Ohio came to a conclusion different from that at which we have arrived. The judgment was put chiefly upon the ground that notes, negotiable, are made so by statute, while there is no such statutory provision as to mortgages, and that hence the assignee takes the latter as he would any other chose in action, subject to all the equities which subsisted against it while in the hands of the original holder. To this view of the subject there are several answers.

The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity. When the amount due on the note is ascertained in the foreclosure proceeding, equity recognizes it as conclusive, and decrees accordingly. Whether the title of the assignee is legal or equitable is immaterial. The result follows irrespective of that question. The process is only a mode of enforcing a lien.

All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action,

Page 83 U. S. 276

13

where no such relation of dependence exists. Accessorium non ducit, sequitur principale.

In Pierce v. Faunce, [Footnote 5] the court said:

"A mortgage is pro tanto a purchase, and a bona fide mortgagee is equally entitled to protection as the bona fide grantee. So the assignee of a mortgage is on the same footing with the bona fide mortgagee. In all cases the reliance of the purchaser is upon the record, and when that discloses an unimpeachable title he receives the protection of the law as against unknown and latent defects."

Matthews v. Wallwyn [Footnote 6] is usually much relied upon by those who maintain the infirmity of the assignee's title. In that case, the mortgage was given to secure the payment of a nonnegotiable bond. The mortgagee assigned the bond and mortgage fraudulently and thereafter received large sums which should have been credited upon the debt. The assignee sought to enforce the mortgage for the full amount specified in the bond. The Lord Chancellor was at first troubled by the consideration that the mortgage deed purported to convey the legal title, and seemed inclined to think that might take the case out of the rule of liability which would be applied to the bond if standing alone. He finally came to a different conclusion, holding the mortgage to be a mere security. He said, finally:

"The debt therefore is the principal thing, and it is obvious that if an action was brought on the bond in the name of the mortgagee, as it must be, the mortgagor shall pay no more than what is really due upon the bond; if an action of covenant was brought by the covenantee, the account must be settled in that action. In this Court, the condition of the assignee cannot be better than it would be at law in any mode he could take to recover what was due upon the assignment."

The principle is distinctly recognized that the measure of liability upon the instrument secured is the measure of the liability chargeable upon the security. The condition of the assignee cannot be better in law than it is in equity.

Page 83 U. S. 277

So neither can it be worse. Upon this ground we place our judgment.

We think the doctrine we have laid down is sustained by reason, principle, and the greater weight of authority.

Decree reversed and the case remanded with directions to enter a decree in conformity with this opinion.

14

[Footnote 1]

Powell on Mortgages 908; 1 Hilliard on Mortgages 572; Coot on Mortgages 304; Reeves v. Scully, Walker's Chancery 248; Fisher v. Otis, 3 Chandler 83; Martineau v. McCollum, 4 id. 153; Bloomer v. Henderson, 8 Mich. 395; Potts v. Blackwell, 4 Jones 58; Cicotte v. Gagnier, 2 Mich. 381; Pierce v. Faunce, 47 Me. 507; Palmer v. Yates, 3 Sandford 137; Taylor v. Page, 6 Allen 86; Croft v. Bunster, 9 Wis. 503; Cornell v. Hilchens, 11 id. 353.

[Footnote 2]

Hern v. Nichols, 1 Salkeld 289.

[Footnote 3]

Jackson v. Blodget, 5 Cowan 205; Jackson v. Willard, 4 Johnson 43.

[Footnote 4]

14 Ohio St. 396.

[Footnote 5]

47 Me. 513.

[Footnote 6]

4 Vesey 126.

15

# Exhibit G

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.404*

August 28, 2013

---

**Impostors--fictitious payees.** 400.3-404. (a) If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the payee, an endorsement of the instrument by any person in the name of the payee is effective as the endorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) If (i) a person whose intent determines to whom an instrument is payable (Section 400.3-110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special endorsement:

(1) Any person in possession of the instrument is its holder.

(2) An endorsement by any person in the name of the payee stated in the instrument is effective as the endorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

16

(c) Under subsection (a) or (b), an endorsement is made in the name of a payee if (i) it is made in a name substantially similar to that of the payee or (ii) the instrument, whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to that of the payee.

(d) With respect to an instrument to which subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(L. 1992 S.B. 448)

*No continuity with § 400.3-404 as repealed by L. 1992 S.B. 448.

17

# *Exhibit H*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.407*

August 28, 2013

**Alteration.**

400.3-407. (a) "Alteration" means (i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.

(b) Except as provided in subsection (c), an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.

(c) A payor bank or drawee paying a fraudulently altered instrument or a person taking it for value, in good faith and without notice of the alteration, may enforce rights with respect to the instrument (i) according to its original terms, or (ii) in the case of an incomplete instrument altered by unauthorized completion, according to its terms as completed.

(L. 1963 p. 503 § 3-407, A.L. 1992 S.B. 448)

© Copyright

 Missouri General Assembly

# *Exhibit I*

# *Missouri Revised Statutes*

### Chapter 400
### Uniform Commercial Code
### Section *400-003.306*

August 28, 2013

**Claims to an instrument.**

400.3-306. A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

(L. 1963 p. 503 § 3-306, A.L. 1992 S.B. 448)

© Copyright

 Missouri General Assembly

19

# Exhibit J

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.307*

August 28, 2013

**Notice of breach of fiduciary duty.**

400.3-307. (a) In this section:

(1) "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

(2) "Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.

(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(1) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.

(2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of

20

the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary.

(3) If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.

(4) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary.

(L. 1992 S.B. 448, A.L. 1994 S.B. 701)

*No continuity with § 400.3-307 as repealed by L. 1992 S.B. 448.

© Copyright

 Missouri General Assembly

21

# *Exhibit K*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.309*

August 28, 2013

---

**Enforcement of lost, destroyed, or stolen instrument.**

400.3-309. (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section 400.3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

(L. 1992 S.B. 448)

---

22

© Copyright ⚡ Missouri General Assembly

# Exhibit L

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.405*

August 28, 2013

**Employer's responsibility for fraudulent endorsement by employee.** 400.3-405. (a) In this section:

(1) "Employee" includes an independent contractor and employee of an independent contractor retained by the employer.

(2) "Fraudulent endorsement" means (i) in the case of an instrument payable to the employer, a forged endorsement purporting to be that of the employer, or (ii) in the case of an instrument with respect to which the employer is the issuer, a forged endorsement purporting to be that of the person identified as payee.

(3) "Responsibility" with respect to instruments means authority (i) to sign or endorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or

23

incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(c) Under subsection (b), an endorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.

(L. 1992 S.B. 448)

*No continuity with § 400.3-405 as repealed by L. 1992 S.B. 448.

---

© Copyright

 Missouri General Assembly

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 127 of 491

# Exhibit M

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.420*

August 28, 2013

---

**Conversion of instrument.**

400.3-420. (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

(c) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable to conversion to that person beyond the amount of any proceeds that it has not paid out.

(L. 1992 S.B. 448)

25

**ELECTRONICALLY RECORDED**
JACKSON COUNTY, MISSOURI
**03/22/2007 01:38:59 PM**
DT        FEE: $ 63.00   15 Pages

INSTRUMENT NUMBER:
**2007E0038241**



Return To:
ADVANCE MORTGAGE
CORPORATION
11935 RILEY, SUITE 210
OVERLAND PARK, KS 66213
ROXANNE JONES

Lender address located on page 2
Trustee address located on page 2
Full Legal Description located on page 3

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

MIN 1004594-5000702366-7

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated        March 13, 2007
together with all Riders to this document.

(B) "**Borrower**" is BARRE EUGENE HUNTER, a married person and VENDA MARIE
HUNTER, HIS WIFE


("Grantor")

whose address is
          3020 S FIELDS ROAD, OAK GROVE, MO 64075
Borrower is the trustor under this Security Instrument.

06CHUNTERBA0983                  1644078                                      0

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3026  1/01

-6A(MO) (0107)

Page 1 of 16      MW 07/01     Initials:

VMP MORTGAGE FORMS - (800)521-7291

(C) "Lender" is    ADVANCE MORTGAGE CORPORATION

Lender is a    a Corporation
organized and existing under the laws of    State of Kansas
Lender's address is 11935 RILEY, SUITE 210, OVERLAND PARK, KS 66213

(D) "Trustee" is J. Roger Irvin

Trustee's address is 11935 Riley, Overland Park, KS 66213

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    March 13, 2007
The Note states that Borrower owes Lender One Hundred Eighty Six Thousand Three
Hundred Fifty and no/100    Dollars
(U.S. $186,350.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    April 1, 2037    .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider       ☐ Second Home Rider
☐ Balloon Rider          ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider               ☐ Biweekly Payment Rider  ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

06CHUNTERBA0983          1644078          Initials: _____          0
MERS-6A(MO) (0107)       Page 2 of 19                              Form 3026  1/01

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the

County of JACKSON :
[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

Lot 1, SMITH'S LAKE VIEW, a subdivision of land in Jackson County, Missouri.

Parcel ID Number: 22-700-01-19          which currently has the address of
3020 S FIELDS ROAD                                          [Street]
OAK GROVE                         [City] , Missouri     64075    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

06CHUNTERBA0983               1644078                 Initials: [handwritten]          0

[logo] -6A(MO) (0107)          Page 3 of 15                        Form 3026  1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 131 of 491

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

06CHUNTERBA0983                  1644078                                        0

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 133 of 491

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 134 of 491

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

06CHUNTERBA0983          1644078                    Initials: _____          0

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 135 of 491

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

06CHUNTERBA0983                         1644078                                                    0

Initials: ___

-6A(MO) (0107)                         Page 8 of 15                                         Form 3026 1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 136 of 491

(b) Any such agreements will not affect the rights Borrower has -- if any -- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

06CHUNTERBA0983             1644078                                              0

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

06CHUNTERBA0983                          1644078                                                    0

Initials: _R.I_  _T.H_

-6A(MO) (0107)                    Page 10 of 15                          Form 3026   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

06CHUNTERBA0983          1644078                    Initials: _____    0

-6A(MO) (0107)              Page 12 of 15                    Form 3026   1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 140 of 491

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Lease of the Property. Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

26. Homestead Exemption. Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

06CHUNTERBA0983                    1644078                    Initials: [signature]  [signature]         0

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 141 of 491

27. Notice. Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____(Seal)
                                 BARRE EUGENE HUNTER        -Borrower

_____          _____(Seal)
                                 VENDA MARIE HUNTER         -Borrower

_____(Seal)            _____(Seal)
              -Borrower                                     -Borrower

_____(Seal)            _____(Seal)
              -Borrower                                     -Borrower

_____(Seal)            _____(Seal)
              -Borrower                                     -Borrower

06CHUNTERBA0983              1644078                              0

-6A(MO) (0107)              Page 14 of 15                Form 3026  1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 142 of 491

**STATE OF MISSOURI,**        ~~JOHNSON~~        County ss: Jackson

On this   13th   day of   March 2007  , before me personally appeared
BARRE EUGENE HUNTER, a married person and VENDA MARIE HUNTER, HIS WIFE

to me known to be the person(s) described in and who executed the foregoing instrument, and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the
County             and State aforesaid, the day and year first above written.

My Term Expires:   ; -9-2008      _____

                         Notary Public   LeAnn Pontron

LeAnn Pontron
Notary Public - Notary Seal
STATE OF MISSOURI Jackson County
My Commission Expires Jan. 9, 2008

06CHUNTERBA0983         1644078            Initials _____        0

-6A(MO) (0107)            Page 15 of 15                   Form 3026   1/01

ELECTRONICALLY RECORDED
JACKSON COUNTY, MISSOURI
**01/11/2013 02:59:03 PM**
ASDT     FEE: $ 24.00   2   Pages

INSTRUMENT NUMBER:
**2013E0003758**



Millsap & Singer, LLC
612 Spirit Drive
St. Louis, Missouri 63005.
Barre Eugene Hunter, a married person and Venda Marie Hunter, His Wife
MS# 146420.100912.291683 FC

## ASSIGNMENT OF DEED OF TRUST

Date of Document:        10-1-12

Affecting Deed of Trust Recorded:  as Instrument No. 2007E0038241

**MERS Phone Number:**   1-888-679-6377

**MIN:**                 1004594-5000702366-7

**Grantor (Assignor):**  Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage
                         Corporation, its successors and assigns

**Grantor Address:**     P.O. Box 2026, Flint, MI 48501-2026

**Grantee (Assignee):**  Deutsche Bank National Trust Company, as Trustee for American Home Mortgage
                         Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3

**Grantee Address:**     6501 Irvine Center Dr., Irvine, CA 92618

**Legal Description:**   LOT 1, SMITH'S LAKE VIEW, A SUBDIVISION OF LAND IN JACKSON
                         COUNTY, MISSOURI.

For Value Received, Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage
Corporation, its successors and assigns, (herein "Assignor") whose address is P.O. Box 2026, Flint, MI 48501-2026,
does hereby grant, sell, assign, transfer and convey, unto Deutsche Bank National Trust Company, as Trustee for
American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 (herein
"Assignee"), whose address is 6501 Irvine Center Dr., Irvine, CA 92618 all beneficial interest under a certain Deed
of Trust recorded on March 22, 2007, made and executed by Barre Eugene Hunter, a married person and Venda
Marie Hunter, His Wife, to Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage
Corporation, its successors and assigns, upon the above described property situated in Jackson County, State of
Missouri.

MS File No. 146420.100912.291683 FC

Such Deed of Trust having been given to secure payment of $186,350.00, which Deed of Trust is of record as Instrument No. 2007E0038241, the Recorder of Deeds for Jackson County, State of Missouri, and all rights, title and interest accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust.

Assignor: Mortgage Electronic Registration Systems, Inc, as nominee for Advance Mortgage Corporation, its successors and assigns

By: _____

Print Name: **Rolanda Wagner**

Title: **Assistant Secretary**

State of ____**Florida**____ )
) SS.
County of ____**Duval**____ )

Produced Florida Drivers License as identification

On __*10 - 01 - 12*__ before me, _____**Brenda L Frazier**_____, a Notary Public in and for said State, appeared _____**Rolanda Wagner**_____

____**Assistant Secretary**____ (Official Title) known to me to be the person who executed the within Assignment of Deed of Trust on behalf of Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage Corporation, its successors and assigns and acknowledged to me that he or she executed the same for the purposes therein stated.

_____
Notary Public    Brenda L Frazier

My term expires: *4. 30. 2013*

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission #DD885641
Expires: APR, 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

MS File No. 146420.100912.291683 FC

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | No. 11-17615 |
| | D.C. No. 2:09-md-02119-JAT |
| JONATHAN E. ROBINSON; SALLY J. ROBINSON-BURKE; ROSA A. SILVAS; JOSEPHA S. LOPEZ; JOSE TRINIDAD CASAS; MARIA C. CASAS; LYNDON B. GRAVES; TYRONE EVENSON; MICHELLINA EVENSON; BRYAN GRAY, [for complete list of plaintiff/appellants, see Notice of Appeal]; PABLO LEON, *Plaintiffs-Appellants*, | OPINION |
| v. | |
| AMERICAN HOME MORTGAGE SERVICING, INC.; AMERICA'S SERVICING COMPANY; AMERICA'S WHOLESALE LENDER; AURORA LOAN SERVICES, LLC; AZTEC FORECLOSURE CORP.; BAC HOME LOANS SERVICING LP; BANK OF AMERICA, NA; BANK OF NEW YORK MELLON; CALIFORNIA RECONVEYANCE CO.; CENTRAL MORTGAGE CO.; COOPER CASTLE LAW FIRM LLP; CR TITLE SERVICES, | |

INC.; DEUTSCHE BANK; EXECUTIVE
TRUSTEE SERVICES, LLC; FEDERAL
HOME LOAN MORTGAGE
CORPORATION; FEDERAL HOUSING
FINANCE AGENCY; FEDERAL
NATIONAL MORTGAGE
ASSOCIATION; FIDELITY NATIONAL
TITLE INSURANCE CO.; FIRST
AMERICAN LOAN STAR TRUSTEE
SERVICES, LLC; FIRST HORIZON
HOME LOAN CORP.; G.E. MONEY
BANK; GMAC MORTGAGE, LLC;
HOUSEKEY FINANCIAL CORP.; HSBC
MORTGAGE CORPORATION, USA;
HSBC MORTGAGE SERVICES, INC.;
HSBC BANK, U.S.A., N.A.; IB
PROPERTY HOLDINGS; JPMORGAN
CHASE BANK; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; MERSCORP, INC.;
MORTGAGE IT, INC.; MTC
FINANCIAL, INC., DBA Trustee
Corps.; NATIONAL CITY MORTGAGE;
PNC FINANCIAL SERVICES GROUP,
INC.; NATIONAL DEFAULT
SERVICING CORP.; NDEX WEST
LLC; OLD REPUBLIC NATIONAL
TITLE INSURANCE CO.; QUALITY
LOAN SERVICE CORPORATION;
RECONTRUST COMPANY; SAXON
MORTGAGE, INC.; T.D. SERVICE
COMPANY; UTLS DEFAULT
SERVICES, LLC; WELLS FARGO

In Re: MERS                                    3

BANK, NA; WESTERN PROGRESSIVE
TRUSTEE, LLC; CITYMORTGAGE,
INC.; LIME FINANCIAL SERVICES
LIMITED,
                    *Defendants - Appellees.*

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted
November 7, 2013—San Francisco, California

Filed June 12, 2014

Before: A. Wallace Tashima, William A. Fletcher,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY*

### Multidistrict Litigation / Property Law

Addressing multidistrict litigation raising claims related to the formation and operation of the MERS System, a private electronic database that records the ownership of and servicing rights in home loans, the panel dismissed an appeal from an order of the Judicial Panel on Multidistrict Litigation and affirmed in part and reversed in part the Multidistrict Litigation Court's dismissal of the plaintiffs' consolidated amended complaint.

The panel also ordered stayed a portion of the appeal in light of a defendant's bankruptcy proceedings.

The plaintiffs were borrowers who resided in Arizona, California, Nevada, Oregon, and South Carolina, and whose notes and deeds of trust were processed through the MERS System. The defendants were various financial institutions that had interests in the notes and deeds of trust or had otherwise been involved in the operation of the MERS System.

The panel dismissed the plaintiffs' appeal from the JPML's order transferring cases to the MDL Court for consolidated pretrial litigation on the ground that mandamus is the exclusive mechanism for reviewing JPML orders.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the plaintiffs had waived their arguments regarding the MDL Court's orders determining which claims the JPML had remanded to transferor courts, and which it had transferred to the MDL Court.

The panel held that the MDL Court did not convert the defendants' motion to dismiss into a motion for summary judgment.

The panel reversed the district court's dismissal of Count I, seeking relief based on violations of Arizona's false documents statute when the defendants allegedly filed false notices of trustee sale, notices of substitution of trustee, and assignments of deed of trust. The plaintiffs alleged that these documents were notarized in blank and "robosigned" with forged signatures.

The panel affirmed the dismissal of Count II, alleging that the defendants had committed, or would commit, the tort of wrongful foreclosure, in violation of Arizona, California, and Nevada law, because the MERS System impermissibly "splits" ownership of the note from ownership of the deed of trust, thereby making the promissory note unsecured and unenforceable in any foreclosure proceeding. The panel held that these claims failed because none of the plaintiffs alleged lack of default, tender to cure the default, or an excuse from tendering.

The panel affirmed the dismissal of Count III, alleging that nonjudicial foreclosures conducted under Nev. Rev. Stat. § 107.080 were improper.

6                          IN RE: MERS

The panel affirmed the dismissal of Count V, alleging aiding and abetting wrongful foreclosure under Arizona, California, and Nevada law.

The panel affirmed the dismissal of Count VI, alleging aiding and abetting predatory lending under Arizona, California, and Nevada law, on the basis that claims concerning loan origination practices had been remanded to the transferor courts by the JPML.

The panel affirmed the district court's denial of leave to amend the complaint.

---

## COUNSEL

Robert Hager and Treva Hearne (argued), Hager & Hearne, Reno, Nevada; William A. Nebeker, Valerie R. Edwards (argued), and Lisa Irene Streu, Koeller Nebeker Carlson & Haluck, LLP, Phoenix, Arizona; and Sheryl Serreze, Reno Law Group, LLC, Reno, Nevada, for Plaintiffs-Appellants.

Andrew Martin Jacobs, Snell & Wilmer, LLP, Tucson, Arizona; Andrew R. Louis, Buckley Sandler, LLP, Washington, D.C.; Cynthia Lynn Alexander and Kelly Harrison Dove, Snell & Wilmer, LLP, Las Vegas, Nevada; Patrick G. Byrne, Gregory J. Marshall, Barbara Dawson, Snell & Wilmer, LLP, Phoeniz, Arizona; Michael R. Pennington, Bradley Arant Boult Cummings, LLP, Birmingham, Alabama; Matthew P. Previn, Buckley Sandler LLP, New York, New York; Henry Faulkner Reichner and Ira S. Lefton, Reed Smith LLP, Philadelphia, Pennsylvania; Thomas Hefferon (argued) and Joseph Yenouskas, Goodwin Proctor LLP, Washington, D.C.; Gary Edward Schnitzer,

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 151 of 491

Kravitz, Schnitzer, Sloane and Johnson, Las Vegas, Nevada; Gregory B. Iannelli, Bryan Cave, LLP, Phoenix, Arizona; Thomas Justin Cunningham, Hugh Balsam, J. Matthew Goodin, Phillip Russell Perdew, Locke Lord, LLP, Chicago, Illinois; Justin Donald Balser, Akerman Senterfitt, Denver, Colorado; Kristin Schuler-Hintz, McCarthy & Holthus, LLP, Las Vegas, Nevada; Paul M. Levine, Matthew A. Silverman, McCarthy, Holthus & Levine, LLP, Scottsdale, Arizona; Robert W. Norman, Houser & Allison, APC, Irvine, California; Ariel Edward Stern, Akerman, LLP, Las Vegas, Nevada; Jonathan D. Fink, Wright, Finlay & Zak, Newport Beach, California; Christopher Jorgensen, Lewis Roca Rothgerber, LLP, Las Vegas, Nevada; Ann Martha Andrews, Lewis Roca Rothgerber, LLP, Phoenix, Arizona; Stefan M. Palys, Stinson Morrison Hecker, LLP, Phoenix, Arizona; David Ray Hall, Parsons Behle & Latimer, Salt Lake City, Utah; LeAnn Pedersen Pope, Danielle Jean Szukala, Burke, Warren, Mackay & Serritella, PC, Chicago, Illinois; Jennifer Reiter, Maynard Cronin Erickson Curran & Sparks, PLC, Phoenix, Arizona; Kent F. Larsen, Joseph T. Prete, Smith Larsen & Wixom, Las Vegas, Nevada; Laurel I. Handley, Pite Duncan, LLP, San Diego, California; David Winthrop Cowles, William Morris Fischbach, III, Leonard McDonald, Jr., Tiffany & Bosco, PA, Phoenix, Arizona; Kevin Hahn, Malcolm & Cisneros, Irvine, California; Aaron Michael Waite, The Cooper Castle Law Firm, LLP, Las Vegas, Nevada; Lucia Nale, Thomas V. Panoff, Mayer Brown, LLP, Chicago, Illinois; Lauren Elliott Stine, Quarles & Brady, LLP, Phoenix, Arizona; Karen Ann Braje, Dennis Peter Maio, Reed Smith, LLP, San Francisco, California;  Michael Q. Eagan, Jr., Elizabeth Allen Frohlich, Morgan Lewis & Bockius, LLP, San Francisco, California; Lorenzo Emilio Gasparetti, Reed Smith, LLP, Los Angeles, California;  Ira S. Lefton, Reed Smith, LLP, Philadelphia, Pennsylvania;

Gregory Wendell Falls, Sherman & Howard, LLC, Phoenix, Arizona; Mark S. Landman, Landman Corsi Ballaine & Ford PC, New York, New York; Howard Lindenberg, Federal Home Loan Mortgage, McLean, Virginia; Jill L. Nicholson, Jonathan William Garlough, Joanne Lee, Foley & Lardner, LLP, Chicago, Illinois; Howard N. Cayne, David Fauvre, Arnold & Porter, LLP, Washington, D.C.; Steven Edward Guinn, Laxalt & Normura, Ltd., Reno, Nevada; James R. Condo, Snell & Wilmer, LLP, Phoenix, Arizona; Christina Wang (argued), Fidelity National Law Group, Henderson, Nevada; Neil Ackerman, Neil Ackerman, LLP, Las Vegas, Nevada; Keith Beauchamp, Roopali H. Desai, Coppersmith Schermer & Brockelman, PLC, Phoenix, Arizona; Benjamin B. Klubes, Buckler Sandler, LLP, Washington, D.C.; Robert Bruce Allensworth, Gregory N. Blase, Brian M. Forbes, K&L Gates, LLP, Boston, Massachusetts; Rachel E. Donn, Marilyn Fine, Meier & Fine, LLC, Las Vegas, Nevada; Peter E. Dunkley, Wolfe & Wyman, LLP, Las Vegas, Nevada; Gregory L. Wilde, Tiffany & Bosco, PA, Las Vegas, Nevada; Douglas Erickson, Maynard Cronin Erickson Curran & Sparks, PLC, Phoenix, Arizona; Robert M. Brochin (argued) and Benjamin Weinberg, Morgan Lewis & Bockius, LLP, Miami, Florida; Brian J. Schulman, Laura Sixkiller, Greenberg Traurig, LLP, Phoenix, Arizona; Richard Joseph Reynolds (argued), Burke Williams & Sorensen, LLP, Santa Ana, California; William F. Hyder, William F. Hyder, PC, Phoenix, Arizona; David H. Pittinsky, Ballard Spahr, LLP, Philadelphia, Pennsylvania; Abran Vigil, Ballard Spahr, LLP, Las Vegas, Nevada; Adam Kyle Bult, Brownstein Hyatt Farber Schreck, LLP, Las Vegas, Nevada; Edward A. Treder, Barrett Daffin Frappier Treder & Weiss, LLP, Diamond Bar, California; Ann Martha Andrews, Lewis Roca Rothgerber, LLP, Phoenix, Arizona; Barbara Dawson, Snell & Wilmer, LLP, Phoenix, Arizona; Kelly Harrison Dove, Snell &

Wilmer, LLP, Las Vegas, Nevada; Randall W. Edwards, O'Melveny & Myers, LLP, San Francisco, California; Elizabeth Lemond McKeen, O'Melveny & Myers, LLP, Newport Beach, California, for Defendants-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Mortgage Electronic Registration Systems, Inc. ("MERS"), a subsidiary of MERSCORP, Inc., operates an electronic mortgage registration system ("the MERS System"). MERS is distinct from the MERS System. The MERS System is a private electronic database that records the ownership of and servicing rights in home loans. Various financial institutions are members of the MERS System. We described the operation of the System in our recent decision in *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). We have before us an appeal from an order of the district court dismissing plaintiffs' claims related to the formation and operation of the MERS System. We dismiss in part, affirm in part, and reverse in part.

### I. Background

Under the MERS System, the lender owns the home loan borrower's (or mortgagor's) promissory note. MERS, as the "nominee" of the lender and of any assignee of the lender, is designated in the deed of trust (or mortgage) as the "beneficiary" (or mortgagee) under the deed of trust. (For convenience, we will use the terms "borrower," "deed of trust," and "beneficiary," rather than "mortgagor,"

"mortgage," and "mortgagee.") MERS rather than the lender or lender's assignee is recorded as the beneficiary under the deed of trust in the recording system of the county where the property is located.

Use of the MERS System typically begins when a borrower from a MERS member signs a promissory note and a deed of trust. The MERS member takes possession of the note, and MERS is recorded as the beneficiary under the deed of trust. The note is almost always assigned to others, often several times over. If the note is assigned to a MERS member, MERS remains the beneficiary under the deed of trust. MERS contends that there is no need to record the assignment of the note so long as the assignee is a MERS member. However, when an assignment is made to a nonmember of MERS, the identity of the assignee is recorded. About half of the residential mortgages in the United States are now recorded with MERS named as the beneficiary under the deed of trust. *See Robo-signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing: Hearing Before the Subcomm. on Hous. and Cmty. Opportunity of the H. Comm. on Fin. Servs.*, 111th Cong. 101 (2010) (statement of R.K. Arnold, President and CEO, MERSCORP, Inc.); *see also* Jesse Hamilton, *U.S. Regulators Examining Departures at Mortgage Registry*, Bloomberg (Apr. 15, 2014, 9:01 PM), http://www.bloomberg.com/news/2014-04-16/u-s-regulators-examining-departures-at-mortga ge-registry.html.

The MERS System has been sharply criticized. *See, e.g.*, Tanya Marsh, *Foreclosures and the Failure of the American Land Title Recording System*, 111 Colum. L. Rev. Sidebar 19, 23–24 (2011) (noting that MERS has been a "controversial innovation" and highlighting that the System's "inherent

opaqueness" may conceal "shoddy recordkeeping practices");
Christopher L. Peterson, *Foreclosure, Subprime Mortgage
Lending, and the Mortgage Electronic Registration System*,
78 U. Cin. L. Rev. 1359, 1374, 1407 (2010) (outlining
MERS's "[q]uestionable" legal foundations and arguing that
"[t]he shift away from recording loans in the name of actual
mortgagees and assignees represents an important policy
change that erodes not only the tax base of local
governments, but also the usefulness of the public land title
information infrastructure"); Christopher L. Peterson, *Two
Faces: Demystifying the Mortgage Electronic Registration
System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111,
120, 125–27 (2011) (criticizing the "incoherence of MERS's
legal position" regarding MERS's status with respect to
mortgages registered in the MERS System, which is
"exacerbated by a corporate structure that is so unorthodox as
to be considered arguably fraudulent," and criticizing the
unreliability of the MERS database); David P. Weber, *The
Magic of the Mortgage Electronic Registration System: It Is
and It Isn't*, 85 Am. Bankr. L.J. 239, 239–40, 264 (2011)
(describing MERS's "imperfect implementation and lack of
transparency"); *see also* Michael Powell & Gretchen
Morgenson, *MERS? It May Have Swallowed Your Loan*,
N.Y. Times, March 6, 2011, http://www.nytimes.com/2011/
03/06/business/06mers.html (describing the "mounting" legal
challenges facing MERS).

The obvious advantage of the MERS System is that it
allows residential lenders to avoid the bother and expense of
recording every change of ownership of promissory notes.
*See, e.g.*, Phyllis K. Slesinger & Daniel McLaughlin,
*Mortgage Electronic Registration System*, 31 Idaho L. Rev.
805, 808 (1995); *About Us*, MERS, http://www.mersinc.org/
about-us/about-us (last visited May 5, 2014) (stating that

MERS was "created by the mortgage banking industry to streamline the mortgage process"). Critics have pointed out, however, that this advantage accrues almost exclusively to financial institutions, and that the MERS System has a number of disadvantages: It has substantially undermined what had been a comprehensive, stable, and relatively reliable public system of recording interests in residential real estate. Ownership of notes for residential loans that are processed through the MERS System is now recorded in the System's electronic database, but that information is not available to the general public. It is impossible to determine from an inspection of county records who is the actual owner of any note secured by a deed of trust for which MERS is named as the beneficiary.    The familiar county-by-county public recording system has thus been replaced, in significant part, by a largely invisible and not always reliable system of voluntary record-keeping by MERS members. *See, e.g.,* Alan M. White, *Losing the Paper – Mortgage Assignments, Note Transfers, and Consumer Protection,* 24 Loy. Consumer L. Rev. 468, 502–04 (2012). Further, because the identities of the actual owners of the notes and beneficiaries of the deeds of trust are not public knowledge, renegotiation of mortgage loans processed through the MERS System is very difficult, often impossible. The MERS System has also facilitated the bundling of promissory notes into investment pools, and the sale of interests in those pools to downstream investors. Before the mortgage loan crisis in 2008, the bundling of notes and sale of interests to investors greatly encouraged the flow of money into the overheated residential mortgage market.

Some states have enacted legislation to mitigate the difficulties created by the widespread use of the MERS System. Many of these statutes seek to increase transparency in the foreclosure process by requiring that foreclosure

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 157 of 491

notices provide more information to the homeowner about the parties involved in the foreclosure proceedings. *See generally* John Rao et al., Nat'l Consumer Law Ctr., Foreclosures 146–47 & n.349 (3d ed. 2010) (compiling laws in California, Colorado, Georgia, Maine, Maryland, Massachusetts, New Jersey, and North Carolina). California, under whose law a number of claims in this case arise, has recently enacted the Homeowner Bill of Rights. Among other things, the new California statute seeks to ensure that "borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options," including by streamlining communication between the distressed borrower and foreclosing party. *See* Assemb. B. 278, 2011–2012 Leg., Reg. Sess. (Cal. 2012); S.B. 900, 2011–2012 Leg., Reg. Sess. (Cal. 2012).

There has been a wave of litigation in state and federal courts challenging various aspects of the MERS System. Almost all of the relevant law is state rather than federal. The results under state law have been inconsistent. *See* Weber, *supra*, at 246–56 (cataloguing the "schizophrenic position of state courts" on issues relating to the MERS System). Some state supreme courts have upheld the MERS System on issues ranging from foreclosure authority to recording requirements. *See, e.g., Renshaw v. Mortg. Elec. Registration Sys., Inc.,* 315 P.3d 844, 846–47 (Idaho 2013) (holding that MERS may be a beneficiary as nominee for the lender, that assignments of the deed of trust between MERS members need not be recorded, that MERS was not liable to the borrower in negligence, and that the Idaho Consumer Protection Act did not provide a cause of action to the borrower); *Jackson v. Mortg. Elec. Registration Sys., Inc.,* 770 N.W.2d 487, 501 (Minn. 2009) (holding that Minnesota law does not require

14                              In Re: MERS

recording of assignments of promissory notes among MERS members); *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 252 (Nev. 2012) (stating that, although a split note and deed are not enforceable, under Nevada law "any split is cured when the promissory note and the deed of trust are reunified"); *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1081, 1083–89 (R.I. 2013) (holding that MERS had the contractual authority to invoke the power of sale and the right to foreclose and that Rhode Island law did not preclude foreclosure where the noteholder and the mortgagee were not the same entity).

Other state supreme courts have reached essentially opposite conclusions. *See, e.g., Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark.*, 301 S.W.3d 1, 4 (Ark. 2009) (holding that, because MERS receives no payments on the debt, it is not the beneficiary, even though it is so designated in the deed of trust); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166–67 (Kan. 2009) ("[I]n the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable."); *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2 A.3d 289, 297 (Me. 2010) (holding that MERS lacked standing to foreclose as the lender's nominee); *CPT Asset Backed Certificates, Series 2004-EC1 v. Cin Kham*, 278 P.3d 586, 592–93 (Okla. 2012) (holding that the putative noteholder lacked standing to foreclose because MERS lacked authority to assign the note, though it arguably had authority to assign the mortgage); *Brandrup v. ReconTrust Co., N.A.*, 303 P.3d 301, 304–05 (Or. 2013) (en banc) (holding that MERS was not the "beneficiary" of a deed of trust under the Oregon Trust Deed Act absent conveyance to MERS of the beneficial right to repayment, and that MERS

could not hold or transfer legal title to the deed as the lender's nominee); *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34 (Wash. 2012) (en banc) (holding that "MERS is an ineligible "'beneficiary' within the terms of the Washington Deed of Trust Act' if it never held the promissory note or other debt instrument secured by the deed of trust," and that "characterizing MERS as the beneficiary has the capacity to deceive" and may give rise to an action under the Consumer Protection Act); *see also MERSCORP, Inc. v. Romaine*, 861 N.E.2d 81, 88–89 (N.Y. 2006) (Kaye, C.J., dissenting in part) (identifying concerns with the MERS system and "at least a disparity between the relevant statute . . . and the burgeoning modern-day electronic mortgage industry").

Federal courts, applying state law, have reached similarly disparate results. *Compare, e.g., Montgomery Cnty., Pa. v. MERSCORP, Inc.*, 904 F. Supp. 2d 436, 441 (E.D. Pa. 2012) (applying Pennsylvania law and holding that the County's allegations that MERS violated recording statutes by failing to record assignments stated a claim for relief), *In re Thomas*, 447 B.R. 402, 412 (Bankr. D. Mass. 2011) (applying Massachusetts law and holding that "[w]hile the assignment purports to assign both the mortgage and the note, MERS . . . was never the holder of the note, and therefore lacked the right to assign it. . . . MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record"), *and In re Wilhelm*, 407 B.R. 392, 404 (Bankr. D. Idaho 2009) (applying Idaho law and holding that MERS is not authorized "either expressly or by implication" to transfer notes as the "nominal beneficiary" of the lender), *with Town of Johnston v. MERSCORP, Inc.*, 950 F. Supp. 2d 379, 384 (D.R.I. 2013) (holding Rhode Island law does not require recording of assignments among MERS members); *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d

616, 623 (N.D. Tex. 2011) (granting summary judgment to defendants on plaintiffs' claims that assignments by MERS were invalid and rendered foreclosure defective), *and Moore v. McCalla Raymer, LLC*, 916 F. Supp. 2d 1332, 1344–45 (N.D. Ga. 2013) (applying Georgia law and holding that, even assuming the plaintiff had standing to challenge the foreclosure on the theory that MERS assignments were invalid, that theory did not provide a basis for a wrongful foreclosure claim).

A number of federal lawsuits challenging the formation and operation of the MERS System were consolidated by the Judicial Panel on Multidistrict Litigation ("the JPML") and transferred in part to a Multidistrict Litigation Court ("the MDL Court") in the District of Arizona.    The JPML remanded to the respective transferor courts "claims unrelated to the formation and/or operation of the MERS system." Judge Teilborg of the MDL Court issued a series of orders determining which claims had been transferred to the MDL Court, and which had been remanded to the transferor courts. In an early order on the merits, the MDL Court dismissed several of the transferred actions. We affirmed that dismissal in *Cervantes*.   656 F.3d 1034.

Plaintiffs in the remaining actions before the MDL Court filed a single Consolidated Amended Complaint ("CAC"). Plaintiffs are borrowers who reside in Arizona, California, Nevada, Oregon, and South Carolina, and whose notes and deeds of trust were processed through the MERS System. Defendants are various financial institutions who have, or have had, interests in the notes and deeds of trust, or who have otherwise been involved in the operation of the MERS System. The MDL Court dismissed the CAC with prejudice, and plaintiffs timely appealed.

For the reasons that follow, we dismiss in part, affirm in part, and reverse in part.

## II. Standard of Review

We review orders of the JPML only by writ of mandamus. 28 U.S.C. § 1407(e); *see id.* § 1651(a). We review de novo the district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). The district court's denial of leave to amend is reviewed for abuse of discretion. *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1105 (9th Cir. 2012).

## III. Discussion

### A. JPML Order

Appellants contend on appeal that the JPML erred in transferring the cases to the MDL Court for consolidated pretrial litigation. Mandamus is the exclusive mechanism for reviewing JPML orders. 28 U.S.C. § 1407(e); *see In re Wilson*, 451 F.3d 161, 168 (3d Cir. 2006); *In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litig.*, 73 F.3d 528, 534 (4th Cir. 1996). Appellants have not sought a writ of mandamus, and we dismiss for lack of jurisdiction their appeal of the JPML Order.

### B. MDL Court Remand Orders

Appellants contend that the MDL Court erred in determining which claims were remanded to the transferor courts under the JPML Order. They argue that the MDL Court exceeded its authority in deciding which claims were

remanded. They also argue that the MDL Court was
inconsistent in determining which claims were remanded to
the transferor courts under the JPML Order. They made
neither argument to the MDL Court.

Generally, arguments not raised in the district court will
not be considered for the first time on appeal. *Exxon
Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008); *see also
Pinney v. Nokia, Inc.*, 402 F.3d 430, 452 (4th Cir. 2005)
(holding that plaintiffs had waived the issue of remand by
failing to raise it with the JPML or the district court). We see
no reason to depart from our general practice here. We hold
that appellants have waived their arguments regarding the
MDL Court's remand orders.

### C. Summary Judgment

Appellants contend that the MDL Court improperly
converted defendants' motion to dismiss for failure to state a
claim into a motion for summary judgment. We disagree.

The Federal Rules provide for sua sponte conversion of a
Rule 12(b)(6) motion to dismiss to a Rule 56 motion for
summary judgment "if . . . matters outside the pleadings are
presented to and not excluded by the court." Fed. R. Civ. P.
12(d). The district court must notify the parties before taking
such action, in order to provide to the parties a fair
opportunity to present material relevant to summary
judgment. *Id.*; *Garaux v. Pulley*, 739 F.2d 437, 438–39 (9th
Cir. 1984).

Nothing in the record suggests that the MDL Court
considered extraneous materials in ruling on defendants'
motion to dismiss under Rule 12(b)(6). The record makes

clear that the MDL Court dismissed the CAC based only on the deficiencies in the CAC. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (explaining that Rule 12(b)(6) provides for dismissal where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory").

### D. Dismissal of the Complaint

The MDL Court dismissed with prejudice all claims in the CAC. The CAC is long and somewhat diffuse, not always making clear the state whose law is at issue. Further, appellants' brief on appeal does not specify with complete clarity which claims in the CAC they contend were improperly dismissed. As best we can determine, appellants appeal the dismissals of Count I (violation of Ariz. Rev. Stat. § 33-420 (false documents)); Count II (wrongful foreclosure under Arizona, California, and Nevada law); Count III (violation of Nev. Rev. Stat. § 107.080 (nonjudicial foreclosure)); Count V (aiding and abetting wrongful foreclosure under Arizona, California, and Nevada law); and Count VI (aiding and abetting predatory lending under Arizona, California, and Nevada law). Some of these claims were brought against fewer than all of the defendants. Claims brought under Oregon law were withdrawn in the MDL Court, and claims brought under South Carolina law were not raised in appellants' opening brief. The appeal from the dismissal of claims brought against defendant-appellee Cal-Western Reconveyance Corporation has been automatically stayed, under a separate order, because of the pendency of Cal-Western's bankruptcy proceeding.

### 1. Count I: Ariz. Rev. Stat. § 33-420

The CAC seeks damages and declaratory relief based on alleged violations of Arizona's false documents statute, Ariz. Rev. Stat. § 33-420. The statute provides in relevant part:

> A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner . . . of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

> B. The owner or beneficial title holder of the real property may bring an action pursuant to this section . . . as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section. . . .

. . . .

> D. A document purporting to create an
> interest in, or a lien or encumbrance against,
> real property not authorized by statute,
> judgment or other specific legal authority is
> presumed to be groundless and invalid.

The CAC alleges that defendants filed false notices of trustee sale, notices of substitution of trustee, and assignments of deed of trust. The CAC alleges that these documents were notarized in blank and "robosigned" with forged signatures. Appellants seek damages and declaratory relief against clouding of their title based on these allegedly forged documents.

Writing in 2011, the MDL Court dismissed Count I on four grounds. None of these grounds provides an appropriate basis for dismissal. We recognize that at the time of its decision, the MDL Court had plausible arguments under Arizona law in support of three of these grounds. But decisions by Arizona courts after 2011 have made clear that the MDL Court was incorrect in relying on them.

First, the MDL Court concluded that § 33-420 does not apply to the specific documents that the CAC alleges to be false. However, in *Stauffer v. U.S. Bank National Ass'n*, 308 P.3d 1173, 1175 (Ariz. Ct. App. 2013), the Arizona Court of Appeals held that a § 33-420(A) damages claim is available in a case in which plaintiffs alleged as false documents "a Notice of Trustee Sale, a Notice of Substitution of Trustee, and an Assignment of a Deed of Trust." These are precisely the documents that the CAC alleges to be false.

Second, the MDL Court held that appellants' claims under § 33-420 are time-barred. However, in *Sitton v. Deutsche Bank National Trust Co.*, 311 P.3d 237, 241 (Ariz. Ct. App. 2013), the Arizona Court of Appeals held that damages claims under § 33-420(A) are subject to a four-year statute of limitations. The allegedly false documents upon which the CAC relies date from no earlier than February 15, 2008. Appellants' complaint was filed within the four-year statute of limitations for even the earliest purported false document. The Arizona courts have not made a comparably definitive pronouncement as to the limitations period for claims brought under § 33-420(B), whether brought as separate claims or joined to damages claims. But at least one case has suggested that a § 33-420(B) claim asserts a continuous wrong that is not subject to any statute of limitations as long as the cloud to title remains. *State v. Mabery Ranch, Co.*, 165 P.3d 211, 227 (Ariz. Ct. App. 2007).

Third, the MDL Court held that appellants lacked standing to sue under § 33-420 on the ground that, even if the documents were false, appellants were still obligated to repay their loans. In the view of the MDL Court, because appellants were in default they suffered no concrete and particularized injury. However, on virtually identical allegations, the Arizona Court of Appeals held to the contrary in *Stauffer*. The plaintiffs in *Stauffer* were defaulting residential homeowners who brought suit for damages under § 33-420(A) and to clear title under § 33-420(B). One of the grounds on which the documents were alleged to be false was that "the same person executed the Notice of Trustee Sale and the Notice of Breach, but because the signatures did not look the same, the signature of the Notice of Trustee Sale was possibly forged." *Stauffer*, 308 P.3d at 1175 n.2. The trial court dismissed on the pleadings. The Arizona Court of

IN RE: MERS                    23

Appeals reversed the dismissal under both §§ 33-420(A) and
(B). It wrote:

> Appellees argue that the Stauffers do not have
> standing because the Recorded Documents
> have not caused them any injury, they have
> not disputed their own default, and the
> Property has not been sold pursuant to the
> Recorded Documents. The purpose of A.R.S.
> § 33-420 is to "protect property owners from
> actions clouding title to their property." We
> find that the recording of false or fraudulent
> documents that assert an interest in a property
> may cloud the property's title; in this case, the
> Stauffers, as owners of the Property, have
> alleged that they have suffered a distinct and
> palpable injury as a result of those clouds on
> their Property's title.

*Id.* at 1179 (citation omitted).

The Court of Appeals not only held that the Stauffers had
standing based on their "distinct and palpable injury." It also
held that they had stated claims under §§ 33-420(A) and (B).
The court held that because the "Recorded Documents
assert[ed] an interest in the Property," the trial court had
improperly dismissed the Stauffers' damages claim under
§ 33-420(A). *Id.* at 1178. It then held that because the
Stauffers had properly brought an action for damages under
§ 33-420(A), they could join an action to clear title of the
allegedly false documents under § 33-420(B). The court
wrote:

> The third sentence in subsection B states that
> an owner "may bring a separate special action
> to clear title to the real property or join such
> action with an action for damages as
> described in this section." A.R.S. § 33-420.B.
> Therefore, we find that an action to clear title
> of a false or fraudulent document that asserts
> an interest in real property may be joined with
> an action for damages under § 33-420.A.

*Id.* We therefore conclude, based on *Stauffer*, that appellants
have standing to sue.

    Fourth, the MDL Court held that appellants had not
pleaded their robosigning claims with sufficient particularity
to satisfy Federal Rule of Civil Procedure 8(a). We disagree.
Section 33-420 characterizes as false, and therefore
actionable, a document that is "*forged*, groundless, contains
a material misstatement or false claim or is otherwise
invalid." Ariz. Rev. Stat. §§ 33-420(A), (B) (emphasis
added). The CAC alleges that the documents at issue are
invalid because they are "robosigned (forged)." The CAC
specifically identifies numerous allegedly forged documents.
For example, the CAC alleges that notice of the trustee's sale
of the property of Thomas and Laurie Bilyea was "notarized
in blank prior to being signed on behalf of Michael A. Bosco,
and the party that is represented to have signed the document,
Michael A. Bosco, did not sign the document, and the party
that did sign the document had no personal knowledge of any
of the facts set forth in the notice." Further, the CAC alleges
that the document substituting a trustee under the deed of
trust for the property of Nicholas DeBaggis "was notarized in
blank prior to being signed on behalf of U.S. Bank National
Association, and the party that is represented to have signed

the document, Mark S. Bosco, did not sign the document."
Still further, the CAC also alleges that Jim Montes, who
purportedly signed the substitution of trustee for the property
of Milan Stejic had, on the same day, "signed and recorded,
with differing signatures, numerous Substitutions of Trustee
in the Maricopa County Recorder's Office . . . . Many of the
signatures appear visibly different than one another." These
and similar allegations in the CAC "plausibly suggest an
entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 681
(2009), and provide the defendants fair notice as to the nature
of appellants' claims against them, *Starr v. Baca*, 652 F.3d
1202, 1216 (9th Cir. 2011).

We therefore reverse the MDL Court's dismissal of
Count I.

### 2. Count II: Wrongful Foreclosure

Appellants contend that defendants have committed, or
will commit, the tort of wrongful foreclosure, in violation of
Arizona, California, and Nevada law. They argue that the
MERS System impermissibly "splits" ownership of the note
from ownership of the deed of trust, thereby making the
promissory note unsecured and unenforceable in any
foreclosure proceeding. The MDL Court concluded that
Arizona, California, and Nevada permit "splitting" the note
from the deed of trust.

The principle that ownership of the note and the deed of
trust must be unified has a long common-law pedigree. For
example, the Supreme Court wrote in *Carpenter v. Longan*,
83 U.S. 271 (1872), "The note and mortgage are inseparable;
the former as essential, the latter as an incident. An
assignment of the note carries the mortgage with it, while an

assignment of the latter alone is a nullity." *Id.* at 274. However, the degree to which this principle has been preserved in the laws of Arizona, California and Nevada, and the extent of its application in particular situations, is not entirely clear. We need not address appellants' argument about "splitting" the note from the deed of trust in order to decide their claims of tortious wrongful foreclosure. The claims fail for another reason: None of the appellants has alleged lack of default, tender to cure the default, or an excuse from tendering.

Arizona, though a nonjudicial foreclosure state, has not expressly recognized the tort of wrongful foreclosure. *See Herring v. Countrywide Home Loans, Inc.*, No. CV-06-2622-PHX-PGR, 2007 WL 2051394, at *5 (D. Ariz. July 13, 2007) (noting that Arizona has neither affirmatively recognized nor denied the existence of a cause of action for wrongful foreclosure). But even if we were to assume that the tort of wrongful foreclosure exists in Arizona, one of its elements would very likely be lack of default or tender to cure the default, as is required under California and Nevada law, or an excuse from the tender requirement, as recognized by California. *Cf.* Ariz. Rev. Stat. § 33-807(A) (providing for a power of sale only after a breach or default in performance of the contract or contracts).

California law requires that, in order to bring a valid claim for tortious wrongful foreclosure, the plaintiff must allege that

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party

> attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, *the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.*

*Lona v. Citibank, N.A.*, 134 Cal. Rptr. 3d 622, 633 (Cal. Ct. App. 2011) (collecting cases) (emphasis added). Excuses from California's tender requirement are the following:

> (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred.

*Chavez v. Indymac Mortg. Servs.*, 162 Cal. Rptr. 3d 382, 390 (Cal. Ct. App. 2013).

Nevada law requires that a trustor or mortgagor show a lack of default in order to proceed with a wrongful foreclosure claim. The Nevada Supreme Court stated in *Collins v. Union Federal Savings & Loan Ass'n*, 662 P.2d 610 (Nev. 1983):

> An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part

IN RE: MERS

which would have authorized the foreclosure or exercise of the power of sale. Therefore, the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised.

*Id.* at 304 (citations omitted).

Because none of the appellants has shown a lack of default, tender, or an excuse from the tender requirement, appellants' wrongful foreclosure claims cannot succeed. We therefore affirm the MDL Court's dismissal of Count II.

### 3. Count III: Nev. Rev. Stat. § 107.080

Section 107.080 of the Nevada Revised Statutes specifies procedures that must be followed for nonjudicial foreclosures. A trustee sale may be set aside for lack of substantial compliance with any of the requirements of § 107.080. Nev. Rev. Stat. § 107.080(5)(a). Damages may be awarded if the foreclosing party has failed to comply with specified waiting periods or with notice and recording requirements specified in § 107.080. *Id.* § 107.080(7).

Appellants contend that the Nevada nonjudicial foreclosures, conducted under § 107.080, were improper. The CAC alleges that none of the parties issuing the notice of default or the notice of the trustee's sale was "the beneficiary, the successor in interest to the beneficiary, or the trustee appointed by the lender." The basis for their contention is that, once MERS was designated as the beneficiary under the deed of trust, the deed of trust and the note were irreparably split. The CAC states that the "specific facts" for each Nevada plaintiff are contained in Exhibit 4 to the CAC. The

key language in Exhibit 4, repeated verbatim for each Nevada plaintiff, is as follows: "Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property of the proceeds of the loan."

We disagree with appellants' contention. After the decision of the MDL Court and just before the completion of briefing in this appeal, the Nevada Supreme Court decided *Edelstein v. Bank of New York Mellon*, 286 P.3d 249 (Nev. 2012). *Edelstein* makes clear that MERS does have the authority, for purposes of § 107.080, to make valid assignments of the deed of trust to a successor beneficiary in order to reunify the deed of trust and the note. The court wrote:

> Designating MERS as the beneficiary does ... effectively "split" the note and the deed of trust at inception because . . . an entity separate from the original note holder . . . is listed as the beneficiary (MERS). . . . However, this split at the inception of the loan is not irreparable or fatal. . . . [W]hile entitlement to enforce both the deed of trust and the promissory note is required to foreclose, nothing requires those documents to be unified from the point of inception of the loan. . . . MERS, as a valid beneficiary, may assign its beneficial interest in the deed of trust to the holder of the note, at which time the documents are reunified.

*Id.* at 259–60; *see also Bergenfield v. Bank of Am.*, 302 P.3d 1141 (Nev. 2013) ("Nevada law permits the severance and independent transfer of deeds of trusts and promissory notes without impairing the right to ultimately foreclose. . . . But in order to nonjudicially foreclose a deed of trust of an owner-occupied residence, the party seeking foreclosure must demonstrate that it is both 'the current beneficiary of the deed of trust and the current holder of the promissory note.' [*Edelstein*,] 286 P.3d at 255; *see* NRS 107.080.").

We therefore affirm the MDL Court's dismissal of Count III.

### 4. Count V: Aiding and Abetting Wrongful Foreclosure Under Arizona, California, and Nevada Law

The CAC alleges that several defendants aided and abetted wrongful foreclosure. Aiding-and-abetting liability depends on the existence of an underlying tort. *See, e.g., Wells Fargo Bank v. Ariz. Laborers Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002) (en banc). As explained above, appellants have not stated a valid wrongful foreclosure claim under the laws of Arizona, California, or Nevada. Their claim for aiding and abetting wrongful foreclosure therefore necessarily fails, and we affirm the MDL Court's dismissal of Count V.

### 5. Count VI: Aiding and Abetting Predatory Lending Under Arizona, California, and Nevada Law

The CAC alleges that several of the defendants aided and abetted MERS members in fraudulently inducing appellants to enter into loan agreements. This allegation concerns loan origination practices; such claims have been remanded to the

transferor courts by the JPML. The MDL Court properly held that this count did not relate to the formation and operation of the MERS System. We therefore affirm its dismissal of Count VI.

## E. Leave to Amend

Appellants contend that they should have been given leave to amend their complaint. The MDL Court considered the factors set forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962), that govern assessments of whether to grant leave to amend. The MDL Court based its decision largely on the futility of amendment, along with the fact that appellants had already had the opportunity to file multiple complaints, including before the MDL Court, and that additional amendments would entail some level of prejudice to the defendants. We conclude that the MDL Court acted within its discretion in denying leave to amend and therefore affirm.

## Conclusion

We dismiss appellants' challenge to the JPML Order for lack of jurisdiction. Except for Count I, we affirm the MDL Court's dismissal of the CAC. As to Count I, we reverse and remand for further proceedings consistent with this opinion. Each side shall bear its own costs on appeal.

**DISMISSED in part, AFFIRMED in part, REVERSED in part, and REMANDED.**

*Supplemental Citations:* **Multiple Case Rulings going against Imposter Holder in Due Course with no paperwork**

*Augenstein v. Deutsche Bank National Trust Company,*

No. 2009-CA-000058-MR, Kentucky Ct. Appeals 2011

Trust: Soundview Home Loan Trust 2005-OPT4

Summary judgment for bank vacated and remanded.

"In this case, the complaint was filed on December 17, 2007, but the assignment of mortgage was not executed until January 3, 2008. Thus, Deutsche Bank had no present interest when it filed its complaint and failed to take any steps to correct this. Allowing Deutsche Bank to commence this action at a time when it lacked standing impermissibly allowed litigation to commence based upon mere expectancy of an interest."

*Bank of America v. Kabba,*

276 P.3d 1006, 2012 OK 23

Trust: Structured Asset Investment Loan Trust Series 2004-BNC2

"In the present case, Appellee has only presented evidence of an indorsed-in-blank note and an "Assignment of Mortgage." Appellee must prove that it is the holder of the note or the nonholder in possession who has the rights of a holder **prior** to the filing of the foreclosure proceeding. In the present matter the timeliness of the transfer is in question. Since Bank of America did not file the blank indorsement until it filed its motion for summary judgment it is impossible to determine from the record when Bank of America acquired its interest in the underlying note."

*Bank of New York v. Gindele,*

1st Dist. No. C-090251, 2010-Ohio-542

Trust: CWALT Alternative Loan Trust 2006-40T1

"A thorough review of the record reveals that the sole indication of its interest as mortgagee is an after-acquired assignment; and the bank failed to produce any evidence in the trial court affirmatively establishing a preexisting interest. Bank of New York has also asserted both that it had acted as an agent, and that its predecessor in interest had later ratified its foreclosure complaint. But because at the time of filing neither agency nor ratification had been alleged or documented, we will not entertain this argument on appeal."

1

### Bank of NY v. Cupo,

2012 WL 611849 (N.J.Super.App. Div. 2011

Motion to vacate default judgment was reversed for further findings on issue of standing, suggesting that lack of standing might make a judgment void, rather than treating standing as waived by default judgment.

### Bank of New York v. Mulligan,

Index 29399/07 (August 25, 2010)

Trust: CWALT 2006-OC1

Mortgage Amount: $392,000

Bank's application for an order of reference was denied without prejudice.

"The Court will grant plaintiff, BNY an order of reference when it presents: an affidavit by either an officer of BNY or someone with a valid power of attorney from BNY, possessing personal knowledge of the facts; an affidavit from EJy Harless clarifying his employment history for the past three years and what corporation he serves as an officer; and, an affidavit by an officer of BNY, explaining why BNY would purchase a nonperforming loan from MERS, as nominee for DECISION ONE."

### Bank of New York v. Myers,

Index 18236/2008 (February 23, 2009)

Trust: CWABS 2006-22

The Bank's summary judgment motion was denied, but within 60 days of the decision, the Bank was required to submit an Affidavit from Keri Selman explaining her employment history for the past three years and why Selman did not have a conflict of interest as the signor of many entities.

### Bank of New York v. Orosco,

2007 NY SLIP OP 31501(U) (November 19, 2007)

Trust: CWABS, Series 2006-SD2

Mortgage Amount: $436,000

"Plaintiff must address a second matter if it applies for an order of reference after demonstrating that the alleged assignment was recorded. Plaintiff's application is the third application for an order of reference

2

received by me in the past several days that contain an affidavit from Keri Selman. In the instant action, she alleges to be an Assistant Vice-president of the Bank of New York. On November 16,2007, I denied an application for an order of reference in which Keri Selman, in her affidavit of merit claims to be "Vice President of COUNTRYWIDE HOME LOANS, Attorney in fact for BANK OF NEW YORK." The Court is concerned that Ms. Selman might be engaged in a subterfuge, wearing various corporate hats. Before granting an application for an order of reference, the Court requires an affidavit from Ms. Selman describing her employment history for the past three years."

### Bank of New York v. Raftogianis,

13 A.3d 435 (2010), 418 N.J.Super. 323

Trust: American Home Mort. Investment Trust 2004-4

Mortgage Amount: $1,380,000

"Plaintiff, however, failed to establish that it was entitled to enforce the note as of the time the complaint was filed. In this case, there are no compelling reasons to permit plaintiff to proceed in this action. Accordingly, the complaint has been dismissed. That dismissal is without prejudice to plaintiff's right to institute a **new** action to foreclose at any time, provided that any **new** complaint must be accompanied by an appropriate certification, executed by one with personal knowledge of the circumstances, confirming that plaintiff is in possession of the original note as of the date any **new** action is filed. That certification must indicate the physical location of the note and the name of the individual or entity in possession."

### Bank of New York v. Silverberg,

86 AD3d 274, 926 N.Y.S.2d 532 (2d Dept 2011)

Trust: CWALT 2007-14-T2

Mortgage Amount: $479,000

"In sum, because MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the corrected assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff, Consequently, the plaintiff failed to show that it had standing to foreclose."

### Bank of New York Mellon v. Teague,

3

Case 4:15-cv-00141-DW Document 1-1 Filed 02/24/15 Page 179 of 491

Case No. 27-2009-CA-003121, Hernando Co. FL 2012

Trust: Novastar Mortgage Funding Trust 2005-1

"Second, to be entitled to foreclose, Plaintiff had to have been the holder of the Note and Mortgage at the time it filed this lawsuit. The undisputed, summary judgment evidence before the Court was that Plaintiff was not the holder at the inception of this case as Plaintiff did not have the original Note in its possession when it filed suit and the Note did not contain the requisite endorsement. The fact that Plaintiff filed what it contends is an original note on June 28, 2012 does not change this result, as the endorsement on that Note is to a different company, not Plaintiff, and even if the Note had been properly endorsed, the fact that Plaintiff may have been the holder as of June, 2012 does not change its lack of standing at the inception of this case...

The motion is granted and this case is dismissed without prejudice." (cites omitted)


*Bank of New York v. Trezza,*

14 Misc. 3d 1201(A), 2006 NY Slip Op 52367(U)

Trust: CWABS 2004-5

"In support of its motion, the plaintiff submits a purported assignment of the mortgage from MERS to the plaintiff; however, the mortgage does not empower MERS to assign the mortgage to any other entity. Furthermore, there is no proof that the Lender had previously assigned the mortgage to MERS, nor is there any other evidence to establish the plaintiff's ownership rights under the mortgage.

Based on the foregoing, the plaintiff has failed to establish that it has standing as a plaintiff in this matter."


*Bank of New York v. Singh,*

Index No. 22434/2007, Kings County (December 14, 2007)

Trust: CWABS, Series 2004-6

An order of reference was denied where the mortgage assignment was executed on June 28, 2007, with an antedated effective date of May 31, 2007. Suit was commenced on June 20, 2007. Judge Kurtz found that such an attempt to retroactively assign the mortgage was insufficient to establish plaintiff's ownership interest at the time the action was commenced.


*Bank of New York v. Torres,*

Index No. 31704/2006, Kings County (March 11, 2008)

4

Trust: CWABS 2005-6

*"ORDERED* that the plaintiff's ex parte application for an Order of Reference in Mortgage Foreclosure is denied without prejudice to renew due to plaintiffs failure to demonstrate its ownership of the note and mortgage sufficient to convey standing upon this plaintiff to commence this lawsuit on November 13,2006…"

### *Beaumont v. Bank of New York Mellon,*

81 So.3d 553,554 (Fla. Dist. Ct. App. 2012)

Trust: NovaStar Mortgage Funding Trust 2005-3

Summary judgment for bank reversed and remanded.

"There is no evidence showing that Beaumont was on notice prior to the time his answer was filed that ownership of the note had been transferred from NovaStar to Mellon. In fact, the claimed transfer, alleged to have occurred on the day suit was filed, was either concealed by NovaStar for more than three years while it continued to pursue the action, or NovaStar backdated the assignment it finally produced on July 23, 2010, as justification for substituting Mellon as plaintiff. Under these circumstances, Beaumont may raise lack of standing when suit was filed as a defense."

### *Congress v. U.S. Bank,*

2100934, AL Ct. Civ. App.

Trust: 2007-EMX1

Mortgage Amount: $104,400

"The trial court should have evaluated the issue whether the allonge had been created after the first trial under the preponderance-of-the-evidence standard. Because it used the higher clear-and-convincing-evidence standard to evaluate Congress's evidence, this court has no choice but to reverse the trial court's judgment and remand the cause to the trial court for it to evaluate the evidence adduced at trial under the appropriate standard of proof."

### *Cutler v. U.S. Bank, N.A.,*

Case No. 2D10-5709 (Fla. 2d DCA 2012)

Trust: Structured Asset Investment Loan Trust, 2006- BNC3

Summary judgment for Bank reversed and remanded.

5

"Accordingly, a genuine issue of material fact remained as to whether U.S. Bank was the proper holder of the note at the time it initiated the foreclosure action. The note includes the allonge endorsed in blank, but the allonge is not dated. If indeed U.S. Bank cannot establish that the allonge took effect prior to the date of the complaint, it did not have standing to bring suit...

Because a genuine issue of material fact remains, the trial court erred in entering a final summary judgment."

### *Davenport v. HSBC Bank USA,*

739 N.W.2d 383 (Mich. Ct. App. 2007)

"In this case, defendant did not own the mortgage or an interest in the mortgage on October 27, 2005. Nonetheless, defendant proceeded to commence foreclosure proceedings at that time. Quite simply, defendant did not yet own the indebtedness that it sought to foreclose. The circuit court erred by determining that defendant's noncompliance with the statutory requirements did not nullify the foreclosure proceedings. Because defendant lacked the statutory authority to foreclose, the foreclosure proceedings were void *ab initio.* We vacate the foreclosure proceedings and remand for proceedings consistent with this opinion."

### *Deutsche Bank National Trust Co.v. Alemany,*

Index: 11677/2007

(N.Y. Sup. Ct. Suffolk Co. 2008)

Trust: Soundview Home Loan Trust, 2006-OPT3

"ORDERED that plaintiffs ex parte application for an Order of Reference is denied without prejudice to resubmit due to plaintiffs failure to provide: ... (2) proof on standing to commence this action as it appears plaintiff did not own the note and mortgage when the action was commenced..."

### *Deutsche Bank National Trust Company v. Barnett,*

88 A.D.3d 636. 931 N.Y.S.2d 630

Trust: FFMLT 2005-FF11

Summary judgment of foreclosure in favor of bank reversed.

"However, the documentation submitted failed to establish that, prior to commencement of the action, the plaintiff was the holder or assignee of both the note and mortgage. The plaintiff submitted copies of two different versions of an undated allonge which was purportedly affixed to the original note pursuant to UCC 3-

6

202 (2). Moreover, these allonges purporting to endorse the note from First Franklin, a Division of National City Bank of Indiana (hereinafter Franklin of Indiana) to the plaintiff conflict with the copy of the note submitted, which contains undated endorsements from Franklin of Indiana to First Franklin Financial Corporation (hereinafter Franklin Financial), then from Franklin Financial in blank.

"…The plaintiff also failed to establish that the note was physically delivered to it prior to the commencement of this action."

### Deutsche Bank National Trust Company v. Bialobrzeski,

3 A.3d 183 (Conn App. Ct. 2010)

Trust: Long Beach Mortgage Loan Trust 2006-3

The judgment for the trust was reversed and the case was remanded for a hearing on the motion to dismiss. "The key to resolving the defendant's claim is a determination of when the note came into the plaintiff's possession. We cannot review the claim because Judge Domnarski made no factual finding as to when the plaintiff acquired the note. Without that factual determination, we are unable to say whether Judge Domnarski improperly denied the defendant's motion to dismiss. Although it is the appellant's responsibility to provide an adequate record for review; see Practice Book §§ 60-5 and 61-10; that cannot be the end of the matter because it concerns the trial court's subject matter jurisdiction.

### Deutsche Bank National Trust Company v. Brumbaugh,

2012 OK 3, 270 P.3d 151

Trust: Long Beach Mortgage Loan Trust 2002-1

Summary judgment for bank reversed and remanded.

"To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing… Being a person entitled to enforce the note is an essential requirement to initiate a foreclosure lawsuit. In the present case, there is a question of fact as to when Appellee became a holder, and thus, a person entitled to enforce the note. Therefore, summary judgment is not appropriate. If Deutsche Bank became a person entitled to enforce the note as either a holder or nonholder in possession who has the rights of a holder after the foreclosure action was filed, then the case may be dismissed without prejudice and the action may be re-filed in the name of the proper party. We reverse the granting of summary judgment by the trial court and remand back for further determinations as to when Appellee acquired its interest in the note." (cites omitted)

7

*Deutsche Bank National Trust Co. v. Byrams,*

2012 OK 4, 275 P.3d 129

Trust: Argent Securities, Inc. ABPT Certs., Series 2006-W2

Mortgage amount: $526,320

Summary judgment of foreclosure in favor of bank reversed and remanded.

"The assignment of a mortgage is not the same as an assignment of the note. If a person is trying to establish it is a nonholder in possession who has the rights of a holder it must bear the burden of establishing its status as a nonholder in possession with the rights of a holder. Appellee must establish delivery of the note as well as the purpose of that delivery. In the present case, it appears Appellee is trying to use the assignment of mortgage in order to establish the purpose of delivery. The assignment of mortgage purports to transfer "the following described mortgage, securing the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all liens created or secured thereby, all obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such mortgage." This language has been determined by other jurisdictions to not effect an assignment of a note but to be useful only in identifying the mortgage. Therefore, this language is neither proof of transfer of the note nor proof of the purpose of any alleged transfer." (cites omitted)


*Deutsche Bank National Trust Company v. Cabaroy,*

Index: 9245/2007

(N.Y. Sup. Ct. Suffolk Co. 2008)

Trust: New Century Home Equity Loan Trust, 2006-1

"ORDERED that the plaintiffs ex parte application for an Order of Reference in Mortgage Foreclosure is denied without prejudice to resubmit due to plaintiffs failure to provide: (1) proof of plaintiffs standing to commence this action;"


*Deutsche Bank National Trust Company v. Castellanos,*

2008 NY Slip Op 50033(U)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Argent Mort. Sec., Inc. ABPT Certs., Series 2005-W4

Mortgage Amount: $382,500

8

"Did Mr. Rivas somehow change employers on July 21, 2006 or he is concurrently a Vice President of both assignor Argent Mortgage Company, LLC and assignee Deutsche Bank? If he is a Vice President of both the assignor and the assignee, this would create a conflict of interest and render the July 21, 2006-assignment void. Also, Mr. Rivas claims that Argent Mortgage Company, LLC is located at 1100 Town and Country Road, Suite 200, Orange, California, while Deutsche Bank has its offices at One City Boulevard West, Orange, California. Did Mr. Rivas execute the assignment at 100 Town and Country Road, Suite 200, and then travel to One City Boulevard West, with the same notary public, M. Reveles, in tow? The Court is concerned that there may be fraud on the part of Deutsche Bank, Argent Mortgage Company, LLC, and/or MTGLQ Investors, L.P., or at least malfeasance. If plaintiff renews its motion for a judgment of foreclosure and sale, the Court requires a satisfactory explanation by Mr. Rivas of his recent employment history."


*Deutsche Bank National Trust Co. v. Clouden,*

Index No. 277/07

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Argent Mort. Sec., Inc. ABPT Certs., Series 2005-W3

Mortgage Amount: $382,500

"In the instant action, Argent's defective assignment to Deutsche Bank affects the standing of Deutsche Bank to bring this action. The recorded assignment from Argent to Deutsche Bank, made by "Tamara Price, as Authorized Agent" on behalf of "AMC Mortgage Services Inc. as authorized agent," lacks any power of attorney granted by Argent to AMC Mortgage Services, Inc. and/or Tamara Price to act on its behalf."


*Deutsche Bank National Trust Company v. Benjamin Cruz,*

Index No. 31645/06

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Soundview Home Loan Trust 2005-OPT3

"In support of plaintiff's application, it submits a purported assignment of the mortgage from the original lender to plaintiff. The purported assignment is dated October 27, 2006. However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

9

*Deutsche Bank National Trust Company v. Yobanna Cruz,*

Index No. 2085/07

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Long Beach Mort. Loan Trust 2006-2

Mortgage Amount: $382,500

"In support of plaintiffs application, it submits a purported assignment of the mortgage from the original lender to plaintiff. The purported assignment is dated January 18, 2007 and states in pertinent part "effective January 12, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

*Deutsche Bank National Trust Company v. Cuesta,*

2012 NY Slip Op 32590(U) (N.Y. Sup. Ct. Suffolk Co. 2012)

Trust: American Home Mortgage Investment Trust,

Series 2007-2

Deutsche Bank's motion for an order of reference was denied without prejudice, and Deutsche Bank was warned that if it chose to refile, it must include:

"4) Evidentiary proof, including an affidavit from an individual with personal knowledge of the facts as to the proper and timely assignment of the subject note and mortgage or endorsement of the subject note and assignment of the subject mortgage, sufficient to establish that plaintiff was the owner or holder of the subject note and mortgage at the time the action was commenced...

In his affidavit, the plaintiff's representative has not addressed the particulars of the transfer of the note or the assignment of the mortgage to the plaintiff. Additionally, the assignment dated January 27, 2011, which is referred to in the plaintiff's complaint, has not been attached to the moving papers."

*Deutsche Bank v. Decker,*

Case 09-20548-CI-13 (Pinellas County, Florida, 2010)

Trust: Morgan Stanley Dean Witter Cap. PSA dated 5-1- 2001

"However, there remain two concerns.

10

The first is related to evidence that the Plaintiff had standing at the time the original complaint was initially filed. The "new" assignment does not solve this problem because it was executed on February 17, 2010, and thus does not demonstrate standing in 2009...

The second problem is related to the ownership issue but is focused on the validity of the newly obtained assignment. At the hearing Defendant's counsel indicated concerns regarding this document based upon his assertion that the 2010 assignment was from a company that went bankrupt years ago..."

(Dismissal granted of bank/plaintiff's first amended complaint)


*Deutsche Bank National Trust Co. v. Ezagui,*

Index: 3724/07

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Ameriquest Mortgage Securities, Inc., ABPT

Certificates, Series 2004-R10

Mortgage Amount: $412,250

"According to plaintiff's application, defendant Ezaguis' default began with the nonpayment of principal and interest due on September 1, 2006. Yet, more than five months later, plaintiff DEUTSCHE BANK was willing to take an assignment of a nonperforming loan from AMERIQUEST. Further, both assignor AMC, as Attorney in Fact for AMERIQUEST, and assignee, DEUTSCHE BANK, have the same address, 505 City Parkway West, Orange, CA 92868. Plaintiff's "affidavit of amount due," submitted in support of the instant application for a default order of reference was executed by Tamara Price, on February 16, 2007. Ms. Price states that "I am the Vice President for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF AMERIQUEST MORTGAGE SECURITIES, INC., ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2004-R10, UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2004, WITHOUT RECOURSE (DEUTSCHE BANK)." However, the February 7, 2007 assignment from AMERIQUEST, by AMC, its Attorney in Fact, is executed by Tamara Price, Vice President of AMC. The Tamara Price signatures on both the February 7, 2007 affidavit and the February 16, 2007 assignment are identical. Did Ms. Price change employers from February 7, 2007 to February 16, 2007? The Court is concerned that there may be fraud on the part of AMERIQUEST, or at least malfeasance. Before granting an application for an order of reference, the Court requires an affidavit from Ms. Price, describing her employment history for the past three years. Further, irrespective of her employment history, Ms. Price must explain why DEUTSCHE BANK would purchase a nonperforming loan from AMERIQUEST, and why DEUTSCHE BANK shares office space in Orange, California, with AMERIQUEST."

11

*Deutsche Bank National Trust Company v. Gilbert,*

2012 IL App (2d) 120164, No. 2-12-0164 (September 25, 2012)

Trust: GSAMP Trust 2005-WMC2

"Deutsche Bank attempted to rebut this apparent lack of standing by pointing to the Assignment and the Loch affidavit. However, these items lack evidentiary value. Before the trial court, Deutsche Bank argued that the language of the Assignment established that the transfer of the mortgage had occurred years earlier, on November 1, 2005. On appeal, however, Deutsche Bank wisely abandons that argument (which finds no support in the actual language of the Assignment), and now concedes that the Assignment "does not establish anything about when Plaintiff [Deutsche Bank] obtained its interest in the subject loan." We agree with this statement. Although the Assignment contains two dates—the date of the trust for which Deutsche Bank is a trustee, and the date on which the Assignment was executed and notarized—it does not explicitly state when the mortgage was assigned to Deutsche Bank. All that can be known about when the assignment took place is that it was no later than the date on which the Assignment was executed."

*Deutsche Bank National Trust Company v. Grant,*

Index: 39192/07

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Soundview Home Loan Trust 2006-OPT2

Mortgage Amount: $456,000

"Also, the Court requires an explanation from an officer of plaintiff DEUTSCHE BANK as to why, in the middle of our national subprime mortgage financial crisis, DEUTSCHE BANK purchased a non-performing loan [from] OPTION ONE. The Court wonders if DEUTSCHE BANK violated a corporate fiduciary duty to its stockholders with the purchase of a loan that defaulted more than five months prior to its assignment to DEUTSCHE BANK."

*Deutsche Bank National Trust Co. v. Haque,*

36 Misc. 3d 1203(A)

(N.Y. Sup. Ct. Queens Co. 2012)

Trust: Home Equity Mortgage Loan Trust, Series INABS

2005-B

12

Mortgage Amount: $279,200

"In addition. to the extent Plaintiff Deutsche Bank asserts the note was transferred to "the trust," pursuant to a "pooling and servicing" agreement between IndyMac ABS, Inc. as depositor, IndyMac Bank SM as seller and "master servicer" and Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-B, issuer, such agreement does not establish that IndyMac assigned the note to plaintiff Deutsche Bank. Plaintiff Deutsche Bank does not otherwise allege a basis for a valid assignment of the note." (cites omitted)


### *Deutsche Bank National Trust Co. v. Harris,*

Index: 35549/07

(N.Y. Sup. Ct. Kings Co. 2008)

Mortgage Amount: $408,000

Deutsche Bank's Motion was denied without prejudice, with leave to renew, providing the Court: "…a satisfactory explanation to various questions with respect to: the October 23, 2007 assignment of the instant mortgage to plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY (DEUTSCHE BANK); the employment history of one Erica Johnson-Seck, who executed the affidavit of facts in the instant application as an officer of DEUTSCHE BANK; plaintiff DEUTSCHE BANK'S purchase of the instant non-performing loan; and why does INDYMAC BANK, F.S.B., (INDYMAC). MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), and plaintiff DEUTSCHE BANK all share office space at 460 Sierra Madre Villa, Pasadena, CA 91107."


### *Deutsche Bank National Trust Co. v. Maraj,*

2008 NY Slip Op 50176 (U)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: INDX 2006-AR6

Mortgage Amount: $440,000

"With the assignor MERS and assignee DEUTSCHE BANK appearing to be engaged in possible fraudulent activity by: having the same person execute the assignment and then the affidavit of facts in support of the instant application; DEUTSCHE BANK's purchase of a non-performing loan from INDYMAC; and, the sharing of office space in Suite 400/500 in Kansas City, the Court wonders if the instant foreclosure action is a corporate "Kansas City Shuffle," a complex confidence game…

A Kansas City Shuffle is when everybody looks right, you go left . . .

13

It's not something people hear about. Falls on deaf ears mostly . . .

No small matter. Requires a lot of planning. Involves a lot of people. People connected by the slightest of events. Like whispers in the night, in that place that never forgets, even when those people do.

In this foreclosure action is plaintiff DEUTSCHE BANK, with its "principal place of business" in Kansas City attempting to make the Court look right while it goes left?"


## Deutsche Bank National Trust Co. v. Marche,

Index: 9156/07

(N.Y. Sup. Ct. Kings Co. 2009)

Trust: Securitized AB Receivable LLC Trust 2006-FR4

"Why an Order should not be made and entered:

VACATING the order of foreclosure and dismissing the instant action in its entirety upon the grounds that (i) Plaintiff has misrepresented itself by alleging that it is the owner and holder of the mortgage in order to fraudulently commence this action when in fact no valid assignment has been made to Plaintiff from Fremont Investment & Loan; (ii) that this Court lacks subject matter jurisdiction where Plaintiff is not and has not been the true owner and holder of the note and mortgage at issue; and (iii) that the assignment at issue is champertous in violation of Section 489 of the New York State Judiciary Law because the sole purpose of the defective assignment was to facilitate fraudulent litigation begun by Plaintiff prior to the assignment's execution."


## Deutsche Bank National Trust Co. v. Matthews,

2012 OK 14, 273 P.3d 43 (2012)

Trust: JP Morgan Mortgage Acquisition Trust 2007-CH3

Summary Judgment for bank reversed and remanded.

"However, the Assignment of Real Estate Mortgage attached to its motion for summary judgment is executed on June 9, 2009, by a Vice President of Chase Bank USA, N.A. The note attached to its motion for summary judgment, however, shows an allonge from Chase Bank USA, N.A., to Chase Home Finance, LLC. Further, this purported transfer of the note occurred six months after the action was commenced. Deutsche Bank also by its own admission states it acquired its interest in the note and mortgage subsequent to the filing of this action."

14

*Deutsche Bank v. McCarthy,*

Case No. 1:07 3071 (N.D. Ohio) (Judge Dowd)

Trust: Argent Mortgage Securities, ABPT Certs., Series 2005-W5

"The Northern District of Ohio is swamped with foreclosure cases brought in diversity. A large number of these cases are brought by plaintiffs who declare that they are holders of the note and mortgage but who initially supply no proof of that fact. When pressed, it is typically the case, as here, that the plaintiff actually is not the holder of the note and mortgage until some time after the filing of the complaint (often mere days!) and had, therefore, made a false statement to the court. Sometimes that statement of ownership is only in the complaint; sometimes, as in the instant case, it is actually in a sworn affidavit. See Doc. No. 1-4, ¶ 7. This is completely unacceptable, especially because this situation is likely to be repeated if not stopped by Court order."


*Deutsche Bank National Trust Company v. McRae*

27 Misc.3d 247 (Sup. Ct. Alleghany County 2010)

Trust: not identified.

To establish standing, the bank submitted an additional copy of a note which was different from the one attached to the complaint. The court rejected it, stating: "Obviously, the endorsements…post-date the commencement of this case…and are ineffective."


*Deutsche Bank National Trust Co. v. Mitchell,*

27 A.3d 1229 – NJ Appellate Div. 2011

Trust: Long Beach Mortgage Loan Trust 2006-3

Mortgage Amount: $150,000

Summary judgment reversed.

"After reviewing the record in light of the contentions advanced on appeal, we reverse the grant of summary judgment and final judgment and vacate the sheriff's sale, holding that Deutsche Bank did not prove it had standing at the time it filed the original complaint. The assignment was not perfected until after the filing of the complaint, and plaintiff presented no evidence of having possessed the underlying note prior to filing the complaint. If plaintiff did not have the note when it filed the original complaint, it lacked standing to do so,

15

and it could not obtain standing by filing an amended complaint. Given that Deutsche Bank has not demonstrated standing, we cannot decide at this time whether it was a holder in due course of the mortgage."

### *Deutsche Bank National Trust Co. v. Nicholls.*

Index 2248/07

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Long Beach Mort. Loan Trust 2005-WL2

"In support of plaintiff's application, it submits a purported assignment of the mortgage from the original lender to plaintiff. The purported assignment is dated January 24, 2007 and states in pertinent part "[e]ffective January 17, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. ... Plaintiffs attempt to foreclose upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact..."

### *Deutsche Bank National Trust Company v. Parisella,*

VT App. Ct., 2010. Docket No. S0758-09 CnC

Trust: FFMLT Trust 2005-FF11

Homeowner's Motion to Dismiss granted.

"The court concludes that a plaintiff seeking foreclosure lacks standing unless it can show it was entitled to enforce the mortgage at the time it filed its complaint for foreclosure...

Here, there is no evidence in the record indicating that Deutsche Bank was the assignee of the note when it filed its complaint on June 15, 2009. Nor is there even an allegation to that effect. There is an allegation that the mortgage was assigned to Deutsche Bank before it filed its complaint, but since the note is a negotiable instrument, the transfer of the mortgage does not also transfer the note..."

### *Deutsche Bank National Trust Company v. Richardson,*

2012 OK 15. __P.3d__

Trust: MASTR 2007-02

Summary Judgment for bank reversed and remanded.

"In the present case, Appellee has presented evidence in support of the motion for summary judgment of an indorsed-in-blank note, and an "Assignment of Mortgage" both arguably obtained **after** the filing of the

16

petition. Appellee must prove it is the holder of the note or the nonholder in possession who has the rights of a holder **prior** to the filing of the foreclosure proceeding. In the present matter the timeliness of the transfer is a disputed fact issue. Since Deutsche Bank did not file the blank indorsement until it filed its motion for summary judgment it is impossible to determine from the record when Deutsche Bank acquired its interest in the underlying note."

### *Deutsche Bank National Trust Co. v. Ryan,*

Index 33315/07 (January 29, 2008)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Long Beach Mort. Loan Trust 2005-WL1

An order of reference was denied by Judge Kurtz where the bank plead a mortgage assignment executed, September 31, 2007, after the suit was commenced August 31, 2007, but with an attempted backdate to July 30, 2007.

### *Deutsche Bank National Trust Co. v. Ryan,*

Case No. 2011-12070, Hillsborough Co. Fla. 2012

Trust: Novastar Mortgage Funding Trust, 2006-5

"Second, Plaintiff lacked standing at the inception of this case. Though Plaintiff alleged it had standing, the Note attached to its Complaint lacked an endorsement, and Plaintiff introduced no sworn evidence to overcome Defendant's affidavit that it lacked standing when it filed suit...

In light of the foregoing, this case is dismissed without prejudice and without leave to amend."

### *Deutsche Bank National Trust Co. v. Sampson III,*

Index 26320/07 (January 16, 2008)

(N.Y. Sup. Ct. Kings Co. 2009)

Trust: HSBC Bank USA, Inc., Series HASCO 2006-HE1

"The purported assignment is dated August 10, 2007 and states in pertinent part "this assignment is effective as of the 22nd day of June, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. Plaintiff's attempt to foreclose

17

upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact..."(cites omitted)

### *Deutsche Bank National Trust Company v. Seidlin,*

Index:105162/2009 NY County, 2011NY Slip Op

31551(U)

Trust: American Home Mortgage Assets Trust 2006-5

Mortgage Amount: $580,000

Bank's motion granted for leave to voluntarily discontinue the action "due to the assignment of mortgage being incorrectly and/or incompletely acknowledged" after two years of litigation.

### *Deutsche Bank National Trust Co. v. Steele,*

2008 U.S. Dist. LEXIS 4937 (S.D. Ohio January 8, 2008)

"I cannot tell from the exhibits plaintiff has submitted in support of its motion whether Deutsche Bank owned the note and mortgage when the complaint was filed. Plaintiff alleges ownership in the complaint, but defendants' answer does not admit the truth of that allegation...The Court cannot grant summary judgment unless Deutsche Bank offers evidence from which a finder could conclude by a preponderance that it owned the note and mortgage when the complaint was filed. Further, if plaintiff has evidence of ownership, it must explain how that ownership is consistent with the uncontroverted evidence that when the complaint was filed, MERS was the mortgage holder acting on behalf of Mortgageit, Inc."

### *Deutsche Bank National Trust Company v. Vasquez,*

Index: 4924/11, 2012 NY Slip Op 31395(U)

Trust: Morgan Stanley ABS Cap. I, Inc. Trust, 2007-HE7

Mortgage Amount: $435,100

"A foreclosure plaintiff has the requisite standing to commence a mortgage foreclosure action if "it is both the holder or assignee of the subject mortgage and the of the underlying note at the time the action is commenced"... In this action plaintiff does not allege that it is an assignee of the Note, but instead, as previously referenced, produced a copy of the original Note between defendants and New Century. They argue that delivery of the unindorsed Note was sufficient to confer standing. On the prior motion the court

18

overlooked the necessity of proper indorsement required to transfer ownership and render the transferee a holder...

Also influencing this court's determination on reargument are the repeated issues regarding standing which revolve around proper assignments, particularly of mortgage notes which have ensued following creation of the MERS system and the birth of mortgage backed securities."


### *Deutsche Bank National Trust Company v. Williams,*

Case No. 11-00632 (D. Hawaii 2011)

Trust: Morgan Stanley ABS Capital I, Inc. Trust 2007- NC1

"This evidence presents two problems for Plaintiff. First, if Plaintiff did indeed obtain the Mortgage and Note through a 2007 PSA, then the 2007 PSA is yet another reason why the January 13, 2009 assignment is a nullity and the Complaint's assertion that Plaintiff obtained the Mortgage and Note from Home 123 is untrue. Second, the evidence presented does not actually establish that Plaintiff received the Mortgage and Note through the PSA — there is no evidence on the record establishing what mortgages were included in the PSA. Thus, although Plaintiff might have obtained the Mortgage and Note through this PSA, there is no evidence showing or even suggesting that this is indeed the case. As a result, there is no evidence — at least on the record presented before the court –creating a genuine issue of material fact that Plaintiff was assigned the Mortgage and Note on which it now seeks to foreclose."


### *Deutsche Bank National Trust Company v. Wilson,*

Case A-1384-09T1, N.J. App. Div. 2011

Trust: WaMu 2007-HEI Trust

Summary judgment of foreclosure was reversed and remanded "to resolve the issue of the bona fides of the assignment." The issue regarding the assignment was discussed in Footnote 1:

"The assignment was executed by an individual identified as Laura Hescott who signed the assignment as an assistant vice-president of Washington Mutual Bank. Ms. Hescott has been identified as an employee of Lender Processing Services, Inc. ("LPS"), a servicer of default mortgages. The bona fides of the practices of this service provider have been the subject of increased judicial scrutiny. See, e.g., In re Taylor, 407 B.R. 618, 623 (Bankr. E.D. Pa. 2009)."

19

*Deutsche Bank Trust Company Americas v. McCoy,*

20 Misc 3d 1202 (A) 2010 NY Slip Op 51664(U)

Trust not disclosed.

"Although the February 28, 2008 assignment states it is "effective January 19, 2008," such attempt at retroactivity is ineffectual. If an assignment is in writing, the execution date is generally controlling and a written assignment claiming an earlier effective date is deficient, unless it is accompanied by proof that the physical delivery of the note and mortgage was, in fact, previously effectuated…A retroactive assignment cannot be used to confer standing upon the assignee in a foreclosure action commenced prior to the execution of the assignment… (Plaintiff's failure to submit proper proof, including an affidavit from one with personal knowledge, that the plaintiff was the holder of the note and mortgage *at the time the action was commenced*, requires denial of the plaintiff's application for an order of reference. (cites omitted)

*Deutsche Bank Trust Company Americas v. Peabody,*

866 N.Y.S. 2d 91 (N.Y. Sup. Ct. 2008)

Trust not disclosed.

Mortgage Amount: $320,000

Foreclosure dismissed.

"Again, here, there is no evidence that it took physical delivery of the note and mortgage before commencing this action, and again, the written assignment was signed after the defendant was served. The assignment's language purporting to give it retroactive effect, absent a prior or contemporary delivery of the note and mortgage, is insufficient to grant it standing."

*Feltus v. U.S. Bank, N.A.*

80 So.3d 375 (Fla. 2nd DCA 2011)

Trust: MASTR Adj. Rate Mortgage Trust 2007-3

Summary judgment for bank reversed.

"The properly filed pleadings before the court when it heard U.S. Bank's motion for summary judgment were a complaint seeking to reestablish a lost note to which was attached a copy of a note made payable to Countrywide, N.A., Feltus's answer and affirmative defenses alleging that the note attached to the complaint contradicts the allegation of the complaint that U.S. Bank is the owner of the note, a motion for summary judgment alleging a lost note of which U.S. Bank is the owner, and an affidavit of indebtedness alleging that

20

U.S. Bank was the owner and holder of the note described in the complaint. The endorsed note that U.S. Bank claimed was now in its possession was not properly before the court at the summary judgment hearing because U.S. Bank never properly amended its complaint.2 In addition, the complaint failed to allege that U.S. Bank "was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred." § 673.3091(a). The affidavit of indebtedness provided no assistance in this regard because the affiant did not assert any personal knowledge of how U.S. Bank would have come to own or hold the note." (cites omitted)

### *Federal Home Loan Mortgage Corporation v. Schwartwald,*

Slip Opinion No. 2012-Ohio-5017

On October 31, 2012, the Ohio Supreme Court addressed the issue of standing in foreclosures. Although this case did not involve a mortgage-backed trust, it will have a significant impact on foreclosures by trusts because the Court ruled that the Federal Home Loan Mortgage Corporation lacked standing to sue when it obtained the mortgage by an assignment from the real party in interest after the foreclosure suit was commenced. This was yet another case where the note was "not available" at commencement. Later in the case, Federal Home Loan filed a copy of the note, with undated endorsements. The motion for summary judgment was supported by an Affidavit signed by well-known Wells Fargo robo-signer John Herman Kennerty. The appellate court had ruled that Federal Home Loan cured the lack of standing defect by the assignment of the mortgage and transfer of the note prior to entry of judgment. The Ohio Supreme Court disagreed – citing decisions taken by Courts in Connecticut, Florida, Maine, Missouri, Oklahoma and Vermont.

### *Gascue v. HSBC USA, N.A.,*

__So.3d__ (Fla. 4th DCA 2012)

Trust: Deutsche Alt-B Securities Mortgage Loan Trust, Series 2006-AB4

Reversal and remand of denial of motion to vacate final judgment of foreclosure.

"There is no evidence on the record indicating that Bank was the holder of the mortgage at the time the complaint was filed. Just as in Rigby, Bank attached a mortgage to its complaint in which it was not listed as the lender, but rather "Pinnacle Direct Funding" was. The only evidence that Bank is the owner and holder of the note is a sworn affidavit. However, this affidavit was filed three years after the complaint and does not establish when Bank became the holder of either the note or the mortgage, much less establish that Bank was

21

the holder of said instruments at the time the complaint was filed. See id. (reversing the trial court in part because the supporting affidavit in that case did not establish the date on which the bank acquired possession of the note)."


### *Gee v. U.S. Bank, N.A.,*

72 So.3d 211 (Fla. 5th DCA 2011)

Trust: Structured Asset Investment Loan Trust 2005-10

"Here, the record does not contain the original Mortgage. To prove its ownership, U.S. Bank filed a copy of the Mortgage as well as two assignments. The first assignment transferred the Mortgage from Advent Mortgage, the original mortgagee, to Option One. The second assignment purported to transfer the mortgage from American Home, as successor in interest of Option One, to U.S. Bank. However, and significant to our consideration, U.S. Bank provided nothing to demonstrate how American Home came to be the successor in interest to Option One.

Incredibly, U.S. Bank argues that "[i]t would be inequitable for [Ms. Gee] to avoid foreclosure based on the absence of an endorsement to [it]." But that argument flies in the face of well-established precedent requiring the party seeking foreclosure to present evidence that it owns and holds the note and mortgage in question in order to proceed with a foreclosure action." (cites omitted)

(Summary Judgment reversed.)


### *Gonzalez v. Deutsche Bank National Trust Company,*

Case No. 2D10-5561 (Fla. 2d DCA 2012)

Trust: American Home Mortgage Investment Trust

2006-1

"The problem is that the additional stamp and handwritten notation transferring the note from American Home Mortgage to Deutsche Bank is not dated. Accordingly, Deutsche Bank failed to establish its standing by showing that it possessed the note when it filed the lawsuit. See Country Place Cmty. Ass'n v. J.P. Morgan Mortg. Acquisition Corp., 51 So. 3d 1176, 1179 (Fla. 2d DCA 2010) ("Because J.P. Morgan did not own or possess the note and mortgage when it filed its lawsuit, it lacked standing to maintain the foreclosure action."). As a result, Deutsche Bank has not refuted Gonzalez's affirmative defense, and a genuine issue of material fact exists that should have precluded the entry of summary judgment."

(Summary judgment for Deutsche Bank reversed.)

22

*HSBC Bank USA, N.A. v. Antrobus,*

*20 Misc 3d 1127(A), 2008 NY Slip Op 51639(U)*

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Renaissance Home Equity Loan Trust 2006-4

Mortgage Amount: $465,000

"Therefore, the instant application for an order of reference is denied without prejudice, with leave to renew. The Court will grant an order of reference to plaintiff HSBC upon presentation to this court of: an affidavit by either an officer of HSBC or someone with a valid power of attorney from HSBC, possessing personal knowledge of the facts; an affidavit from Scott Anderson clarifying his employment history for the past three years and what corporation he serves as an officer; and, an affidavit by an officer of HSBC explaining why HSBC purchased a nonperforming loan from Delta Funding Corporation, and why HSBC, OCWEN, MERS, Deutsche Bank and Goldman Sachs all share office space in Suite 100."


*HSBC Bank USA v. Beime,*

212-Ohio-1386, Ohio App. Ct. 9th District

Summary judgment for bank reversed.

"In the affidavit that was attached to the supplement to the motion for summary judgment, Mr. Spradling averred that HSBC had been assigned the loan on June 5, 2009, and that "[a] true and correct copy of the Assignment was attached to the Complaint filed by HSBC." However, a review of the complaint and the exhibits attached thereto reveals that there was no evidence that the note had been assigned to HSBC. Moreover, an assignment dated June 5, 2009, could not have been attached to the complaint which was filed on May 11, 2009."


*HSBC Bank USA, N.A. v. Charlevagne,*

20 Misc 3d 1128(A), 2008 NY Slip Op 51652(U)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Renaissance Home Equity Loan Trust 2005-3

Mortgage Amount: $480,000

"Therefore, the instant application for an order of reference and related relief is denied without prejudice. The Court will grant plaintiff HSBC an order of reference and related relief when it submits an affidavit by either

23

an officer of HSBC, or someone with a valid power of attorney from HSBC, possessing personal knowledge of the facts."

### HSBC Bank USA v. Cherry,

18 Misc3d 1102 (A), 2007 NY Slip Op 52378(U)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Renaissance Home Equity Loan Trust 2005-4

"Further, the Court, upon renewal of the application for an order of reference requires a satisfactory explanation to questions with respect to: the assignment of the instant nonperforming mortgage loan from the original lender, Delta Funding Corporation to HSBC Bank; the employment history of one Scott Anderson, who assigned this mortgage to HSBC and then swears to be HSBC's servicing agent; and the relationship between HSBC, Ocwen Federal Bank, FSB (OCWEN), Deutsche Bank and Goldman Sachs, who all seem to share office space at Suite 100 of 1661 Worthington Road, West Palm Beach, Florida 33409 (Suite 100)."

### HSBC Bank USA v. Cipriani,

Index: 12365-2007

(N.Y. Sup. Ct. Suffolk Co. 2008)

Trust: SG Mort. Sec. Trust 2005-OPT1

Order for reference denied without prejudice. To resubmit, plaintiff must provide "proof on standing to commence this action as it appears that the plaintiff did not own the note and mortgage when the action was commenced."

### HSBC Mortgage Services, Inc. v. Jack,

Index No: 14750/2007

(N.Y. Sup. Ct. Suffolk County 2008)

Denied without prejudice due to bank's failure to provide proof that it had standing to bring the action.

### HSBC Bank USA v. Palladino,

2011 IL App (2d) No. 08-CH-4548

24

Trust: Fremont Home Loan Trust 2006-D

Summary judgment reversed and remanded.

"In the present case, there are genuine issues of material fact with respect to whether there was an assignment of the mortgage and note from Fremont to HSBC Bank. Although HSBC Bank represents that it produced the assignment, the document on which it relies, by its very terms, was, at worst, not an assignment and, at best, inherently inconsistent as to whether it was an assignment. Indeed, the document states that MERS as nominee for Fremont "did" assign (past tense) the mortgage and note to HSBC Bank prior to November 13, 2008, yet also states that the assignment "is" made (present tense) without recourse and without representation or warranty.

In addition to the purported assignment's inconsistent terms, the document upon which HSBC Bank relies is vague with respect to the date of the purported assignment. The document has a stamp which appears to reflect that it was recorded on December 17, 2008, but states that the assignment was made "prior to" November 13, 2008. The document itself is undated, as is the notary's certificate. The date of the assignment is material because standing to sue must exist at the time the action is commenced." (cites omitted)


### *HSBC Bank USA v. Perez,*

Case No. EQ4970 (Washington County, Iowa 2009)

Trust: Fieldstone Mort. Investment Trust 2005-2

"The Perezs argue that the Pooling and Servicing Agreement for Fieldstone Mortgage Investment Trust Series 2005-2 governs when and how the Trustee in this case, HSBC Bank, the Plaintiff, may acquire notes and mortgages. Additionally, that agreement governs when and how a mortgage owned by the trust may be foreclosed upon. The Perezs further state that the agreement prohibits the acquisition of mortgages that are in default…The Plaintiff has also submitted documentation that shows the transfer of interest in the mortgage from Fieldstone to HSBC occurred on February 9, 2009. Clearly, based upon the Plaintiff's own documentation, the default occurred prior to the transfer.

According to the Transfer and Servicing Agreement submitted by the Perezs, and allegedly applicable to the Plaintiff, the trust servicer is only allowed to "substitute a defaulted Mortgage Loan with a Qualifying Substitute Mortgage Loan…This document seems to state that the mortgage at issue could only be transferred if it were current on the date it was transferred. Accordingly, it appears that this mortgage was inappropriately transferred to the Plaintiff as it was in default at the time of transfer. As such, a question is raised regarding whether the present Plaintiff has standing to bring this foreclosure action."

25

*HSBC Bank USA, N.A. v. Sene,*

34 Misc 3d 1232 (A), 2012 NY Slip Op 50352(U)

(N.Y. Sup. Ct. Kings Co. 2012)

Trust: Ace Securities Corp. Home Equity Loan Trust

2007-HE4

"During the bad faith hearing, two separate notes with attendant assignments were put into evidence by the plaintiff...

This Court emphatically now joins the judicial chorus who have been wary of the paperwork supplied by plaintiffs and their representatives. There is ample reason for Chief Judge's requirement for an attorney affirmation in residential foreclosure cases. As stated by Chief Judge Jonathan Lippman, "we cannot allow the courts in New York State to stand idly and be party to what we now know is a deeply flawed process, especially when that process involves basic human needs – such as a family home – during this period of economic crisis...

It is clear in this case, without further hearings, that a fraud has been committed upon this Court. Thus, the only remedy that can be utilized by this Court is to stay these proceedings and any mortgage foreclosure until this matter is cleared up to the satisfaction of this Court."


*James v. U.S. Bank, N.A.,*

D. Maine. No. 2:09-cv-84-JHR, January 31, 2011

Trust: BAFC 2006-1

Sanctions were imposed because of an Affidavit submitted by GMAC employee and exposed robo-signer Jeffrey Stephan:

"In the case at hand, however, GMAC, the party that submitted the affidavit and the affiant's employer, was on notice that the conduct at issue here was unacceptable to the courts, which rely on sworn affidavits as admissible evidence in connection with motions for summary judgment. In 2006, an identical jurat signed under identical circumstances resulted in the imposition of sanctions against GMAC in Florida. Affidavit of Thomas A Cox (Docket No. 153) ¶ 4 & Exhs. B-D. GMAC's assertion that these sanctions applied only "within the State of Florida," Plaintiff and GMAC Mortgage LLC's Memorandum in Opposition to Defendant's Motion for Relief Pursuant to Fed. R. Civ. P. 56(g) (Docket No. 177) at 7, is specious. It would be clear to any lawyer representing GMAC in any court action, including those involved in the Florida action, that a jurat should not be signed under the circumstances involved in that case or here and that such a jurat will

26

never be acceptable to any court, Stephan's actions in this case strike at the heart of any court's procedures, are egregious under the circumstances, and must be deemed worthy of sanctions.

### *LaSalle Bank, N.A. v. Ahearn,*

59 A.D.3d 911, 875 N.Y.S. 2d 595 (N.Y. App. Div. 2009)

Trust: Bear Stearns Asset-Backed Securities I, LLC,

Series 2004-FR3

Mortgage Amount: $180,000

"Here, the written assignment submitted by plaintiff was indisputably written subsequent to the commencement of this action and the record contains no other proof demonstrating that there was a physical delivery of the mortgage prior to bringing the foreclosure action *(see id.).* In fact, the language in the amended complaint indicating that the assignment to plaintiff had not yet occurred would clearly contradict any assertion to the contrary. Accordingly, Supreme Court correctly found that plaintiff did not have standing and the amended complaint must be dismissed, without prejudice."

### *LaSalle Bank v. Charleus*

Index No. 22733/2007 (January 3, 2008)

(N.Y. Sup. Ct. Kings Co. 2008)

An order of reference was denied by Judge Kurtz where the bank plead a mortgage assignment executed, July 2, 2007, after the suit was commenced June 22, 2007, but with an attempted backdate to June 21, 2007.

### *LaSalle Bank v. Lamy,*

12 Misc.3d 1191(A), 824 N.Y.S.2d 769

"The court thus finds that this purported, undated, indorsement by "allonge" to the note by the original lender in favor of the plaintiff and the December 29, 2005 written assignment of the note and mortgage by MERS to the plaintiff failed to pass ownership of the note and mortgage to the plaintiff prior or subsequent to the commencement of this action. Consequently, the original lender remains the owner of both the note and mortgage since no proper assignment of the either the note or the mortgage was ever made by the original lender/owner to the plaintiff or to the plaintiff's purported assignee. Under these circumstances, the plaintiff has no cognizable claims for the relief demanded in its complaint."

27

*LaSalle Bank v. Smalls,*

Index No. 28128/2007 (January 3, 2008)

(N.Y. Sup. Ct. Kings Co. 2008)

An order of reference was denied by Judge Kurtz where the bank plead a mortgage assignment executed, September 31, 2007, after the suit was commenced August 31, 2007, but with an attempted backdate to July 30, 2007.


*McLean v. JP Morgan Chase Bank, N.A.,*

79 So.3d 170 (Fla. 4th DCA 2012)

Trust: Structured Asset Mortgage Investments II, Inc.,

Series 2006-ARS

"Nonetheless, the record evidence is insufficient to demonstrate that Chase had standing to foreclose at the time the lawsuit was filed. The mortgage was assigned to Chase three days after Chase filed the instant foreclosure complaint. More importantly, the original note contained an undated special endorsement in Chase's favor, and the affidavit filed in support of summary judgment did not state when the endorsement was made to Chase. Furthermore, the affidavit, which was dated after the lawsuit was filed, did not specifically state when Chase became the owner of the note and mortgage, nor did the affidavit indicate that Chase was the owner of the note and mortgage before suit was filed. Therefore, Chase failed to submit any record evidence proving that it had the right to enforce the note on the date the complaint was filed." (footnotes omitted)


*Naranjo v. SBMC Mortgage,*

No. 3:11-cv-02229-L-WVG, Dkt. #20

(S.D. Cal. July 24, 2012)

Trust: WMALT 2006-AR4

Mortgage Amount: $825,000

Defendant Trustee's Motion to Dismiss Denied in Part.

"The vital allegation in this case is the assignment of the loan into the WAMU Trust was not completed by May 30, 2006 as required by the Trust Agreement. [*10] This allegation gives rise to a plausible inference that the subsequent assignment, substitution, and notice of default and election to sell may also be improper. Defendants wholly fail to address that issue. (See Defs.' Mot. 3:16-

28

6:2; Defs.' Reply 2:13-4:4.) This reason alone is sufficient to deny Defendants' motion with respect to this issue."

### *Pino v. Bank of New York,*

76 So. 3d 927 (Fla. 4th DCA 2011)

Trust: CWALT 2006-OC8

Mortgage Amount: $162,400

Florida Supreme Court decision pending. The appeal court certified the question to the Florida Supreme Court because "many, many mortgage foreclosures appear tainted with suspect documents."

"As conveyed by the Fourth District in the decision below, the plaintiffs and now respondents in this Court, the Bank of New York Mellon, et al. (BNY Mellon), commenced an action in the trial court to foreclose a mortgage against the defendant and now petitioner in this Court, Roman Pino. *See Pino v. Bank of New York Mellon,* 57 So.3d 950, 951 (Fla. 4th DCA 2011). Thereafter, Pino moved for sanctions, alleging that BNY Mellon had filed a fraudulent assignment of mortgage. *Id.* In response, BNY Mellon filed a notice of voluntary dismissal of the foreclosure action. *Id.* at 952. Five months later, BNY Mellon refiled an identical action to foreclose the same mortgage. *Id.* In the original, dismissed action, Pino filed a motion seeking to vacate the voluntary dismissal pursuant to Florida Rule of Civil Procedure 1.540(b)on the grounds of fraud on the court and requesting dismissal of BNY Mellon's newly filed action as a consequent sanction. *Pino,* 57 So. 3d at 952. The trial court denied Pino's motion, essentially holding that because the prior action had been voluntarily dismissed, the court lacked jurisdiction, and thus the authority, to consider any relief. *Id.*" (footnotes omitted)

### *Richards v. HSBC Bank,*

__So.3d__, 2012 WL 2359656 (Fla. 5th DCA 2012)

Trust: PHH 2007-2

Summary judgment for bank reversed on appeal.

"While the assignment reflected that the mortgage had been assigned from Century 21 to HSBC, the allonge to the note reflected that Bishops Gate Residential Mortgage Trust was to be the note's payee...

Thus the allonge was inconsistent with the assignment and contradicted the allegation in the complaint that HSBC was the holder of the note...

29

Furthermore, the affidavits filed by HSBC did not explain the relationship between HSBC and Bishops Gate Residential Mortgage Trust, nor otherwise aver facts conclusively showing that HSBC was the holder of the note.

*Rigby v. Wells Fargo, N.A.,*
__So.3d__, 2012 WL1108428 (Fla. 4th DCA 2012)
Trust: Option One Mortgage Loan Trust 2007-FXD2
Mortgage Amount: $165,600

"The Bank has not shown that it was holder of the note at the time the complaint was filed. The note containing a special endorsement in favor of the bank was not dated. The assignment of mortgage, dated May 22, 2008, indicates that Bank did not acquire the mortgage until the day after the complaint was filed. Finally, neither the affidavit, nor the technical admissions made by the Rigbys, establishes the date on which Bank acquired possession of the note and there is no evidence in the record establishing that an equitable transfer of the mortgage occurred prior to the date the complaint was filed."

(Summary judgment reversed and remanded.)

*Servedio v. U.S. Bank, N.A.,*
46 So. 3d 1105 (Fla. 4th DCA 2010)
Trust: Terwin Mortgage Trust 2007-AHL1
Mortgage Amount: $252,000

"The issue presented in this appeal is whether the trial court erred in granting a final summary judgment of foreclosure where appellee failed to file with the court a copy of the original note and mortgage prior to the entry of judgment. Because the absence of the original note created a genuine issue of material fact regarding appellee's standing to foreclose on the mortgage, summary judgment was not proper. We reverse."

*U.S. Bank v. Alexander,*
2012 OK 43
Trust: Credit Suisse First Boston HEAT 2005-4
Mortgage Amount: $63,920

30

"As previously identified, the dispositive issue is whether or not Appellee had standing at the time Appellee filed their first amended petition. We hold that the issue of standing as well as other material issues of fact remain that must be determined by the trial court. Therefore summary judgment was inappropriate."

### U.S. Bank, N.A. v. Auguste,

Index: 18695-2007 (November 27, 2007)

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: CSMC Mort. Backed PT Certs.. Series 2007-1

"In support of plaintiffs application. it submits a purported assignment of the mortgage from Mortgage Electronic Registration Systems, Inc., acting as Nominee for First United, to plaintiff. The purported assignment is dated July 9, 2007, and states in pertinent part "this assignment is effective on or before November 22, 2006." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

### U.S. Bank, N.A. v. Baber,

280 P.2d 956 (2012 OK 55)

Trust: Security National Mortgage Loan Trust 2006-1

"Being a person entitled to enforce the note is an essential requirement to initiate a foreclosure lawsuit. In the present case, there is a question of fact as to when Appellee became a holder, and thus, a person entitled to enforce the note. Therefore, summary judgment is not appropriate. If Deutsche Bank became a person entitled to enforce the note as either a holder or nonholder in possession who has the rights of a holder after the foreclosure action was filed, then the case may be dismissed without prejudice and the action may be re-filed in the name of the proper party. We reverse the granting of summary judgment by the trial court and remand back for further determinations as to when Appellee acquired its interest in the note."

### U.S. Bank, N.A. v. Collymore,

68 AD3d 752 (2009). 890 NYS2d 578

"Contrary to the Bank's contentions, it failed to demonstrate its prima facie entitlement to judgment as a matter of law because it did not submit sufficient evidence to demonstrate its standing as the lawful holder or assignee of the subject note on the date it commenced this action. The Bank's evidentiary submissions were insufficient to establish that MERS effectively assigned the subject note to it prior to the commencement of this action....

31

and the mere assignment of the mortgage without an effective assignment of the underlying note is a nullity...Furthermore, the Bank failed to establish that the note was physically delivered to it prior to the commencement of the action. The affidavit of a vice-president of the Bank submitted in support of summary judgment did not indicate when the note was physically delivered to the Bank, and the version of the note attached to the vice-president's affidavit contained an undated indorsement in blank by the original lender. Furthermore, the Bank's reply submissions included a different version of the note and an affidavit from a director of the Residential Funding Corporation which contradicted the affidavit of the Bank's vice-president in tracing the history of transfers of the mortgage and note to the Bank. In view of the Bank's incomplete and conflicting evidentiary submissions, an issue of fact remains as to whether it had standing to commence this action." (cites omitted)

### U.S. Bank v. Dellarmo,

94 A.D.3d 746 (2012), 942 N.Y.S.2d 122

Trust: First Franklin Mortgage Loan Trust, 2006-FF2

"However, inasmuch as the complaint does not allege that the note was physically delivered to the plaintiff, and nothing in the plaintiff's submission in opposition to Dellarmo's motion could support a finding that such physical delivery occurred, the corrective assignment cannot be given retroactive effect... Moreover, both the unrecorded April 11, 2006, assignment and the recorded corrective assignment indicate only that the mortgage was assigned to the plaintiff. Since an assignment of a mortgage without the underlying debt is a nullity... the plaintiff has failed to demonstrate that it had standing to commence this action...

Accordingly, the Supreme Court should have granted Dellarmo's motion pursuant to CPLR 3211 (a) to dismiss the complaint insofar as asserted against him for lack of standing." (cites omitted)

### U.S. Bank, N.A. v. Duvall,

Cuyahoga App. No. 94714, 2010-Ohio-6478

Trust: CMLTI 2007-WFHE2

Mortgage Amount: $92,000

"Accordingly, we conclude that plaintiff had no standing to file a foreclosure action against defendants on October 15, 2007, because, at that time, Wells Fargo owned the mortgage. Plaintiff failed in its burden of demonstrating that it was the real party in interest at the time the complaint was filed. Plaintiff's sole assignment of error is overruled."

32

*U.S. Bank, N.A. v. Githira,*

17 LCR 697 (2009), MISC 08-386385 (Essex Co. Mass. 2009)

Trust: Home Equity Asset Trust, Series 2005-9

Plaintiff U.S. Bank was seeking to remove a cloud on its title to a parcel of land stemming from plaintiff's exercise of the power of sale contained in the mortgage *before* it received authority to do so under the provisions of the Servicemembers' Civil Relief Act. The complaint did not mention any other title defects. Citing Justice Long's ruling in Ibanez, Justice Charles W. Trombly, Jr., dismissed plaintiff's petition to remove the cloud on the title, holding that plaintiff was not even the holder of the mortgage, by record or in fact, on the day of the foreclosure sale. Specifically, the Court found that the foreclosure auction took place and was recorded prior to the execution and recording of an assignment of mortgage that made plaintiff the holder of the mortgage upon which it had foreclosed.

*U.S. Bank, N.A. v. Grant,*

Index: 11133-2007

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Asset Backed Securities Corp. Home Equity Loan

Trust. Series OOMC 2006-HE3

"In support of plaintiffs application, it submits a purported assignment of the mortgage from Option One to plaintiff. The purported assignment is dated July 9, 2007, and states in pertinent part "Effective Date: March 28, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

*U.S. Bank, N.A. v. Ibanez,*

941 N.E. 2d 40, (Mass. 2011)

Trust: Structured Asset Securities Corp. Mortgage PT

Certs., Series 2006-Z

The court in *Ibanez* rejected application of the "mortgage follows the note" rule, holding that mere possession of properly indorsed negotiable instruments did not give the foreclosing parties authority to conduct a valid non-judicial sale. In other words, one's status as a party entitled to enforce a note did not satisfy the requirement under state law to be a mortgagee. The court acknowledged that a transferee of a note might have

33

an equitable right to obtain a court order that that the mortgage be transferred to it. However, the potential to assert such a claim did not make the noteholder a "mortgagee." The Massachusetts statute required that the foreclosing party have an actual assignment of the mortgage when proceeding to sale., and further held that Assignments in Blank assign nothing and that retroactive assignments are not effective even if it was an industry-wide practice.

*U.S. Bank, N.A. v. Madero,*

80 AD3d 751. 915 N.Y.S. 2d 612

Trust: not identified

Mortgage Amount: $570,000

"Here, the plaintiff failed to demonstrate its prima facie entitlement to judgment as a matter of law because it did not establish that it had standing, as the lawful holder or assignee of the subject note on the date it commenced this action, to commence the action." (cites omitted)

*U.S. Bank, N.A. v. Merino,*

16 Misc.3d 209

(N.Y. Sup. Ct. Suffolk Co. 2007)

"First, the assignment from Argent to Ameriquest was executed by Jose Burgos as agent for Argent. On the same date. however, the purported assignment from Ameriquest to the plaintiff was also executed by Mr. Burgos, this time as agent for Ameriquest. In effect, the mortgage was purportedly assigned by Mr. Burgos to Mr. Burgos, and then, in turn, by Mr. Burgos to the plaintiff…The moving papers contain no proof that Mr. Burgos had either entity's authority to act in a dual agency capacity. Therefore, the court is unable to conclude that the assignments were validly executed, or that the plaintiff had an ownership interest in the subject mortgage at the time of the filing of this action. Since a party has no foundation in law or fact to foreclose upon a mortgage without establishing its legal or equitable interest, the plaintiff's motion must be denied."

*U.S. Bank, N.A. v. Middlekauff,*

Case No. 10 19844. Hillsborough Co. Fla. 2012

Trust: CSFB Mortgage-Backed Trust. Series 2005-9

34

"First, Plaintiff lacked standing at the inception of this case. Although the Note attached to the Amended Complaint contains an allonge, the undisputed summary judgment evidence before the Court establishes that this allonge was created post-filing. As Plaintiff lacked standing when it filed this lawsuit, dismissal is required." (cite omitted)

### U.S. Bank v. Moore,
*2012 OK 32*
GSAA Home Equity Trust 2006-6
Mortgage Amount: $282,000

"It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the Note, and to have the proper supporting documentation in hand when filing suit, showing the history of the Note, so that the defendant is duly apprised of the rights of the plaintiff. This is accomplished by showing the party is a holder of the instrument or a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument..."

### U.S. Bank, N.A. v. Roundtree,
Index: 009148/2007
(N.Y. Sup. Ct. Suffolk Co. 2007)
Trust: MASTR Alternative Loan Trust 2006-HE1

"Since MERS, Inc. had no ownership interest in said note, it could not assign it to the plaintiff and any assignment purportedly transferring the ownership interest from Fremont Investment and Loan to the plaintiff by a MERS, Inc. assignment of said note is a nullity." (cites omitted)

... In view of the foregoing, the instant motion (#001) is denied as it is apparent from the documentary submissions of the plaintiff that it was not the owner of the note at the time of the commencement of this action."

### U.S. Bank, N.A. v. Villaruel,
Index: 25277/2008
(N.Y. Sup. Ct. Kings Co. 2008)
Trust: SG Mort. Sec. AB Certs., Series 2006-FRE2

35

"The purported assignment is dated August 3, 2007 and states in pertinent part "[t]his assignment is effective as of the 10th day of June, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. Plaintiff's attempt to foreclose upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact..."(cites omitted)

### *Verizzo v. Bank of New York,*

28 So.3d 976 (Fla. 2d DCA 2010)

Trust: Novastar Mortgage Funding Trust, Series 2006-3

"In addition to the procedural error of the late service and filing of the summary judgment evidence, those documents reflect that at least one genuine issue of material fact exists. The promissory note shows that Novastar endorsed the note to "JPMorgan Chase Bank, as Trustee." Nothing in the record reflects assignment or endorsement of the note by JPMorgan Chase Bank to the Bank of New York or MERS. Thus, there is a genuine issue of material fact as to whether the Bank of New York owns and holds the note and has standing to foreclose the mortgage."

(Summary judgment reversed and remanded.)

### *Wells Fargo Bank, N.A. v. Ford,*

418 N.J. Super. 592 (App. Div. 2011)

Mortgage Amount: $403,750

"For these reasons, the summary judgment granted to Wells Fargo must be reversed and the case remanded to the trial court because Wells Fargo did not establish its standing to pursue this foreclosure action by competent evidence. On the remand, defendant may conduct appropriate discovery, including taking the deposition of Baxley and the person who purported to assign the mortgage and note to Wells Fargo on behalf of Argent."

### *Wells Fargo Bank, N.A. v. Hampton,*

Index: 25957/2007 (January 3, 2008)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Option One Mort. Loan Trust 2007-1

36

"The purported assignment is dated August 1, 2007 and states in pertinent part "[e]ffective as of June 10, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. Plaintiff's attempt to foreclose upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact..." (cites omitted)

### *Wells Fargo Bank, N.A. v. Heath,*

212 OK 54

Trust: Option One Mortgage Loan Trust 2005-4

Standing was not established by the materials attached to Appellee's petition or motion for summary judgment because there was no attached indorsed note nor was there an assignment of the note. Therefore, we find the trial court based its decision on an erroneous conclusion of law. There existed a substantial issue of material fact that needed to be addressed at trial. Even though the Appellants did not respond to the motion for summary judgment, the trial court should have denied the motion sua sponte.

### *Wells Fargo Bank v. Larace,*

941 N.E. 2d 40, (Mass. 2011)

Trust: ABFC 2005-OPT1

See *U.S. Bank v. Ibanez* above. These were consolidated cases.

### *Wells Fargo Bank v. Lupori,*

8 A3d 919 (Pa. Super. Ct. 2010)

Trust: MLMI Trust, Series 2005-FF6

"On appeal, Wells Fargo cites *Mallory* for the proposition that a plaintiff's complaint in foreclosure need not allege the existence of a completed and recorded assignment of the subject mortgage to the plaintiff. We conclude, however, that this Court's opinion in *Mallory* is distinguishable from the instant matter. In *Mallory*, the bank alleged that it was the owner of the subject mortgage and also alleged the existence of a pending assignment of the mortgage to the bank. In contrast, Wells Fargo has failed to do either of those things. Since the complaint contains no mention of the alleged assignment from Corporation to Wells Fargo or any allegation that Wells Fargo was the owner of the Lupori's mortgage, the complaint does not comply with Rule 1147(a)(1). The alleged April 1, 2005 assignment from Corporation to Wells Fargo was *dehors* the

37

record as of the time of the default judgment. Since the record did not support entry of the default judgment, the trial-court erred in declining to strike the judgment from the record." (footnote omitted)


*Wells Fargo Bank, N.A. v. Marchione,*

69 AD 3d 204, 887 N.Y.S. 2d 615 (2d Dept 2009)

Trust: Option One Mortgage Loan Trust

"Here, it is clear that the date of the execution of the assignment was after the commencement of the action. If an assignment is in writing, "the execution date is generally controlling and a written assignment claiming an earlier effective date is deficient unless it is accompanied by proof that the physical delivery of the note and mortgage was, in fact, previously effectuated" (*LaSalle Bank Natl. Assn.,* 59 AD3d at 912). While recognizing that in some circumstances parties to an agreement may bind themselves retroactively, "the fiction of retroactivity . . . should not be applied to affect adversely the rights of third persons" (*Debreceni v Outlet Co.,* 78 at 2d 13, 20; *see also* 2 Lord, Williston on Contracts § 6:61, at 893 [4th ed]). Thus, a retroactive assignment cannot be used to confer standing upon the assignee in a foreclosure action commenced prior to the execution of the assignment (*see LaSalle Bank Natl. Assn.* 59 AD3d 912). We disagree with the contention of Wells Fargo that public policy favors permitting less than strict compliance with the requirement that, in order to commence a foreclosure action, a plaintiff must have a legal or equitable interest in the subject mortgage.

Wells Fargo also argues that if the action were to be dismissed, the result would be a waste of judicial resources, as it would simply commence another action as soon as the original action was dismissed. Wells Fargo might have reached this conclusion earlier in its calculus to commence the lawsuit prior to the execution of the assignment."


*Wells Fargo Bank, N.A. v. Mastropaolo,*

42 AD3d 239

Trust Amount: $369,000

"Here, the plaintiff failed to demonstrate its prima facie entitlement to judgment as a matter of law because it did not establish that it had standing, as the lawful holder or assignee of the subject note on the date it commenced this action, to commence the action..." (cites omitted)


38

*Wells Fargo Bank, N.A. v. McNee*

2011 NY Slip Op 33325(U)

Trust: BCAP LLC 2007-AA3

Mortgage Amount: $644,566

Plaintiff's arguments notwithstanding, this Court is not persuaded by Wells Fargo's laborious interpretation of the myriad of transfer documents or the breadth of the language employed therein to confer standing upon it. "[L]anguage cannot overcome the requirement that the foreclosing party be both the holder or assignee of the subject mortgage, and the holder or assignee of the underlying note at the time a foreclosure action is commenced..." In this case, Wells Fargo has adduced no proof in opposition to McNee's cross motion(s) sufficient to demonstrate that it was either.


*Zervas v. Wells Fargo Bank, N.A.,*

__So.3d__ (Fla. 2d DCA 2012)

Trust: MLMI Trust Series 2005-FM1

Summary judgment for bank reversed.

"We also note that the mortgage and note attached to the complaint show the lender to be Fremont Investment and Loan. On April 1, 2010, approximately six months after the complaint was filed, Wells Fargo filed a lost note affidavit, which alleged that the note was lost by its attorney sometime after the attorney received it on November 2, 2009. In their motion to dismiss, the Zervases alleged, among other grounds, that Wells Fargo did not have standing to bring the foreclosure complaint because it did not have a written assignment of the loan. Then on July 26, 2010, seven days before the hearing on the motion for summary judgment, Wells Fargo filed the note as a supplemental exhibit to its complaint. The note contains an endorsement in blank, but there is no evidence in the record establishing that the endorsement in blank was made to Wells Fargo prior to the filing of the foreclosure complaint. See Feltus v. U.S. Bank Nat'l Ass'n, 80 So.3d 375, 377 n.2 (Fla. 2d DCA 2012) (holding that bank was required "to prove the endorsement in blank was effectuated before the lawsuit was filed")."

**ARCHIVES**

- March 2014
- February 2014
- January 2014

39

- December 2013
- October 2013
- September 2013
- August 2013
- July 2013
- June 2013
- May 2013
- March 2013
- February 2013
- January 2013
- December 2012
- November 2012
- February 2012

© Copyright 2012 The Housing Justice Foundation. All rights reserved.
505 S. Flagler Drive, Suite 1331   West Palm Beach, FL 33401
Initial Design by Bryan Klausmeyer.

-

40

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
 )
PLAINTIFFS ) Case No. 1416-CV00681
 V )
Advance Mortgage Corporation et. al, )
 )
DEFENDANTS ) Division 13
 )

FILED ... COURT
JACKSON ... MO-1
2014 JUL 21 PM 4:59

## PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS MILLSAP & SINGER P.C. WITHOUT PREJUDICE

COMES NOW the Plaintiffs and, for their Motion to Voluntarily Dismiss Millsap & Singer do state:

(1) That Plaintiffs strategy has narrowed to only trying to prosecute the case as related to Defendents which continue to insist on claiming the right of enforcement of a false lien on the Title of Plaintiffs home. Plaintiffs do believe that Millsap & Singer P.C. has no plans on making and recording, or helping others to make and record a false claim of lien against Plaintiffs home. Even though as a Trustee Millsap & Singer did begin informing Plaintiffs of intent declare default and foreclose on behalf of others, no such action was ever begun and it has been 18 months since the last notice. Millsap & Singer does not have a claim on Plaintiffs Title and will not claim so.

(2) That Plaintiffs have no reason to pursue the prosecution of Millsap & Singer P.C. at this time and probably never will.

Wherefore, Plaintiffs pray the court for a sustainment of Plaintiffs' Motion to Voluntarily Dismiss Defendant Millsap & Singer Without Prejudice.

Respectfully Submitted

*Barre Hunter*    *Venda Hunter*

Barre Hunter      Venda Hunter

7/21/2014                              1

mdism

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 217 of 491

IN THE CIRCUIT COURT OF JACKSON COUNTY
STATE OF MISSOURI

BARRE EUGENE HUNTER,      )
                                   )
       Plaintiff,              )
                                     )
v.                                     )       Case No. 1416-CV00681
                                     )
ADVANCE MORTGAGE CORP., ET AL.      )       Div. 13
                                     )
       Defendant.           )
                                     )

### DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED PETITION AND DISMISS THE FIRST AMENDED PETITION OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' SECOND AMENDED PETITION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Asset Trust 2007-3 ("Deutsche Bank," collectively "Defendants") hereby moves this Court to strike Plaintiffs second Amended Petition for Judgment Quiet Title[1] ("Second Amended Petition") pursuant to Missouri Rule of Civil Procedure 55.27(e). Then, the First Amended Petition should be dismissed. In the alternative, Defendants hereby move this Court dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Missouri Rule of Civil Procedure 55.27(a). Deutsche Bank and Ocwen provide the following suggestions in support of its motion:

### BACKGROUND

Plaintiffs defaulted on their mortgage loan. In response to the foreclosure of the property at 3020 S. Fields Road, Oak Grove, Missouri, Plaintiffs bring this action in an attempt to prevent

---

[1] Plaintiffs' second Amended Petition is a frivolous form pleading unmoored from any connection to the Hunters' mortgage loan. Petitions with verbatim language and claims have been filed by other borrowers. *See* 4:13-cv-01049-HFS, Doc. 13.

1

the foreclosure sale of the subject property and avoid their contractual obligations under the subject note and deed of trust altogether. Plaintiffs filed their original Petition on or about January 9, 2014. On or about February 11, 2014, Plaintiffs filed their First Amended Petition asserting claims of quiet title, violation of Missouri Statute 400.30, breach of fiduciary duty and violations of the Missouri Merchandising Practices Act. On or about May 15, 2014, Plaintiffs filed their Second Amended Petition again asserting claims of quite title, violation of Missouri Statute 400.30 and violations of the Missouri Merchandising Practices Act. Plaintiffs failed to comply with Missouri statute in amending its petition and thus this Court should strike the Second Amended Petition.

Even if Plaintiffs properly filed their Second Amended Petition, it should be dismissed for failure to state a claim upon which relief can be granted for the same reasons that their First Amended Petition should be dismissed. Plaintiffs attempt to unwind the foreclosure by contending that the subject note and deed of trust were not properly transferred under the Pooling and Servicing Agreement and that the subject note and deed of trust were bifurcated thus voiding both documents. However, Plaintiffs are not entitled to the relief they seek. Plaintiffs lack standing to challenge the transfer of the note and deed of trust or the failure to comply with the terms of a pooling and servicing agreement. Further, Missouri Courts have rejected the "split-the-note theory." Moreover, Plaintiffs fail to state any plausible factual allegations to support their individual claims against Deutsche Bank and Ocwen. Plaintiffs' Second Amended Petition fails as a matter of law and consists solely of unintelligible and unsupported claims. Thus, Plaintiffs' Second Amended Petition must be dismissed.

## MOTION TO STRIKE

Plaintiffs failed to comply with Missouri Rule of Civil Procedure 55.33 when filing their Second Amended Petition. As such, this Court should strike such pleadings. Rule 55.33 allows a pleading

2

Electronically Filed - Jackson - Independence - June 26, 2014 - 01:54 PM

to be amended once as a matter of course at any time before a responsive pleading is served. Mo. R. Civ. P. 55.33(a). Otherwise a plaintiff can only amend a pleading by written consent of the adverse party or by leave of court when justice so requires. Mo. R. Civ. P. 55.33(a). Plaintiffs never contacted Deutsche Bank and Ocwen to request leave to amend. Plaintiffs' Second Amended Complaint states substantially the same claims as the Amended Petition and each claim fails for the reasons set out in the Motion to Dismiss below. Additionally, as established below, both the Amended Petition and Second Amended Petition are form pleadings copied and pasted from the internet and are thus frivolous and lack merit. As such Defendants do not consent to the filing of the Second Amended Petition.

Additionally, Plaintiffs failed to submit a motion requesting leave from this Court. While Plaintiffs are pro se, they are still bound to the same procedural standards as licensed attorneys. *See Kuenz v. Walker*, 244 S.W.3d 191, 193 (Mo. App. Ct. 2007). Plaintiffs failed to adhere to the procedural rules for filing an amended petition. As such, this Court should strike the Second Amended Petition.

Moreover, justice does not require this Court to allow Plaintiffs' Second Amended Petition to stand. "[T]he recognized purpose of allowing amendments to pleadings is to allow a party to present evidence that was overlooked or unknown when the original pleading was filed." *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 92 (Mo.App. E.D. 2012) (citations omitted). To determine whether to grant leave to amend a petition, courts consider: (1) the hardship to the moving party if leave to amend is denied; (2) the moving party's reasons for omitting the matter from the original pleading; and (3) any injustice that would result to the nonmoving party were leave to amend granted. *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 257 (Mo.App. W.D. 2012), *reh'g and/or transfer denied* (May 1, 2012), *transfer denied* (July 3, 2012). "[A]ppellate courts have

3

found no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed." *Dibrill*, 383 S.W.3d at 92. Plaintiffs bring the same baseless frivolous claims in both the Amended Petition and Second Amended Petition. Further, the Second Amended Petition fails as established in Defendants' Motion to Dismiss. Moreover, no new evidence is asserted nor are the actual claims even rephrased. Plaintiffs simply amend to provide additional conclusory and baseless support for their assertion that Defendants somehow violated the subject Pooling and Servicing Agreement. Such allegations could have been made when the Amended Petition was filed. Additionally, as established below, any amendment to include these claims is futile as Plaintiffs lack standing to bring these additional claims as they are neither a party to nor a third-party beneficiary of. As such, justice does not require this Court to allow Plaintiffs' Second Amended Petition to stand.

Because the Second Amended Petition should be struck, the First Amended Petition should be dismissed for the same reasons that the Second Amended Petition should be dismissed, as discussed below.

## MOTION TO DISMISS

In the alternative, Plaintiffs' Second Amended Petition fails to state a claim upon which relief can be granted and fails as a matter of law and should be dismissed.

### I. Standard For Dismissal For Failure To State A Claim Upon Which Relief Can Be Granted.

"[A] trial court may dismiss a claim when a party fails to state a cause of action or fails to state facts entitling him to relief." *Capital Group, Inc. v. Collier*, 365 S.W.3d 644, 647–48 (Mo. Ct. App. 2012. To survive a motion to dismiss, a petition must invoke substantive principles of law entitling the plaintiff to relief. *Scheibel v. Hillis*, 531 S.W.2d 285, 290 (Mo. 1976). "Mere conclusions of the pleader not supported by factual allegations are disregarded in determining

4

Electronically Filed - Jackson - Independence - June 26, 2014 - 01:54 PM

whether a petition states a claim on which relief can be granted." *Commercial Bank of St. Louis County v. James*, 658 S.W.2d 17, 22 (Mo. 1983). Rather, the Petition must "demonstrate a right of recovery against the defendant which the law recognizes." *Deutsche v. Boatmen's Nat. Bank of St. Louis, N.A.*, 991 S.W.2d 206, 208 (Mo. Ct. App. 1999).

## II. Plaintiff's Second Amended Petition Is A Form Pleading Presumably Obtained From The Internet And Bears No Relationship To Any Relevant Fact In This Case.

Plaintiffs' Second Amended Petition is a form pleading as petitions with verbatim language and claims have been filed by other borrowers and is thus frivolous and without merit. *See* 4:13-cv-01049-HFS, Doc. 13. Plaintiffs did at least change some of the names[2] and alter it from referencing a past foreclosure to a future foreclosure, but otherwise copied the other pleading verbatim. Even granting latitude to *pro se* litigants, Defendants respectfully suggest that causes of action based more on the copy/paste features in a word processing program than on any relevant fact should be dismissed.

## III. Deutsche Bank Possesses the Note, Which Is Endorsed In Blank, And Is Thus Entitled To Enforce It.

Plaintiffs assert throughout their form Second Amended Petition that the Defendants do not hold the original note, thus preventing them from enforcing said note and foreclosing on the subject property. But Deutsche Bank holds the original note, endorsed in blank, and is thus entitled to enforce it and foreclose on the property.[3] *See* Note, attached hereto as **Exhibit A**.[4] As such,

---

[2] Plaintiffs failed to change all the names in their form pleading as they refer to Wells Fargo as investor rather than Deutsche Bank, Second Am. Pet. ¶17.

[3] Counsel for Defendants is currently in possession of the note, and it could be produced upon demand with reasonable notice.

[4] As Plaintiffs Amended Petition focuses on Defendants ability to enforce the subject note and whether an original copy exists, the subject note is "embraced by the complaint" and is not a matter outside of the pleadings. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Additionally, "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and central to plaintiff's claim." *Anheuser Busch, Inc., v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 4:11-CV-1220-JAR, 2001 WL 6716628, *2 (E.D. Mo. Dec. 21, 2011)(citing *Venture Assoc's Corp. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

5

Plaintiffs' claims, which rely on the conclusory (and false) assertion that Defendants fail to hold the note, clearly fail and must be dismissed.

IV. **Plaintiffs Lack Standing To Challenge The Pooling And Servicing Agreement As Plaintiffs Are Neither Parties Nor Third Party Beneficiaries Of Any Such Agreement.**

Plaintiffs assert that the subject Pooling and Servicing Agreement was not complied with, which invalidates the transfer of the subject note and assignment of the subject deed of trust thus prohibiting Deutsche Bank from foreclosing on the subject property. Yet courts around the country have roundly and soundly rejected borrowers' attempts to evade their obligations by attacking contracts to which they were not a party, such as pooling and servicing agreements and related grants of authority. *In re Meis*, 10-13207, 2011 WL 6148654 at *4 (Bankr. D. Kan. Dec. 9, 2011) ("As Meis is not a party to the Pooling Agreement, he cannot rely on its having been breached as a defense to his own liability on the note itself."); *Abubo v. Bank of N. Y. Mellon*, CIV. 11-00312 JMS, 2011 WL 6011787 at *8-9 (D. Haw. Nov. 30, 2011) (same); *In re Smoak*, 09-30421, 2011 WL 4502596 at *5-6 (Bankr. S.D. Ohio Sept. 28, 2011) (holding that plaintiffs lack standing to challenge violations of the PSA and that any such violations are irrelevant to questions of standing to enforce the note); *Correia v. Deutsche Bank Nat'l Trust Co.*, 452 B.R. 319, 324 (Bankr. 1st Cir. 2011) (holding that debtors lack "standing to challenge the mortgage's chain of title under the PSA"). Plaintiffs may not rely on the conformance or lack thereof with the Pooling and Servicing Agreement in support if their claims. Therefore, Plaintiffs' claims that rely on this argument must fail and be dismissed.

6

## V. Plaintiffs' "Split-The-Note" Theory Has Been Rejected By Missouri Courts, And They Lack Standing To Assert Such A Theory.

Plaintiffs wish to prevent enforcement of the note and deed of trust by contending that they were split or bifurcated in such a way as to void both documents. Plaintiffs assert that because Mortgage Electronic Registration Systems, Inc. ("MERS") was named as nominee for Lender and Lender's successors and assigns in the subject deed of trust, but not the note, the documents were split at origination and are void. However, courts have expressly rejected this theory: "MERS's role as beneficiary on the Deed of Trust did not invalidate the Deed of Trust by splitting the Note and Deed of Trust." *Caranchini v. Bank of America, N.A.*, Nos. 4:10-CV-00672-DGK, 4:11-CV-0464, 2013 WL 5407206, at *4 (W.D. Mo. Sept. 26, 2013). *See also Commonwealth v. Mortg. Elec. Regis. Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011) (upholding MERS's right to initiate foreclosure when it serves as beneficiary of a deed of trust, as nominee for the original lender and its successors and assigns, even when the promissory note has been securitized); *In re Tucker*, 441 B.R. 638, 645–46 (Bankr. W.D. Mo. 2010) ("Assuming that the note-holder is a member of MERS, thereby creating an agency relationship, the fact that MERS is identified as the beneficiary under a deed of trust for the benefit of the note-holder does not create a split between the note and deed of trust.").

Further, to the extent Plaintiffs suggest the subject note and deed of trust were split due to separate assignments, Plaintiffs lack standing to make such a bizarre and baseless claim. Courts have routinely held that debtors lack standing to question assignments or the agreements by which their mortgage loans were securitized. *See, e.g., Schwend v. U.S. Bank, N.A.*, No. 4:10CV1590 CDP, 2013 WL 686592 (E.D. Mo. Feb. 26, 2013) (stating there is judicial consensus that borrowers lack standing to challenge the validity of a mortgage securitization); *In re Washington*, 468 B.R. 846,

7

852–53 (Bankr. W.D. Mo. 2011) (stating that alleged violations of a pooling and servicing agreement were irrelevant to the holder's standing to enforce the note); *In re Smoak*, 461 B.R. 510, 518–21 (Bankr. S.D. Ohio 2011) (finding that debtors had no standing to question the transfers effected by a PSA or a mortgage assignment); *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009) (observing that debtors lacked standing to challenge the PSA because they were neither parties to nor third-party beneficiaries of that agreement). Additionally, under Missouri law, only parties to a contract and third-party beneficiaries have standing to enforce the agreement. *Verni v. Cleveland Chiropractic College*, 212 S.W. 3d 150, 153 (Mo. 2007) (multiple citations omitted). Therefore, Plaintiffs' "split-the-note" theory, as well as the various challenges to the transfer of the subject note and assignment of the subject deed of trust, fails as a matter of law.

**VI.     Each Individual Claim Fails To State A Plausible Claim For Relief And Should Be Dismissed As A Matter of Law.**

Plaintiffs' fail to state—even in a conclusory manner or by formulaic recitations of the elements—a claim upon which relief can be granted. As such, Plaintiffs claims are deficiently plead or fail as a matter of law and must be dismissed.

**A.     Plaintiff's Quiet Title Claim Fails as a Matter of Law and Should be Dismissed.**

Plaintiffs' claim for quiet title simply fails. Plaintiffs base their claim, which again was copied and pasted from somewhere on the Internet and bears no relation to any fact in this case, on Deutsche Bank's alleged inability to enforce the subject note. However, Deutsche Bank is unequivocally entitled to enforce the note as established in Section III. Deutsche Bank holds the note, endorsed in blank, and is assignee of the accompanying deed of trust. Deutsche Bank has a valid first lien on the subject property. As such, Plaintiffs cannot establish that Deutsche Bank is unable to enforce the note and deed of trust, so Plaintiffs' claim fails as a matter of law and must be dismissed.

8

**B. Plaintiffs Claim For Specific Performance Under V.A.M.S. §400.3 Fails To State A Claim And Must Be Dismissed.**

Plaintiffs assert a claim for Specific Performance under V.A.M.S. §400.3, however, that chapter does not set forth a cause of action but rather defines and describes certain processes under the Missouri Uniform Commercial Code. *See* V.A.M.S. §400.3 *et seq.* Plaintiffs support this nonsensical claim with the assertion that the subject note and deed of trust were bifurcated or split as MERS was not named as nominee in the subject note. However, as explained above, this "split-the-note" theory has be rejected by the courts. Plaintiffs cannot rely on defective legal theories to support their claim. Additionally, Defendants hold the original endorsed copy of the subject note thus entitling them to foreclosure on the subject property regardless of whether the deed of trust was assigned. As Plaintiffs point out, the deed of trust always follows the note, therefore when Defendants took possession of the subject note they became assignee of the subject deed of trust. *See U.S. Bank Nat. Ass'n v. Burns,* No. ED 99551, 2013 WL 4520014, *3 (Mo. Ct. App. Aug. 27, 2013) (citing *Goetz v. Selsor,* 628 S.W.2d 404, 405 (Mo. Ct. App. 1982) ("In Missouri, '[a] deed of trust securing a negotiable note passes with it.'"). Moreover, Plaintiffs waived their right to presentment of the subject note. As such, Plaintiffs claim must be dismissed.

**C. Missouri Merchandising Practices Act.**

To state a claim under the Missouri Merchandising Practices Act (MMPA), MO. REV. STAT. §§ 407.010 *et seq.*, the purported violation must have occurred "in connection with" the sale or advertisement of merchandise, which means that the purported unfair practice must "have been made before or at the time of the advertising or purchase of the merchandise." *State ex rel. Koster v. Portfolio Recovery Assocs., LLC,* 351 S.W.3d 661, 665 (Mo. Ct. App. 2011). Only parties to the initial sales transaction are subject to liability under the MMPA. *Id.* Here, neither Deutsche Bank

9

nor Ocwen originated Plaintiffs' loan, and neither was otherwise a party to the initial transaction. The note and deed of trust are clear on this point. Plaintiffs cannot maintain a plausible claim for relief under the MMPA.

Additionally, Plaintiffs fail to assert any factual allegations—beyond mere conclusory statements—that suggest either Deutsche Bank or Ocwen violated the MMPA. To the extent Plaintiffs could ever support their claim with the contention that Deutsche Bank never held the original note, Plaintiffs' claim must fail as Deutsche Bank possesses the original endorsed note.

### D. Plaintiffs Are Not Entitled To Any Punitive Damages.

Plaintiffs appear to make a claim for punitive damages; however, Plaintiffs are not entitled to such relief. Typically "punitive damages require clear and convincing proof that the defendant intentionally acted either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)." *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 630 (Mo. 2013), *reh'g denied* (Oct. 29, 2013). Plaintiffs fail to allege, beyond mere conjecture and conclusory assertions, any intentional or willful acts on the part of Deutsche Bank or Ocwen. Further, Plaintiffs fail to address what statutory provisions provide such relief. As such, claims for punitive damages fail and should be stricken.

### E. If the Second Amended Petition is Struck and the First Amended Petition is the Operative Petition: Plaintiffs' Breach of Fiduciary Duty Claim Fails Because Plaintiffs Acknowledge They Have No Valid Claim and Because It Fails to State a Plausible Claim Upon Which Relief Can Be Granted

Plaintiffs did not include their breach of fiduciary duty claim in the Second Amended Petition. This should be taken as acknowledgment of its invalidity. If the Second Amended Petition is struck and this this Motion to Dismiss therefore applies to the First Amended Petition, then this claim should be dismissed for that reason.

10

Additionally, this claim should be dismissed because Deutsche Bank does not owe a fiduciary duty to Plaintiffs as a matter of law. A claim for breach of fiduciary duty requires proof that a fiduciary duty existed. *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 86 (Mo. Ct. App. 2012). But Deutsche Bank does not owe a fiduciary duty to Plaintiffs as a matter of law. *White v. CTX Mortgage, LLC*, 13-0335-CV-W-DGK, 2013 WL 5592979, at *6 (W.D. Mo. Oct. 10, 2013) (citing *UT Commc'ns. Credit Corp. v. Resort Dev.*, 861 S.W.2d 699, 710 (Mo. Ct. App. 1993)); *Lonergan v. Bank of Am., N.A.*, 2:12-CV-04226-NKL, 2013 WL 176024 (W.D. Mo. Jan. 16, 2013); *see also, Pace v. Wells Fargo Bank, N.A.*, No. 4:11–CV–489 CAS, 2012 WL 3705088, at *15 (E.D. Mo. Aug. 27, 2012); *Sultan v. BAC Home Loans Servicing L.P.*, No. 2:10–CV–04271–NKL, 2011 WL 1557933, at *3 (W.D.Mo. Apr. 25, 2011); *White v. BAC Home Loans Servicing, L.P.*, No. 4:10–CV–2137 CAS, 2011 WL 1483919, at *11 (Apr. 19, 2011). Accordingly, Deutsche Bank cannot be liable for breaching a non-existent duty.

## CONCLUSION

Plaintiffs failed to properly adhere to Missouri Rules of Civil Procedure in filing their Second Amended Petition and justice does not require leave for Plaintiffs to amend. As such, Defendants Deutsche Bank and Ocwen respectfully request that this Court strike Second Plaintiffs' Amended Petition and dismiss the First Amended Petition. In the alternative, Plaintiffs' Second Amended Petition also fails to state a claim upon which relief can be granted.

11

nically Filed - Jackson - Independence - June 26, 2014 - 01:54 PM

THE BOYD LAW GROUP, L.C.

Michael E. Boyd, #53870
Charles H. Nitsch, #50971
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376
Telephone: (636) 447-8500
Fax: (636) 447-8505
mboyd@boydlawlc.com
ATTORNEY FOR DEFENDANTS
OCWEN LOAN SERVICING, LLC
And DEUTSCHE BANK
NATIONAL TRUST COMPANY

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the above and foregoing was served on this
26th day of June _____, 2014, by first-class mail, postage prepaid, addressed to:

Barre and Venda Hunter
3020 S. Fields Rd.
Oak Grove, MO 64075

Attorney for Defendants

12

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
 )
PLAINTIFFS ) Case No. 1416-CV00681
V )
Advance Mortgage Corporation et. al, ) Division 13
 )

## PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS MILLSAP AND SINGER, LLC WITHOUT PREJUDICE

COMES NOW the Plaintiffs and, for their Motion to Voluntarily Dismiss Millsap and Singer, LLC do state:

(1)  That Plaintiffs' strategy has narrowed to only trying to prosecute the case as related to Defendents which continue to insist on enforcing a false lien on the Title of Plaintiffs home. Plaintiffs do believe that Millsap and Singer is unlikely and unable to claim a lien of any kind on Plaintiffs' property.

(2)  That Plaintiffs' have no reason to pursue the prosecution of Millsap and Singer LLC at this time..

Wherefore, Plaintiffs pray the court for a sustainment of Plaintiffs' Motion to Voluntarily Dismiss Defendant Advance Mortgage Corporation Without Prejudice.

Respectfully Submitted

*Barre Hunter*  *Venda Hunter*
Barre Hunter       Venda Hunter

date 6/6/14

1

mdism

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| BARRE EUGENE HUNTER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1416-CV00681 |
| | ) |
| ADVANCE MORTGAGE CORPORATION, et al.,) Div. No. 13 |
| CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANT MILLSAP & SINGER, LLC

Defendant Millsap & Singer, LLC, through the undersigned counsel, states the following

for its Reply in Opposition to Plaintiffs' Motion for Judgment on the Pleadings:

A.    Procedural History:

1.    On January 24, 2013, Plaintiffs filed their first lawsuit, Case No. 1316-CV01602

which was assigned to this Court. Plaintiffs' Petition included claims for Quiet Title,

Declaratory Judgment, Malicious Prosecution, and Breach of Fiduciary Duty. The Defendants in

the 2013 lawsuit were Advance Mortgage Corporation; Deutsche Bank National Trust Company

as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage Backed Pass-Through

Certificates, Series 2007-3; Millsap & Singer, P.C.; and the residence at 3020 S. Field Road, Oak

Grove, Missouri 64075.

2.    On May 15, 2013, Plaintiffs amended their Petition in the 2013 lawsuit to include

claims for Quiet Title and Breach of Fiduciary Duty.

3.    On December 16, 2013, this Court entered an Order granting Advance Mortgage

Corporation's Motion to Dismiss and an Order granting Millsap & Singer, P.C.'s Motion for

Summary Judgment. Plaintiffs did not appeal or otherwise challenge the above Orders.

4. Instead, on January 9, 2014, Plaintiffs filed the above captioned lawsuit with this Court. Plaintiffs' Petition identified claims for Quiet Title, Specific Performance, Conversion, Unjust Enrichment, Breach of Fiduciary Duty, and Missouri Merchandising Practices Act Violations. The Defendants named in the 2014 lawsuit are Advance Mortgage Corporation; Deutsche Bank National Trust Company; American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3; Ocwen Loan Servicing, LLC fka Homeward Residential, Inc., fka American Home Mortgage Servicing; Millsap & Singer, LLC; and the residence at 3020 S. Field Road, Oak Grove, Missouri 64075.

5. On February 11, 2014, Plaintiffs filed an Amended Petition which identified claims for Quiet Title, Conversion, Unjust Enrichment, Specific Performance, Breach of Fiduciary Duty, and Missouri Merchandising Practices Act Violations. The Defendants identified in the Amended Petition are the same as the ones named in Plaintiffs' original Petition filed on January 9, 2014.

6. On May 15, 2014, Plaintiffs voluntarily dismissed Advance Mortgage Corporation and also filed, without leave from the Court or the remaining Defendants in this lawsuit, an Amended Petition.

7. On May 19, 2014, Millsap & Singer, LLC filed a Motion to Strike Plaintiffs' Second Amended Petition for failure to comply with Rule 55.27(e).[1] Millsap & Singer, LLC's Motion to Strike also incorporated by reference its pending Motion to Dismiss and suggestions in support thereof.

8. On May 29, 2014, Plaintiffs filed a Motion for Judgment on the Pleadings as to Count II for Specific Performance. Plaintiffs contend that Chapter 400.30, RSMo. provides a

---

[1] Unless otherwise noted, all procedural references are to the 2014 Missouri Rules of Civil Procedure.

2

basis for their Specific Performance claim. A review of the Revised Statutes of Missouri reveals that there is neither a Chapter 400.30, RSMo. or an individual statute with such a designation.

    B.    Standard of Review:

    A Motion for Judgment on the Pleadings is permitted by Rule 55.27(b). The Motion is of common law origin and is not favored by Missouri Courts. See e.g. *McIntosh v. Foulke,* 288 S.W.2d 757, 761 (Mo. 1950). "The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, at 599 (Mo. banc 2007) (quoting *RGB2, Inc. v. Chestnut Plaza, Inc.*, 103 S.W.3d 420, 424 (Mo. App. 2003). A trial court should deny a motion for judgment on the pleadings any time a material issue of fact exists. *Madison Block Pharmacy v. U.S. Fidelity*, 620 S.W.2d 343, 345 (Mo. banc 1981). Where a defending party denies plaintiffs allegations on material issues or has asserted additional facts by way of defense, it is error for the trial court to enter judgment on the pleadings. *Garr v. Missouri Bd. Of Probation and Parole*, 211 S.W.3d 191, 192-93 (Mo. App. 2007).

    Here, as discussed in Millsap & Singer, LLC's pending Motion to Dismiss, which is incorporated by reference, material issues of fact exist regarding whether the claims and issues identified in Plaintiffs Second Amended Petition, concern the same subject matter as Plaintiffs' prior lawsuit. If so, Plaintiffs' current lawsuit is barred under the theories of claim and issue preclusion in light of this Court's 2013 Orders granting a Motion to Dismiss filed by Advance Mortgage Corporation and a Motion for Summary Judgment filed by Millsap & Singer, P.C. A further material issue of fact exists as to whether privity, for purposes of claim and issue preclusion, exists between Millsap & Singer, P.C. and Millsap & Singer, LLC. Millsap & Singer, P.C. was named as a Defendant in Plaintiffs' 2013 lawsuit and, as noted above, obtained Summary Judgment in its favor in said lawsuit. Millsap & Singer, P.C.'s attorney of record in

3

Plaintiffs' 2013 lawsuit was Millsap & Singer, LLC which is a named Defendant in Plaintiffs' current lawsuit. Finally, a material issue of fact exists as to whether Chapter 400.30, RSMo. actually exists as Plaintiffs claim and, if so, whether it provides statutory authority for Plaintiffs' claim of Specific Performance as stated in Count II of Plaintiffs' Second Amended Petition. Based on the material issues of fact before this Court, Plaintiffs are not entitled to Judgment as a matter of law under Rule 55.27(b).

WHEREFORE, Millsap & Singer, LLC requests that this Court enter an Order denying Plaintiffs' Motion for Judgment on the Pleadings, and for any other relief that this Court deems proper.

Respectfully submitted,

MILLSAP & SINGER, LLC.

By: /s/ Michael J. Wambolt
MICHAEL J. WAMBOLT
Missouri Bar No. 51231
11460 Tomahawk Creek Pkwy.
Suite 300
Leawood, KS 66211
(913) 339-9132
(913) 339-9045 FAX
mwambolt@msfirm.com

Attorney for Defendant
Millsap & Singer, LLC

4

CERTIFICATE OF SERVICE

On June 5, 2014, a copy of the foregoing pleading was sent via electronic mail or first class mail, postage prepaid to:

Barre E. Hunter
Venda M. Hunter
3020 S. Fields Road
Oak Grove, MO 64075

Thomas M. Franklin
9140 Ward Parkway, Ste. 200
Kansas City, MO 64114

Deutsche Bank National Trust Company
1761 East St.
Andrew Place
Santa Ana, CA 92705

Michael Ernest Boyd
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376

By: */s/ Michael J. Wambolt*
Michael J. Wambolt

5

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
)
PLAINTIFFS ) Case No. 1416-CV00681
V )
Advance Mortgage Corporation et. al, ) Division 13
)

2014 MAY 29 PM 4:39
FILED-CIRCUIT COURT
JACKSON CO., MO.-1

## PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT II SPECIFIC PERFORMANCE OF THIS PETITION INCLUDING ALLEGATIONS COMMON TO ALL COUNTS

COMES NOW the Plaintiffs and, for their Motion for Judgment on the Pleadings as to Count II Specific Performance Including Allegations Common to All Counts state to the Court as follows:

(1)  That Plaintiffs have pre-empted the opposing party with a lawsuit that seeks to determine with finality the status and ownership of their alleged loan. Pursuant to Rule 55.27 of the Supreme Court Rules. Based on the points to be raised in this memorandum, Plaintiffs seek to establish that there is no issue of material fact; and, thus, Motion for Judgment on the Plaintiffs Pleadings as to Count II for Specific Performance including Allegations Common to all Counts is proper as a matter of law.

(2)  That Plaintiffs have no other remedy to compel the Defendant to comply with the statutes other than an order requiring the Defendant to specifically perform their statutory obligations, before making claims of rights to collect, disburse, or declare default on a Promissory Note specified to be Negotiable..

(3) For months stretching into years, the Plaintiffs have lived with the emotional distress of uncertainty surrounding their home on a daily basis. It is in the interest of judicial, economic and emotional economy to grant the remedy of summary judgment as to the Count II of Specific Performance.

### Material Facts

(1) On or around March 22, 2007, the Plaintiffs allegedly assigned a loan to Advance Mortgage Corporation (hereinafter Advance), in order to purchase the property commonly identified as 3020 S Fields Road, Oak Grove, MO 64075 (hereinafter the property), with Mortgage Electronic

1

motio                                                    12

Registration Systems (hereinafter MERS) named as nominee by the alleged Deed of Trust provided by the Defendant.

(2) On or around January 11th, 2013, MERS as nominee for Advance assigned the Deed of Trust to Deutsche Bank National Trust Company (hereinafter Deutsche) as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass- Through Certificates, Series 2007-3, a Mortgage Backed Security with a REMIC Trust.

At the same time, on or around January 11th, 2013, a substitute trustee, Millsap & Singer, P.C., was appointed by Homeward Residential, Inc., fka American Home Mortgage Servicing, Inc., as Attorney in Fact for Deutsche as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3.

(3) The terms of the alleged Deed of Trust gives MERS powers to assign the Deed of Trust; however, MERS is not given this power in the alleged Promissory Note, nor is MERS ever mentioned in the alleged Promissory Note copies from closing. This is an intentional bifurcation, or splitting of the two documents and cannot be repaired. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**

(Ex F,  Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY)

(Ex F-1  The decisions of the United States Supreme Court, whether right or wrong, are supreme: they are binding  on all courts of this land, Hoover v. Holston Valley Community Hospital, 545 F. Supp. 8, 13 (E. D.Â Tenn. 1981)   (quoting Jordan V. Gilligan, 500 2 F.3d 701, 707(6th Cir. 1974)).

(Ex F-2  The lower courts are bound by Supreme Court precedent, Adams v. Department of Juvenile Justice of       New York City, 143 F.3d, 61, 65(2nd Cir. 1998)

(Exhibit F-3 Walker v. Quality Loan Service Corp. of Washington et al., No. 65975-8-1(Exhibit F-4 Washington State Supreme Court, Bain v. Metro. Mortg. Group, Inc., et al.175 Wn.2d 83, 285 P.3d 34 (2012)

(4) Mortgage Backed Securities with REMIC trusts are governed by a Pooling and Servicing Agreement, which is a critical component of every Mortgage Backed Security registration with the SEC. The Pooling and Servicing Agreement (PSA) of this Trust was registered with the SEC and the IRS with an absolute closing date. This is the date that any loans which have been contracted to be purchased by The Trust, must have been paid for and delivered to the Real Estate Mortgage Investment Conduit Trust. The Trust is the "party in interest" with the right to enforce and must have all of the documents required by the UCC statutes as adopted by Missouri, The Pooling Agreement of the Trust, and the REMIC TRUST rules of the IRS.

2

Every Pooling and Servicing Agreement includes a Cutoff Date (the date which all loans to be purchased by the Trust are identified) and a Closing Date (the date which all loans to be purchased are deposited into the Trust). This date is also called the Startup Date of the Trust. After this date, no new loans can be placed into the Trust without drastic consequences to the investors who have purchased bonds issued by the Trust. Certain loss of the IRS tax haven status would follow. This 2007 loan must have been deposited into the Trust by the <u>Closing Date</u> of <u>June 6th</u>, 2007. However, the recorded assignment from MERS on behalf of Advanced Mortgage is transferred into the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 on January 13, 2013. According to the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the Closing Date. This requirement is to ensure that the Trust will receive REMIC status (IRS) and thus be exempt from federal income taxation. Section 2.02(a) of the PSA provides for a window of 90 days after the Trust Closing Date of June 6th, 2007 in which the Trust may complete any missing paperwork or finalize any documents necessary to complete the transfers of assets from the depositor to the Trust. The Trust Agreement provides the only manner in which assets may be properly transferred to the Trust and any act in contravention of the Trust Agreement is void.

(5) As a generic matter, there are several methods by which the underlying assets of the Trust, specifically the individual promissory notes, might be transferred or conveyed. A trust's ability to transact is restricted to the actions authorized by its trust documents. In this case, the Trust documents permit only one specific method of transfer to the Trust. That method is set forth in Section 2.01 of the PSA:

That pursuant to the Mortgage Loan Purchase Agreement, each Seller sold, transferred, assigned, set over and otherwise conveyed to the Depositor, without recourse, all the right, title and interest of such Seller in and to the assets sold by it in the Trust Fund....In connection with such sale, the Depositor has delivered to, and deposited with, the Trustee or the Custodian, as its agent, the following documents or instruments with respect to each Mortgage Loan so assigned: (i) the Original Mortgage Note, including any riders thereto, endorsed without recourse:

(A) In blank or to the order of Deutsche, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, or

(B) In the case of a loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee, the analysis of this transfer language requires the court to consider each part. In the second paragraph of the language in the Trust Agreement, the first statement is one of transfer, stating "the Depositor has delivered to and deposited with the Trustee or the Custodian the following documents". The **key instrument** is the **original mortgage note**, which requires mandatory en-

3

dorsements found in this language: "the original mortgage note....endorsed without recourse" followed by two alternatives which are phrased in the either/or format. The first labeled "A" states "in blank or to the order of Deutsche National Trust Company, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3.

The second possibility stated in "B" provides as the "or" proposition for transfer the following statement "in the case of a loan registered on the MERS system, in blank". In each case, the affirmative language of the Trust agreement places a burden on the depositor to make a valid legal transfer in the terms required by the Trust instrument. The key language in the entire paragraph is the final statement trailing the "either/or" language of A & B which reads: "and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee."

Stacked upon the top of this requirement of an unbroken chain of endorsements, is the requirement of certification of the final contents of the collateral file for the benefit of the Trust.

This requirement is found at Exhibit 1 to the Mortgage Loan Purchase Agreement (MLPA), which is an attachment to and incorporated as a part of the PSA in Section 2.01. This Document is found in the PSA and states as follows:

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser or its designee, and which shall be delivered to the Purchaser or its designee pursuant to the terms of this Agreement. (a) The Original Mortgage Note, including any riders thereto, endorsed without recourse to the order of Advance Mortgage Corporation, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, and showing to the extent available to the related Mortgage Loan Seller an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee;

First, all notes sold to the Trust were required to have an unbroken chain of endorsements from the original payee to the person endorsing it to the Trustee. This requirement stems from a particular business concern in securitization, namely to evidence that there was in fact a "true sale" of the securitized assets and that they are in no way still property of the originator, sponsor, or depositor, and thus not subject to the claims of creditors of the originator, sponsor, or depositor. A securitization expert's testimony could be secured by way of deposition.

Second, there was a requirement that ultimately, within 90 days of the Trust Closing Date, in this instant case June 6th, 2007, the actual promissory note must be endorsed over to the trustee for the specific trust to effectively transfer the asset into the trust and therefore make the 'Subject's'

4

promissory note a Trust property. This requirement finds support in logic and law and is, in fact, the ancient and settled law of New York on this issue.

(6) That New York Law Governs the Mandatory Requirements to Effectively Transfer an Asset to a Trust. It is not contested that securitization trusts, such as the alleged Secured Party's, are subject to the common law of New York.

New York's trust law is ancient and settled. There are few principles of New York Trust law that are particularly important to the analysis of whether any particular asset is an asset of a given trust are defined under New York law, the analysis of whether an asset is trust property is determined under the law of gifts. In order to have a valid inter vivos gift, there must be a delivery of the gift pursuant to an applicable law. In the case of a trust where there is a trustee other than the grantor, transfer will be governed by the existing rules as to intent and delivery (the elements of a gift)

As early as 1935, in Burgoyne v. James, 282 N.Y.S. 18, 21 (1935), the New York Supreme Court recognized that business trusts, also known as "Massachusetts trusts", are deemed to be common law trusts.

See also In re Estate of Plotkin, 290 N.Y.S.2d 46, 49 (N.Y. Sur. 1968) (characterizing common stock trust funds as "common law trust[s]"). Other jurisdictions are in accord. See, e.g., Mayfield v. First 'Nat'l Bank of Chattanooga, 137 F.2d 1013(6th Cir. 1943) (applying common law trust principles to a pool of mortgage participation certificate holders).

Becker, 2004 N.Y. Slip Op. 51773U, 4 (N.Y. Sur. Ct. 2004). physical delivery of the subject of the gift) or a constructive or symbolic delivery (such as by an instrument of gift) sufficient to divest the donor of dominion and control over the property and "what is sufficient to constitute delivery "must be tailored to suit the circumstances of the case".

The delivery rule requires that "[the] delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit."

"Under New York law there are four essential elements of a valid trust of personal property:

(1) a designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee."

5

If the trust fails to acquire the property, then there is no trust over that property which may be enforced.

Until the delivery to the trustee is performed by the settlor, or until the securities are definitely ascertained by the declaration of the settlor, when he himself is the trustee, no rights of the beneficiary in a trust created without consideration arise.

(see, Matter of Szabo, 10 N.Y.2d 94, 98-99, supra; Speelman v Pascal, 10 N.Y.2d 313, 318-320, supra; Beaver v. Beaver, 117 N.Y. 421, 428-429, supra; Matter of Cohn, 187 App. Div. 392, 395) as cited in Gruen v. Gruen, 68N.Y.2d 48, 56 (N.Y. 1986).

(Matter of Szabo, supra, at p. 98).
(id.; Vincent v Rix, 248 N.Y. 76, 83; Matter of Van Alstyne, supra, at p 309; see, Beaver v. Beaver, supra, at p428) as cited in Gruen v. Gruen, 68 N.Y.2d 48, 56-57 (N.Y. 1986) .12 Brown v. Spohr, 180 N.Y. 201, 209-210 (N.Y. 1904).13 (cf. Riegel v. Central Hanover Bank & Trust Co., 266 App. Div. 586; Matter of Gurlitz [Lynde],105 Misc 30, aff'd 190 App. Div. 907, supra; Marx v. Marx, 5 Misc 2d 42) as cited in Sussman v. Sussman, 61A.D.2d 838 (N.Y. App. Div. 2d Dep't 1978).

An attempt to convey to a trust will fail if there is no designated beneficiary in the conveyance.

In the context of mortgage-backed securitization, it is clear that registration of the notes and mortgages in the name of the trustee for the trust is necessary for effective transfer to the trust.

(7) Within the Statutes of New York governing Trusts, Estates Powers and Trusts Law (EPTL) section 7-2.1(c) authorizes investment trusts to acquire real or personal property "in the name of the trust" as such name is designated in the instrument creating said trust." Further, the actual contracts of the parties, which include the custodial agreements, the mortgage loan purchase agreements, and the trust instrument known as the "Pooling and Servicing Agreement," prescribe a very specific method of transfer of the notes and mortgages to the Trust. Because the method of transfer is set forth in the Trust instrument, it is not subject to any variance or exception.

In an action against the individual "Secured Party" as Trustee, based on the theory of breach of fiduciary obligation, a complaint would be properly dismissed on the ground that he had acquired no title or separate control of the goods and, hence, there was no actual trust over the property to breach. Kermani v. Liberty Mut. Ins. Co., 4 A.D.2d 603 (N.Y. App. Div. 3d Dep't 1957).
The Trust documents require that the promissory notes and mortgages be transferred to the Trustee, which under New York Trust Laws requires valid delivery. The question then arises —
"What constitutes valid delivery to the Trustee?"

6

Wells Fargo Bank v. Farmer, 2008 N.Y. Misc Lexis 3248.

Note:

Courts may neither ignore the actual provisions of transaction documents nor create contractual remedies that were omitted from the governing contracts by the contracting parties.

See Schmidt v. Magnetic Head Corp., 468 N.Y.S.2d649, 654 (N.Y. App.Div. 1983)

("It is fundamental that courts enforce contracts and do not rewrite them . . . An obligation undertaken by one of the parties that is intended as a promise . . . should be expressed as such, and not left to implication."" (citations omitted);

Morlee Sales Corp. v. Manufacturers Trust Co., 172 N.E.2d 280, 282 (N.Y.1961) "The courts may not by construction add or excise terms . . . and thereby 'make a new contract for the parties under the guise of interpretation" (quoting Heller v. Pope, 250 N.E. 881, 882 (N.Y. 1928)

When the requirements of transfer to the trustee are viewed in the context of the corporate or business trust indenture, more information about compliance with these requirements becomes apparent. One must first understand that "the corporate trustee has very little in common with the ordinary trustee, the trustee under a corporate indenture has his, or her, rights and duties defined, not by the fiduciary relationship, but exclusively by the terms of the agreement. His, or her, status is more that of a stakeholder than one of a trustee." Indeed, "an indenture trustee is unlike the ordinary trustee. In contrast with the latter, some cases have confined the duties of the indenture trustee to those set forth in the indenture."

The indenture trustee resembles a stakeholder whose obligations are defined by the terms of the indenture agreement.

Moreover, "it is settled that the duties and powers of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to the beneficiaries."

The clear import of these cases and statutes is that the delivery of an asset to a trustee under the terms of a corporate indenture requires strict compliance with the mandatory transfer terms of the trust indenture. Thus, the Trustee in this case can only take delivery in strict compliance with the terms of the PSA/Trust document of the American Home Trust. Further, given that New York Estates Powers and Trusts Law section 7-2.1(c) authorizes a trustee to acquire property "in the name of the trust as such name is designated in the instrument creating said trust property," there

7

should be little doubt that for transfer to a trustee to be effective, the property must be registered in the name of the trustee for the particular trust.

AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 2008 N.Y. Slip Op. 5766, 7 (N.Y. 2008)

Green v. Title Guarantee & Trust Co., 223 A.D. 12, 227 N.Y.S. 252 (1st Dept.), aff'd, 248 N.Y. 627 (1928); Hazzard v. Chase National Bank, 159 Misc. 57, 287 N.Y.S. 541 (Sup. Ct. 1936), aff'd, 257 A.D. 950, 14 N.Y.S.2d147 (1st Dept.), aff'd, 282 N.Y. 652, cert. denied, 311 U.S. 708 (1940).

See Meckel v. Continental Resources, 758 F.2d 811, 816 (2d Cir. 1985) as cited in Ambac In-dem. Corp. v. Bankers Trust Co., 151 Misc. 2d 334, 336 (N.Y. Sup. Ct. 1991).

see, United States Trust Co. v First Nat'l City Bank, 57 A.D.2d 285, 295-296, aff'd 45 NY2d 869; Restatement[Second] of Trusts § 186, comments a, d) as cited in In re IBJ Schroder Bank & Trust Co., 271 A.D.2d 322 (N.Y.App. Div. 1st Dep't 2000).

Equity will not help out an incomplete delivery. If the agent of the donor has failed to make the delivery expected equity will not declare him a trustee for the donee.

"In determining whether there has been a valid delivery, the situation of the subject of the gift must be considered. Thus, if it is actually present, and capable of delivery without serious effort, it is not too much to say that there must be an actual delivery, although the donor need not in person or by agent hand the article to the donee, if the latter assumes the possession. "Thus," Thornton on Gifts and Advancements (§140) notes: "There was absolutely nothing in the physi-cal nature of the papers to be delivered in this case, or in the physical condition or the surround-ings of the donor, that made a symbolical delivery necessary."

It is true that the old rule requiring an actual delivery of the thing given has been very largely relaxed, but a symbolical delivery is sufficient only when the conditions are so adverse to actual delivery as to make a symbolical delivery as nearly perfect and complete as the circumstances will allow.

New York's law is so well-settled regarding the limitations of a trustee's power to act that New York's Estates Powers and Trust Law Section 7-2.4 states:§ 7-2.4 Act of trustee in contravention of trust. "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void. Therefore, the trustees for these trusts may only acquire assets in the manner set forth in the trust instrument and may not acquire assets in

8

violation of the trust instrument. To the extent that any assets were not conveyed to these trusts as required and when required by the trust instrument, they are not assets of the trusts and the trustee cannot correct this deficiency now since the funding period provided in the Trust instruments passed many years ago. The attempt to acquire assets by these trusts which violate the terms of the Trust instrument are void. Therefore, <u>late assignments</u>, <u>improper chains of title</u>, <u>late endorsements</u>, <u>improper chains of title in the endorsements</u> and <u>the attempt to transfer to the trusts by foreclosure deed</u> are just a number of the many examples of actions which are void if taken by a party to the indenture who is attempting to transfer property to the Trustee for the Trust in violation of the trust instrument." Held to the light of the Pooling and Servicing Agreement, 90% of all loans of the last two years were wrongfully foreclosed based on the fact that mortgage assignments into a purchasing Trust after the Closing Date (in this instant case the Closing Date of June 6th, 2007) CAN NOT be accomplished at all.

(8) That THE TRUST never properly acquired the Promissory Note and the Deed of Trust cannot cure its fatal standing defect.

To acquire assets, the Trust must be funded in accordance with the requirements of the PSA/Trust documents. The pertinent terms of the agreement are found at §2.01 (Conveyance of Trust Fund) of the PSA.

This section details how the mortgage notes in the instant case were transferred from the Originator to the Sponsor and Seller to the Depositor to the Trustee. The Depositor was required to deliver to Alleged Secured Party the original mortgage note showing an unbroken chain of endorsements from the original payee to the person endorsing it to the Trustee. The person endorsing to the Trustee was the Depositor.

No later than 90 days after the Closing Date of June 6th, 2007 there should have been — at a minimum — endorsements from the Originator to the Sponsor and Seller to the Depositor to the Trustee.. The last assignment of the mortgage was a blank endorsement with a stamp by (Originator/Servicer) — If nothing has been recorded by the Trust then the Alleged Secured Party does not have the authority to foreclose the mortgage.

Plaintiffs state "at a minimum" because there may have been more transfers.

According to the requirements set forth in the Trust Agreement, any informed party would expect to see a series of endorsements of the promissory note reflective of each party who had an interest in the promissory note culminating with a blank endorsement from the depositor at the very minimum.

9

(9) The Trust in this instant case never possessed the mortgage note per the terms of the PSA (Pooling and Service Agreement). Further, in the PSA's exhibits, Exhibit One sets forth the contents of the collateral file for each mortgage loan that is trust property and further includes a final specific endorsement to the Trustee for the specific trust in this case to effect a final transfer to the Trust and to make the Subject's promissory note trust property. Any attempt by Alleged Secured Party, or Bank, to transfer the promissory note to The Trust at this late date would fail for numerous reasons, not the least of which is that the Closing Date of June 6th, 2007 passed nearly six years prior. By the terms of the Trust and the applicable provision of the Internal Revenue Code incorporated into and a part of the Trust agreement, the promissory note cannot be transferred to the Trust.

(10) THE TRUST IN THIS INSTANT CASE IS NOT ENTITLED TO THE MONEY SECURED BY THE SUBJECT MORTGAGE AND CANNOT FORECLOSE.

(11) Because the un-contradicted evidence in the case is that the Subject loan has never been conveyed to the Trust and a conveyance to the Trust at this time would be void as violating the terms of the PSA, the Court is left with one clear and inescapable proposition:

The Trust has never owned the Plaintiffs promissory note and The Trust can never own the Subject's promissory note.

(See Exhibit The Trust Prospectus and Pooling and Servicing Agreement)

(12) Even after repeated written requests by Plaintiffs to see the original Note, Plaintiffs have only received copies of a Note from some other time. If only copies exist then the logical conclusion is that any such alleged note was transferred electronically without complying with the Uniform Electronic Transactions Act (UETA) as adopted by the State of Missouri. Plaintiffs did not sign any document giving permission or agreement for Advance Mortgage, or its successors to send a replica of the Plaintiffs' original loan documents and signatures electronically with the copies to be used as originals to be used by any entity in a negotiation or transaction.

UETA:

*432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act". (L. 2003 H.B. 254)*

*Transferable records.*

*432.275. 1. As used in this section, "transferable record means an electronic record that:*

*(1) Would be a note under sections 400.3-101 to 400.3-605 or a document under sections 400.7-101 to 400.7-604 if the electronic record were in writing; and (2) The issuer of the electronic record expressly has agreed is a transferable record.*

10

(6) Per Missouri Statute, the power to sell lands is held by the person who, by assignment or otherwise, becomes entitled to the money thus secured." As outlined above, the Holder in Due Course is the only entity with the right to enforce the Promissory Note and collect against it.

(Ex A, RSMo 400-003.302 Holder in Due Course)

The Chain of Title in this case is irrevocably and uncontrovertibly corrupted. To show that a title to a piece of land is a marketable title and is free to transfer, a person must know who had ownership of the land at any point in time. In addition, the seller should be able to trace the way in which each person came into the chain of title. Widespread lack of clarity in chain of title results from a 1995 decision by many lenders to rely on a third entity--often, a specific company, Mortgage Electronic Registration Systems (MERS)--to hold title nominally, in an effort to enable the buying and selling of mortgage liabilities without registration of changes of ownership with local governments. The Defendant claims that the right to foreclose is under the Deed of Trust. But the Deed of Trust is incidental to the deal. The mortgage should always follow the Note. If it does not, as in this case when the Defendant holds an alleged Deed of Trust but not the Note, then the Note is separated from the mortgage, making both the Note and the mortgage voidable. See U.S. Supreme Court Carpenter vs. Longan, 83 U.S. 16 Wall. 271 271 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

The documentation provided under proper Written Request by the Defendant reveals incomplete and/or conflicting information that fails to support Defendant's asserted right to foreclose. Nowhere on record is it shown that the Plaintiffs have ever been in default with the Defendant. No Defendant has claimed a specific, documented loss of money on the alleged subject loan. Without a pleading of injury there is no claim. Proof of injury in this case is demonstrated by presentment of the original and authentic Promissory Note as the senior negotiable instrument.

(Ex.C RSMo, 400.3-501, Presentment) (Ex D, RSMo 400-003.303 Value and Consideration) (Ex G, RSMo 400-003. 404 Imposters – fictitious payees) (Ex I, RSMo 400-303.306 Claims to an Instrument)

The Critical Assignment from MERS as an agent of Advance Mortgage to The Trust allegedly took place nearly six years after the absolute Closing Date of June 6th, 2007 declared in the Pooling and Servicing Agreement of THE TRUST in violation of SEC and IRS laws.

The Promissory Note and Deed of Trust, whether authentic or not, have been bifurcated. The two instruments, the Note and Deed, contain conflicting terms and parties.

11

The instrument or instruments have been transferred electronically for the purpose of transaction and negotiation leaving nothing but copies to be shown in court. No original Note has ever been presented to the Plaintiffs. There was no written agreement from the alleged borrowers for such electronic transmission of their original signatures to be used for transaction and negotiation. If all that exists are copies of a Note showing no Indorsements (UCC spelling), then the original ceased being used as the <u>instrument</u>, and the faxed or emailed copies are all that could remain to be used for the business of buying and selling of mortgages.

Any following documents of these issues are thus invalid. Unless other documentation exists that remains to be provided by Defendant, after months of written request by Plaintiff to supply these documents, Plaintiffs respectfully submits that the time has come to render judgment.

For the reasons contained herein, Plaintiffs respectfully prays for a Judgment on the Pleadings in favor of Plaintiffs as to the Count II of Specific Performance be granted with prejudice.

Respectfully submitted,

Barre Hunter Pro Se

5-29-14

Venda Hunter

5/29/14

12

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

BARRE EUGENE HUNTER, et al.,               )
                                            )
Plaintiffs,                                 )
                                            )
v.                                          )   Case No. 1416-CV00681
                                            )
ADVANCE MORTGAGE CORPORATION, et al.,)  Div. No.  13
CORPORATION, et al.,                        )
                                            )
Defendants.                                 )

## MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED PETITION BY DEFENDANT MILLSAP & SINGER, LLC

Defendant Millsap & Singer, LLC, through the undersigned counsel and pursuant to Rule

55.27(e)[1], states the following for its Motion to Strike Plaintiffs' Second Amended Petition:

    A.    Procedural History:

    1.    On January 24, 2013, Plaintiffs filed their first lawsuit, Case No. 1316-CV01602

which was assigned to this Court. Plaintiffs' Petition included claims for Quiet Title,

Declaratory Judgment, Malicious Prosecution, and Breach of Fiduciary Duty. The Defendants in

the 2013 lawsuit were Advance Mortgage Corporation; Deutsche Bank National Trust Company

as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage Backed Pass-Through

Certificates, Series 2007-3; Millsap & Singer, P.C.; and the residence at 3020 S. Field Road, Oak

Grove, Missouri 64075.

    2.    On May 15, 2013, Plaintiffs amended their Petition in the 2013 lawsuit to include

claims for Quiet Title and Breach of Fiduciary Duty.

---

[1] Unless otherwise noted, all procedural references are to the 2014 Missouri Rules of Civil Procedure.

3.  On December 16, 2013, this Court entered an Order granting Advance Mortgage Corporation's Motion to Dismiss and an Order granting Millsap & Singer, P.C.'s Motion for Summary Judgment. Plaintiffs did not appeal or otherwise challenge the above Orders.

4.  Instead, on January 9, 2014, Plaintiffs filed the above captioned lawsuit with this Court. Plaintiffs' Petition identified claims for Quiet Title, Specific Performance, Conversion, Unjust Enrichment, Breach of Fiduciary Duty, and Missouri Merchandising Practices Act Violations. The Defendants named in the 2014 lawsuit are Advance Mortgage Corporation; Deutsche Bank National Trust Company; American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3; Ocwen Loan Servicing, LLC fka Homeward Residential, Inc., fka American Home Mortgage Servicing; Millsap & Singer, LLC; and the residence at 3020 S. Field Road, Oak Grove, Missouri 64075.

5.  On February 11, 2014, Plaintiffs filed an Amended Petition which identified claims for Quiet Title, Conversion, Unjust Enrichment, Specific Performance, Breach of Fiduciary Duty, and Missouri Merchandising Practices Act Violations. The Defendants identified in the Amended Petition are the same as the ones named in Plaintiffs' original Petition filed on January 9, 2014.

6.  According to Court records, Defendants American Home Mortgage Assets Trust 2007-3 and Deutsche Bank National Trust Company were personally served on March 12, 2014.

7.  On March 18, 2014, Defendant Ocwen Loan Servicing, LLC filed its Answer to Plaintiffs' Amended Petition.

8.  On April 7, 2014, Millsap & Singer, LLC filed its Motion to Dismiss and memorandum in support thereof.

9.  On April 15, 2014, Advance Mortgage Corporation filed a Motion to Dismiss and a memorandum in support thereof.

2

10.     On May 15, 2014, Plaintiffs filed a Motion to Dismiss Advance Mortgage Corporation and also submitted a second Amended Petition that identifies claims for Quiet Title, Specific Performance, Merchandising Practices Act Violations, and a request for Punitive Damages. Plaintiffs' Second Amended Petition is not accompanied by a Motion seeking leave from this Court to amend under Rule 55.33. Plaintiffs did not contact Millsap & Singer, LLC to request leave to file a Second Amended Petition and, upon information and belief, they did not contact any of the Defendants in this lawsuit to request leave to amend.

B.     Argument:

Rule 55.33 of the Missouri Rules of Civil Procedure permits this Court to grant leave to file amended pleadings when justice so requires. *Id.* Here, justice does not require leave for Plaintiffs to file a second Amended Petition as they failed to submit a Motion requesting leave from this Court to amend and they similarly failed to obtain written consent from the Defendants in this lawsuit for leave to amend. Though pro se, Plaintiffs are bound under Missouri law to the same procedural standards as licensed attorneys. See e.g. *Kuenz v. Walker*, 244 S.W.3d 191, 193 (Mo. App. E.D. 2007). "It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties." *Id.*, cited in *Biersmith v. Curry Ass'n Mgmt.*, 359 S.W.3d 84, at 87-88 (Mo. App. W.D. 2011). Judicial economy and fairness to all parties will be best served if Plaintiffs' Second Amended Petition is stricken from the record as all claims and issues raised in this lawsuit are barred by Collateral Estoppel and Res Judicata as outlined in Millsap & Singer, LLC's Motion to Dismiss and memorandum in support thereof which are incorporated by reference. Under Rule 55.27(e), this Court has authority to strike any pleading that contains, among other things, redundant or immaterial matters. As Plaintiffs failed to comply with Rule 55.33 and they are barred from

3

asserting any of the claims identified in this lawsuit, cause exists to strike Plaintiffs' Second Amended Petition under Rule 55.27(e).

WHEREFORE, Millsap & Singer, LLC requests that this Court enter an Order that strikes Plaintiffs' Second Amended Petition filed on May 15, 2014, that bars Plaintiffs from attempting to file additional pleadings until after this Court has ruled on all pending dispositive motions, and that provides any other relief that this Court deems proper.

Respectfully submitted,

MILLSAP & SINGER, LLC.

By: /s/ Michael J. Wambolt
MICHAEL J. WAMBOLT
Missouri Bar No. 51231
11460 Tomahawk Creek Pkwy.
Suite 300
Leawood, KS 66211
(913) 339-9132
(913) 339-9045 FAX
mwambolt@msfirm.com

Attorney for Defendant
Millsap & Singer, LLC

4

CERTIFICATE OF SERVICE

On May 19, 2014, a copy of the foregoing pleading was sent via electronic mail or first class mail, postage prepaid to:

Barre E. Hunter
Venda M. Hunter
3020 S. Fields Road
Oak Grove, MO 64075

Thomas M. Franklin
9140 Ward Parkway, Ste. 200
Kansas City, MO 64114

Deutsche Bank National Trust Company
1761 East St.
Andrew Place
Santa Ana, CA 92705

Michael Ernest Boyd
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376

By: */s/ Michael J. Wambolt*
Michael J. Wambolt

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
)
PLAINTIFFS ) Case No. 1416-CV00681
V )
)
Deutsche Bank National Trust Company )
) Division 13
American Home Mortgage Assets Trust )
2007-3, Mortgage-Backed Pass-Through )
Certificates, Series 2007-3 )
)
Ocwen Loan Servicing, LLC fka )
Homeward Residential, Inc., fka )
American Home Mortgage Servicing )
)
The Residence At: 3020 S Fields Road )
Oak Grove, MO 64075 )
)
DEFENDANTS )

FILED-CIRCUIT COURT JACKSON CO., MO-1
2014 MAY 15 PH 2: 32

## AMENDED PETITION FOR JUDGMENT QUIET TITLE

### PETITION FOR AN ORDER FOR SPECIFIC PERFORMANCE UNDER MISSOURI STATUTE GOVERNING NEGOTIABLE INSTRUMENTS RSMO 400.300 NEGOTIABLE INSTRUMENTS AND 400.900

### VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

### INCLUDING PUNITIVE DAMAGES

COMES NOW the Plaintiffs and for their Petition seeking a Judgment Quieting Title, Petition for an Order for Specific Performance under Missouri Statute Governing Negotiable Instruments, and Violations of the Missouri Merchandising Practices Act including Punitive Damages, state to the Court as follows:

1

fammf

120

## ALLEGATIONS COMMON TO ALL COUNTS

(1) Plaintiffs state that this Circuit Court is the proper venue for this action. The subject property is located in Jackson County, Missouri. Subject matter jurisdiction is governed by the Missouri Constitution which grants circuit courts "…original jurisdiction over *all* cases and matters, civil and criminal." Mo. Const. Article V, Sec.14. This case is a civil case, therefore this Court has subject matter jurisdiction over this case. (*Webb v Wyciskalla*, 275 S.W.3d, 253-254 (Mo. En banc 2009). Federal Court is not the proper venue, for any reason. Federal courts have an independent obligation to evaluate their jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Any Party seeking removal bears the burden of proving subject matter jurisdiction. In re Business Men's Assur. Co. of America, 992 F .2d 181, 182 (8th Cir. 1993). Federal district courts are "required to resolve all doubts about federal jurisdiction in favor of remand." *Id.*

In the light of using fraudulent joinder as a means of removal, it is defined as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." Filla v. Norfolk Southern Ry. Col, 336 F.3d 806,809 (8th Cir. 2003). In analyzing fraudulent joinder, "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based on the facts involved." *Id.* at 811. So long as there is at least a "colorable" state law cause of action against the diversity-defeating defendant, joinder is not fraudulent. *Id. at 810.* In questionable areas of state law, "the better practice is for the federal court not to decide the doubtful question, but simply to remand the case and leave the question For the state courts to decide." Id. at 811 (quoting Iowa Public Ser. Co. v Medicine Bow Coal Co., 556 F .2d 400,406 ( 8th Cir. 1977).

This suit has been filed in state court. State court is the proper venue. The suit concerns a subject property located within this County and within the State of Missouri. Application of state law is primarily the responsibility of state courts. State court has jurisdiction.

(2) That Defendant Deutsche Bank National Trust Company hereinafter "Deutsche", while acting as an agent for the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust", ordered Successor Trustee Millsap & Singer, hereinafter "Millsap", to initiate a foreclosure sale of the property commonly identified as 3020 S Fields Road, Oak Grove, MO 64075.

(3) That Ocwen and Deutsche are planning to schedule a foreclosure sale of the property at the order of Defendant American Home Trust. However, this is a violation of the Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2007-3. Deutsche Bank National Trust Company and other larger Trustee Corporations, such as US Bank National Association, New York Bank Mellon and many others represent themselves as the foreclosing party which is the Holder in Due Course. This is not true. Mortgage Backed Securities are

2

governed by a document that was registered with the Securities Exchange Commission. The document is called the Pooling and Servicing Agreement and it is not flexible. In simple terms, the Pooling and Servicing Agreement defines the Trustee as a business manager for the Trust, but does not give the Trustee of the REMIC Trust the power, or even the right to inquire about Foreclosures. But that hasn't stopped Deutsche, US Bank National Association, New York Bank Mellon, or any of the other major Trustee for hire companies from claiming to be the foreclosing party in foreclosure actions

(4) That such scheduling of an alleged sale date by American Home Trust was, to the best of Plaintiffs' knowledge, conducted in an attempt to enforce an alleged promissory note executed by Plaintiffs to Advance Mortgage Corporation in 2007. Plaintiffs contend, purely for the sake of argument, that were any note purported to be held by American Home Trust held to be otherwise legitimate, said note would be unenforceable for other reasons, including, but not necessarily limited to, the following:

(5) That American Home Trust was not, at the time of the alleged scheduling of the foreclosure, the party entitled to enforce the alleged note.

(6) That Mortgage Backed Securities with REMIC trusts are governed by a Pooling and Servicing Agreement, which is a critical component of every Mortgage Backed Security registration with the SEC. The Pooling and Servicing Agreement (PSA) of this Trust was registered with the SEC and the IRS with an absolute closing date. This is the date that any loans which have been contracted to be purchased by The Trust, must have been paid for and delivered to the Real Estate Mortgage Investment Conduit Trust. The Trust is the "party in interest" with the right to enforce and must have all of the documents required by the UCC statutes as adopted by Missouri, The Pooling Agreement of the Trust, and the REMIC TRUST rules of the IRS.

(7) That every Pooling and Servicing Agreement includes a Cutoff Date (the date which all loans to be purchased by the Trust are identified) and a Closing Date (the date which all loans to be purchased are deposited into the Trust). This date is also called the Startup Date of the Trust. After this date, no new loans can be placed into the Trust without drastic consequences to the investors who have purchased bonds issued by the Trust. Certain loss of the IRS tax haven status would follow. This 2007 loan must have been deposited into the Trust by the Closing Date of June 6th, 2007. However, the recorded assignment from MERS on behalf of Advanced Mortgage is transferred into the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 on January 13, 2013. According to the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the Closing Date. This requirement is to ensure that the Trust will receive REMIC status (IRS) and thus be exempt from federal income taxation. Section 2.02(a) of the PSA provides for a window of 90 days after the Trust Closing Date of June 6th, 2007 in which the Trust may complete any missing paperwork or finalize any documents necessary to complete the transfers of assets from the depositor to the

3

Trust. The Trust Agreement provides the only manner in which assets may be properly transferred to the Trust and any act in contravention of the Trust Agreement is void.

(8) That, as a generic matter, there are several methods by which the underlying assets of the Trust, specifically the individual promissory notes, might be transferred or conveyed. A trust's ability to transact is restricted to the actions authorized by its trust documents. In this case, the Trust documents permit only one specific method of transfer to the Trust. That method is set forth in Section 2.01 of the PSA:

That pursuant to the Mortgage Loan Purchase Agreement, each Seller sold, transferred, assigned, set over and otherwise conveyed to the Depositor, without recourse, all the right, title and interest of such Seller in and to the assets sold by it in the Trust Fund....In connection with such sale, the Depositor has delivered to, and deposited with, the Trustee or the Custodian, as its agent, the following documents or instruments with respect to each Mortgage Loan so assigned: (i) the Original Mortgage Note, including any riders thereto, endorsed without recourse:

(A) In blank or to the order of Deutsche, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, or

(B) In the case of a loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee, the analysis of this transfer language requires the court to consider each part. In the second paragraph of the language in the Trust Agreement, the first statement is one of transfer, stating "the Depositor has delivered to and deposited with the Trustee or the Custodian the following documents". The **key instrument** is the **original mortgage note**, which requires mandatory endorsements found in this language: "the original mortgage note....endorsed without recourse" followed by two alternatives which are phrased in the either/or format. The first labeled "A" states "in blank or to the order of Deutsche National Trust Company, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3.

The second possibility stated in "B" provides as the "or" proposition for transfer the following statement "in the case of a loan registered on the MERS system, in blank". In each case, the affirmative language of the Trust agreement places a burden on the depositor to make a valid legal transfer in the terms required by the Trust instrument. The key language in the entire paragraph is the final statement trailing the "either/or" language of A & B which reads: "and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee."

4

Stacked upon the top of this requirement of an unbroken chain of endorsements, is the requirement of certification of the final contents of the collateral file for the benefit of the Trust.

(9) This requirement is found at Exhibit 1 to the Mortgage Loan Purchase Agreement (MLPA), which is an attachment to and incorporated as a part of the PSA in Section 2.01. This Document is found in the PSA and states as follows:

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser or its designee, and which shall be delivered to the Purchaser or its designee pursuant to the terms of this Agreement. (a) The Original Mortgage Note, including any riders thereto, endorsed without recourse to the order of Advance Mortgage Corporation, as Trustee for the Certificate-holders of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, and showing to the extent available to the related Mortgage Loan Seller an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee;

First, all notes sold to the Trust were required to have an unbroken chain of endorsements from the original payee to the person endorsing it to the Trustee. This requirement stems from a particular business concern in securitization, namely to evidence that there was in fact a "true sale" of the securitized assets and that they are in no way still property of the originator, sponsor, or depositor, and thus not subject to the claims of creditors of the originator, sponsor, or depositor. A securitization expert's testimony could be secured by way of deposition.

Second, there was a requirement that ultimately, within 90 days of the Trust Closing Date, in this instant case June 6th, 2007, the actual promissory note must be endorsed over to the trustee for the specific trust to effectively transfer the asset into the trust and therefore make the 'Subject's' promissory note a Trust property. This requirement finds support in logic and law and is, in fact, the ancient and settled law of New York on this issue.

(10) That New York Law Governs the Mandatory Requirements to Effectively Transfer an Asset to a Trust. It is not contested that securitization trusts, such as the alleged Secured Party's, are subject to the common law of New York.

(11) New York's trust law is ancient and settled. There are few principles of New York Trust law that are particularly important to the analysis of whether any particular asset is an asset of a given trust are defined under New York law, the analysis of whether an asset is trust property is determined under the law of gifts. In order to have a valid inter vivos gift, there must be a delivery of the gift pursuant to an applicable law. In the case of a trust where there is a trustee other than the grantor, transfer will be governed by the existing rules as to intent and delivery (the elements of a gift)

5

(12) That as early as 1935, in Burgoyne v. James, 282 N.Y.S. 18, 21 (1935), the New York Supreme Court recognized that business trusts, also known as "Massachusetts trusts", are deemed to be common law trusts.

See also In re Estate of Plotkin, 290 N.Y.S.2d 46, 49 (N.Y. Sur. 1968) (characterizing common stock trust funds as "common law trust[s]"). Other jurisdictions are in accord. See, e.g., Mayfield v. First 'Nat'l Bank of Chattanooga, 137 F.2d 1013(6th Cir. 1943) (applying common law trust principles to a pool of mortgage participation certificate holders).

Becker, 2004 N.Y. Slip Op. 51773U, 4 (N.Y. Sur. Ct. 2004). physical delivery of the subject of the gift) or a constructive or symbolic delivery (such as by an instrument of gift) sufficient to divest the donor of dominion and control over the property and "what is sufficient to constitute delivery "must be tailored to suit the circumstances of the case".

The delivery rule requires that "[the] delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit.''

(Ex A- RSMo. 400-003.302, Holder in Due Course)

(13) That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri.

(Ex P RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act" UETA).

*Transferable records. (432.275. 1) As used in this section, "transferable record" means an electronic record that:*

*(1) Would be a note under sections 400.3-101 to 400.3-605 or a document under sections 400.7-101 to 400.7-604 if the electronic record were in writing; and*

*(2) The issuer of the electronic record expressly has agreed is a transferable record.*

(14) That any such alleged one and only true note was an offer by Plaintiffs to pay back money, if it was loaned to them to purchase a house by the Advance Mortgage Corporation, hereinafter "Advance", which did not "accept" the offer by funding the loan. Therefore no consideration was ever received by the Plaintiffs from Advance, or any other Party named herein, or by any party identified in any alleged assignments. This negotiated transaction was faulty, thus it was an offer unaccepted.

(See Exhibit D- RSMo 400-003.303, Value and Consideration) (Ex A- RSMo. 400-003.302, Holder in Due Course)

6

(15) That any Deed of Trust alleged to be associated with the purported note is also invalid for reasons including, but not necessarily limited to, the following:
a. That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri, including the lack of written permission from Plaintiffs to allow Defendants to negotiate the transaction of the sale and transfer of Plaintiffs' alleged loan using electronic replicas of Plaintiffs' loan instruments and signatures to be used as originals.

(Ex P RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act" UETA).

*Transferable records. (432.275. 1) As used in this section, "transferable record" means an electronic record that:*

*(1) Would be a note under sections 400.3-101 to 400.3-605 or a document under sections 400.7-101 to 400.7-604 if the electronic record were in writing; and*

<u>*(2) The issuer of the electronic record expressly has agreed is a transferable record.*</u>

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration)

(16) That no Defendant herein has not now, or at any time, claimed a loss of its money on the alleged subject loan or from actions of Plaintiffs. No Defendant has claimed injury due to Plaintiffs' actions or Plaintiffs' loan documents. Without a pleading of injury there is no claim. If there were an alleged default, then the party injured must claim injury and prove how it was injured before gaining non-judicial foreclosure relief from any alleged monetary damage. Defendants claim a right under the Deed of Trust for relief through foreclosure, but do not state how they happen to have a money stake without an original Promissory Note proving they are legally the Holder in Due Course.

(Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex G RSMo, 400.3.501, Presentment) (Ex D- RSMo 400-003.303, Value and Consideration)

(17) That Plaintiffs were never in default with Wells Fargo, because Wells Fargo has never held the right to enforce the alleged Promissory Note because Wells Fargo never paid for, or was assigned the Promissory Note.

(18) That any alleged note or deed of trust, whether valid or not, has, at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., MERS was named as an agent with special powers of sales and assignments in the terms of the alleged Deed of Trust, but MERS is never given these powers or even mentioned in the terms of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. See, ***U.S. Supreme Court*** <u>***Carpenter v. Longan***</u>***, 83 U.S. 16 Wall. 271 271 (1872)*** **"The note and mortgage are inseparable; the former as essential, the latter as an**

incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

(Ex F, Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY)

(Ex F-1  The decisions of the United States Supreme Court, whether right or wrong, are supreme: they are binding on all courts of this land, Hoover v. Holston Valley Community Hospital, 545 F. Supp. 8, 13 (E. D.Â Tenn. 1981)   (quoting Jordan V. Gilligan, 500 2 F.3d 701, 707(6th Cir. 1974)).

(Ex F-2  The lower courts are bound by Supreme Court precedent, Adams v. Department of Juvenile Justice of New York City, 143 F.3d, 61, 65(2nd Cir. 1998)

(Exhibit F-3 Walker v. Quality Loan Service Corp. of Washington et al., No. 65975-8-1

(Exhibit F-4 Washington State Supreme Court, Bain v. Metro. Mortg. Group, Inc., et al.175 Wn.2d 83, 285 P.3d 34  (2012)

## COUNT I

## QUIET TITLE

COMES NOW the Plaintiffs and for their Petition for an Order of this Court Quieting Title to the subject property in this matter and granting title in fee simple to them, their heirs, or assigns, state to the Court as follows:

(1) That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to All Counts as though fully set forth herein.

(2) That any claim to title of the subject property by any Defendant named herein is derived from title held by Plaintiffs and purported by that Defendant to have been passed to them, directly or indirectly, from the Plaintiffs.

(3) That any purported note related to the property or title in question has been altered and is not original and/or authentic and/or has been transferred by an individual or entity not authorized to do so and cannot be enforced.

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration) (Ex I, RSMo 400-303.306 Claims to an Instrument) (Ex E, RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)

8

(4) That no Defendant herein has now, or at any time, claimed a loss of its own money on the alleged subject loan or from actions of Plaintiffs. No Defendant has claimed injury due to Plaintiffs' actions or Plaintiffs' loan documents. Plaintiffs' have never been in default with the claimant Defendants because no Defendant has ever possessed the right to collect on the alleged loan. Without a pleading of injury there is no claim. If there were an alleged default, then the party injured must claim injury and prove how it was injured before gaining non-judicial foreclosure relief from any alleged monetary damage. Defendants claim a right under the Deed of Trust for relief through foreclosure, but do not state how they happen to have a money stake without an original Promissory Note proving they are legally the Holder in Due Course.

(5) The American Home Trust cannot claim to be the Holder in Due Course because the American Home Trust has never held the right to enforce the alleged Promissory Note because American Home Trust never paid for, or was assigned the Promissory Note. Without the rights of Holder in Due Course, the American Home Trust 2007-3 the American Home Trust had no right to collect against an alleged Note that they did not have. With no right to collect, it follows that there is no right declare default. Plaintiffs have never been in default with any Defendant herein for the same reasons.

(6) That because the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 is a Real Estate Mortgage Investment Conduit (IRS Tax status) then the loan was securitized into the American Home Trust 2007, which was part of a Mortgage Backed Security. Deutsche Bank has been taking into its name the Successor Trustee's Deed at foreclosure auction as the Trustee of the Trust using a credit bid this is a violation of the Pooling and Servicing Agreement of the REMIC TRUST (that invested into the Mortgage Backed Security from 2007). Deutsche Bank National Trust Company and other larger Trustee Corporations, such as US Bank National Association, New York Bank Mellon and many others represent themselves as the foreclosing party which is the Holder in Due Course. This is not true. Mortgage Backed Securities are governed by a document that was registered with the Securities Exchange Commission. The document is called the Pooling and Servicing Agreement and it is not flexible. In simple terms, the Pooling and Servicing Agreement defines the Trustee as a business manager for the Trust, but does not give the Trustee of the REMIC Trust the power, or even the right to inquire about Foreclosures. But that hasn't stopped Wells Fargo, Hudson City, Deutsche, US Bank National Association, New York Bank Mellon, or any of the other major or minor Trustee for hire companies, such as Hudson City in this case, from claiming to be the foreclosing party in a Missouri non-judicial foreclosure.

9

WHEREFORE, Plaintiffs pray this Court enter its Order directing that a Deed in Fee Simple to the Plaintiffs be entered into the records of Jackson County, Missouri and that any record purporting to show title vested in any other individual or entity as of March 13, 2007 or subsequent, be stricken from those property records and held as void and for such other relief as the Court deems appropriate.

## COUNT II

## PETITION FOR AN ORDER FOR SPECIFIC PERFORMANCE UNDER THE STATUTES OF RSMO CHAPTER 400.30 NEGOTIABLE INSTRUMENTS

COMES NOW, the Plaintiffs and for their Petition for an Order Demanding Specific Performance as to Count II Specific Performance under the Statutes of RSMo Chapter 400.30 Negotiable Instruments state the Court as follows:

(1) That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to All Counts as though fully set forth herein.

(2) That this Count pertains to Defendants Advance Mortgage Corporation, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, Ocwen Loan Servicing, LLC fka Homeward Residential, Inc., fka American Home Mortgage Servicing and Deutsche Bank National Trust Company.

(3) That Defendants have made it abundantly clear that they intend to foreclose on Plaintiffs' property.

(4) That Defendants claim that the right to foreclose, (for one, or the other, or both), on alleged Borrower is "under the Deed of Trust". But, the mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872), "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

10

(Exhibit F Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY bifurcation) (Ex G RSMo. 400.3,501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-003.303, Value and Consideration)

(5) That Defendants are ignoring the fact that the Deed of Trust is a security document which is junior to a Promissory Note, which is evidence of the debt. While the language of right to sale is indeed in the Deed of Trust, the Deed of Trust is void if it has been bifurcated from the Promissory Note. The Security always follows the debt. The two instruments must always be assigned together and must always be owned in the same name. The Deed of Trust (mortgage) should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.

(Exhibit F Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY Bifurcation)

(6) That any alleged note and deed of trust in this instant case, whether valid or not, has at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., hereinafter "MERS" was named as an agent for Advance Mortgage with fantastic special powers of sales and assignments in the terms of the alleged Deed of Trust. However MERS is never given these powers by Advance Mortgage, or even mentioned at all in the terms of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. The mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

(Exhibit F Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY definition of bifurcation)

(Ex F-1 The decisions of the United States Supreme Court, whether right or wrong, are supreme: they are binding on all courts of this land, Hoover v. Holston Valley Community Hospital, 545 F. Supp. 8, 13 (E. D.Â Tenn. 1981) (quoting Jordan V. Gilligan, 500 2 F.3d 701, 707(6th Cir. 1974)).

(Ex F-2 The lower courts are bound by Supreme Court precedent, Adams v. Department of Juvenile Justice of        New York City, 143 F.3d, 61, 65(2nd Cir. 1998)

(Exhibit F-3 Walker v. Quality Loan Service Corp. of Washington et al., No. 65975-8-1

(Exhibit F-4 Washington State Supreme Court, Bain v. Metro. Mortg. Group, Inc., et al.175 Wn.2d 83, 285 P.3d 34 2012)

(7) That Defendants stubbornly and illegally cling to the Deed of Trust as a superior interest that somehow gives them the right to foreclose. This is a lie that has been perpetuated for so long that it is now believed by many to be true. But, this lie is nothing more than myth and legend. It is untrue. Missouri has a very precise body of statute that parties must follow when negotiating and

transacting Negotiable Instruments. The Statute RSMo Chapter 400. 300 is actually one chapter of the Uniform Commercial Code which has been adopted by all 50 states. UCC Chapter 3 is the Missouri RSMO 400.3 Negotiable Instruments, as adopted by the State of Missouri. UCC Chapter 9 is the Missouri RSMo 400.9 Secured Instruments.

(8) That a Promissory Note belongs to the obligor or issuer of the Note. Plaintiffs' alleged Note was to be held by the actual lender which "funded" Plaintiff's alleged loan. The issuer here, the Plaintiffs, are obliged to know who is holding their Note at any time. Defendants constantly claim in writing that the whereabouts of Plaintiffs' Note is "proprietary information". That is absurd. The Note is the property of Plaintiffs. Borrowers do not pay off their house. A Borrower buys back his Note through payments.

(9) When Borrowers have paid off, or repurchased, their Note, the Deed of Trust is void. The Note is to be surrendered to the Borrower marked paid. This is not happening after collection in full. Claimants all over the country are foreclosing as alleged Holders in Due Course, yet are not able to exhibit the original Note with all proper endorsements, or surrender it when paid.

(Ex 1 RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-003.303, Value and Consideration)

(10) That fact that Defendants are claiming to be Holder in Due Course means that they are claiming that they are the party who came by the loan by paying for it, obtained it legally and can prove it.

(Ex A- RSMo. 400-003.302, Holder in Due Course)

(11) That, this is not the first time that Ocwen has wrongfully enforced the alleged Promissory Note of Plaintiffs. Defendant Ocwen has never recorded any purchase of the loan, or any assignment of the alleged Promissory Note and Deed of Trust, or either one separately. Yet, Ocwen has collected monies for payments, which is an act of "enforcing the Note".

(12) That MERS acting for Advance Mortgage claims that they "sold" the alleged loan of Plaintiffs to The American Home Trust and recorded the assignment on 1-11-2013. Plaintiffs question whether Advance even knows that MERS sold the loan to American Home Trust on its behalf, even though the sale took place 6 years after the closing date of the Trust.

(13) That Ocwen under several different aka names, without any apparent claim of any kind to the alleged Promissory Note, then sent coupons and letters to Plaintiffs alleging that Plaintiffs had to send the payments worked out with Advance to Ocwen, but has insisted since that time that it did have the right to enforce the "Deed of Trust". But, Ocwen rarely speaks of the Promissory Note, that needed to be presented to Plaintiffs before acts of collection.

12

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 264 of 491

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration) Ex I RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-0033)

(14) That the named Lender on Plaintiffs' alleged Promissory Note is Advance Mortgage. Advance did not fund Plaintiff's loan. Advance Mortgage was a licensed broker or originator of mortgage loans who received commissions and fees for arranging a loan, but did not use its own money to fund loans. Advance Mortgage has never answered claims that it has no evidence of funding, such as copies of wire transfers to closing, or copies of front and back of Cashier's Checks. There was no Consideration from Advance Mortgage and there is no proof differently.

(Ex G RSMo. 400.3.404, Imposter/Fictitous Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex G RSMo. 400.3.501, Presentment) (Ex D- RSMo 400-003.303, Value and Consideration)

(15) Defendant Advance is using only a copy/replica of the front of the Plaintiffs' alleged Promissory Note for its claim. This is the 4th time since December 31, 2013 that this same front only copy/replica has been sent to Plaintiffs by Defendants.

(16) That Plaintiffs are especially concerned that Defendant American Home Trust and Successor Trustee Millsap will again try soon to foreclose claiming to enforce the alleged Note for collection "with rights under the Deed of Trust". Defendants want to "assure" Plaintiffs and the court that they have possession of the Note and that this assurance of Defendants is enough under law. A ten year Treasury Bond is a negotiable instrument. A one hundred dollar bill is a negotiable instrument. Stock Certificates are negotiable instruments. You can't spend a copy of a $100 bill at Walmart. All of these instruments must be presented as originals to collect, surely no one will argue against that.

(17) That a Promissory Note is also a negotiable instrument. It must be presented to its maker for exhibit (examination) for collection. There can be no secrets concerning the Plaintiffs as makers of the alleged note. It is not proprietary information.

(Ex G RSMo. 400.3.501, Presentment)

(18) That this court is the only venue where Plaintiffs can exercise their right as issuers/obligors to have their Note presented to them for examination before collection.

(19) That PRESENTMENT is defined by RSMo 400.3-501 as: (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument. (b) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made. (surrender means to return to issuer/obligor) (iv) Without dishonoring the instrument, the party to whom presentment

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 265 of 491

is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or acceptance for failure of the presentment document to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

(20)  That Defendants Deutsche, Millsap, the American Home Trust and Ocwen are now scheming to foreclose on Plaintiffs' home. In order to foreclose the Defendants are obligated to present the original and authentic Note belonging to the Obligor for his personal inspection. Despite Discovery requests for said presentment, Defendants have refused to do so, under a clear reading of Missouri statutes regarding negotiable instruments as mentioned above. Presentment of original note for Plaintiff's inspection is a necessary prerequisite for collection and a foreclosure sale is a collection effort.

(21)  That Plaintiffs are unaware of any statutory or case law excusing the Defendants from their obligations under the statutes heretofore cited.

(23)  That Plaintiffs have no other remedy to compel Defendants to comply with the statutes other than an order requiring Defendants to specifically perform their statutory obligations, before making claims of rights to collect, disburse, or declare default.

(24)  That in the interest of judicial economy and the economic interests of both the Plaintiffs and Defendants, granting Plaintiffs the remedy of specific performance is appropriate to wit: by putting to the fore the issues highlighted in the above referenced statutes, it will save time and therefore, costs. This immediate action will serve to clarify the most fundamental aspects of this instant case.

(Ex G RSMo. 400.3.501, Presentment)

WHEREFORE, Plaintiffs pray this Court for its Order requiring Defendant claimant American Home Trust, Ocwen, Deutsche or any other claimant of being the Holder in Due Course to immediately bring to court, the original and authentic, one and only Promissory Note with all proper and necessary endorsements, unaltered and unchanged having been held in safekeeping, for exhibit and examination as proof that any such alleged Promissory Note exists. If Defendant brings any example claiming it is the alleged Promissory Note, Plaintiffs further requests the court to permit a 3rd party expert examination of the document to vouch for authenticity if there is valid reasoning. This Presentment is necessary, so that Plaintiffs can once and for all see if a document having never been presented does exist. Without such immediate Presentment, Plaintiffs pray this court for an Order of Summary Judgment in favor of Plaintiff.

## COUNT III

14

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

## INCLUDING PUNITIVE DAMAGES

COMES NOW the Plaintiffs and, for their claim of violations of the Missouri Merchandising Practices Act against Defendants Ocwen Loan Servicing, LLC fka Homeward Residential, Inc. fka American Home Mortgage Servicing, hereinafter "Ocwen", Millsap & Singer, Deutsche Bank National Trust Company, and American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust" and state to the Court:

(1) That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to all Counts as though fully set forth herein.

(2) That Defendants working in concert created the illusion that an alleged loan contract which named Advance Mortgage Corporation as lender, had actually been funded by Advance Mortgage Corporation when it had not. Written requests for proof showing authentic documents from this transaction including copies of funding wires; cash; or other equivalent payment coming from Advance Mortgage Corporation to fund any alleged closing regarding Plaintiffs have gone unanswered by all Defendants.

(Ex D RSMo. 400.3-303, Value and Consideration)

(3) Defendants have employed deceptive practices rising to fraud, false pretense, false promises regarding a contract, misrepresentation, and the concealment, suppression and omission of material facts to use non-existent allegedly duly perfected contractual documents in an attempt to take Plaintiffs' home using a fraudulent Missouri non-judicial foreclosure sale while representing to Plaintiffs and the court that one of the Defendants, the American Home Trust was a Holder in Due Course of a certain alleged Promissory Note. Defendants all claim that the American Home Trust became so by purchasing the note legally with funds intended for that purpose. No such original legal document has been proffered.

(Ex A RSMo. 432.010, Statute of Frauds-Contracts must be in writing), (Ex C RSMo. 400.3-501, Presentment), (Ex G RSMo.400.3-404, Imposter/Fictitious Payee) (Ex D RSMo. 400.3-303, Value and Consideration) (Ex I RSMo 400-003.306, Claims to an instrument)

15

(4)  That the alleged January 11, 2012 assignment of the alleged subject 2007 loan by MERS, as Grantor, while acting as an alleged agent for Advance, to the Grantee American Home Trust can never have happened. This is because Advance Mortgage Corporation in 2006 was an originator or broker of home loans. In this capacity Advance Mortgage Corporation took fees in compensation for introducing Borrowers and Lenders to each other, and never funding any loans with its own money. This is in contrast to its being the named Lender on the loan documents. The Power of attorney or agency agreement between MERS and Advance was being used to assign an alleged loan 5 years after the closing. MERS has repeatedly stated in public and on its website that it did not own or have equity in any loans at any time. This "nominee" contract has never been presented to Plaintiff for inspection even though Plaintiff has requested this in writing and will again in Discovery. Advance Mortgage has stated in sworn Discovery that it did authorize the assignment, but in answer to the question elsewhere Advance states that it allegedly assigned the loan to American Home Mortgage on the day of closing March 18, 2007, but there is no such recorded assignment of the purchase of the loan by American Home Mortgage from Advance. The claims that this assignment happened is misrepresentation and fraud by definition. A quick reading of the two documents will show this, if in fact, both authentic alleged documents can be found.

(5)  That even if Advance Mortgage Corporation could come up with some sort of document to present to the court proving it claim of funding the loan. The fact that the terms of the alleged Deed of Trust gives MERS powers to assign the Deed of Trust, however MERS is not given this power in the alleged Promissory Note, nor is MERS ever mentioned in the alleged Promissory Note copies from closing. This is an intentional bifurcation, or splitting of the two documents and cannot be repaired. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**

(Ex F-1  The decisions of the United States Supreme Court, whether right or wrong, are supreme: they are binding on all courts of this land, Hoover v. Holston Valley Community Hospital, 545 F. Supp. 8, 13 (E. D.Â Tenn. 1981) (quoting Jordan V. Gilligan, 500 2 F.3d 701, 707(6th Cir. 1974)).

(Ex F-2  The lower courts are bound by Supreme Court precedent, Adams v. Department of Juvenile Justice of      New York City, 143 F.3d, 61, 65(2nd Cir. 1998)

(Exhibit F-3 Walker v. Quality Loan Service Corp. of Washington et al., No. 65975-8-1

(Exhibit F-4 Washington State Supreme Court, Bain v. Metro. Mortg. Group, Inc., et al.175 Wn.2d 83, 285 P.3d 34  (2012)

(Ex A RSMo, 432.010, Statute of Frauds- Contracts to be in writing)  (Ex H RSMo, 400-003.407, Alteration) (Ex A RSMo, 400-003.302 Holder in Due Course) (Ex E RSMo, 400-003.203, Transfer of instrument) (Ex I RSMo, 400-303.306, Claims to an Instrument) (Ex G RSMo. 400.3-404, Imposter/Fictitious Payee) ((Ex D RSMo. 400.3-303, Value and Consideration)

16

(6) Most importantly, all Mortgage Backed Securities with REMIC trusts are governed by a Pooling and Servicing Agreement which is a critical component of every Mortgage Backed Security registration with the SEC. Every Pooling and Servicing Agreement includes a Cutoff Date (the date which all loans to be purchased by the Trust are identified) and a Closing Date (the date which all loans to be purchased are deposited into the Trust. This date is also called the Startup Date of the Trust. After this date, no new loans can be placed into the Trust without drastic consequences to the investors who have purchased bonds issued by the Trust. Certain loss of the IRS tax haven status would follow. This 2007 loan must have been deposited into the Trust by the Closing Date of June 6th, 2007. However, the recorded assignment from MERS on behalf of Advanced Mortgage is transferred into the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 on January 13, 2013. This almost 6 years too late. This is an absolute rule. There are no special situations that would allow this transfer. If the loan was never in the Trust where was it? How does the Trust claim it is the Holder in Due Course? There is no possibility of reconciling these transactions.

*For the Closing Date see the Exhibit 2007 Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3*

(7) Defendants and others contrived these illegal and impossible transactions to wrongfully take Plaintiffs home. None of these Defendants can prove they funded the loan or the subsequent purchases of the alleged loan. American Home Trust, and maybe others, was scheming to take a house without any investment. American Home Trust, was trying to get a home for free. This sale did not happen, but the threat of it has not been extinguished and this fact creates constant and unbearable anxiety for Plaintiffs.


WHEREFORE, Plaintiffs pray this Court enter its Judgment against Ocwen Loan Servicing, LLC fka Homeward Residential, Inc.fka American Home Mortgage Servicing, Deutsche Bank National Trust Company, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, for violations of the Missouri Merchandising Practices Act, and awarding Plaintiffs nominal actual damages as well as punitive damages in an amount sufficient to deter Defendants and others similarly situated from such conduct in the future as well as for such other relief as the Court deems just.


Respectfully Submitted,

Barre Eugene Hunter Pro Se          Venda Marie Hunter Pro Se

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 269 of 491

**ELECTRONICALLY RECORDED**
JACKSON COUNTY, MISSOURI
**01/11/2013 02:59:03 PM**
ASDT    FEE: $ 24.00   2  Pages

INSTRUMENT NUMBER:
**2013E0003758**



Millsap & Singer, LLC
612 Spirit Drive
St. Louis, Missouri 63005.
Barre Eugene Hunter, a married person and Venda Marie Hunter, His Wife
MS# 146420.100912.291683 FC

## ASSIGNMENT OF DEED OF TRUST

**Date of Document:**     $10\text{-}1\text{-}12$

**Affecting Deed of Trust Recorded:** as Instrument No. 2007E0038241

**MERS Phone Number:**    1-888-679-6377

**MIN:**            1004594-5000702366-7

**Grantor (Assignor):**    Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage Corporation, its successors and assigns

**Grantor Address:**    P.O. Box 2026, Flint, MI 48501-2026

**Grantee (Assignee):**    Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3

**Grantee Address:**    6501 Irvine Center Dr., Irvine, CA 92618

**Legal Description:**    LOT 1, SMITH'S LAKE VIEW, A SUBDIVISION OF LAND IN JACKSON COUNTY, MISSOURI.

For Value Received, Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns, (herein "Assignor") whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, sell, assign, transfer and convey, unto Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 (herein "Assignee"), whose address is 6501 Irvine Center Dr., Irvine, CA 92618 all beneficial interest under a certain Deed of Trust recorded on March 22, 2007, made and executed by Barre Eugene Hunter, a married person and Venda Marie Hunter, His Wife, to Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns, upon the above described property situated in Jackson County, State of Missouri.

MS File No. 146420.100912.291683 FC


Such Deed of Trust having been given to secure payment of $186,350.00, which Deed of Trust is of record as Instrument No. 2007B0038241, the Recorder of Deeds for Jackson County, State of Missouri, and all rights, title and interest accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust.

Assignor: Mortgage Electronic Registration
Systems, Inc, as nominee for Advance Mortgage Corporation,
its successors and assigns

By: *Rolanda Wagner*

Print Name: Rolanda Wagner

Title: Assistant Secretary

Produced Florida Drivers License as identification

State of __Florida__ )
                      ) SS.
County of __Duval__ )

On __10-01-12__ before me, __Brenda L Frazier__, a Notary Public
in and for said State, appeared __Rolanda Wagner__,

__Assistant Secretary__ (Official Title) known to me to be the person who executed the within Assignment of Deed of Trust on behalf of Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage Corporation, its successors and assigns and acknowledged to me that he or she executed the same for the purposes therein stated.

Notary Public    Brenda L Frazier

My term expires: 4.30.2013

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission #DD885641
Expires: APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

MS File No. 146420.100912.291683 FC

**ELECTRONICALLY RECORDED**
JACKSON COUNTY, MISSOURI
**03/22/2007 01:38:59 PM**
DT    FEE: $ 63.00  15 Pages

INSTRUMENT NUMBER:
**2007E0038241**



Return To:
ADVANCE MORTGAGE
CORPORATION
11935 RILEY, SUITE 210
OVERLAND PARK, KS 66213
ROXANNE JONES

Lender address located on page 2
Trustee address located on page 2
Full Legal Description located on page 3

------------- [Space Above This Line For Recording Data] -------------

# DEED OF TRUST

MIN 1004594-5000702366-7

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    March 13, 2007
together with all Riders to this document.

(B) "Borrower" is BARRE EUGENE HUNTER, a married person and VENDA MARIE HUNTER, HIS WIFE

("Grantor")

whose address is
    3020 S FIELDS ROAD, OAK GROVE, MO 64075
Borrower is the trustor under this Security Instrument.

06CHUNTERBA0983        1644078             0

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3026  1/01

-6A(MO) (0107)

Page 1 of 15    MW 07/01    Initials

VMP MORTGAGE FORMS - (800)521-7291

(C) "Lender" is   ADVANCE MORTGAGE CORPORATION

Lender is a     a Corporation
organized and existing under the laws of                    State of Kansas
Lender's address is 11935 RILEY. SUITE 210. OVERLAND PARK. KS 66213

(D) "Trustee" is J. Roger Irvin

Trustee's address is 11935 Riley, Overland Park, KS 66213

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated      March 13, 2007
The Note states that Borrower owes Lender One Hundred Eighty Six Thousand Three
Hundred Fifty and no/100                                                    Dollars
(U.S. $186,350.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      April 1, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider       ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

06CHUNTERBA0983              1644078         Initials: _____        0
-6A(MO) (0107)              Page 2 of 15                      Form 3026  1/01

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the
         County      of         JACKSON        :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]


Lot 1, SMITH'S LAKE VIEW, a subdivision of land in Jackson County, Missouri.


Parcel ID Number: 22-700-01-19                which currently has the address of
3020 S FIELDS ROAD                            [Street]
OAK GROVE                [City] , Missouri     64075    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

06CHUNTERBA0983          1644078         Initials: _____         0

-6A(MO) (0107)           Page 3 of 16             Form 3026  1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 274 of 491

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

06CHUNTERBA0983                          1644078                                      0

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 276 of 491

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

06CHUNTERBA0983

1644078

Initials: _____

0

-6A(MO) (0507)

Page 6 of 15

Form 3026   1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 277 of 491

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

06CHUNTERBA0983       1644078       Initials: _____       0

Case 4:15-cv-00141-DW    Document 1-1    Filed 02/24/15    Page 278 of 491

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

06CHUNTERBA0983                          1644078                                                    0

Initials: _____

-6A(MO) (0107)                              Page 8 of 16                              Form 3026  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

06CHUNTERBA0983      1644078      Initials:      0

-6A(MO) (0107)      Page 9 of 15      Form 3026 1/01

Case 4:15-cv-00141-DW    Document 1-1    Filed 02/24/15    Page 280 of 491

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 281 of 491

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

06CHUNTERBA0983                    1644078                  Initials: _BN_  _____        0

-6A(MO) (0107)                    Page 12 of 15                                Form 3026  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Lease of the Property. Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

26. Homestead Exemption. Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

06CHUNTERBA0983                     1644078                                              0

Initials: _____  _____

6A(MO) (0107)                        Page 13 of 15                                Form 3026  1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 284 of 491

27. **Notice.** Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
BARRE EUGENE HUNTER                -Borrower

_____

_____ (Seal)
VENDA MARIE HUNTER                 -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                -Borrower                              -Borrower

06CHUNTERBA0983              1644078                              0

VMP-6A(MO) (0107)           Page 14 of 15              Form 3026   1/01

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 285 of 491

STATE OF MISSOURI,                    ~~JOHNSON~~                    County ss: Jackson

On this    13th    day of    March 2007    , before me personally appeared
BARRE EUGENE HUNTER, a married person and VENDA MARIE HUNTER, HIS WIFE

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County                    and State aforesaid, the day and year first above written.

My Term Expires:  ; -9-2008              _____
                                         Notary Public    LeAnn Pontron

LeAnn Pontron
Notary Public - Notary Seal
STATE OF MISSOURI Jackson County
My Commission Expires Jan. 9, 2008

06CHUNTERBA0983              1644078                              0

-6A(MO) (0107)              Page 15 of 15              Initials _____              Form 3026  1/01

**ELECTRONICALLY RECORDED**
JACKSON COUNTY, MISSOURI
**01/11/2013 02:59:03 PM**
ASDT    FEE: $ 24.00    2    Pages

INSTRUMENT NUMBER:
**2013E0003758**

Millsap & Singer, LLC
612 Spirit Drive
St. Louis, Missouri 63005.
Barre Eugene Hunter, a married person and Venda Marie Hunter, His Wife
MS# 146420.100912.291683 FC

## ASSIGNMENT OF DEED OF TRUST

Date of Document:      $10-1-12$

Affecting Deed of Trust Recorded:  as Instrument No. 2007E0038241

MERS Phone Number:   1-888-679-6377

MIN:                 1004594-5000702366-7

Grantor (Assignor):  Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage Corporation, its successors and assigns

Grantor Address:     P.O. Box 2026, Flint, MI 48501-2026

Grantee (Assignee):  Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3

Grantee Address:     6501 Irvine Center Dr., Irvine, CA 92618

Legal Description:   LOT 1, SMITH'S LAKE VIEW, A SUBDIVISION OF LAND IN JACKSON COUNTY, MISSOURI

For Value Received, Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns, (herein "Assignor") whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, sell, assign, transfer and convey, unto Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 (herein "Assignee"), whose address is 6501 Irvine Center Dr., Irvine, CA 92618 all beneficial interest under a certain Deed of Trust recorded on March 22, 2007, made and executed by Barre Eugene Hunter, a married person and Venda Marie Hunter, His Wife, to Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns, upon the above described property situated in Jackson County, State of Missouri.

MS File No. 146420.100912.291683 FC

Such Deed of Trust having been given to secure payment of $186,350.00, which Deed of Trust is of record as Instrument No. 2007E0038241, the Recorder of Deeds for Jackson County, State of Missouri, and all rights, title and interest accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust.

Assignor: Mortgage Electronic Registration Systems, Inc, as nominee for Advance Mortgage Corporation, its successors and assigns

By: _Rolanda Wagner_

Print Name: **Rolanda Wagner**

Title: **Assistant Secretary**

State of ___Florida___ )
                       ) SS.
County of ___Duval___ )

Produced Florida Drivers License as identification

On _10-01-12_ before me, _____ **Brenda L Frazler** _____, a Notary Public in and for said State, appeared _____ **Rolanda Wagner** _____

_____**Assistant Secretary**_____ (Official Title) known to me to be the person who executed the within Assignment of Deed of Trust on behalf of Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage Corporation, its successors and assigns and acknowledged to me that he or she executed the same for the purposes therein stated.

Notary Public    Brenda L Frazler

My term expires: _4. 30. 2013_

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission #DD885641
Expires: APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

MS File No. 146420.100912.291683 FC

# Exhibits of Relevant Missouri UCC Law

Page

2      (Ex A, RSMo 400-003.302 Holder in Due Course)

4      (Ex B, RSMo 432.010 Statute of Frauds-Contracts Required to be in Writing)

5      (Ex C, RSMo 400-003.501 Presentment)

7      (Ex D, RSMo 400-003.303 Value and Consideration)

8      (Ex E, RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)

9      (Ex F, Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY)

      (Ex F-1 The decisions of the United States Supreme Court, whether right or wrong, are supreme: they are binding on all courts of this land, Hoover v. Holston Valley Community Hospital, 545 F. Supp. 8, 13 (E. D.Â Tenn. 1981) (quoting Jordan V. Gilligan, 500 2 F.3d 701, 707(6th Cir. 1974)).

      (Ex F-2 The lower courts are bound by Supreme Court precedent, Adams v. Department of Juvenile Justice of New York City, 143 F.3d, 61, 65(2nd Cir. 1998)

      (Exhibit F-3 Walker v. Quality Loan Service Corp. of Washington et al., No. 65975-8-1

      (Exhibit F-4 Washington State Supreme Court, Bain v. Metro. Mortg. Group, Inc., et al.175 Wn.2d 83, 285 P.3d 34 (2012)

That any such alleged note was transferred electronically without complying with the Uniform Electronic Transactions Act (UEATA) as adopted by the State of Missouri. Plaintiffs did not sign document giving permission or agreement for Advance Mortgage, or its successors to send a replica of the Plaintiffs' original loan documents and signatures electronically to be used as originals to any entity.

*432.200. Sections 432.200 to 432.295 shall be known and may be cited as the Uniform Electronic Transactions Act."(L. 2003 H.B. 254)*

*Transferable records.*
*432.275. 1. As used in this section, transferable record means an electronic record that:*

*(1) Would be a note under sections 400.3-101 to 400.3-605 or a document under sections 400.7-101 to 400.7-604 if the electronic record were in writing; and (2) The issuer of the electronic record expressly has agreed is a transferable record.*

15      (Ex G, RSMo 400-003. 404 Imposters—fictitious payees)

17      (Ex H, RSMo 400-003.407 Alteration)

18      (Ex I, RSMo 400-303.306 Claims to an Instrument)

19      (EX J RSMo 400-003.307 Notice of breach of fiduciary duty)

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 289 of 491

21    (Ex K RSMo 400-003.309    Enforcement of lost, destroyed, or stolen instrument)

22    (Ex L, RSMo 400-003.405 Employer's responsibility for fraudulent endorsement by employee)

24    (Ex M, RSMo 400-003.420 Conversion of Instrument)

25.    (Ex N    Critical assignments the Deed of Trust)

26.    (Ex O   Mortgage Backed Security Information, this case)

27.    (EX P RSMo  407.020 Missouri Merchandising Practices Act

28.    Ex P RSMo  408.695 Statute of limitations)   An action to enforce any provision of sections 408.675 to 408.700
       may be brought in the circuit court within three years from the date on which the violation occurs or on the
       date of discovery of such violation, whichever is later.
       (L. 1989 H.B. 82 § 14)  Statute of limitations.

2

# Exhibit A

## *Missouri Revised Statutes*

### Chapter 400
### Uniform Commercial Code
### Section *400-003.302*

August 28, 2013

**Holder in due course.**

400.3-302. (a) Subject to subsection (c) and Section 400.3-106(d), "holder in due course" means the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 400.3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 400.3-305(a).

(b) Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under subsection (a), but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment, or claim to the instrument.

3

(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.

(d) If, under Section 400.3-303(a)(1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

(e) If (i) the person entitled to enforce an instrument has only a security interest in the instrument and (ii) the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

(f) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

(g) This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

(L. 1963 p. 503 § 3-302, A.L. 1992 S.B. 448)

4

# EXHIBIT B

# *Missouri Revised Statutes*

### Chapter 432
### Contracts Required to Be in Writing
### Section *432.010*

August 28, 2013

**Statute of frauds--contracts to be in writing.**

432.010. No action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

(RSMo 1939 § 3354)

Prior revisions: 1929 § 2967; 1919 § 2169; 1909 § 2783

CROSS REFERENCES:

Actions on contract barred, revived by written promise, 516.320

Marriage contracts affecting property to be in writing, acknowledged, 451.220

# Exhibit C

## *Missouri Revised Statutes*

### Chapter 400
### Uniform Commercial Code
### Section *400-003.501*

August 28, 2013

---

**Presentment.** 400.3-501. (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

(b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:

(1) Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.

(2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

(3) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or

6

acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

(4) The party to whom presentment is made may treat presentment as occurring on the next business day after the day of presentment if the party to whom presentment is made has established a cut-off hour not earlier than 2 p.m. for the receipt and processing of instruments presented for payment or acceptance and presentment is made after the cut-off hour.

(L. 1992 S.B. 448)

*No continuity with § 400.3-501 as repealed by L. 1992 S.B. 448.

---

© Copyright

 Missouri General Assembly

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 295 of 491

# Exhibit D

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.303*

August 28, 2013

**Value and consideration.**

400.3-303. (a) An instrument is issued or transferred for value if:

(1) the instrument is issued or transferred for a promise of performance, to the extent the promise has been performed;

(2) the transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;

(3) the instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due;

(4) the instrument is issued or transferred in exchange for a negotiable instrument; or

(5) the instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.

(b) "Consideration" means any consideration sufficient to support a simple contract. The drawer or maker of an instrument has a defense if the instrument is issued without consideration. If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed. If an instrument is issued for value as stated in subsection (a), the instrument is also issued for consideration.

8

# EXHIBIT E

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.203*

August 28, 2013

**Transfer of instrument--right acquired by transfer.** 400.3-203. (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this Article and has only the rights of a partial assignee.

(L. 1992 S.B. 448)

*No continuity with § 400.3-203 as repealed by L. 1992 S.B. 448.

9

# Exhibit F

## Carpenter v. Longan - 83 U.S. 271 (1872)

Syllabus
Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)
APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY

Syllabus

1. The assignment of a negotiable note before its maturity raises the presumption of a want of notice of any defense to it, and this presumption stands till it is overcome by sufficient proof.

2. When a mortgage given at the same time with the execution of a negotiable note and to secure payment of it, is subsequently, but before the maturity of the note, transferred bona fide for value, with the note, the holder of the note when obliged to resort to the mortgage is unaffected by any equities arising between the mortgagor and mortgagee subsequently to the transfer, and of which he, the assignee, had no notice at the time it was made. He takes the mortgage as he did the note.

MR. JUSTICE SWAYNE stated the case, and delivered the opinion of the Court.

On the 5th of March, 1867, the appellee, Mahala Longan, and Jesse B. Longan, executed their promissory note to Jacob B. Carpenter, or order, for the sum of $980, payable six months after date, at the Colorado National Bank, in Denver City, with interest at the rate of three and a half percent per month until paid. At the same time Mahala Longan executed to Carpenter a mortgage upon certain real estate

Page 83 U. S. 272

10

therein described. The mortgage was conditioned for the payment of the note at maturity, according to its effect.

On the 24th of July, 1867, more than two months before the maturity of the note, Jacob B. Carpenter, for a valuable consideration, assigned the note and mortgage to B. Platte Carpenter, the appellant. The note not being paid at maturity, the appellant filed this bill against Mahala Longan, in the District Court of Jefferson County, Colorado territory, to foreclose the mortgage.

She answered and alleged that when she executed the mortgage to Jacob B. Carpenter, she also delivered to him certain wheat and flour, which he promised to sell, and to apply the proceeds to the payment of the note; that at the maturity of the note she had tendered the amount due upon it, and had demanded the return of the note and mortgage and of the wheat and flour, all which was refused. Subsequently she filed an amended answer, in which she charged that Jacob B. Carpenter had converted the wheat and flour to his own use, and that when the appellant took the assignment of the note and mortgage, he had full knowledge of the facts touching the delivery of the wheat and flour to his assignor. Testimony was taken upon both sides. It was proved that the wheat and flour were in the hands of Miller & Williams, warehousemen, in the City of Denver, that they sold, and received payment for, a part, and that the money thus received and the residue of the wheat and flour were lost by their failure. The only question made in the case was, upon whom this loss should fall, whether upon the appellant or the appellee. The view which we have taken of the case renders it unnecessary to advert more fully to the facts relating to the subject. The district court decreed in favor of the appellant for the full amount of the note and interest. The supreme court of the territory reversed the decree, holding that the value of the wheat and flour should be deducted. The complainant thereupon removed the case to this Court by appeal.

It is proved and not controverted that the note and mortgage were assigned to the appellant for a valuable consideration

Page 83 U. S. 273

before the maturity of the note. Notice of anything touching the wheat and flour is not brought home to him.

The assignment of a note underdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was nonnegotiable, or had been assigned after maturity. The question presented for our determination is, whether an assignee, under the circumstances of this case, takes the mortgage as he takes the note,

11

free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative. [Footnote 1] The contract as regards the note was that the maker should pay it at maturity to any bona fide endorsee, without reference to any defenses to which it might have been liable in the hands of the payee. The mortgage was conditioned to secure the fulfillment of that contract. To let in such a defense against such a holder would be a clear departure from the agreement of the mortgagor and mortgagee, to which the assignee subsequently, in good faith, became a party. If the mortgagor desired to reserve such an advantage, he should have given a nonnegotiable instrument. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who "puts trust and confidence in the deceiver should be a loser rather than a stranger." [Footnote 2]

Upon a bill of foreclosure filed by the assignee, an account must be taken to ascertain the amount due upon the instrument secured by the mortgage. Here the amount due was the face of the note and interest, and that could have been recovered in an action at law. Equity could not find that

Page 83 U. S. 274

less was due. It is a case in which equity must follow the law. A decree that the amount due shall be paid within a specified time, or that the mortgaged premises shall be sold, follows necessarily. Powell, cited supra, says:

"But if the debt were on a negotiable security, as a bill of exchange collaterally secured by a mortgage, and the mortgagee, after payment of part of it by the mortgagor, actually negotiated the note for the value, the endorsee or assignee would, it seems, in all events, be entitled to have his money from the mortgagor on liquidating the account, although he had paid it before, because the endorsee or assignee has a legal right to the note and a legal remedy at law, which a court of equity ought not to take from him, but to allow him the benefit of on the account."

A different doctrine would involve strange anomalies. The assignee might file his bill and the court dismiss it. He could then sue at law, recover judgment, and sell the mortgaged premises under execution. It is not pretended that equity would interpose against him. So if the aid of equity were properly invoked to give effect to the lien of the judgment upon the same premises for the full amount, it could not be refused. Surely such an excrescence ought not to be permitted to disfigure any system of enlightened jurisprudence. It is the policy of the law to avoid circuity of action, and parties ought not to be driven from one forum to obtain a remedy which cannot be denied in another.

The mortgaged premises are pledged as security for the debt. In proportion as a remedy is denied the contract is violated, and the rights of the assignee are set at naught. In other

12

words, the mortgage ceases to be security for a part or the whole of the debt, its express provisions to the contrary notwithstanding.

The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. [Footnote 3]

Page 83 U. S. 275

It must be admitted that there is considerable discrepancy in the authorities upon the question under consideration.

In Baily v. Smith [Footnote 4] -- a case marked by great ability and fullness of research -- the Supreme Court of Ohio came to a conclusion different from that at which we have arrived. The judgment was put chiefly upon the ground that notes, negotiable, are made so by statute, while there is no such statutory provision as to mortgages, and that hence the assignee takes the latter as he would any other chose in action, subject to all the equities which subsisted against it while in the hands of the original holder. To this view of the subject there are several answers.

The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity. When the amount due on the note is ascertained in the foreclosure proceeding, equity recognizes it as conclusive, and decrees accordingly. Whether the title of the assignee is legal or equitable is immaterial. The result follows irrespective of that question. The process is only a mode of enforcing a lien.

All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action,

Page 83 U. S. 276

where no such relation of dependence exists. Accessorium non ducit, sequitur principale.

13

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 301 of 491

In Pierce v. Faunce, [Footnote 5] the court said:

"A mortgage is pro tanto a purchase, and a bona fide mortgagee is equally entitled to protection as the bona fide grantee. So the assignee of a mortgage is on the same footing with the bona fide mortgagee. In all cases the reliance of the purchaser is upon the record, and when that discloses an unimpeachable title he receives the protection of the law as against unknown and latent defects."

Matthews v. Wallwyn [Footnote 6] is usually much relied upon by those who maintain the infirmity of the assignee's title. In that case, the mortgage was given to secure the payment of a nonnegotiable bond. The mortgagee assigned the bond and mortgage fraudulently and thereafter received large sums which should have been credited upon the debt. The assignee sought to enforce the mortgage for the full amount specified in the bond. The Lord Chancellor was at first troubled by the consideration that the mortgage deed purported to convey the legal title, and seemed inclined to think that might take the case out of the rule of liability which would be applied to the bond if standing alone. He finally came to a different conclusion, holding the mortgage to be a mere security. He said, finally:

"The debt therefore is the principal thing, and it is obvious that if an action was brought on the bond in the name of the mortgagee, as it must be, the mortgagor shall pay no more than what is really due upon the bond; if an action of covenant was brought by the covenantee, the account must be settled in that action. In this Court, the condition of the assignee cannot be better than it would be at law in any mode he could take to recover what was due upon the assignment."

The principle is distinctly recognized that the measure of liability upon the instrument secured is the measure of the liability chargeable upon the security. The condition of the assignee cannot be better in law than it is in equity.

Page 83 U. S. 277

So neither can it be worse. Upon this ground we place our judgment.

We think the doctrine we have laid down is sustained by reason, principle, and the greater weight of authority.

Decree reversed and the case remanded with directions to enter a decree in conformity with this opinion.

[Footnote 1]

14

Powell on Mortgages 908; 1 Hilliard on Mortgages 572; Coot on Mortgages 304; Reeves v. Scully, Walker's Chancery 248; Fisher v. Otis, 3 Chandler 83; Martineau v. McCollum, 4 id. 153; Bloomer v. Henderson, 8 Mich. 395; Potts v. Blackwell, 4 Jones 58; Cicotte v. Gagnier, 2 Mich. 381; Pierce v. Faunce, 47 Me. 507; Palmer v. Yates, 3 Sandford 137; Taylor v. Page, 6 Allen 86; Croft v. Bunster, 9 Wis. 503; Cornell v. Hilchens, 11 id. 353.

[Footnote 2]

Hern v. Nichols, 1 Salkeld 289.

[Footnote 3]

Jackson v. Blodget, 5 Cowan 205; Jackson v. Willard, 4 Johnson 43.

[Footnote 4]

14 Ohio St. 396.

[Footnote 5]

47 Me. 513.

[Footnote 6]

4 Vesey 126.

15

# Exhibit G

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.404*

August 28, 2013

**Impostors--fictitious payees.** 400.3-404. (a) If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the payee, an endorsement of the instrument by any person in the name of the payee is effective as the endorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) If (i) a person whose intent determines to whom an instrument is payable (Section 400.3-110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special endorsement:

(1) Any person in possession of the instrument is its holder.

(2) An endorsement by any person in the name of the payee stated in the instrument is effective as the endorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

(c) Under subsection (a) or (b), an endorsement is made in the name of a payee if (i) it is made in a name substantially similar to that of the payee or (ii) the instrument,

16

whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to that of the payee.

(d) With respect to an instrument to which subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(L. 1992 S.B. 448)

*No continuity with § 400.3-404 as repealed by L. 1992 S.B. 448.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 305 of 491

# *Exhibit H*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.407*

August 28, 2013

**Alteration.**

400.3-407. (a) "Alteration" means (i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.

(b) Except as provided in subsection (c), an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.

(c) A payor bank or drawee paying a fraudulently altered instrument or a person taking it for value, in good faith and without notice of the alteration, may enforce rights with respect to the instrument (i) according to its original terms, or (ii) in the case of an incomplete instrument altered by unauthorized completion, according to its terms as completed.

(L. 1963 p. 503 § 3-407, A.L. 1992 S.B. 448)

© Copyright



# *Exhibit I*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.306*

August 28, 2013

---

**Claims to an instrument.**

400.3-306. A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

(L. 1963 p. 503 § 3-306, A.L. 1992 S.B. 448)

---

© Copyright

 Missouri General Assembly

19

# *Exhibit J*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.307*

August 28, 2013

**Notice of breach of fiduciary duty.**

400.3-307. (a) In this section:

(1) "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

(2) "Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.

(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(1) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.

(2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary.

20

(3) If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.

(4) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary.

(L. 1992 S.B. 448, A.L. 1994 S.B. 701)

*No continuity with § 400.3-307 as repealed by L. 1992 S.B. 448.

---

© Copyright

 Missouri General Assembly

Case 4:15-cv-00141-DW  Document 1-1  Filed 02/24/15  Page 309 of 491

# *Exhibit K*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.309*

August 28, 2013

**Enforcement of lost, destroyed, or stolen instrument.**

400.3-309. (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section 400.3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

(L. 1992 S.B. 448)

22

© Copyright  Missouri General Assembly

# *Exhibit L*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.405*

August 28, 2013

**Employer's responsibility for fraudulent endorsement by employee.** 400.3-405.
(a) In this section:

(1) "Employee" includes an independent contractor and employee of an independent contractor retained by the employer.

(2) "Fraudulent endorsement" means (i) in the case of an instrument payable to the employer, a forged endorsement purporting to be that of the employer, or (ii) in the case of an instrument with respect to which the employer is the issuer, a forged endorsement purporting to be that of the person identified as payee.

(3) "Responsibility" with respect to instruments means authority (i) to sign or endorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

23

(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(c) Under subsection (b), an endorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.

(L. 1992 S.B. 448)

*No continuity with § 400.3-405 as repealed by L. 1992 S.B. 448.

© Copyright

 Missouri General Assembly

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 312 of 491

# Exhibit M

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.420*

August 28, 2013

---

**Conversion of instrument.**

400.3-420. (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

(c) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable to conversion to that person beyond the amount of any proceeds that it has not paid out.

(L. 1992 S.B. 448)

---

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 313 of 491

© Copyright

 Missouri General Assembly

26

*Supplemental Citations:* **Multiple Case Rulings going against REMIC Trusts with no paperwork**

*Augenstein v. Deutsche Bank National Trust Company,*

No. 2009-CA-000058-MR, Kentucky Ct. Appeals 2011

Trust: Soundview Home Loan Trust 2005-OPT4

Summary judgment for bank vacated and remanded.

"In this case, the complaint was filed on December 17, 2007, but the assignment of mortgage was not executed until January 3, 2008. Thus, Deutsche Bank had no present interest when it filed its complaint and failed to take any steps to correct this. Allowing Deutsche Bank to commence this action at a time when it lacked standing impermissibly allowed litigation to commence based upon mere expectancy of an interest."

*Bank of America v. Kabba,*

276 P.3d 1006, 2012 OK 23

Trust: Structured Asset Investment Loan Trust Series 2004-BNC2

"In the present case, Appellee has only presented evidence of an indorsed-in-blank note and an "Assignment of Mortgage." Appellee must prove that it is the holder of the note or the nonholder in possession who has the rights of a holder **prior** to the filing of the foreclosure proceeding. In the present matter the timeliness of the transfer is in question. Since Bank of America did not file the blank indorsement until it filed its motion for summary judgment it is impossible to determine from the record when Bank of America acquired its interest in the underlying note."

*Bank of New York v. Gindele,*

1st Dist. No. C-090251, 2010-Ohio-542

Trust: CWALT Alternative Loan Trust 2006-40T1

"A thorough review of the record reveals that the sole indication of its interest as mortgagee is an after-acquired assignment; and the bank failed to produce any evidence in the trial court affirmatively establishing a preexisting interest. Bank of New York has also asserted both that it had acted as an agent, and that its

1

predecessor in interest had later ratified its foreclosure complaint. But because at the time of filing neither agency nor ratification had been alleged or documented, we will not entertain this argument on appeal."

### Bank of NY v. Cupo,

2012 WL 611849 (N.J.Super.App. Div. 2011

Motion to vacate default judgment was reversed for further findings on issue of standing, suggesting that lack of standing might make a judgment void, rather than treating standing as waived by default judgment.

### Bank of New York v. Mulligan,

Index 29399/07 (August 25, 2010)

Trust: CWALT 2006-OC1

Mortgage Amount: $392,000

Bank's application for an order of reference was denied without prejudice.

"The Court will grant plaintiff, BNY an order of reference when it presents: an affidavit by either an officer of BNY or someone with a valid power of attorney from BNY, possessing personal knowledge of the facts; an affidavit from EJy Harless clarifying his employment history for the past three years and what corporation he serves as an officer; and, an affidavit by an officer of BNY, explaining why BNY would purchase a nonperforming loan from MERS, as nominee for DECISION ONE."

### Bank of New York v. Myers,

Index 18236/2008 (February 23, 2009)

Trust: CWABS 2006-22

The Bank's summary judgment motion was denied, but within 60 days of the decision, the Bank was required to submit an Affidavit from Keri Selman explaining her employment history for the past three years and why Selman did not have a conflict of interest as the signor of many entities.

### Bank of New York v. Orosco,

2007 NY SLIP OP 31501(U) (November 19, 2007)

Trust: CWABS, Series 2006-SD2

2

Mortgage Amount: $436,000

"Plaintiff must address a second matter **if it** applies for an order of reference after demonstrating that the alleged assignment was recorded. Plaintiff's application is the third application for an order of reference received by me in the past several days that contain an affidavit from Keri Selman. In the instant action, she alleges to be an Assistant Vice-president of the Bank of New York. On November 16,2007, I denied an application for an order of reference in which Keri Selman, in her affidavit of merit claims to be "Vice President of COUNTRYWIDE HOME LOANS, Attorney in fact for BANK OF NEW YORK." The Court is concerned that Ms. Selman might be engaged in a subterfuge, wearing various corporate hats. Before granting an application for an order of reference, the Court requires an affidavit from Ms. Selman describing her employment history for the past three years."


### Bank of New York v. Raftogianis,

13 A.3d 435 (2010), 418 N.J.Super. 323

Trust: American Home Mort. Investment Trust 2004-4

Mortgage Amount: $1,380,000

"Plaintiff, however, failed to establish that it was entitled to enforce the note as of the time the complaint was filed. In this case, there are no compelling reasons to permit plaintiff to proceed in this action. Accordingly, the complaint has been dismissed. That dismissal is without prejudice to plaintiff's right to institute a **new** action to foreclose at any time, provided that any **new** complaint must be accompanied by an appropriate certification, executed by one with personal knowledge of the circumstances, confirming that plaintiff is in possession of the original note as of the date any **new** action is filed. That certification must indicate the physical location of the note and the name of the individual or entity in possession."


### Bank of New York v. Silverberg,

86 AD3d 274, 926 N.Y.S.2d 532 (2d Dept 2011)

Trust: CWALT 2007-14-T2

Mortgage Amount: $479,000

"In sum, because MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the corrected assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose."

3

*Bank of New York Mellon v. Teague,*

Case No. 27-2009-CA-003121, Hernando Co. FL 2012

Trust: Novastar Mortgage Funding Trust 2005-1

"Second, to be entitled to foreclose, Plaintiff had to have been the holder of the Note and Mortgage at the time it filed this lawsuit. The undisputed, summary judgment evidence before the Court was that Plaintiff was not the holder at the inception of this case as Plaintiff did not have the original Note in its possession when it filed suit and the Note did not contain the requisite endorsement. The fact that Plaintiff filed what it contends is an original note on June 28, 2012 does not change this result, as the endorsement on that Note is to a different company, not Plaintiff, and even if the Note had been properly endorsed, the fact that Plaintiff may have been the holder as of June, 2012 does not change its lack of standing at the inception of this case…

The motion is granted and this case is dismissed without prejudice." (cites omitted)


*Bank of New York v. Trezza,*

14 Misc. 3d 1201(A), 2006 NY Slip Op 52367(U)

Trust: CWABS 2004-5

"In support of its motion, the plaintiff submits a purported assignment of the mortgage from MERS to the plaintiff; however, the mortgage does not empower MERS to assign the mortgage to any other entity. Furthermore, there is no proof that the Lender had previously assigned the mortgage to MERS, nor is there any other evidence to establish the plaintiff's ownership rights under the mortgage.

Based on the foregoing, the plaintiff has failed to establish that it has standing as a plaintiff in this matter."


*Bank of New York v. Singh,*

Index No. 22434/2007, Kings County (December 14, 2007)

Trust: CWABS, Series 2004-6

An order of reference was denied where the mortgage assignment was executed on June 28, 2007, with an antedated effective date of May 31, 2007. Suit was commenced on June 20, 2007. Judge Kurtz found that such an attempt to retroactively assign the mortgage was insufficient to establish plaintiff's ownership interest at the time the action was commenced.

4

*Bank of New York v. Torres,*

Index No. 31704/2006, Kings County (March 11, 2008)

Trust: CWABS 2005-6

"*ORDERED* that the plaintiff's ex parte application for an Order of Reference in Mortgage Foreclosure is denied without prejudice to renew due to plaintiffs failure to demonstrate its ownership of the note and mortgage sufficient to convey standing upon this plaintiff to commence this lawsuit on November 13,2006…"


*Beaumont v. Bank of New York Mellon,*

81 So.3d 553,554 (Fla. Dist. Ct. App. 2012)

Trust: NovaStar Mortgage Funding Trust 2005-3

Summary judgment for bank reversed and remanded.

"There is no evidence showing that Beaumont was on notice prior to the time his answer was filed that ownership of the note had been transferred from NovaStar to Mellon. In fact, the claimed transfer, alleged to have occurred on the day suit was filed, was either concealed by NovaStar for more than three years while it continued to pursue the action, or NovaStar backdated the assignment it finally produced on July 23, 2010, as justification for substituting Mellon as plaintiff. Under these circumstances, Beaumont may raise lack of standing when suit was filed as a defense."


*Congress v. U.S. Bank,*

2100934, AL Ct. Civ. App.

Trust: 2007-EMX1

Mortgage Amount: $104,400

"The trial court should have evaluated the issue whether the allonge had been created after the first trial under the preponderance-of-the-evidence standard. Because it used the higher clear-and-convincing-evidence standard to evaluate Congress's evidence, this court has no choice but to reverse the trial court's judgment and remand the cause to the trial court for it to evaluate the evidence adduced at trial under the appropriate standard of proof."


*Cutler v. U.S. Bank, N.A.,*

Case No. 2D10-5709 (Fla. 2d DCA 2012)

5

Trust: Structured Asset Investment Loan Trust, 2006- BNC3

Summary judgment for Bank reversed and remanded.

"Accordingly. a genuine issue of material fact remained as to whether U.S. Bank was the proper holder of the note at the time it initiated the foreclosure action. The note includes the allonge endorsed in blank, but the allonge is not dated. If indeed U.S. Bank cannot establish that the allonge took effect prior to the date of the complaint, it did not have standing to bring suit…

Because a genuine issue of material fact remains. the trial court erred in entering a final summary judgment."


### Davenport v. HSBC Bank USA,

739 N.W.2d 383 (Mich. Ct. App. 2007)

"In this case. defendant did not own the mortgage or an interest in the mortgage on October 27, 2005. Nonetheless. defendant proceeded to commence foreclosure proceedings at that time. Quite simply, defendant did not yet own the indebtedness that it sought to foreclose. The circuit court erred by determining that defendant's noncompliance with the statutory requirements did not nullify the foreclosure proceedings. Because defendant lacked the statutory authority to foreclose. the foreclosure proceedings were void *ab initio.* We vacate the foreclosure proceedings and remand for proceedings consistent with this opinion."


### Deutsche Bank National Trust Co.v. Alemany,

Index: 11677/2007

(N.Y. Sup. Ct. Suffolk Co. 2008)

Trust: Soundview Home Loan Trust, 2006-OPT3

"*ORDERED* that plaintiffs ex parte application for an Order of Reference is denied without prejudice to resubmit due to plaintiffs failure to provide: … (2) proof on standing to commence this action as it appears plaintiff did not own the note and mortgage when the action was commenced…"


### Deutsche Bank National Trust Company v. Barnett,

88 A.D.3d 636, 931 N.Y.S.2d 630

Trust: FFMLT 2005-FF11

Summary judgment of foreclosure in favor of bank reversed.

6

"However, the documentation submitted failed to establish that, prior to commencement of the action, the plaintiff was the holder or assignee of both the note and mortgage. The plaintiff submitted copies of two different versions of an undated allonge which was purportedly affixed to the original note pursuant to UCC 3-202 (2). Moreover, these allonges purporting to endorse the note from First Franklin, a Division of National City Bank of Indiana (hereinafter Franklin of Indiana) to the plaintiff conflict with the copy of the note submitted, which contains undated endorsements from Franklin of Indiana to First Franklin Financial Corporation (hereinafter Franklin Financial), then from Franklin Financial in blank.

"...The plaintiff also failed to establish that the note was physically delivered to it prior to the commencement of this action."

### Deutsche Bank National Trust Company v. Bialobrzeski,

3 A.3d 183 (Conn App. Ct. 2010)

Trust: Long Beach Mortgage Loan Trust 2006-3

The judgment for the trust was reversed and the case was remanded for a hearing on the motion to dismiss. "The key to resolving the defendant's claim is a determination of when the note came into the plaintiff's possession. We cannot review the claim because Judge Domnarski made no factual finding as to when the plaintiff acquired the note. Without that factual determination, we are unable to say whether Judge Domnarski improperly denied the defendant's motion to dismiss. Although it is the appellant's responsibility to provide an adequate record for review; see Practice Book §§ 60-5 and 61-10; that cannot be the end of the matter because it concerns the trial court's subject matter jurisdiction.

### Deutsche Bank National Trust Company v. Brumbaugh,

2012 OK 3, 270 P.3d 151

Trust: Long Beach Mortgage Loan Trust 2002-1

Summary judgment for bank reversed and remanded.

"To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing... Being a person entitled to enforce the note is an essential requirement to initiate a foreclosure lawsuit. In the present case, there is a question of fact as to when Appellee became a holder, and thus, a person entitled to enforce the note. Therefore, summary judgment is not appropriate. If Deutsche Bank became a person entitled to enforce the note as either a holder or nonholder in possession who has the rights of a holder after the foreclosure action was filed, then the case may

7

be dismissed without prejudice and the action may be re-filed in the name of the proper party. We reverse the granting of summary judgment by the trial court and remand back for further determinations as to when Appellee acquired its interest in the note." (cites omitted)

### Deutsche Bank National Trust Co. v. Byrams,

2012 OK 4, 275 P.3d 129

Trust: Argent Securities, Inc. ABPT Certs., Series 2006-W2

Mortgage amount: $526,320

Summary judgment of foreclosure in favor of bank reversed and remanded.

"The assignment of a mortgage is not the same as an assignment of the note. If a person is trying to establish it is a nonholder in possession who has the rights of a holder it must bear the burden of establishing its status as a nonholder in possession with the rights of a holder. Appellee must establish delivery of the note as well as the purpose of that delivery. In the present case, it appears Appellee is trying to use the assignment of mortgage in order to establish the purpose of delivery. The assignment of mortgage purports to transfer "the following described mortgage, securing the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all liens created or secured thereby, all obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such mortgage." This language has been determined by other jurisdictions to not effect an assignment of a note but to be useful only in identifying the mortgage. Therefore, this language is neither proof of transfer of the note nor proof of the purpose of any alleged transfer." (cites omitted)

### Deutsche Bank National Trust Company v. Cabaroy,

Index: 9245/2007

(N.Y. Sup. Ct. Suffolk Co. 2008)

Trust: New Century Home Equity Loan Trust, 2006-1

"ORDERED that the plaintiffs ex parte application for an Order of Reference in Mortgage Foreclosure is denied without prejudice to resubmit due to plaintiffs failure to provide: (1) proof of plaintiffs standing to commence this action;"

### Deutsche Bank National Trust Company v. Castellanos,

8

2008 NY Slip Op 50033(U)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Argent Mort. Sec., Inc. ABPT Certs., Series 2005-W4

Mortgage Amount: $382,500

"Did Mr. Rivas somehow change employers on July 21, 2006 or he is concurrently a Vice President of both assignor Argent Mortgage Company, LLC and assignee Deutsche Bank? If he is a Vice President of both the assignor and the assignee, this would create a conflict of interest and render the July 21, 2006-assignment void. Also, Mr. Rivas claims that Argent Mortgage Company, LLC is located at 1100

Town and Country Road, Suite 200, Orange, California, while Deutsche Bank has its offices at One City Boulevard West, Orange, California. Did Mr. Rivas execute the assignment at 100 Town and Country Road, Suite 200, and then travel to One City Boulevard West, with the same notary public, M. Reveles, in tow? The Court is concerned that there may be fraud on the part of Deutsche Bank, Argent Mortgage Company, LLC, and/or MTGLQ Investors. L.P., or at least malfeasance. If plaintiff renews its motion for a judgment of foreclosure and sale, the Court requires a satisfactory explanation by Mr. Rivas of his recent employment history."


*Deutsche Bank National Trust Co. v. Clouden,*

Index No. 277/07

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Argent Mort. Sec., Inc. ABPT Certs., Series 2005-W3

Mortgage Amount: $382,500

"In the instant action, Argent's defective assignment to Deutsche Bank affects the standing of Deutsche Bank to bring this action. The recorded assignment from Argent to Deutsche Bank, made by "Tamara Price, as Authorized Agent" on behalf of "AMC Mortgage Services Inc. as authorized agent," lacks any power of attorney granted by Argent to AMC Mortgage Services, Inc. and/or Tamara Price to act on its behalf."


*Deutsche Bank National Trust Company v. Benjamin Cruz,*

Index No. 31645/06

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Soundview Home Loan Trust 2005-OPT3

9

"In support of plaintiff's application, it submits a purported assignment of the mortgage from the original lender to plaintiff. The purported assignment is dated October 27, 2006. However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

### *Deutsche Bank National Trust Company v. Yobanna Cruz,*

Index No. 2085/07

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Long Beach Mort. Loan Trust 2006-2

Mortgage Amount: $382,500

"In support of plaintiffs application, it submits a purported assignment of the mortgage from the original lender to plaintiff. The purported assignment is dated January 18, 2007 and states in pertinent part "effective January 12, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

### *Deutsche Bank National Trust Company v. Cuesta,*

2012 NY Slip Op 32590(U) (N.Y. Sup. Ct. Suffolk Co. 2012)

Trust: American Home Mortgage Investment Trust,

Series 2007-2

Deutsche Bank's motion for an order of reference was denied without prejudice, and Deutsche Bank was warned that if it chose to refile, it must include:

"4) Evidentiary proof, including an affidavit from an individual with personal knowledge of the facts as to the proper and timely assignment of the subject note and mortgage or endorsement of the subject note and assignment of the subject mortgage, sufficient to establish that plaintiff was the owner or holder of the subject note and mortgage at the time the action was commenced...

In his affidavit, the plaintiff's representative has not addressed the particulars of the transfer of the note or the assignment of the mortgage to the plaintiff. Additionally, the assignment dated January 27, 2011, which is referred to in the plaintiff's complaint, has not been attached to the moving papers."

### *Deutsche Bank v. Decker,*

10

Case 09-20548-CI-13 (Pinellas County, Florida, 2010)

Trust: Morgan Stanley Dean Witter Cap. PSA dated 5-1- 2001

"However, there remain two concerns.

The first is related to evidence that the Plaintiff had standing at the time the original complaint was initially filed. The "new" assignment does not solve this problem because it was executed on February 17, 2010, and thus does not demonstrate standing in 2009…

The second problem is related to the ownership issue but is focused on the validity of the newly obtained assignment. At the hearing Defendant's counsel indicated concerns regarding this document based upon his assertion that the 2010 assignment was from a company that went bankrupt years ago…"

(Dismissal granted of bank/plaintiff's first amended complaint)


*Deutsche Bank National Trust Co. v. Ezagui,*

Index: 3724/07

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Ameriquest Mortgage Securities, Inc., ABPT

Certificates, Series 2004-R10

Mortgage Amount: $412,250

"According to plaintiff's application, defendant Ezaguis' default began with the nonpayment of principal and interest due on September 1, 2006. Yet, more than five months later, plaintiff DEUTSCHE BANK was willing to take an assignment of a nonperforming loan from AMERIQUEST. Further, both assignor AMC, as Attorney in Fact for AMERIQUEST, and assignee, DEUTSCHE BANK, have the same address, 505 City Parkway West, Orange, CA 92868. Plaintiff's "affidavit of amount due," submitted in support of the instant application for a default order of reference was executed by Tamara Price, on February 16, 2007. Ms. Price states that "I am the Vice President for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF AMERIQUEST MORTGAGE SECURITIES, INC., ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2004-R10, UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2004, WITHOUT RECOURSE (DEUTSCHE BANK)." However, the February 7, 2007 assignment from AMERIQUEST, by AMC, its Attorney in Fact, is executed by Tamara Price, Vice President of AMC. The Tamara Price signatures on both the February 7, 2007 affidavit and the February 16, 2007 assignment are identical. Did Ms. Price change employers from February 7, 2007 to February 16, 2007? The Court is concerned that there may be fraud on the part of AMERIQUEST, or at least malfeasance. Before granting an application for an order of reference, the Court requires an affidavit from Ms. Price, describing her

11

employment history for the past three years. Further, irrespective of her employment history, Ms. Price must explain why DEUTSCHE BANK would purchase a nonperforming loan from AMERIQUEST, and why DEUTSCHE BANK shares office space in Orange, California, with AMERIQUEST."

*Deutsche Bank National Trust Company v. Gilbert,*
2012 IL App (2d) 120164, No. 2-12-0164 (September 25, 2012)
Trust: GSAMP Trust 2005-WMC2
"Deutsche Bank attempted to rebut this apparent lack of standing by pointing to the Assignment and the Loch affidavit. However, these items lack evidentiary value. Before the trial court, Deutsche Bank argued that the language of the Assignment established that the transfer of the mortgage had occurred years earlier, on November 1, 2005. On appeal, however, Deutsche Bank wisely abandons that argument (which finds no support in the actual language of the Assignment), and now concedes that the Assignment "does not establish anything about when Plaintiff [Deutsche Bank] obtained its interest in the subject loan." We agree with this statement. Although the Assignment contains two dates—the date of the trust for which Deutsche Bank is a trustee, and the date on which the Assignment was executed and notarized—it does not explicitly state when the mortgage was assigned to Deutsche Bank. All that can be known about when the assignment took place is that it was no later than the date on which the Assignment was executed."

*Deutsche Bank National Trust Company v. Grant,*
Index: 39192/07
(N.Y. Sup. Ct. Kings Co. 2008)
Trust: Soundview Home Loan Trust 2006-OPT2
Mortgage Amount: $456.000
"Also, the Court requires an explanation from an officer of plaintiff DEUTSCHE BANK as to why, in the middle of our national subprime mortgage financial crisis, DEUTSCHE BANK purchased a non-performing loan [from] OPTION ONE. The Court wonders if DEUTSCHE BANK violated a corporate fiduciary duty to its stockholders with the purchase of a loan that defaulted more than five months prior to its assignment to DEUTSCHE BANK."

*Deutsche Bank National Trust Co. v. Haque,*

12

36 Misc. 3d 1203(A)

(N.Y. Sup. Ct. Queens Co. 2012)

Trust: Home Equity Mortgage Loan Trust, Series INABS

2005-B

Mortgage Amount: $279,200

"In addition, to the extent Plaintiff Deutsche Bank asserts the note was transferred to "the trust," pursuant to a "pooling and servicing" agreement between IndyMac ABS, Inc. as depositor, IndyMac Bank SM as seller and "master servicer" and Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-B, issuer, such agreement does not establish that IndyMac assigned the note to plaintiff Deutsche Bank. Plaintiff Deutsche Bank does not otherwise allege a basis for a valid assignment of the note." (cites omitted)


*Deutsche Bank National Trust Co. v. Harris,*

Index: 35549/07

(N.Y. Sup. Ct. Kings Co. 2008)

Mortgage Amount: $408,000

Deutsche Bank's Motion was denied without prejudice, with leave to renew, providing the Court:

"...a satisfactory explanation to various questions with respect to: the October 23, 2007 assignment of the instant mortgage to plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY (DEUTSCHE BANK); the employment history of one Erica Johnson-Seck, who executed the affidavit of facts in the instant application as an officer of DEUTSCHE BANK; plaintiff DEUTSCHE BANK'S purchase of the instant non-performing loan; and why does INDYMAC BANK, F.S.B., (INDYMAC), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), and plaintiff DEUTSCHE BANK all share office space at 460 Sierra Madre Villa, Pasadena, CA 91107."


*Deutsche Bank National Trust Co. v. Maraj,*

2008 NY Slip Op 50176 (U)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: INDX 2006-AR6

Mortgage Amount: $440,000

"With the assignor MERS and assignee DEUTSCHE BANK appearing to be engaged in possible fraudulent activity by: having the same person execute the assignment and then the affidavit of facts in support of the

13

instant application; DEUTSCHE BANK's purchase of a non-performing loan from INDYMAC; and, the sharing of office space in Suite 400/500 in Kansas City, the Court wonders if the instant foreclosure action is a corporate "Kansas City Shuffle," a complex confidence game...

A Kansas City Shuffle is when everybody looks right, you go left . . .

It's not something people hear about. Falls on deaf ears mostly . . .

No small matter. Requires a lot of planning. Involves a lot of people. People connected by the slightest of events. Like whispers in the night, in that place that never forgets, even when those people do.

In this foreclosure action is plaintiff DEUTSCHE BANK, with its "principal place of business" in Kansas City attempting to make the Court look right while it goes left?"

### Deutsche Bank National Trust Co. v. Marche,

Index: 9156/07

(N.Y. Sup. Ct. Kings Co. 2009)

Trust: Securitized AB Receivable LLC Trust 2006-FR4

"Why an Order should not be made and entered:

VACATING the order of foreclosure and dismissing the instant action in its entirety upon the grounds that (i) Plaintiff has misrepresented itself by alleging that it is the owner and holder of the mortgage in order to fraudulently commence this action when in fact no valid assignment has been made to Plaintiff from Fremont Investment & Loan; (ii) that this Court lacks subject matter jurisdiction where Plaintiff is not and has not been the true owner and holder of the note and mortgage at issue; and (iii) that the assignment at issue is champertous in violation of Section 489 of the New York State Judiciary Law because the sole purpose of the defective assignment was to facilitate fraudulent litigation begun by Plaintiff prior to the assignment's execution."

### Deutsche Bank National Trust Co. v. Matthews,

2012 OK 14, 273 P.3d 43 (2012)

Trust: JP Morgan Mortgage Acquisition Trust 2007-CH3

Summary Judgment for bank reversed and remanded.

"However, the Assignment of Real Estate Mortgage attached to its motion for summary judgment is executed on June 9, 2009, by a Vice President of Chase Bank USA, N.A. The note attached to its motion for summary judgment, however, shows an allonge from Chase Bank USA, N.A., to Chase Home Finance, LLC. Further,

14

this purported transfer of the note occurred six months after the action was commenced. Deutsche Bank also by its own admission states it acquired its interest in the note and mortgage subsequent to the filing of this action."

### *Deutsche Bank v. McCarthy,*

Case No. 1:07 3071 (N.D. Ohio) (Judge Dowd)

Trust: Argent Mortgage Securities, ABPT Certs., Series 2005-W5

"The Northern District of Ohio is swamped with foreclosure cases brought in diversity. A large number of these cases are brought by plaintiffs who declare that they are holders of the note and mortgage but who initially supply no proof of that fact. When pressed, it is typically the case, as here, that the plaintiff actually is not the holder of the note and mortgage until some time after the filing of the complaint (often mere days!) and had, therefore, made a false statement to the court. Sometimes that statement of ownership is only in the complaint; sometimes, as in the instant case, it is actually in a sworn affidavit. See Doc. No. 1-4, ¶ 7. This is completely unacceptable, especially because this situation is likely to be repeated if not stopped by Court order."

### *Deutsche Bank National Trust Company v. McRae*

27 Misc.3d 247 (Sup. Ct. Alleghany County 2010)

Trust: not identified.

To establish standing, the bank submitted an additional copy of a note which was different from the one attached to the complaint. The court rejected it, stating: "Obviously, the endorsements...post-date the commencement of this case...and are ineffective."

### *Deutsche Bank National Trust Co. v. Mitchell,*

27 A.3d 1229 – NJ Appellate Div. 2011

Trust: Long Beach Mortgage Loan Trust 2006-3

Mortgage Amount: $150,000

Summary judgment reversed.

"After reviewing the record in light of the contentions advanced on appeal, we reverse the grant of summary judgment and final judgment and vacate the sheriff's sale, holding that Deutsche Bank did not prove it had

15

standing at the time it filed the original complaint. The assignment was not perfected until after the filing of the complaint, and plaintiff presented no evidence of having possessed the underlying note prior to filing the complaint. If plaintiff did not have the note when it filed the original complaint, it lacked standing to do so, and it could not obtain standing by filing an amended complaint. Given that Deutsche Bank has not demonstrated standing, we cannot decide at this time whether it was a holder in due course of the mortgage."

*Deutsche Bank National Trust Co. v. Nicholls.*

Index 2248/07

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Long Beach Mort. Loan Trust 2005-WL2

"In support of plaintiff's application, it submits a purported assignment of the mortgage from the original lender to plaintiff. The purported assignment is dated January 24, 2007 and states in pertinent part "[e]ffective January 17, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. ... Plaintiffs attempt to foreclose upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact..."

*Deutsche Bank National Trust Company v. Parisella,*

VT App. Ct., 2010, Docket No. S0758-09 CnC

Trust: FFMLT Trust 2005-FF11

Homeowner's Motion to Dismiss granted.

"The court concludes that a plaintiff seeking foreclosure lacks standing unless it can show it was entitled to enforce the mortgage at the time it filed its complaint for foreclosure...

Here, there is no evidence in the record indicating that Deutsche Bank was the assignee of the note when it filed its complaint on June 15, 2009. Nor is there even an allegation to that effect. There is an allegation that the mortgage was assigned to Deutsche Bank before it filed its complaint, but since the note is a negotiable instrument, the transfer of the mortgage does not also transfer the note...

*Deutsche Bank National Trust Company v. Richardson,*

2012 OK 15, __P.3d__

Trust: MASTR 2007-02

**16**

Summary Judgment for bank reversed and remanded.

"In the present case, Appellee has presented evidence in support of the motion for summary judgment of an indorsed-in-blank note, and an "Assignment of Mortgage" both arguably obtained **after** the filing of the petition. Appellee must prove it is the holder of the note or the nonholder in possession who has the rights of a holder **prior** to the filing of the foreclosure proceeding. In the present matter the timeliness of the transfer is a disputed fact issue. Since Deutsche Bank did not file the blank indorsement until it filed its motion for summary judgment it is impossible to determine from the record when Deutsche Bank acquired its interest in the underlying note."

*Deutsche Bank National Trust Co. v. Ryan,*
Index 33315/07 (January 29, 2008)
(N.Y. Sup. Ct. Kings Co. 2008)
Trust: Long Beach Mort. Loan Trust 2005-WL1
An order of reference was denied by Judge Kurtz where the bank plead a mortgage assignment executed. September 31, 2007, after the suit was commenced August 31, 2007, but with an attempted backdate to July 30, 2007.

*Deutsche Bank National Trust Co. v. Ryan,*
Case No. 2011-12070, Hillsborough Co. Fla. 2012
Trust: Novastar Mortgage Funding Trust, 2006-5
"Second. Plaintiff lacked standing at the inception of this case. Though Plaintiff alleged it had standing, the Note attached to its Complaint lacked an endorsement, and Plaintiff introduced no sworn evidence to overcome Defendant's affidavit that it lacked standing when it filed suit...
In light of the foregoing, this case is dismissed without prejudice and without leave to amend."

*Deutsche Bank National Trust Co. v. Sampson III,*
Index 26320/07 (January 16, 2008)
(N.Y. Sup. Ct. Kings Co. 2009)
Trust: HSBC Bank USA, Inc., Series HASCO 2006-HE1

17

"The purported assignment is dated August 10, 2007 and states in pertinent part "this assignment is effective as of the 22nd day of June, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. Plaintiff's attempt to foreclose upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact…"(cites omitted)

### *Deutsche Bank National Trust Company v. Seidlin,*

Index:105162/2009 NY County, 2011NY Slip Op

31551(U)

Trust: American Home Mortgage Assets Trust 2006-5

Mortgage Amount: $580,000

Bank's motion granted for leave to voluntarily discontinue the action "due to the assignment of mortgage being incorrectly and/or incompletely acknowledged" after two years of litigation.

### *Deutsche Bank National Trust Co. v. Steele,*

2008 U.S. Dist. LEXIS 4937 (S.D. Ohio January 8, 2008)

"I cannot tell from the exhibits plaintiff has submitted in support of its motion whether Deutsche Bank owned the note and mortgage when the complaint was filed. Plaintiff alleges ownership in the complaint, but defendants' answer does not admit the truth of that allegation…The Court cannot grant summary judgment unless Deutsche Bank offers evidence from which a finder could conclude by a preponderance that it owned the note and mortgage when the complaint was filed. Further, if plaintiff has evidence of ownership, it must explain how that ownership is consistent with the uncontroverted evidence that when the complaint was filed, MERS was the mortgage holder acting on behalf of Mortgageit, Inc."

### *Deutsche Bank National Trust Company v. Vasquez,*

Index: 4924/11, 2012 NY Slip Op 31395(U)

Trust: Morgan Stanley ABS Cap. I, Inc. Trust, 2007-HE7

Mortgage Amount: $435,100

"A foreclosure plaintiff has the requisite standing to commence a mortgage foreclosure action if "it is both the holder or assignee of the subject mortgage and the of the underlying note at the time the action is

18

commenced"... In this action plaintiff does not allege that it is an assignee of the Note, but instead, as previously referenced, produced a copy of the original Note between defendants and New Century. They argue that delivery of the unindorsed Note was sufficient to confer standing. On the prior motion the court overlooked the necessity of proper indorsement required to transfer ownership and render the transferee a holder...

Also influencing this court's determination on reargument are the repeated issues regarding standing which revolve around proper assignments, particularly of mortgage notes which have ensued following creation of the MERS system and the birth of mortgage backed securities."


### *Deutsche Bank National Trust Company v. Williams,*

Case No. 11-00632 (D. Hawaii 2011)

Trust: Morgan Stanley ABS Capital I, Inc. Trust 2007- NC1

"This evidence presents two problems for Plaintiff. First, if Plaintiff did indeed obtain the Mortgage and Note through a 2007 PSA, then the 2007 PSA is yet another reason why the January 13, 2009 assignment is a nullity and the Complaint's assertion that Plaintiff obtained the Mortgage and Note from Home 123 is untrue. Second, the evidence presented does not actually establish that Plaintiff received the Mortgage and Note through the PSA — there is no evidence on the record establishing what mortgages were included in the PSA. Thus, although Plaintiff might have obtained the Mortgage and Note through this PSA, there is no evidence showing or even suggesting that this is indeed the case. As a result, there is no evidence — at least on the record presented before the court – creating a genuine issue of material fact that Plaintiff was assigned the Mortgage and Note on which it now seeks to foreclose."


### *Deutsche Bank National Trust Company v. Wilson,*

Case A-1384-09T1, N.J. App. Div. 2011

Trust: WaMu 2007-HE1 Trust

Summary judgment of foreclosure was reversed and remanded "to resolve the issue of the bona fides of the assignment." The issue regarding the assignment was discussed in Footnote 1:

"The assignment was executed by an individual identified as Laura Hescott who signed the assignment as an assistant vice-president of Washington Mutual Bank. Ms. Hescott has been identified as an employee of Lender Processing Services. Inc. ("LPS"), a servicer of default mortgages. The bona fides of the practices of

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 333 of 491

this service provider have been the subject of increased judicial scrutiny. See, e.g., In re Taylor, 407 B.R. 618, 623 (Bankr. E.D. Pa. 2009)."

### *Deutsche Bank Trust Company Americas v. McCoy,*

20 Misc 3d 1202 (A) 2010 NY Slip Op 51664(U)

Trust not disclosed.

"Although the February 28, 2008 assignment states it is "effective January 19, 2008," such attempt at retroactivity is ineffectual. If an assignment is in writing, the execution date is generally controlling and a written assignment claiming an earlier effective date is deficient, unless it is accompanied by proof that the physical delivery of the note and mortgage was, in fact, previously effectuated…A retroactive assignment cannot be used to confer standing upon the assignee in a foreclosure action commenced prior to the execution of the assignment… (Plaintiff's failure to submit proper proof, including an affidavit from one with personal knowledge, that the plaintiff was the holder of the note and mortgage *at the time the action was commenced,* requires denial of the plaintiff's application for an order of reference. (cites omitted)

### *Deutsche Bank Trust Company Americas v. Peabody,*

866 N.Y.S. 2d 9i (N.Y. Sup. Ct. 2008)

Trust not disclosed.

Mortgage Amount: $320,000

Foreclosure dismissed.

"Again, here, there is no evidence that it took physical delivery of the note and mortgage before commencing this action, and again, the written assignment was signed after the defendant was served. The assignment's language purporting to give it retroactive effect, absent a prior or contemporary delivery of the note and mortgage, is insufficient to grant it standing."

### *Feltus v. U.S. Bank, N.A.*

80 So.3d 375 (Fla. 2nd DCA 2011)

Trust: MASTR Adj. Rate Mortgage Trust 2007-3

Summary judgment for bank reversed.

20

"The properly filed pleadings before the court when it heard U.S. Bank's motion for summary judgment were a complaint seeking to reestablish a lost note to which was attached a copy of a note made payable to Countrywide, N.A., Feltus's answer and affirmative defenses alleging that the note attached to the complaint contradicts the allegation of the complaint that U.S. Bank is the owner of the note, a motion for summary judgment alleging a lost note of which U.S. Bank is the owner, and an affidavit of indebtedness alleging that U.S. Bank was the owner and holder of the note described in the complaint. The endorsed note that U.S. Bank claimed was now in its possession was not properly before the court at the summary judgment hearing because U.S. Bank never properly amended its complaint.2 In addition, the complaint failed to allege that U.S. Bank "was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred." § 673.3091(a). The affidavit of indebtedness provided no assistance in this regard because the affiant did not assert any personal knowledge of how U.S. Bank would have come to own or hold the note." (cites omitted)

### *Federal Home Loan Mortgage Corporation v. Schwartwald,*

Slip Opinion No. 2012-Ohio-5017

On October 31, 2012, the Ohio Supreme Court addressed the issue of standing in foreclosures. Although this case did not involve a mortgage-backed trust, it will have a significant impact on foreclosures by trusts because the Court ruled that the Federal Home Loan Mortgage Corporation lacked standing to sue when it obtained the mortgage by an assignment from the real party in interest after the foreclosure suit was commenced. This was yet another case where the note was "not available" at commencement. Later in the case, Federal Home Loan filed a copy of the note, with undated endorsements. The motion for summary judgment was supported by an Affidavit signed by well-known Wells Fargo robo-signer John Herman Kennerty. The appellate court had ruled that Federal Home Loan cured the lack of standing defect by the assignment of the mortgage and transfer of the note prior to entry of judgment. The Ohio Supreme Court disagreed – citing decisions taken by Courts in Connecticut, Florida, Maine, Missouri, Oklahoma and Vermont.

### *Gascue v. HSBC USA, N.A.,*

__So.3d__ (Fla. 4th DCA 2012)

Trust: Deutsche Alt-B Securities Mortgage Loan Trust, Series 2006-AB4

Reversal and remand of denial of motion to vacate final judgment of foreclosure.

21

"There is no evidence on the record indicating that Bank was the holder of the mortgage at the time the complaint was filed. Just as in Rigby, Bank attached a mortgage to its complaint in which it was not listed as the lender, but rather "Pinnacle Direct Funding" was. The only evidence that Bank is the owner and holder of the note is a sworn affidavit. However, this affidavit was filed three years after the complaint and does not establish when Bank became the holder of either the note or the mortgage, much less establish that Bank was the holder of said instruments at the time the complaint was filed. See id. (reversing the trial court in part because the supporting affidavit in that case did not establish the date on which the bank acquired possession of the note)."

### Gee v. U.S. Bank, N.A.,

72 So.3d 211 (Fla. 5th DCA 2011)

Trust: Structured Asset Investment Loan Trust 2005-10

"Here, the record does not contain the original Mortgage. To prove its ownership, U.S. Bank filed a copy of the Mortgage as well as two assignments. The first assignment transferred the Mortgage from Advent Mortgage, the original mortgagee, to Option One. The second assignment purported to transfer the mortgage from American Home, as successor in interest of Option One, to U.S. Bank. However, and significant to our consideration, U.S. Bank provided nothing to demonstrate how American Home came to be the successor in interest to Option One.

Incredibly, U.S. Bank argues that "[i]t would be inequitable for [Ms. Gee] to avoid foreclosure based on the absence of an endorsement to [it]." But that argument flies in the face of well-established precedent requiring the party seeking foreclosure to present evidence that it owns and holds the note and mortgage in question in order to proceed with a foreclosure action." (cites omitted)

(Summary Judgment reversed.)

### Gonzalez v. Deutsche Bank National Trust Company,

Case No. 2D10-5561 (Fla. 2d DCA 2012)

Trust: American Home Mortgage Investment Trust 2006-1

"The problem is that the additional stamp and handwritten notation transferring the note from American Home Mortgage to Deutsche Bank is not dated. Accordingly, Deutsche Bank failed to establish its standing by showing that it possessed the note when it filed the lawsuit. See Country Place Cmty. Ass'n v. J.P. Morgan Mortg. Acquisition Corp., 51 So. 3d 1176, 1179 (Fla. 2d DCA 2010) ("Because J.P. Morgan did not own or

22

possess the note and mortgage when it filed its lawsuit, it lacked standing to maintain the foreclosure action."). As a result, Deutsche Bank has not refuted Gonzalez's affirmative defense, and a genuine issue of material fact exists that should have precluded the entry of summary judgment."

(Summary judgment for Deutsche Bank reversed.)

*HSBC Bank USA, N.A. v. Antrobus,*

*20 Misc 3d 1127(A), 2008 NY Slip Op 51639(U)*

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Renaissance Home Equity Loan Trust 2006-4

Mortgage Amount: $465,000

"Therefore, the instant application for an order of reference is denied without prejudice, with leave to renew. The Court will grant an order of reference to plaintiff HSBC upon presentation to this court of: an affidavit by either an officer of HSBC or someone with a valid power of attorney from HSBC, possessing personal knowledge of the facts; an affidavit from Scott Anderson clarifying his employment history for the past three years and what corporation he serves as an officer; and, an affidavit by an officer of HSBC explaining why HSBC purchased a nonperforming loan from Delta Funding Corporation, and why HSBC, OCWEN, MERS, Deutsche Bank and Goldman Sachs all share office space in Suite 100."

*HSBC Bank USA v. Beirne,*

212-Ohio-1386, Ohio App. Ct. 9th District

Summary judgment for bank reversed.

"In the affidavit that was attached to the supplement to the motion for summary judgment, Mr. Spradling averred that HSBC had been assigned the loan on June 5, 2009, and that "[a] true and correct copy of the Assignment was attached to the Complaint filed by HSBC." However, a review of the complaint and the exhibits attached thereto reveals that there was no evidence that the note had been assigned to HSBC. Moreover, an assignment dated June 5, 2009, could not have been attached to the complaint which was filed on May 11, 2009."

*HSBC Bank USA, N.A. v. Charlevagne,*

20 Misc 3d 1128(A), 2008 NY Slip Op 51652(U)

23

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Renaissance Home Equity Loan Trust 2005-3

Mortgage Amount: $480,000

"Therefore, the instant application for an order of reference and related relief is denied without prejudice. The Court will grant plaintiff HSBC an order of reference and related relief when it submits an affidavit by either an officer of HSBC, or someone with a valid power of attorney from HSBC, possessing personal knowledge of the facts."

### *HSBC Bank USA v. Cherry,*

18 Misc3d 1102 (A), 2007 NY Slip Op 52378(U)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Renaissance Home Equity Loan Trust 2005-4

"Further, the Court, upon renewal of the application for an order of reference requires a satisfactory explanation to questions with respect to: the assignment of the instant nonperforming mortgage loan from the original lender, Delta Funding Corporation to HSBC Bank; the employment history of one Scott Anderson, who assigned this mortgage to HSBC and then swears to be HSBC's servicing agent; and the relationship between HSBC, Ocwen Federal Bank, FSB (OCWEN), Deutsche Bank and Goldman Sachs, who all seem to share office space at Suite 100 of 1661 Worthington Road, West Palm Beach, Florida 33409 (Suite 100)."

### *HSBC Bank USA v. Cipriani,*

Index: 12365-2007

(N.Y. Sup. Ct. Suffolk Co. 2008)

Trust: SG Mort. Sec. Trust 2005-OPT1

Order for reference denied without prejudice. To resubmit, plaintiff must provide "proof on standing to commence this action as it appears that the plaintiff did not own the note and mortgage when the action was commenced."

### *HSBC Mortgage Services, Inc. v. Jack,*

Index No: 14750/2007

(N.Y. Sup. Ct. Suffolk County 2008)

24

Denied without prejudice due to bank's failure to provide proof that it had standing to bring the action.

### HSBC Bank USA v. Palladino,

2011 IL App (2d) No. 08-CH-4548

Trust: Fremont Home Loan Trust 2006-D

Summary judgment reversed and remanded.

"In the present case, there are genuine issues of material fact with respect to whether there was an assignment of the mortgage and note from Fremont to HSBC Bank. Although HSBC Bank represents that it produced the assignment, the document on which it relies, by its very terms, was, at worst, not an assignment and, at best, inherently inconsistent as to whether it was an assignment. Indeed, the document states that MERS as nominee for Fremont "did" assign (past tense) the mortgage and note to HSBC Bank prior to November 13, 2008, yet also states that the assignment "is" made (present tense) without recourse and without representation or warranty.

In addition to the purported assignment's inconsistent terms, the document upon which HSBC Bank relies is vague with respect to the date of the purported assignment. The document has a stamp which appears to reflect that it was recorded on December 17, 2008, but states that the assignment was made "prior to" November 13, 2008. The document itself is undated, as is the notary's certificate. The date of the assignment is material because standing to sue must exist at the time the action is commenced." (cites omitted)

### HSBC Bank USA v. Perez,

Case No. EQ4970 (Washington County, Iowa 2009)

Trust: Fieldstone Mort. Investment Trust 2005-2

"The Perezs argue that the Pooling and Servicing Agreement for Fieldstone Mortgage Investment Trust Series 2005-2 governs when and how the Trustee in this case, HSBC Bank, the Plaintiff, may acquire notes and mortgages. Additionally, that agreement governs when and how a mortgage owned by the trust may be foreclosed upon. The Perezs further state that the agreement prohibits the acquisition of mortgages that are in default...The Plaintiff has also submitted documentation that shows the transfer of interest in the mortgage from Fieldstone to HSBC occurred on February 9, 2009. Clearly, based upon the Plaintiff's own documentation, the default occurred prior to the transfer.

According to the Transfer and Servicing Agreement submitted by the Perezs, and allegedly applicable to the Plaintiff, the trust servicer is only allowed to "substitute a defaulted Mortgage Loan with a Qualifying

25

Substitute Mortgage Loan...This document seems to state that the mortgage at issue could only be transferred if it were current on the date it was transferred. Accordingly, it appears that this mortgage was inappropriately transferred to the Plaintiff as it was in default at the time of transfer. As such, a question is raised regarding whether the present Plaintiff has standing to bring this foreclosure action."

### *HSBC Bank USA, N.A. v. Sene,*

34 Misc 3d 1232 (A), 2012 NY Slip Op 50352(U)

(N.Y. Sup. Ct. Kings Co. 2012)

Trust: Ace Securities Corp. Home Equity Loan Trust

2007-HE4

"During the bad faith hearing, two separate notes with attendant assignments were put into evidence by the plaintiff...

This Court emphatically now joins the judicial chorus who have been wary of the paperwork supplied by plaintiffs and their representatives. There is ample reason for Chief Judge's requirement for an attorney affirmation in residential foreclosure cases. As stated by Chief Judge Jonathan Lippman, "we cannot allow the courts in New York State to stand idly and be party to what we now know is a deeply flawed process, especially when that process involves basic human needs – such as a family home – during this period of economic crisis...

It is clear in this case, without further hearings, that a fraud has been committed upon this Court. Thus, the only remedy that can be utilized by this Court is to stay these proceedings and any mortgage foreclosure until this matter is cleared up to the satisfaction of this Court."

### *James v. U.S. Bank, N.A.,*

D. Maine, No. 2:09-cv-84-JHR, January 31, 2011

Trust: BAFC 2006-1

Sanctions were imposed because of an Affidavit submitted by GMAC employee and exposed robo-signer Jeffrey Stephan:

"In the case at hand, however, GMAC, the party that submitted the affidavit and the affiant's employer, was on notice that the conduct at issue here was unacceptable to the courts, which rely on sworn affidavits as admissible evidence in connection with motions for summary judgment. In 2006, an identical jurat signed under identical circumstances resulted in the imposition of sanctions against GMAC in Florida. Affidavit of

26

Thomas A Cox (Docket No. 153) ¶ 4 & Exhs. B-D. GMAC's assertion that these sanctions applied only "within the State of Florida," Plaintiff and GMAC Mortgage LLC's Memorandum in Opposition to Defendant's Motion for Relief Pursuant to Fed. R. Civ. P. 56(g) (Docket No. 177) at 7, is specious. It would be clear to any lawyer representing GMAC in any court action, including those involved in the Florida action, that a jurat should not be signed under the circumstances involved in that case or here and that such a jurat will never be acceptable to any court. Stephan's actions in this case strike at the heart of any court's procedures, are egregious under the circumstances, and must be deemed worthy of sanctions.

### *LaSalle Bank, N.A. v. Ahearn,*

59 A.D.3d 911, 875 N.Y.S. 2d 595 (N.Y. App. Div. 2009)

Trust: Bear Stearns Asset-Backed Securities I, LLC,

Series 2004-FR3

Mortgage Amount: $180,000

"Here, the written assignment submitted by plaintiff was indisputably written subsequent to the commencement of this action and the record contains no other proof demonstrating that there was a physical delivery of the mortgage prior to bringing the foreclosure action *(see id.)*. In fact, the language in the amended complaint indicating that the assignment to plaintiff had not yet occurred would clearly contradict any assertion to the contrary. Accordingly, Supreme Court correctly found that plaintiff did not have standing and the amended complaint must be dismissed, without prejudice."

### *LaSalle Bank v. Charleus*

Index No. 22733/2007 (January 3, 2008)

(N.Y. Sup. Ct. Kings Co. 2008)

An order of reference was denied by Judge Kurtz where the bank plead a mortgage assignment executed, July 2, 2007, after the suit was commenced June 22, 2007, but with an attempted backdate to June 21, 2007.

### *LaSalle Bank v. Lamy,*

12 Misc.3d 1191(A), 824 N.Y.S.2d 769

"The court thus finds that this purported, undated, indorsement by "allonge" to the note by the original lender in favor of the plaintiff and the December 29, 2005 written assignment of the note and mortgage by MERS to

27

the plaintiff failed to pass ownership of the note and mortgage to the plaintiff prior or subsequent to the commencement of this action. Consequently, the original lender remains the owner of both the note and mortgage since no proper assignment of the either the note or the mortgage was ever made by the original lender/owner to the plaintiff or to the plaintiff's purported assignee. Under these circumstances, the plaintiff has no cognizable claims for the relief demanded in its complaint."

### LaSalle Bank v. Smalls,

Index No. 28128/2007 (January 3, 2008)

(N.Y. Sup. Ct. Kings Co. 2008)

An order of reference was denied by Judge Kurtz where the bank plead a mortgage assignment executed, September 31, 2007, after the suit was commenced August 31, 2007, but with an attempted backdate to July 30, 2007.

### McLean v. JP Morgan Chase Bank, N.A.,

79 So.3d 170 (Fla. 4th DCA 2012)

Trust: Structured Asset Mortgage Investments II, Inc.,

Series 2006-ARS

"Nonetheless, the record evidence is insufficient to demonstrate that Chase had standing to foreclose at the time the lawsuit was filed. The mortgage was assigned to Chase three days after Chase filed the instant foreclosure complaint. More importantly, the original note contained an undated special endorsement in Chase's favor, and the affidavit filed in support of summary judgment did not state when the endorsement was made to Chase. Furthermore, the affidavit, which was dated after the lawsuit was filed, did not specifically state when Chase became the owner of the note and mortgage, nor did the affidavit indicate that Chase was the owner of the note and mortgage before suit was filed. Therefore, Chase failed to submit any record evidence proving that it had the right to enforce the note on the date the complaint was filed." (footnotes omitted)

### Naranjo v. SBMC Mortgage,

No. 3:11-cv-02229-L-WVG, Dkt. #20

(S.D. Cal. July 24, 2012)

Trust: WMALT 2006-AR4

28

Mortgage Amount: $825,000

Defendant Trustee's Motion to Dismiss Denied in Part.

"The vital allegation in this case is the assignment of the loan into

the WAMU Trust was not completed by May 30, 2006 as required by the Trust Agreement. [*10] This allegation gives rise to a plausible inference that the subsequent assignment, substitution, and notice of default and election to sell may also be improper. Defendants wholly fail to address that issue. (See Defs.' Mot. 3:16-6:2; Defs.' Reply 2:13-4:4.) This reason alone is sufficient to deny Defendants' motion with respect to this issue."


## *Pino v. Bank of New York,*

76 So. 3d 927 (Fla. 4th DCA 2011)

Trust: CWALT 2006-OC8

Mortgage Amount: $162,400

Florida Supreme Court decision pending. The appeal court certified the question to the Florida Supreme Court because "many, many mortgage foreclosures appear tainted with suspect documents."

"As conveyed by the Fourth District in the decision below, the plaintiffs and now respondents in this Court, the Bank of New York Mellon, et al. (BNY Mellon), commenced an action in the trial court to foreclose a mortgage against the defendant and now petitioner in this Court, Roman Pino. *See Pino v. Bank of New York Mellon,* 57 So. 3d 950, 951 (Fla. 4th DCA 2011). Thereafter, Pino moved for sanctions, alleging that BNY Mellon had filed a fraudulent assignment of mortgage. *Id.* In response, BNY Mellon filed a notice of voluntary dismissal of the foreclosure action. *Id.* at 952. Five months later, BNY Mellon refiled an identical action to foreclose the same mortgage. *Id.* In the original, dismissed action, Pino filed a motion seeking to vacate the voluntary dismissal pursuant to Florida Rule of Civil Procedure 1.540(b)on the grounds of fraud on the court and requesting dismissal of BNY Mellon's newly filed action as a consequent sanction. *Pino,* 57 So. 3d at 952. The trial court denied Pino's motion, essentially holding that because the prior action had been voluntarily dismissed, the court lacked jurisdiction, and thus the authority, to consider any relief. *Id.*" (footnotes omitted)


## *Richards v. HSBC Bank,*

__So.3d__, 2012 WL 2359656 (Fla. 5th DCA 2012)

Trust: PHH 2007-2

Summary judgment for bank reversed on appeal.

"While the assignment reflected that the mortgage had been assigned from Century 21 to HSBC, the allonge to the note reflected that Bishops Gate Residential Mortgage Trust was to be the note's payee...

Thus the allonge was inconsistent with the assignment and contradicted the allegation in the complaint that HSBC was the holder of the note...

Furthermore, the affidavits filed by HSBC did not explain the relationship between HSBC and Bishops Gate Residential Mortgage Trust, nor otherwise aver facts conclusively showing that HSBC was the holder of the note.

### Rigby v. Wells Fargo, N.A.,

__So.3d__, 2012 WL1108428 (Fla. 4th DCA 2012)

Trust: Option One Mortgage Loan Trust 2007-FXD2

Mortgage Amount: $165,600

"The Bank has not shown that it was holder of the note at the time the complaint was filed. The note containing a special endorsement in favor of the bank was not dated. The assignment of mortgage, dated May 22, 2008, indicates that Bank did not acquire the mortgage until the day after the complaint was filed. Finally, neither the affidavit, nor the technical admissions made by the Rigbys, establishes the date on which Bank acquired possession of the note and there is no evidence in the record establishing that an equitable transfer of the mortgage occurred prior to the date the complaint was filed."

(Summary judgment reversed and remanded.)

### Servedio v. U.S. Bank, N.A.,

46 So. 3d 1105 (Fla. 4th DCA 2010)

Trust: Terwin Mortgage Trust 2007-AHL1

Mortgage Amount: $252,000

"The issue presented in this appeal is whether the trial court erred in granting a final summary judgment of foreclosure where appellee failed to file with the court a copy of the original note and mortgage prior to the entry of judgment. Because the absence of the original note created a genuine issue of material fact regarding appellee's standing to foreclose on the mortgage, summary judgment was not proper. We reverse."

30

*U.S. Bank v. Alexander,*

2012 OK 43

Trust: Credit Suisse First Boston HEAT 2005-4

Mortgage Amount: $63,920

"As previously identified, the dispositive issue is whether or not Appellee had standing at the time Appellee filed their first amended petition. We hold that the issue of standing as well as other material issues of fact remain that must be determined by the trial court. Therefore summary judgment was inappropriate."

*U.S. Bank, N.A. v. Auguste,*

Index: 18695-2007 (November 27, 2007)

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: CSMC Mort. Backed PT Certs., Series 2007-1

"In support of plaintiffs application, it submits a purported assignment of the mortgage from Mortgage Electronic Registration Systems, Inc., acting as Nominee for First United, to plaintiff. The purported assignment is dated July 9, 2007, and states in pertinent part "this assignment is effective on or before November 22, 2006." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

*U.S. Bank, N.A. v. Baber,*

280 P.2d 956 (2012 OK 55)

Trust: Security National Mortgage Loan Trust 2006-1

"Being a person entitled to enforce the note is an essential requirement to initiate a foreclosure lawsuit. In the present case, there is a question of fact as to when Appellee became a holder, and thus, a person entitled to enforce the note. Therefore, summary judgment is not appropriate. If Deutsche Bank became a person entitled to enforce the note as either a holder or nonholder in possession who has the rights of a holder after the foreclosure action was filed, then the case may be dismissed without prejudice and the action may be re-filed in the name of the proper party. We reverse the granting of summary judgment by the trial court and remand back for further determinations as to when Appellee acquired its interest in the note."

*U.S. Bank, N.A. v. Collymore,*

68 AD3d 752 (2009), 890 NYS2d 578

31

"Contrary to the Bank's contentions, it failed to demonstrate its prima facie entitlement to judgment as a matter of law because it did not submit sufficient evidence to demonstrate its standing as the lawful holder or assignee of the subject note on the date it commenced this action. The Bank's evidentiary submissions were insufficient to establish that MERS effectively assigned the subject note to it prior to the commencement of this action..., and the mere assignment of the mortgage without an effective assignment of the underlying note is a nullity...Furthermore, the Bank failed to establish that the note was physically delivered to it prior to the commencement of the action. The affidavit of a vice-president of the Bank submitted in support of summary judgment did not indicate when the note was physically delivered to the Bank, and the version of the note attached to the vice-president's affidavit contained an undated indorsement in blank by the original lender. Furthermore, the Bank's reply submissions included a different version of the note and an affidavit from a director of the Residential Funding Corporation which contradicted the affidavit of the Bank's vice-president in tracing the history of transfers of the mortgage and note to the Bank. In view of the Bank's incomplete and conflicting evidentiary submissions, an issue of fact remains as to whether it had standing to commence this action." (cites omitted)


*U.S. Bank v. Dellarmo,*

94 A.D.3d 746 (2012), 942 N.Y.S.2d 122

Trust: First Franklin Mortgage Loan Trust, 2006-FF2

"However, inasmuch as the complaint does not allege that the note was physically delivered to the plaintiff, and nothing in the plaintiff's submission in opposition to Dellarmo's motion could support a finding that such physical delivery occurred, the corrective assignment cannot be given retroactive effect... Moreover, both the unrecorded April 11, 2006, assignment and the recorded corrective assignment indicate only that the mortgage was assigned to the plaintiff. Since an assignment of a mortgage without the underlying debt is a nullity... the plaintiff has failed to demonstrate that it had standing to commence this action...

Accordingly, the Supreme Court should have granted Dellarmo's motion pursuant to CPLR 3211 (a) to dismiss the complaint insofar as asserted against him for lack of standing." (cites omitted)


*U.S. Bank, N.A. v. Duvall,*

Cuyahoga App. No. 94714, 2010-Ohio-6478

Trust: CMLTI 2007-WFHE2

Mortgage Amount: $92,000

32

"Accordingly, we conclude that plaintiff had no standing to file a foreclosure action against defendants on October 15, 2007, because, at that time, Wells Fargo owned the mortgage. Plaintiff failed in its burden of demonstrating that it was the real party in interest at the time the complaint was filed. Plaintiff's sole assignment of error is overruled."

### *U.S. Bank, N.A. v. Githira,*

17 LCR 697 (2009), MISC 08-386385 (Essex Co. Mass. 2009)

Trust: Home Equity Asset Trust, Series 2005-9

Plaintiff U.S. Bank was seeking to remove a cloud on its title to a parcel of land stemming from plaintiff's exercise of the power of sale contained in the mortgage *before* it received authority to do so under the provisions of the Servicemembers' Civil Relief Act. The complaint did not mention any other title defects. Citing Justice Long's ruling in Ibanez, Justice Charles W. Trombly, Jr., dismissed plaintiff's petition to remove the cloud on the title, holding that plaintiff was not even the holder of the mortgage, by record or in fact, on the day of the foreclosure sale. Specifically, the Court found that the foreclosure auction took place and was recorded prior to the execution and recording of an assignment of mortgage that made plaintiff the holder of the mortgage upon which it had foreclosed.

### *U.S. Bank, N.A. v. Grant,*

Index: 11133-2007

(N.Y. Sup. Ct. Kings Co. 2007)

Trust: Asset Backed Securities Corp. Home Equity Loan

Trust, Series OOMC 2006-HE3

"In support of plaintiffs application, it submits a purported assignment of the mortgage from Option One to plaintiff. The purported assignment is dated July 9, 2007, and states in pertinent part "Effective Date: March 28, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced."

### *U.S. Bank, N.A. v. Ibanez,*

941 N.E. 2d 40, (Mass. 2011)

Trust: Structured Asset Securities Corp. Mortgage PT

33

Certs., Series 2006-Z

The court in *Ibanez* rejected application of the "mortgage follows the note" rule, holding that mere possession of properly indorsed negotiable instruments did not give the foreclosing parties authority to conduct a valid non-judicial sale. In other words, one's status as a party entitled to enforce a note did not satisfy the requirement under state law to be a mortgagee. The court acknowledged that a transferee of a note might have an equitable right to obtain a court order that that the mortgage be transferred to it. However, the potential to assert such a claim did not make the noteholder a "mortgagee." The Massachusetts statute required that the foreclosing party have an actual assignment of the mortgage when proceeding to sale., and further held that Assignments in Blank assign nothing and that retroactive assignments are not effective even if it was an industry-wide practice.

*U.S. Bank, N.A. v. Madero,*

80 AD3d 751, 915 N.Y.S. 2d 612

Trust: not identified

Mortgage Amount: $570,000

"Here, the plaintiff failed to demonstrate its prima facie entitlement to judgment as a matter of law because it did not establish that it had standing, as the lawful holder or assignee of the subject note on the date it commenced this action, to commence the action." (cites omitted)

*U.S. Bank, N.A. v. Merino,*

16 Misc.3d 209

(N.Y. Sup. Ct. Suffolk Co. 2007)

"First, the assignment from Argent to Ameriquest was executed by Jose Burgos as agent for Argent. On the same date, however, the purported assignment from Ameriquest to the plaintiff was also executed by Mr. Burgos, this time as agent for Ameriquest. In effect, the mortgage was purportedly assigned by Mr. Burgos to Mr. Burgos, and then, in turn, by Mr. Burgos to the plaintiff…The moving papers contain no proof that Mr. Burgos had either entity's authority to act in a dual agency capacity. Therefore, the court is unable to conclude that the assignments were validly executed, or that the plaintiff had an ownership interest in the subject mortgage at the time of the filing of this action. Since a party has no foundation in law or fact to foreclose upon a mortgage without establishing its legal or equitable interest, the plaintiff's motion must be denied."

34

*U.S. Bank, N.A. v. Middlekauff,*

Case No. 10 19844, Hillsborough Co. Fla. 2012

Trust: CSFB Mortgage-Backed Trust, Series 2005-9

"First, Plaintiff lacked standing at the inception of this case. Although the Note attached to the Amended Complaint contains an allonge, the undisputed summary judgment evidence before the Court establishes that this allonge was created post-filing. As Plaintiff lacked standing when it filed this lawsuit, dismissal is required." (cite omitted)

*U.S. Bank v. Moore,*

*2012 OK 32*

GSAA Home Equity Trust 2006-6

Mortgage Amount: $282,000

"It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the Note, and to have the proper supporting documentation in hand when filing suit, showing the history of the Note, so that the defendant is duly apprised of the rights of the plaintiff. This is accomplished by showing the party is a holder of the instrument or a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument..."

*U.S. Bank, N.A. v. Roundtree,*

Index: 009148/2007

(N.Y. Sup. Ct. Suffolk Co. 2007)

Trust: MASTR Alternative Loan Trust 2006-HE1

"Since MERS, Inc. had no ownership interest in said note, it could not assign it to the plaintiff and any assignment purportedly transferring the ownership interest from Fremont Investment and Loan to the plaintiff by a MERS, Inc. assignment of said note is a nullity." (cites omitted)

... In view of the foregoing, the instant motion (#001) is denied as it is apparent from the documentary submissions of the plaintiff that it was not the owner of the note at the time of the commencement of this action."

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 349 of 491

*U.S. Bank, N.A. v. Villaruel,*

Index: 25277/2008

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: SG Mort. Sec. AB Certs., Series 2006-FRE2

"The purported assignment is dated August 3, 2007 and states in pertinent part "[t]his assignment is effective as of the 10th day of June, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. Plaintiff's attempt to foreclose upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact..."(cites omitted)


*Verizzo v. Bank of New York,*

28 So.3d 976 (Fla. 2d DCA 2010)

Trust: Novastar Mortgage Funding Trust, Series 2006-3

"In addition to the procedural error of the late service and filing of the summary judgment evidence, those documents reflect that at least one genuine issue of material fact exists. The promissory note shows that Novastar endorsed the note to "JPMorgan Chase Bank, as Trustee." Nothing in the record reflects assignment or endorsement of the note by JPMorgan Chase Bank to the Bank of New York or MERS. Thus, there is a genuine issue of material fact as to whether the Bank of New York owns and holds the note and has standing to foreclose the mortgage."

(Summary judgment reversed and remanded.)


*Wells Fargo Bank, N.A. v. Ford,*

418 N.J. Super. 592 (App. Div. 2011)

Mortgage Amount: $403,750

"For these reasons, the summary judgment granted to Wells Fargo must be reversed and the case remanded to the trial court because Wells Fargo did not establish its standing to pursue this foreclosure action by competent evidence. On the remand, defendant may conduct appropriate discovery, including taking the deposition of Baxley and the person who purported to assign the mortgage and note to Wells Fargo on behalf of Argent."


*Wells Fargo Bank, N.A. v. Hampton,*

36

Index: 25957/2007 (January 3, 2008)

(N.Y. Sup. Ct. Kings Co. 2008)

Trust: Option One Mort. Loan Trust 2007-1

"The purported assignment is dated August 1, 2007 and states in pertinent part "[e]ffective as of June 10, 2007." However, such an attempt to retroactively assign the mortgage is insufficient to establish plaintiff's ownership interest at the time the action was commenced. Plaintiff's attempt to foreclose upon a mortgage in which it had no "legal or equitable interest was without foundation in law or fact..." (cites omitted)

### *Wells Fargo Bank, N.A. v. Heath,*

212 OK 54

Trust: Option One Mortgage Loan Trust 2005-4

Standing was not established by the materials attached to Appellee's petition or motion for summary judgment because there was no attached indorsed note nor was there an assignment of the note. Therefore, we find the trial court based its decision on an erroneous conclusion of law. There existed a substantial issue of material fact that needed to be addressed at trial. Even though the Appellants did not respond to the motion for summary judgment, the trial court should have denied the motion sua sponte.

### *Wells Fargo Bank v. Larace,*

941 N.E. 2d 40, (Mass. 2011)

Trust: ABFC 2005-OPT1

See *U.S. Bank v. Ibanez* above. These were consolidated cases.

### *Wells Fargo Bank v. Lupori,*

8 A3d 919 (Pa. Super. Ct. 2010)

Trust: MLMI Trust, Series 2005-FF6

"On appeal, Wells Fargo cites *Mallory* for the proposition that a plaintiff's complaint in foreclosure need not allege the existence of a completed and recorded assignment of the subject mortgage to the plaintiff. We conclude, however, that this Court's opinion in *Mallory* is distinguishable from the instant matter. In *Mallory*, the bank alleged that it was the owner of the subject mortgage and also alleged the existence of a pending assignment of the mortgage to the bank. In contrast, Wells Fargo has failed to do either of those

37

things. Since the complaint contains no mention of the alleged assignment from Corporation to Wells Fargo or any allegation that Wells Fargo was the owner of the Luporis' mortgage, the complaint does not comply with Rule 1147(a)(1). The alleged April 1, 2005 assignment from Corporation to Wells Fargo was *dehors* the record as of the time of the default judgment. Since the record did not support entry of the default judgment, the trial court erred in declining to strike the judgment from the record." (footnote omitted)

*Wells Fargo Bank, N.A. v. Marchione,*

69 AD 3d 204, 887 N.Y.S. 2d 615 (2d Dept 2009)

Trust: Option One Mortgage Loan Trust

"Here, it is clear that the date of the execution of the assignment was after the commencement of the action. If an assignment is in writing, "the execution date is generally controlling and a written assignment claiming an earlier effective date is deficient unless it is accompanied by proof that the physical delivery of the note and mortgage was, in fact, previously effectuated" (*LaSalle Bank Natl. Assn., 59 AD3d at 912*). While recognizing that in some circumstances parties to an agreement may bind themselves retroactively, "the fiction of retroactivity . . . should not be applied to affect adversely the rights of third persons" (*Debraceni v Outlet Co., 784 F 2d 13, 20; see also* 2 Lord, Williston on Contracts § 6:61, at 893 [4th ed]). Thus, a retroactive assignment cannot be used to confer standing upon the assignee in a foreclosure action commenced prior to the execution of the assignment (*see LaSalle Bank Natl. Assn., 59 AD3d 912*). We disagree with the contention of Wells Fargo that public policy favors permitting less than strict compliance with the requirement that, in order to commence a foreclosure action, a plaintiff must have a legal or equitable interest in the subject mortgage.

Wells Fargo also argues that if the action were to be dismissed, the result would be a waste of judicial resources, as it would simply commence another action as soon as the original action was dismissed. Wells Fargo might have reached this conclusion earlier in its calculus to commence the lawsuit prior to the execution of the assignment."

*Wells Fargo Bank, N.A. v. Mastropaolo,*

42 AD3d 239

Trust Amount: $369,000

38

"Here, the plaintiff failed to demonstrate its prima facie entitlement to judgment as a matter of law because it did not establish that it had standing, as the lawful holder or assignee of the subject note on the date it commenced this action, to commence the action..." (cites omitted)

### *Wells Fargo Bank, N.A. v. McNee*

2011 NY Slip Op 33325(U)

Trust: BCAP LLC 2007-AA3

Mortgage Amount: $644,566

Plaintiff's arguments notwithstanding, this Court is not persuaded by Wells Fargo's laborious interpretation of the myriad of transfer documents or the breadth of the language employed therein to confer standing upon it. "[L]anguage cannot overcome the requirement that the foreclosing party be both the holder or assignee of the subject mortgage, and the holder or assignee of the underlying note at the time a foreclosure action is commenced..." In this case, Wells Fargo has adduced no proof in opposition to McNee's cross motion(s) sufficient to demonstrate that it was either.

### *Zervas v. Wells Fargo Bank, N.A.,*

__So.3d__ (Fla. 2d DCA 2012)

Trust: MLMI Trust Series 2005-FM1

Summary judgment for bank reversed.

"We also note that the mortgage and note attached to the complaint show the lender to be Fremont Investment and Loan. On April 1, 2010, approximately six months after the complaint was filed, Wells Fargo filed a lost note affidavit, which alleged that the note was lost by its attorney sometime after the attorney received it on November 2, 2009. In their motion to dismiss, the Zervases alleged, among other grounds, that Wells Fargo did not have standing to bring the foreclosure complaint because it did not have a written assignment of the loan. Then on July 26, 2010, seven days before the hearing on the motion for summary judgment, Wells Fargo filed the note as a supplemental exhibit to its complaint. The note contains an endorsement in blank, but there is no evidence in the record establishing that the endorsement in blank was made to Wells Fargo prior to the filing of the foreclosure complaint. See Feltus v. U.S. Bank Nat'l Ass'n, 80 So.3d 375, 377 n.2 (Fla. 2d DCA 2012) (holding that bank was required "to prove the endorsement in blank was effectuated before the lawsuit was filed")."

39

**ARCHIVES**

- March 2014
- February 2014
- January 2014
- December 2013
- October 2013
- September 2013
- August 2013
- July 2013
- June 2013
- May 2013
- March 2013
- February 2013
- January 2013
- December 2012
- November 2012
- February 2012

© Copyright 2012 The Housing Justice Foundation. All rights reserved.
505 S. Flagler Drive, Suite 1331 West Palm Beach, FL 33401
Initial Design by Bryan Klausmeyer.

- ▓▓▓▓▓

40

5/13/2014          SEC Info - American Home Mortgage Assets Trust 2007-3 - FWP - American Home Mortgage Assets Trust 2007-3 - On 7/25/07

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

# American Home Mortgage Assets Trust 2007-3 · FWP · American Home Mortgage Assets Trust 2007-3 · On 7/25/07

Filed On 7/25/07, 9:51pm ET · Accession Number 882377-7-1958 · SEC File 333-140476-01

| Find | in this entire Filing. ▼ Show Docs searched ▼ and every "hit". ▼ |

Help... *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | For/On/As Docs:Size | Issuer | Agent |
|---|---|---|---|---|---|
| 7/25/07 | American Home Mtge Assets..2007-3 **FWP** | | 1:8.8M American Home Mtge Assets..2007-3 | Thacher Proffitt..LLP/FA |

## Free Writing Prospectus — Rule 163/433
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: FWP | American Home Mortgage Assets LLC | HTML | 4.51M |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 355 of 491

This is an HTML Document rendered as filed. [ *Alternative Formats* ]

LifeLock® Official Site
🔵 lifelock.com
Guard your Family with LifeLock. Get LifeLock Ultimate Protection.

Unassociated Document

# $118,050,000

(APPROXIMATE)

# Group I



### Group I Term Sheet

## American Home Mortgage Assets Trust 2007-3
## Mortgage-Backed Pass-Through Certificates, Series 2007-3

### American Home Mortgage Assets LLC

(Depositor)

### American Home Mortgage Servicing, Inc.

(Servicer)

### Wells Fargo Bank, NA

(Master Servicer)

May 24, 2007

## ✖ RBS Greenwich Capital

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 356 of 491

The issuer has filed a registration statement (including a base prospectus) with the SEC for the offering to which this free writing prospectus relates. Before you invest in this offering, you should read the base prospectus in that registration statement and other documents the issuer has filed with the SEC for more complete information about the issuer and this offering. You may get these documents for free by visiting EDGAR on the SEC Web site at www.sec.gov <http://www.sec.gov>. Alternatively, RBS Greenwich Capital will arrange to send you the base prospectus at no charge if you request it by calling 1-866-884-2071 or emailing offeringmaterials@rbsgc.com.

This free writing prospectus is being delivered to you solely to provide you with information about the offering and to solicit an offer to purchase the offered securities. Any such offer to purchase made by you will not be accepted and will not constitute a contractual commitment by you to purchase any of the securities until we have accepted your offer to purchase such securities. Any such commitment shall be subject to the conditions specified below.

This free writing prospectus is not required to contain all of the information that is required to be included in the base prospectus and the prospectus supplement. The information in this free writing prospectus is preliminary and is subject to completion or change. The information in this free writing prospectus, if conveyed prior to the time of your commitment to purchase the offered securities, supercedes any prior version of this free writing prospectus and any information contained in any prior similar free writing prospectus relating to these securities. If a preliminary prospectus is conveyed to you prior to your commitment to purchase, that document supersedes all other information provided to you concerning the offered securities.

This free writing prospectus is not an offer to sell or a solicitation of an offer to buy these securities in any state where such offer, solicitation or sale is not permitted.

The securities referred to in this free writing prospectus are being offered when, as and if issued. The issuer is not obligated to issue any such securities or any similar securities, and all or a portion of the securities may not be issued that have the characteristics described herein. The underwriters' obligation to deliver such securities is subject to the terms and conditions of the underwriting agreement with the issuer and the availability of the securities having the characteristics described herein. If, for any reason, the issuer does not deliver such securities, the underwriter will notify you, and neither the issuer nor any underwriter will have any obligation to you to deliver all or any portion of the securities which you have committed to purchase, and there will be no liability between us as a consequence of the non-delivery.

For asset-backed and mortgage-backed securities: Certain of the information contained herein may be based on numerous assumptions (including preliminary assumptions about the pool assets and structure), which may not be specifically identified as assumptions in the information. Any such information or assumptions are subject to change. The information in this free writing prospectus may reflect assumptions specifically requested by you. If so, prior to the time of your commitment to purchase, you should request updated information based on any assumptions specifically required by you.

Any legends, disclaimers or other notices that may appear below or on any electronic communication to which this free writing prospectus is attached which state that (1) these materials do not constitute an offer (or a solicitation of an offer), (2) no representation is made as to the accuracy or completeness of these materials and that these materials may not be updated or (3) these materials may be confidential are not applicable to this communication and should be disregarded. Such legends, disclaimers or other notices have been automatically generated as a result of this communication having been sent via Bloomberg or another system.

The representations and covenants, cashflows and structure with respect to American Home Mortgage Assets Trust 2007-3 Group I will comply in all respects with Freddie Mac's Investment Requirements, March 2007 Version. The transaction is anticipated to be structured as a QSPE.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 357 of 491

## American Home Mortgage Assets, LLC

American Home Mortgage Assets Trust
Series 2007-3

Adjustable-Rate First Liens
$118,050,000 (Approximate)

| Class | Size [1] | Expected Rating S&P/Mdys | Target Credit Enhancement% [1][2] | Certificate Interest Rate | WAL [5] | Collateral | Certificate Type |
|---|---|---|---|---|---|---|---|
| | | | | **Group I Offered Notes** | | | |
| I-1A1 | $106,245,000 | AAA / Aaa | 16.57% | LIBOR (3) | 2.65 | Short Reset and Hybrid ARMs | Subgroup I-1 Super Senior |
| I-1A2 | $11,805,000 | AAA / Aaa | 7.30% | LIBOR (3) | 2.65 | Short Reset and Hybrid ARMs | Subgroup I-1 Senior Support |
| I-2A1 | $316,998,000 | AAA / Aaa | | LIBOR (3) | | Short Reset and Hybrid ARMs | Subgroup I-2 Super Senior |
| I-2A2 | $35,222,000 | AAA / Aaa | | LIBOR (3) | | Short Reset and Hybrid ARMs | Subgroup I-2 Senior Support |
| I-M1 | $17,755,000 | AA/Aa2 | | LIBOR (4) | | Total Group I | Group I Subordinate |
| I-M2 | $7,863,000 | A/A2 | | LIBOR (4) | | Total Group I | Group I Subordinate |
| I-M3 | $7,101,000 | BBB-/Baa3 | | LIBOR (4) | | Total Group I | Group I Subordinate |

(1) The class sizes and related credit enhancement levels are subject to change based upon the final pool and rating agency evaluation of subordination, overcollateralization ("OC") and excess spread.

(2) Credit enhancement for the Certificates will be provided by a combination of subordination, OC and excess spread all as more fully described herein. The expected initial credit enhancement percentages (calculated using the related OC Target amount) are as provided above. The initial OC level of the Group I Certificates will equal 0.85% of the Cut-Off Date unpaid principal balance of the Group I mortgage loans and the initial OC Target amount will equal 0.85% of the Cut-Off Date unpaid principal balance of the Group I mortgage loans. Excess spread will be applied to pay principal on the related Certificates, resulting in a limited acceleration of the related Certificates, in order to create and maintain the related OC level at the related OC Target.

(3) The Certificate Interest Rate for the Class I-1A1, Class I-1A2, Class I-2A1 and Class I-2A2 Certificates (collectively, the "Class I-A Certificates") will be a floating rate based on One-Month LIBOR plus the related margin, subject to the related Net WAC Rate described herein. On the first Distribution Date after the first possible Optional Termination Date, the margin for each class of the Class I-A Certificates will increase to 2 times the original margin.

(4) The Certificate Interest Rate for the Class I-M1, Class I-M2 and Class I-M3 Certificates (collectively, the "Class I-M Certificates") will be a floating rate based on One-Month LIBOR plus the related margin, each subject to the Net WAC Rate described herein. On the first Distribution Date after the first possible Optional Termination Date, the margin for each class of the Class I-M Certificates will increase to 1.5 times the original margin.

(5) WALs are to the weighted average roll date at a Prepayment Pricing Speed Assumption of 25%CPR with respect to the Certificates.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 358 of 491

| | |
|---|---|
| **Trust:** | American Home Mortgage Assets Trust 2007-3. |
| **Depositor:** | American Home Mortgage Assets LLC. |
| **Seller:** | American Home Mortgage Corp, Inc. |
| **Master Servicer and Securities Administrator:** | Wells Fargo Bank, N.A. |
| **Servicer:** | American Home Mortgage Servicing, Inc. |
| **Lead Manager:** | Greenwich Capital Markets, Inc. |
| **Co-Managers:** | [Morgan Stanley, JPMorgan Chase and Bear Stearns]. |
| **Trustee:** | Deutsche Bank National Trust Company. |
| **Rating Agencies:** | Standard & Poor's and Moody's Investor Service. |
| **Class I-A Certificates:** | The Class I-1A1, Class I-1A2, Class I-2A1 and Class I-2A2 Certificates. |
| **Class I-1A Certificates:** | The Class I-1A1 and Class I-1A2 Certificates. |
| **Class I-2A Certificates:** | The Class I-2A1 and Class I-2A2 Certificates. |
| **Class I-M Certificates:** | The Class I-M1, Class I-M2 and Class I-M3 Certificates. |
| **LIBOR Certificates:** | The Class I-A and Class I-M Certificates. |
| **Offered Certificates:** | The Class I-1A1 and Class I-1A2 Certificates. |
| **Non-Offered Certificates:** | The Class I-2A, Class I-M, Class I-C, Class I-P, Class I-R and Class I-RX Certificates. |
| **Expected Pricing Date:** | The week of May 21, 2007. |
| **Expected Closing Date:** | May 30, 2007. |
| **Cut-off Date:** | May 1, 2007. |
| **Record Date:** | With respect to the LIBOR Certificates, the close of business on the business day immediately preceding the related Distribution Date. |
| **Distribution Date:** | The 25th day of each month (or if such 25th day is not a business day, the next succeeding business day), commencing in June 2007. |
| **Determination Date:** | With respect to any Distribution Date, the 18th day of the month in which such Distribution Date occurs or, if such day is not a business day, the business day immediately preceding such 18th day. |
| **Due Period:** | With respect to any Distribution Date, the period commencing on the second day of the month immediately preceding the month in which such Distribution Date occurs, and ending on the first day of the month in which such Distribution Date occurs. |
| **Prepayment Period:** | With respect to any Distribution Date is the calendar month immediately preceding the month in which such Distribution Date occurs. |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 359 of 491

| | |
|---|---|
| **Interest Accrual Period:** | With respect to the LIBOR Certificates and the first Distribution Date, interest will initially accrue from the Closing Date to and including the day prior to the first Distribution Date. With respect to any Distribution Date thereafter, interest will accrue during the period from and including the preceding Distribution Date to and including the day prior to the current Distribution Date. Interest will accrue on the LIBOR Certificates on the basis of a 360-day year and the actual number of days elapsed in the applicable Interest Accrual Period. The LIBOR Certificates will settle flat (no accrued interest). |
| **Mortgage Loans:** | On the Closing Date a pool of conventional, one- to four-family, hybrid mortgage loans secured by first liens on residential mortgage properties as briefly described in the table below and as more fully described herein. |
| | The information set forth herein, unless otherwise stated, is calculated as of the Cut-Off Date with respect to a preliminary pool of Mortgage Loans expected to be delivered to the trust on the Closing Date (the *"Mortgage Loan Pool"*). The Mortgage Loan Pool consists of 1,566 Mortgage Loans with an aggregate stated principal balance as of the Cut-Off Date of approximately $507,297,514 (the *"Cut-off Date Balance"*). The Mortgage Loan Pool will be divided into two subgroups. The subgroup I-1 consists of 632 conforming balance Mortgage Loans with an aggregate stated principal balance as of the Cut-Off Date of approximately $127,345,352 (the *"Subgroup I-1 Cut-off Date Balance"*). The subgroup I-2 consists of 934 conforming and non-conforming balance Mortgage Loans with an aggregate stated principal balance as of the Cut-Off Date of approximately $379,952,162 (the *"Subgroup I-2 Cut-off Date Balance"*). |
| **Servicing Fee Rate:** | 0.250% per annum or 0.375% per annum, as applicable. |
| **Net Mortgage Rate:** | On any mortgage loan, the then applicable mortgage rate thereon minus the sum of (1) the applicable Servicing Fee Rate and (2) any lender paid mortgage insurance fee, if applicable. |
| **Optional Termination:** | The Servicer will be permitted to purchase all of the Mortgage Loans and REO properties and retire the Offered and Non-Offered Certificates on or after the Optional Termination Date (as defined herein). |
| **Optional Termination Date:** | The first Distribution Date on which the aggregate stated principal balance of the Mortgage Loans, after giving effect to distributions to be made on the related Distribution Date, is less than 20% of the Cut-off Date Balance. |
| **Minimum Denominations:** | $100,000 and integral multiples of $1 in excess thereof. |
| **Federal Tax Status:** | It is anticipated that a portion of the Class I-A Certificates and Class I-M Certificates will be treated as REMIC Regular Interests for federal income tax purposes. The Class I-A and Class I-M Certificates will also be entitled to certain non-REMIC payments in respect of Basis Risk Shortfall Amounts. |
| **Form of Registration:** | It is expected that delivery of the Offered Certificates will be made in book-entry form through the Same-Day Funds Settlement System of The Depository Trust Company, which may include delivery through Clearstream, Société Anonyme or Euroclear System. |
| **ERISA Considerations:** | The Class I-1A1 and Class I-2A1 Certificates generally may be purchased by, on behalf of, or with plan assets of, a Plan, subject to the considerations described in the prospectus supplement. Prior to the termination of the supplemental interest trust, any plan investor that purchases a Class I-1A1 or Class I-2A1 Certificate must satisfy certain conditions, including the conditions of an investor based prohibited transaction class exemption. The other classes of Offered Certificates generally may not be purchased by any plan investor except through certain insurance company general accounts. |
| **SMMEA Eligibility:** | The Class I-A Certificates and Class I-M1 Certificates are expected to be SMMEA eligible. |

Case 4:15-cv-00141-DW    Document 1-1    Filed 02/24/15    Page 360 of 491

**Credit Enhancement:**

(1)    Subordination of lower rated classes of Certificates.

(2)    Overcollateralization, as described herein.

(3)    Excess cashflow.

**Overcollateralization Amount:**

The Overcollateralization Amount (the "*OC*") with respect to any Distribution Date will be the excess, if any, of (a) the aggregate stated principal balance of the Mortgage Loans as of the last day of the related Due Period over (b) the aggregate Certificate Principal Balance of the Class I-A and Class I-M Certificates (after taking into account the distribution of principal on such Distribution Date).

**Overcollateralization Target Amount:**

With respect to any Distribution Date, (i) prior to the Stepdown Date, an amount equal to the product of (x) 0.85% and (y) the aggregate stated principal balance of the Mortgage Loans as of the Cut-Off Date (ii) on or after the Stepdown Date provided a Trigger Event is not in effect, the greater of (x) 0.35% of the aggregate stated principal balance of the Mortgage Loans as of the last day of the related Due Period and (y) the product of (a) 1.70% and (b) the aggregate stated principal balance of the Mortgage Loans as of the Cut-Off Date and (iii) if a Trigger Event is in effect, the Overcollateralization Target Amount for the immediately preceding Distribution Date.

**Overcollateralization Increase Amount:**

For any Distribution Date, the lesser of (i) the Net Monthly Excess Cashflow for such Distribution Date and (ii) the excess, if any, of (a) the Overcollateralization Target Amount over (b) the Overcollateralization Amount on such Distribution Date after taking into account payments to the Certificates of the Principal Distribution Amount on such Distribution Date.

**Overcollateralization Release Amount:**

For any Distribution Date, an amount equal to the lesser of (x) the Principal Remittance Amount for such Distribution Date and (y) the excess, if any, of (i) the Overcollateralization Amount (after giving effect to distributions in respect of the Principal Remittance Amount to be made on such Distribution Date) for such Distribution Date over (ii) the Overcollateralization Target Amount for such Distribution Date.

**Net Monthly Excess Cashflow:**

With respect to any Distribution Date, the sum of (i) the amount of the Interest Remittance Amount remaining on such Distribution Date after the distribution of Accrued Certificate Interest to the Class I-A and Class I-M Certificates and swap payments under clause (i) of the interest payment priority, (ii) the amount remaining on such Distribution Date after the distribution of the Principal Distribution Amount to the Class I-A and Class I-M Certificates for such Distribution Date and (iii) the Overcollateralization Release Amount for that Distribution Date, if any.

**Credit Enhancement Percentage:**

With respect to each class of Class I-A and Class I-M Certificates on any Distribution Date, the percentage obtained by dividing (x) the aggregate Certificate Principal Balance of the class or classes subordinate thereto (including the OC), calculated after taking into account distributions of principal to the Certificate holders then entitled to distributions of principal on such Distribution Date, by (y) the aggregate stated principal balance of the Mortgage Loans as of the last day of the related Due Period.

**Target Credit Enhancement Percentage**

| Certificate Class | Closing Date | After Stepdown Date |
|---|---|---|
| I-A | 7.30% | 14.60% |
| I-M1 | 3.80% | 7.60% |
| I-M2 | 2.25% | 4.50% |
| I-M3 | 0.85% | 1.70% |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 361 of 491

| | |
|---|---|
| **Stepdown Date:** | The earlier to occur of (i) the first Distribution Date following the Distribution Date on which the aggregate Certificate Principal Balance of the Class I-A Certificates has been reduced to zero and (ii) the later to occur of (A) the Distribution Date in June 2010 and (B) the date that the Senior Enhancement Percentage for the Class I-A Certificates (calculated for this purpose without taking into account distributions of principal to the holders of the Certificates then entitled to distributions of principal on such Distribution Date) is greater than or equal to approximately 14.60%. |
| **Trigger Event:** | With respect to any Distribution Date on or after the Stepdown Date, a Trigger Event is in effect if: |

(a)  the percentage obtained by dividing (x) the aggregate principal amount of Mortgage Loans delinquent 60 days or more (including Mortgage Loans in foreclosure, Mortgage Loans with respect to which the related mortgaged properties have been acquired by the Trust and Mortgage Loans subject to bankruptcy proceedings) by (y) the aggregate principal balance of the Mortgage Loans, in each case, as of the last day of the previous calendar month, equals or exceeds [40.00]% of the prior period's Senior Enhancement Percentage.

*"Senior Enhancement Percentage"* means, for any Distribution Date, the percentage obtained by dividing (x) the sum of (i) the aggregate Certificate Principal Balance of the Class I-M Certificates and (ii) the OC (in each case after taking into account the distributions of the related Principal Distribution Amount for that Distribution Date) by (y) the sum of the aggregate stated principal balance of the Mortgage Loans for that Distribution Date; or

(b)  A *"Sequential Trigger Event"* is in effect on any Distribution Date if (x) on any Distribution Date before the 37th Distribution Date the aggregate amount of realized losses incurred since the cut-off date through the last day of the related Prepayment Period divided by the aggregate Stated Principal Balance of the Mortgage Loans as of the cut-off date exceeds [0.25%] or (y) on any Distribution Date on or after the 37th Distribution Date, a Trigger Event is in effect or (z) on any Distribution Date before the 37th Distribution Date the 60 Day+ Rolling Average equals or exceeds [40.00%] of the prior period's Credit Enhancement Percentage for the Class I-1A certificates (the 60 Day+ Rolling Average will equal the rolling 3 month average percentage of mortgage loans that are sixty (60) or more days delinquent, including loans in foreclosure, all REO Property and mortgage loans where the mortgagor has filed for bankruptcy).

(c)  the aggregate amount of realized losses incurred since the Cut-off Date through the last day of the related Due Period (reduced by the aggregate amount of subsequent recoveries received through the last day of the related Due Period) divided by the aggregate principal balance of the Mortgage Loans as of the Cut-off Date exceeds the approximate applicable percentages set forth below with respect to such Distribution Date:

| Distribution Date Occurring In | Percentage |
|---|---|
| June 2009 through May 2010 | [0.25]% |
| June 2010 through May 2011 | [0.65]% |
| June 2011 through May 2012 | [1.10]% |
| June 2012 through May 2013 | [1.55]% |
| June 2013 and thereafter | [1.85]% |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 362 of 491

| | |
|---|---|
| **Certificate Interest Rate:** | With respect to each class of the Class I-A and Class I-M Certificates on any Distribution Date, the lesser of (a) the Formula Rate for such Distribution Date and (b) the related Net WAC Rate for such Distribution Date. |
| **Formula Rate:** | With respect to the LIBOR Certificates and any Distribution Date, One-Month LIBOR plus the related margin, subject to the related Net WAC Rate described herein. On the first Distribution Date after the first possible Optional Termination Date, the margin for each class of the Class I-A Certificates will increase to 2 times the original margin. Beginning with the first Distribution Date after the Optional Termination Date, the margin for each class of the Class I-M Certificates will increase to 1.5 times the original margin. |
| **Accrued Certificate Interest:** | For any Distribution Date and each class of Certificates, interest accrued during the related accrual period at the then-applicable Certificate Interest Rate on the related Certificate Principal Balance thereof immediately prior to such Distribution Date. |
| **Class I-1A Net WAC Rate:** | On any Distribution Date and for the Class I-1A Certificates, the product of (a) (A) the weighted average Net Mortgage Rate on the Mortgage Loans in subgroup I-1 as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date) minus (B) an amount, expressed as a per annum rate, the numerator of which is equal to the sum of (x) the product of (I) any Net Swap Payment owed to the Group I Swap Provider divided by the outstanding Stated Principal Balance of the Mortgage Loans as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date) and (II) 12 and (y) the product of (I) any Swap Termination Payment (other than any Swap Termination Payment resulting from a Swap Provider Trigger Event), payable by the Trust to the Group I Swap Provider, divided by the outstanding Stated Principal Balance of the Mortgage Loans and (II) 12 and a fraction, the numerator of which is 30, and the denominator of which is the actual number of days that elapsed in the related Accrual Period. |
| **Class I-2A Net WAC Rate:** | On any Distribution Date and for and any class of Class I-2A Certificates, the product of (a) (A) the weighted average Net Mortgage Rate on the Mortgage Loans in subgroup I-2 as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date) minus (B) an amount, expressed as a per annum rate, the numerator of which is equal to the sum of (x) the product of (I) any Net Swap Payment owed to the Group I Swap Provider divided by the outstanding Stated Principal Balance of the Mortgage Loans as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date) and (II) 12 and (y) the product of (I) any Swap Termination Payment (other than any Swap Termination Payment resulting from a Swap Provider Trigger Event), payable by the Trust to the Group I Swap Provider, divided by the outstanding Stated Principal Balance of the Mortgage Loans and (II) 12 and a fraction, the numerator of which is 30, and the denominator of which is the actual number of days that elapsed in the related Accrual Period. |
| **Group I Subordinate Net WAC Rate:** | For any Distribution Date and any Class of Class I-M Notes, (a) the weighted average of the Class I-1A Net WAC Rate and Class I-2A Net WAC Rate, weighted in proportion to the results of subtracting from the aggregate stated principal balance of the Mortgage Loans in subgroup I-1 and I-2, the aggregate Certificate Principal Balance of the related Class I-A Certificates. |
| **Weighted Average Adjusted Net Mortgage Rate:** | With respect to any Distribution Date, the weighted average of the Net Mortgage Rates of each mortgage loan, weighted on the basis of its Stated Principal Balance as of the Due Date occurring in the month preceding the month of that Distribution Date (after giving effect to principal prepayments in the Prepayment Period related to that prior Due Date). |
| **Interest Carry Forward Amount:** | With respect to each class of Class I-A Certificates and Class I-M Certificates and each Distribution Date, is the excess of (a) Accrued Certificate Interest for such class with respect to prior Distribution Dates over (b) the amount actually distributed to such class with respect to interest on prior Distribution Dates. |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 363 of 491

| | |
|---|---|
| **Basis Risk Shortfall:** | With respect to any Distribution Date, the excess, if any, of the amount of interest that such class would have been entitled to receive if the Certificate Interest Rate for such class were calculated without regard to clause (b) in the definition thereof, over the actual amount of interest such class is entitled to receive for such Distribution Date. |
| **Group I Interest Remittance Amount:** | For any Distribution Date the sum of (a) the interest portion of all scheduled monthly payments on the Mortgage Loans on the related due date, to the extent received or advanced, less the related servicing fee rate (b) the interest portion of all proceeds of the repurchase of Mortgage Loans during the preceding calendar month; (c) the interest portion of all other unscheduled collections received during the preceding calendar month in respect of the Mortgage Loans; (d) any compensating interest payments by the master servicer or servicer, as applicable; net of (e) fees payable to, and other amounts reimbursable to, the trustee, the master servicer, the securities administrator, the servicer, the lender-paid mortgage insurance provider or the custodian, as applicable. |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 364 of 491

**Cap Agreement:**

The issuer will benefit from interest rate cap payments from the Cap Agreement Provider pursuant to a cap agreement purchased with respect to each of the Certificates (the *"Cap Agreement"*). The Cap Agreement is intended to partially to mitigate potential basis risk shortfalls with respect to the Certificates. Payments pursuant to the Cap Agreements also will be used to restore OC and reimburse Certificate holders for losses occurring in current and prior periods.

On the Closing Date, the issuer will enter into a cap agreement with the Cap Agreement Provider. Under the Cap Agreement, on or before each Distribution Date commencing with the Distribution Date in July 2007, and ending with the Distribution Date in February 2017, the Cap Agreement Provider will be obligated to pay to the issuer a floating amount for that Distribution Date, equal to the product of (x) the excess of (i) One-Month LIBOR, as determined pursuant to the Cap Agreement, for the related calculation period (as defined in the related Cap Agreement) over (ii) [5.32]%, (y) the related Cap Notional Amount as set forth herein for that Distribution Date, and (z) a fraction, the numerator of which is equal to the actual number of days in the related calculation period and the denominator of which is 360.
See schedule of Cap Notional Amount herein.

**Cap Agreement Distributions:**

On each Distribution Date, any payments received from the Cap Agreement Provider (the *"Cap Payment Amount"*) will be allocated in the following order of priority (after payment of Net Monthly Excess Cashflow described herein):

    i.    from the Cap Payment Amount, concurrently, to each class of Class I-A Certificates, any Realized Loss Amount for such classes, pro rata, and then to the Class I-M Certificates, any Realized Loss Amount for such classes, pro rata, in each case based on the amount of Allocated Realized Loss Amount due such classes to the extent remaining unpaid from Net Monthly Excess Cashflow for each such class for that Distribution Date;

    ii.    from any remaining Cap Payment Amount, concurrently, to each class of Class I-A Certificates, any Basis Risk Shortfall for such classes, pro rata, based on the amount of Basis Risk Shortfall due such classes to the extent remaining unpaid from Net Monthly Excess Cashflow for each such class for that Distribution Date;

    iii.    from any remaining Cap Payment Amount, concurrently, to each class of Class I-M Certificates, any Basis Risk Shortfall for such classes, pro rata, based on the amount of Basis Risk Shortfall due such classes to the extent remaining unpaid from Net Monthly Excess Cashflow for each such class for that Distribution Date;

    iv.    from any remaining Cap Payment Amount, to the holders of the Class I-A Certificates and Class I-M Certificates in an amount equal to the Overcollateralization Increase Amount, payable to such holders as part of the related Principal Distribution Amount in the same priority as described in the Payment of Principal section herein, to the extent remaining unpaid from Net Monthly Excess Cashflow for each such class for that Distribution Date;

    v.    from any remaining Cap Payment Amount, to the holders of the Non-Offered Certificates as provided in the Pooling and Servicing Agreement.

**Cap Provider:**          TBD.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 365 of 491

**Swap Agreement:**

On the Closing Date, the Issuer will enter into a Swap Agreement with the Swap Provider with an initial notional amount of approximately $505,362,052. Under the Swap Agreement, on or before each Distribution Date commencing with the Distribution Date in June 2007 and ending with the Distribution Date in October 2010, the Securities Administrator, on behalf of the supplemental interest trust, shall be obligated to pay to the Swap Provider a fixed amount for that Distribution Date, equal to the product of (x) a fixed rate equal to [5.17]% per annum, (y) the Swap Notional Amount as set forth in the Swap Agreement for that Distribution Date and (z) a fraction, the numerator of which is 30 (or, for the first Distribution Date, the number of days elapsed from and including the effective date (as defined in the Swap Agreement)) to but excluding the first Distribution Date, determined on a 30/360 basis) and the denominator of which is 360, and the Swap Provider will be obligated to pay to the Securities Administrator (on behalf of the supplemental interest trust) a floating amount for that Distribution Date, equal to the product of (x) One-Month LIBOR, as determined pursuant to Swap Agreement, for the related calculation period (as defined in the Swap Agreement), (y) the Swap Notional Amount as set forth in the Swap Agreement for that Distribution Date, and (z) a fraction, the numerator of which is equal to the actual number of days in the related calculation period and the denominator of which is 360.

On each Distribution Date, any Net Swap Payments received from the Swap Provider will be distributed in the following order of priority:

i.     to pay any accrued and unpaid interest on the Class I-1A Certificates and Class I-2A Certificates, including any accrued and unpaid interest from prior Distribution Dates, pro rata based on the amount of accrued and unpaid interest, to the extent unpaid from Net Monthly Excess Cashflow or the related Interest Remittance Amount;

ii.     sequentially to pay any accrued and unpaid interest on the Class I-M Certificates, in order of payment priority, including any accrued unpaid interest from prior Distribution Dates to the extent unpaid from the Net Monthly Excess Cashflow;

iii.     to pay any Allocated Realized Loss Amounts remaining on the Class I-1A and Class I-2A Certificates, pro rata, to the extent unpaid from the Net Monthly Excess Cashflow, until reduced to zero;

iv.     to pay any Allocated Realized Loss Amounts remaining on the Class I-M Certificates, sequentially, in order of payment priority to the extent unpaid from the Net Monthly Excess Cashflow, until reduced to zero;

v.     to pay the Basis Risk Shortfall first, on the Class I-1A and Class I-2A Certificates, pro rata, and then sequentially to the Class I-M Certificates remaining unpaid and to the extent not covered by Net Monthly Excess Cashflow;

vi.     to pay any principal first, on the Class I-1A Certificates and Class I-2A Certificates, and second, on the Class I-M Certificates, sequentially, in accordance with the principal payment provisions in an amount necessary to maintain the applicable Overcollateralization Target Amount to the extent not covered by Net Monthly Excess Cashflow; and

vii.     to pay any remaining amounts as set forth in the Pooling and Servicing Agreement.

**Swap Provider:**      TBD.

Case 4:15-cv-00141-DW    Document 1-1    Filed 02/24/15    Page 366 of 491

| Interest Payment Priority: | On each Distribution Date, the Group I Interest Remittance Amount will be distributed in the following order of priority, in each case, to the extent remaining: |
|---|---|
| | (i)      To the Swap Provider, in an amount equal to any Net Swap Payment and any Swap Termination Payment (not caused by a Swap Provider Trigger Event) owed to the Swap Provider pursuant to the Swap Agreement; |
| | (ii)      concurrently, (A) from the Group I Interest Remittance Amount relating to subgroup I-1 for such Distribution Date, to the Class I-1A1 and Class I-1A2 Certificates, on a pro rata basis, the Accrued Certificate Interest for such class for such Distribution Date and (B) from the Group I Interest Remittance Amount relating to subgroup I-2 for such Distribution Date, to the Class I-2A1 and Class I-2A2 Certificates, on a pro rata basis, the Accrued Certificate Interest for such class for such Distribution Date; |
| | (iii)      from the remaining Group I Interest Remittance Amount relating to subgroup I-1 and subgroup I-2, to the holders of the Class I-M1 Certificates the Accrued Certificate Interest for such class; |
| | (iv)      from the remaining Group I Interest Remittance Amount relating to subgroup I-1 and subgroup I-2, to the holders of the Class I-M2 Certificates the Accrued Certificate Interest for such class; |
| | (v)      from the remaining Group I Interest Remittance Amount relating to subgroup I-1 and subgroup I-2, to the holders of the Class I-M3 Certificates the Accrued Certificate Interest for such class; |
| | (vi)      any remainder (to the extent not included as part of the Principal Distribution Amount) to be included as Net Monthly Excess Cashflow as described below. |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 367 of 491

**Principal Payment Priority:**

On each Distribution Date, (a) prior to the Stepdown Date or (b) on which a Trigger Event is in effect, the Principal Distribution Amount shall be distributed as follows:

    (i)      concurrently, (A) the related Class I-A Principal Allocation Fraction of the Principal Distribution Amount, to the Class I-1A1 and Class I-1A2 Certificates, pro rata, until their respective class certificate balances have been reduced to zero with the exception that if a Sequential Trigger Event is in effect, principal distributions to the Class I-1A Certificates will be allocated sequentially, to the Class I-1A1 Certificates and Class I-1A2 Certificates, in that order, until their respective class certificate balances have been reduced to zero, and (B) the related Class I-A Principal Allocation Fraction of the Principal Distribution Amount, to the Class I-2A1 and Class I-2A2 Certificates, pro rata, until the Certificate Principal Balance of each such class has been reduced to zero;

    (ii)      any remaining Principal Distribution Amount shall be distributed to the Class I-1A1, Class I-1A2, Class I-2A1 and Class I-2A2 Certificates, pro rata, based on the Certificate Principal Balances thereof, until the Certificate Principal Balance of each such class has been reduced to zero;

    (iii)      to the holders of the Class I-M Certificates, sequentially in order of priority, the remaining Principal Distribution Amount until the Certificate Principal Balance of each such class has been reduced to zero; and

    (iv)      any remainder to be included as Net Monthly Excess Cashflow as described below.

On each Distribution Date (a) on and after the Stepdown Date and (b) on which a Trigger Event is not in effect, the Principal Distribution Amount shall be distributed as follows;

    (i)      concurrently, (A) an amount up to the related Class I-A Principal Allocation Fraction of the Class I-A Principal Distribution Amount shall be distributed to the Class I-1A1 Certificates and Class I-1A2 Certificates, pro rata, based on the Certificate Principal Balances thereof, in each case until the Certificate Principal Balance of each such class has been reduced to zero and (B) an amount up to the related Class I-A Principal Allocation Fraction of the Class I-A Principal Distribution Amount shall be distributed to the Class I-2A1 Certificates and Class I-2A2 Certificates, pro rata, based on the Certificate Principal Balances thereof, in each case until the Certificate Principal Balance of each such class has been reduced to zero;

    (ii)      from any remaining Principal Distribution Amount, in an amount up to any remaining Class I-A Principal Distribution Amount shall be distributed to the Class I-1A1, Class I-1A2, Class I-2A1 and Class I-2A2 Certificates, pro rata, based on the Certificate Principal Balances thereof, until the Certificate Principal Balance of each such class has been reduced to zero;

    (iii)      to the holders of the Class I-M1 Certificates, the Class I-M1 Principal Distribution Amount until the Certificate Principal Balance thereof has been reduced to zero;

    (iv)      to the holders of the Class I-M2 Certificates, the Class I-M2 Principal Distribution Amount until the Certificate Principal Balance thereof has been reduced to zero;

    (v)      to the holders of the Class I-M3 Certificates, the Class I-M3 Principal Distribution Amount until the Certificate Principal Balance thereof has been reduced to zero; and

    (vi)      any remainder to be included as Net Monthly Excess Cashflow as described below.

Case 4:15-cv-00141-DW    Document 1-1    Filed 02/24/15    Page 368 of 491

| | |
|---|---|
| **Principal Remittance Amount:** | For any Distribution Date the sum of (a) the principal portion of all scheduled monthly payments on the related Mortgage Loans on the related due date to extent received or advanced, (b) the principal portion of all proceeds of the repurchase of Mortgage Loans in the related Mortgage Loan subgroup during the preceding calendar month; and (c) the principal portion of all other unscheduled collections received during the preceding calendar month in respect of the related Mortgage Loans net of (d) fees payable to, and other amounts reimbursable to, the trustee, the master servicer, the securities administrator, the servicer, the lender paid mortgage insurance provider or the custodian, as applicable, to the extent not paid or reimbursed from the Interest Remittance Amount for such Distribution Date. |
| **Principal Distribution Amount:** | For any Distribution Date, the sum of (a) the Principal Remittance Amount and (b) the Overcollateralization Increase Amount less (c) the Overcollateralization Release Amount. |
| **Class I-A Principal Allocation Fraction:** | For any Distribution Date and (i) the Class I-1A Certificates and (ii) the Class I-2A Certificates, as determined separately, a fraction, (x) the numerator of which is the Principal Remittance Amount with respect to the mortgage loans in subgroup I-1 or subgroup I-2, as applicable, to be distributed on that Distribution Date, and (y) the denominator of which is the Principal Remittance Amount for the mortgage loans in subgroup I-1 and subgroup I-2 to be distributed on that Distribution Date. |
| **Class I-A Principal Distribution Amount:** | For any applicable Distribution Date on or after the related Stepdown Date as long as a related Trigger Event has not occurred with respect to such Distribution Date, the excess of (x) the aggregate Certificate Principal Balance of the Class I-A Certificates immediately prior to such Distribution Date, over (y) the lesser of (A) the product of (i) approximately 85.40% (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period) and (B) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period) minus approximately $1,775,541. |
| **Class I-M1 Principal Distribution Amount:** | For any applicable Distribution Date on or after the related Stepdown Date as long as a related Trigger Event has not occurred with respect to such Distribution Date, an amount equal to the excess (if any) of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class I-A Certificates (after taking into account the distribution of the Class I-A Principal Distribution Amount on such Distribution Date) and (ii) the Certificate Principal Balance of the Class I-M1 Certificates immediately prior to such Distribution Date over (y) the lesser of (i) the product of approximately 92.40% and the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to Principal Prepayments received in the related Prepayment Period) and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to Principal Prepayments received in the related Prepayment Period) minus $1,775,541. |
| **Class I-M2 Principal Distribution Amount:** | For any applicable Distribution Date on or after the related Stepdown Date as long as a related Trigger Event has not occurred with respect to such Distribution Date, an amount equal to the excess (if any) of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class I-A Certificates (after taking into account the distribution of the Class I-A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class I-M1 Certificates (after taking into account the distribution of the Class I-M1 Principal Distribution Amount on such Distribution Date) and (iii) the Certificate Principal Balance of the Class I-M2 Certificates immediately prior to such Distribution Date over (y) the lesser of (i) the product of approximately 95.50% and the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to Principal Prepayments received in the related Prepayment Period) and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to Principal Prepayments received in the related Prepayment Period) minus $1,775,541. |

Case 4:15-cv-00141-DW Document 1-1 Filed 02/24/15 Page 369 of 491

| Class I-M3 Principal Distribution Amount: | For any applicable Distribution Date on or after the related Stepdown Date as long as a related Trigger Event has not occurred with respect to such Distribution Date, an amount equal to the excess (if any) of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class I-A Certificates (after taking into account the distribution of the Class I-1 Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class I-M-1 Certificates (after taking into account the distribution of the Class I-M1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class I-M2 Certificates (after taking into account the distribution of the Class I-M2 Principal Distribution Amount on such Distribution Date)and (iv) the Certificate Principal Balance of the Class I-M3 Certificates immediately prior to such Distribution Date over (y) the lesser of (i) the product of approximately 98.30% and the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to Principal Prepayments received in the related Prepayment Period) and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to Principal Prepayments received in the related Prepayment Period) minus $1,775,541. |
| --- | --- |

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 370 of 491

| | |
|---|---|
| **Realized Losses:** | The excess of the stated principal balance of a defaulted mortgage loan over the net liquidation proceeds (that are allocated to the principal balance of such mortgage loan). To the extent the Servicer receives subsequent recoveries with respect to any mortgage loan, the amount of any Realized Loss with respect to that mortgage loan will be reduced by such subsequent recoveries. Realized Losses refer to the aggregate amount of losses on the Mortgage Loans. |
| **Allocation of Realized Losses:** | Any Realized Losses on the Mortgage Loans on any Distribution Date will first be absorbed by Net Monthly Excess Cashflow and the OC amount, and then will be allocated to Class I-M Certificates in reverse sequential order according to priority. Thereafter, Realized Losses will be allocated to the Class I-A Certificates from the related mortgage loan subgroup, provided however that Realized Losses on the Mortgage Loans in subgroup I-1 will be allocated first to the Class I-1A2 Certificates until the certificate principal balance has been reduced to zero and then to the Class I-1A1 Certificates, and that Realized Losses on the Mortgage Loans in subgroup I-2 will be allocated first to the Class I-2A2 Certificates until the certificate principal balance has been reduced to zero and then to the Class I-2A1 Certificates. If on any Distribution Date as a result of Realized Losses on the Mortgage Loans, the aggregate Certificate Principal Balance of the Class I-A and Class I-M Certificates after giving effect to principal distributions on such date exceeds the aggregate stated principal balance of the Mortgage Loans as of the last day of the related Due Period, such excess (the *"Realized Loss Amount"*) will be allocated as described above. Any such allocation to a class of Certificates will be effected by reducing the Certificate Principal Balance of such class. |

Case 4:15-cv-00141-DW    Document 1-1    Filed 02/24/15    Page 371 of 491

**Net Monthly Excess Cashflow:**      With respect to any Distribution Date, any Net Monthly Excess Cashflow shall be distributed as follows:

(i.)      to the holders of the class or classes of Certificates then entitled to receive distributions in respect of principal, in an amount equal to the Overcollateralization Increase Amount, allocated as described under Principal Payment Priority herein;

(ii.)      concurrently, on a pro rata basis, (A) to the Class I-1A1 and Class I-1A2 Certificates, on a pro rata basis, any related Allocated Realized Loss Amounts, related Interest Carry Forward Amounts and any Basis Risk Shortfalls related to such class, and (B) to the Class I-2A1 and Class I-2A2 Certificates, on a pro rata basis, any related Allocated Realized Loss Amounts, related Interest Carry Forward Amounts and any Basis Risk Shortfalls related to such Certificate;

(iii.)      to the holders of the Class I-M1 Certificates, in an amount equal to the previously allocated Realized Loss Amounts, related Interest Carry Forward Amounts and any Basis Risk Shortfalls related to such Certificate;

(iv.)      to the holders of the Class I-M2 Certificates, in an amount equal to the previously allocated Realized Loss Amounts, related Interest Carry Forward Amounts and any Basis Risk Shortfalls related to such Certificate;

(v.)      to the holders of the Class I-M3 Certificates, in an amount equal to the previously allocated Realized Loss Amounts, related Interest Carry Forward Amounts and any Basis Risk Shortfalls related to such Certificate;

(vi.)      to the swap provider, in an amount equal to any Swap Termination Payment due to the swap provider as a result of a Swap Provider Trigger Event; and

(vii.)      to the holders of the Class I-C and Class I-R Certificates as provided in the Pooling and Servicing Agreement.

Case 4:15-cv-00141-DW    Document 1-1    Filed 02/24/15    Page 372 of 491

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
)
PLAINTIFFS )  Case No. 1416-CV00681
  V )
Advance Mortgage Corporation et. al, )  Division 13
)

## PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS ADVANCE MORTGAGE CORPORATION WITHOUT PREJUDICE

COMES NOW the Plaintiffs and, for their Motion to Voluntarily Dismiss Advance Mortgage Corporation do state:

(1) That Plaintiffs strategy has narrowed to only trying to prosecute the case as related to Defendents which continue to insist on enforcing a false lien on the Title of Plaintiffs home. Plaintiffs do believe that Advance Mortgage Corporation is involved in the wrongdoing by allowing MERS to assign the alleged subject loan to the American Home Trust five years too late to qualify under SEC and IRS rules as a valid negotiation and transaction. However, Advance Mortgage whether their earlier behavior was proper or perhaps illegal, does not have a claim on Plaintiffs Title and will not claim so.

(2) That Plaintiffs have no reason to pursue the prosecution of Advance Mortgage Corporation at this time and probably never.

Wherefore, Plaintiffs pray the court for a sustainment of Plaintiffs' Motion to Voluntarily Dismiss Defendant Advance Mortgage Corporation Without Prejudice.


Respectfully Submitted

*Barre Hunter*    *Venda Hunter*
Barre Hunter          Venda Hunter

1

mdism

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE

BARRE EUGENE HUNTER, *et al.,*    )
                                  )
                    Plaintiffs,   )
                                  )        Case No. 1416-CV00681
vs.                               )
                                  )        Division 13
ADVANCE MORTGAGE                  )
CORPORATION, *et al.,*            )
                                  )
                    Defendants.   )

NOTICE OF RETURN MAIL
AND CERTIFICATE OF SERVICE

On April 15, 2014, I, Thomas M. Franklin, attorney of record for Defendant Advance Mortgage

Corporation, mailed a copy of **Motion of Advance Mortgage Corporation to Dismiss for Failure to**

**State a Claim upon which Relief can be Granted** to plaintiffs Barre Eugene Hunter and Venda Marie

Hunter, both addressed at 3020 S. Field Road, Oak Grove, Missouri 64075. On April 30, 2014, returned

mail was received from the United States Postal Service stating that the forwarding address for both Barre

Eugene Hunter and Venda Marie Hunter is 625 S. Hudson Street, Buckner, Missouri 64016.

I, Thomas M. Franklin, do hereby certify that on May 1, 2014, that one exact copy of the **Motion**

**of Advance Mortgage Corporation to Dismiss for Failure to State a Claim upon which Relief can be**

**Granted** and one exact copy of this Notice of Return Mail and Certificate of Service were deposited into

the U.S. First Class Mail on the 1st day of May, 2014 addressed to:

Barre Eugene Hunter          and        Venda Marie Hunter
625 Hudson Street                       625 Hudson Street
Buckner, Missouri 64016                 Buckner, Missouri 64016.


                                        Respectfully submitted,

                                        By  */s/ Thomas M. Franklin*
                                        Thomas M. Franklin, Mo. Bar 32358
                                        9140 Ward Parkway, Suite 200
                                        Kansas City, Missouri 64114
                                        (816) 941-2121 Telephone
                                        (816) 822-8222 Facsimile
                                        ATTORNEY FOR PLAINTIFF

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
 )
PLAINTIFFS ) Case No. 1416-CV00681
V )
Advance Mortgage Corporation et.al, )
 )
 ) Division 13

14 APR 16 PM 2:42
FILED-CIRCUIT COURT
JACKSON CO. MO-1

### PLAINTIFFS' MOTION FOR CLARIFICATION OF DEFENDANT OCWEN LOAN SERVICING 'S ANSWER TO PLAINTIFFS' PETITION IN THE ABOVE STYLED CASE AND A MORE CLEAR AND DEFINITE STATEMENT FROM DEFENDANT AS TO ITS LIST OF AFFIRMATIVE DEFENSES

COMES NOW the Plaintiffs and for their Motion for Defendant Ocwen Loan Servicing,s Use of the Term Amended Petition and a More Clear and Definite Statement from Defendants as to their laundry list of Affirmative Defenses, state to the Court as follows:

1. That Plaintiffs request Defendant's clarification of the term used for their answer to the amended petition.

2. That Defendants provide a more clear and definitive statement as to their list of Affirmative Defenses.

WHEREFORE, Plaintiffs pray this Court enter its Order directing that Defendants clarify their use of the term "amended petition" and for a more clear and definitive statement regarding Defendants listing of affirmative defenses.

Respectfully submitted

*Barre E Hunter*

Barre and Venda Hunter by Venda Hunter

*Venda M. Hunter*

1

motio

## ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiffs state that this Circuit Court is the proper venue for this action. The subject property is located in Jackson County, Missouri. Subject matter jurisdiction is governed by the Missouri Constitution which grants circuit courts "...original jurisdiction over *all* cases and matters, civil and criminal." Mo. Const. Article V, Sec.14. This case is a civil case, therefore this Court has subject matter jurisdiction over this case. *Webb v Wyciskalla*, 275 S.W.3d, 253-254 (Mo. En banc 2009). Federal Court is not the proper venue, for any reason. Federal courts have an independent obligation to evaluate their jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Any Party seeking removal bears the burden of proving subject matter jurisdiction. In re Business Men's Assur. Co. of America, 992 F .2d 181, 182 (8th Cir. 1993). Federal district courts are "required to resolve all doubts about federal jurisdiction in favor of remand." *Id.*

In the light of using fraudulent joinder as a means of removal, it is defined as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." Filla v. Norfolk Southern Ry. Col, 336 F.3d 806,809 (8th Cir. 2003). In analyzing fraudulent joinder, "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based on the facts involved." *Id.* at 811. So long as there is at least a "colorable" state law cause of action against the diversity-defeating defendant, joinder is not fraudulent. *Id. at 810.* In questionable areas of state law, "the better practice is for the federal court not to decide the doubtful question, but simply to remand the case and leave the question for the state courts to decide." Id. at 811 (quoting Iowa Public Ser. Co. v Medicine Bow Coal Co., 556 F .2d 400,406 ( 8th Cir. 1977).

This suit has been filed in state court. State court is the proper venue. The suit concerns a subject property located within this County and within the State of Missouri. Application of state law is primarily the responsibility of state courts. State court has jurisdiction.

2

2.    That Defendant Deutsche Bank National Trust Company hereinafter "Deutsche", while acting as an agent for   American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust", ordered Successor Trustee Millsap & Singer, hereinafter "Millsap", to initiate a foreclosure sale of the property commonly identified as 3020 S Fields Road, Oak Grove, MO   64075.

3.    That Ocwen and Deutsche are planning to schedule a foreclosure sale of the property at the order of Defendant American Home Trust.  However, this is a violation of the Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2007-3. Deutsche Bank National Trust Company and other larger Trustee Corporations, such as US Bank National Association, New York Bank Mellon and many others represent themselves as the foreclosing party which is the Holder in Due Course. This is not true. Mortgage Backed Securities are governed by a document that was registered with the Securities Exchange Commission. The document is called the Pooling and Servicing Agreement and it is not flexible. In simple terms, the Pooling and Servicing Agreement defines the Trustee as a business manager for the Trust, but does not give the Trustee of the REMIC Trust the power, or even the right to inquire about Foreclosures. But that hasn't stopped Deutsche, US Bank National Association, New York Bank Mellon, or any of the other major Trustee for hire companies from claiming to be the foreclosing party in foreclosure actions

4.   That such scheduling of an alleged sale date by American Home Trust was, to the best
of Plaintiffs' knowledge, conducted in an attempt to enforce an alleged promissory note executed by Plaintiffs to Advance Mortgage Corporation in 2007.   Plaintiffs contend, purely for the sake of argument, that were any note purported to be held by American Home Trust held to be otherwise legitimate, said note would be unenforceable for other reasons, including, but not necessarily limited to, the following:

      a. That American Home Trust was not, at the time of the alleged
         scheduling of the foreclosure, the party entitled to enforce the alleged
note.

        **(Ex A- RSMo. 400-003.302, Holder in Due Course)**

3

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 377 of 491

b. That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri.

**(Ex P   RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act").**

c. That any such alleged one and only true note was an offer by Plaintiffs to pay back money, if it was loaned to them to purchase a house by the Defendant Advance Mortgage Corporation, hereinafter "Advance" which did not "accept" the offer by funding the loan. Therefore no consideration was ever received by the Plaintiffs from Advance, or any other Party named       herein, or by any party identified in any alleged assignments.

**(See Exhibit D- RSMo 400-003.303, Value and Consideration) (Ex A- RSMo. 400-003.302, Holder in Due Course)**

5.   That any Deed of Trust alleged to be associated with the purported note is also invalid for reasons including, but not necessarily limited to, the following:

a. That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri, including the lack of written permission from Plaintiffs to allow Defendants to negotiate the transaction of the sale and transfer of Plaintiffs' alleged loan using electronic replicas of Plaintiffs' loan instruments and signatures to be used as originals.

**(Ex P   RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act").**

b. That any alleged note or deed of trust, whether valid or not, has, at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., MERS was named as an agent with special powers of sales and assignments in the terms of the alleged Deed of Trust, but MERS is never given these powers or even mentioned in the terms

4

of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. See, *U.S.*

*Supreme*           *Court* Carpenter v. Longan, *83 U.S. 16 Wall. 271 271 (1872)*

"The           **note and mortgage are inseparable; the former as**

**essential, the latter**           **as an incident. An assignment of the note**

**carries the mortgage with**           **it, while an assignment of the latter alone**

**is a nullity."**

(Exhibit E Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY Bifurcation)

## COUNT I

### QUIET TITLE

COMES NOW the Plaintiffs and, for their Petition for an Order of this Court Quieting Title to the subject property in this matter and granting title in fee simple to them, their heirs, or assigns, states to the Court as follows:

1. That any claim to title of the subject property by any Defendant named herein is derived from title held previously by Plaintiffs and purported by that Defendant to have been passed to them, directly or indirectly, from the Plaintiffs.

2. That any purported note related to the property or title in question has been altered and is not original and/or authentic and/or has been transferred by an individual or entity not authorized to do so and cannot be enforced.

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration)

3. That no Defendant herein has now, or at any time, claimed a loss of its money on the alleged subject loan. No Defendant has claimed injury due to Plaintiffs' actions or Plaintiffs' loan documents. Without a pleading of injury there is no claim. If there were an alleged default, then the party injured must claim injury and prove how it was injured.

5

WHEREFORE, Plaintiffs pray this Court enter its Order directing that Defendants clarify their use of the term "amended petition" and for a more clear and definitive statement regarding Defendants listing of affirmative defenses.

## COUNT II

## PETITION FOR AN ORDER FOR SPECIFIC PERFORMANCE UNDER THE STATUTES OF RSMO CHAPTER 400.30 NEGOTIABLE INSTRUMENTS

COMES NOW, the Plaintiffs and for their Petition for an Order Demanding Specific Performance under the Statutes of RSMo Chapter 400.30 Negotiable Instruments state the Court as follows:

1. That this Count pertains to Defendants Advance Mortgage Corporation, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, Am
Ocwen Loan Servicing, LLC fka Homeward Residential, Inc., fka American Home Mortgage Servicing and Deutsche Bank National Trust Company.

2. That Defendants have made it abundantly clear that they intend to foreclose on Plaintiffs' property.

3. That Defendants claim that the right to foreclose, (for one, or the other, or both), on alleged Borrower is "under the Deed of Trust". But, the mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872), "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

(Exhibit F Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY bifurcation) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-003.303, Value and Consideration)

6

4. That Defendants are ignoring the fact that the Deed of Trust is a security document which is junior to a Promissory Note, which is evidence of the debt. While the language of right to sale is indeed in the Deed of Trust, the Deed of Trust is void if it has been bifurcated from the Promissory Note. The Security always follows the debt. The two instruments must always be assigned together and must always be owned in the same name. The Deed of Trust (mortgage) should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.

**(Exhibit F Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY Bifurcation)**

5. That any alleged note and deed of trust in this instant case, whether valid or not, has at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., hereinafter "MERS" was named as an agent for Advance Mortgage with fantastic special powers of sales and assignments in the terms of the alleged Deed of Trust. However MERS is never given these powers by Advance Mortgage, or even mentioned at all in the terms of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. The mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

**(Exhibit F Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY definition of bifurcation)**

6. That Defendants stubbornly and illegally cling to the Deed of Trust as a superior interest that somehow gives them the right to foreclose. This is a lie that has been perpetuated for so long that it is now believed by many to be true. But, this lie is nothing more than myth and legend. It is untrue. Missouri has a very precise body of statute that parties must follow when negotiating and transacting Negotiable Instruments. The Statute RSMo Chapter 400. 300 is actually one chapter of the Uniform Commercial Code which has been adopted by all 50 states. UCC Chapter 3 is the Missouri RSMO 400.3 Negotiable Instruments, as adopted by the State of Missouri. UCC Chapter 9 is the Missouri RSMo 400.9 Secured Instruments.

7. That a Promissory Note belongs to the obligor or issuer of the Note. Plaintiffs's alleged Note was to be held by the actual lender which "funded" Plaintiff's alleged loan. The issuer here, the Plaintiffs, are obliged to know who is holding their Note at any time. Defendants constantly claim in writing that the whereabouts of Plaintiffs' Note is "proprietary information". That is absurd. The Note is the property of Plaintiffs. Borrowers do not pay off their house. A Borrower buys back his Note through payments.

7

8. When Borrowers have paid off, or repurchased, their Note, the Deed of Trust is void. The Note is to be surrendered to the Borrower marked paid. This is not happening after collection in full. Claimants all over the country are foreclosing as alleged Holders in Due Course, yet are not able to exhibit the original Note with all proper endorsements, or surrender it when paid.

(Ex I RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-003.303, Value and Consideration)

9. That fact that Defendants are claiming to be Holder in Due Course means that they are claiming that they are the party who came by the loan by paying for it, obtained it legally and can prove it.

(Ex A- RSMo. 400-003.302, Holder in Due Course)

10. That, this is not the first time that Ocwen has wrongfully enforced the alleged Promissory Note of Plaintiffs. Defendant Ocwen has never recorded any purchase of the loan, or any assignment of the alleged Promissory Note and Deed of Trust, or either one separately. Yet, Ocwen has collected monies for payments,
which is an act of "enforcing the Note".

11. That MERS acting for Advance Mortgage claims that they "sold" the alleged loan of Plaintiffs to The American Home Trust and recorded the assignment on 1-11-2013. Plaintiffs question whether Advance even knows that MERS sold the loan to American Home Trust on its behalf, even though the sale took place 6 years after the closing date of the Trust.

12. That Ocwen under several different aka names, without any apparent claim of any kind to the alleged Promissory Note, then sent coupons and letters to Plaintiffs alleging that Plaintiffs had to send the payments worked out with Advance to Ocwen, but has insisted since that time that it did have the right to enforce the "Deed of Trust". But, Ocwen rarely speaks of the Promissory Note, that needed to be presented to Plaintiffs before acts of collection.

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration) Ex I RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-0033)

13. That the named Lender on Plaintiffs' alleged Promissory Note is Advance Mortgage. Advance did not fund Plaintiff's loan. Advance Mortgage was a licensed broker or originator of mortgage loans who received commissions and fees for arranging a loan, but did not use its own money to fund loans. Advance Mortgage has never answered claims that it has no evidence of

8

funding, such as copies of wire transfers to closing, or copies of front and back of Cashier's Checks. There was no Consideration from Advance Mortgage and there is no proof differently.

**(Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex G RSMo. 400.3.501, Presentment) (Ex D- RSMo 400-003.303, Value and Consideration)**

14. Defendant Advance is using only a copy/replica of the front of the Plaintiffs' alleged Promissory Note for its claim. This is the 4th time since December 31, 2013 that this same front only copy/replica has been sent to Plaintiffs by Defendants.

15. That Plaintiffs are especially concerned that Defendant American Home Trust and Successor Trustee Millsap will again try soon to foreclose claiming to enforce the alleged Note for collection "with rights under the Deed of Trust". Defendants want to "assure" Plaintiffs and the court that they have possession of the Note and that this assurance of Defendants is enough under law. A ten year Treasury Bond is a negotiable instrument. A one hundred dollar bill is a negotiable instrument. Stock Certificates are negotiable instruments. You can't spend a copy of a $100 bill at Walmart. All of these instruments must be presented as originals to collect, surely no one will argue against that.

16. That a Promissory Note is also a negotiable instrument. It must be presented to its maker for exhibit (examination) for collection. There can be no secrets concerning the Plaintiffs as makers of the alleged note. It is not proprietary information.

**(Ex G RSMo. 400.3.501, Presentment)**

17. That this court is the only venue where Plaintiffs can exercise their right as issuers/obligors to have their Note presented to them for examination before collection.

18. That PRESENTMENT is defined by RSMo 400.3-501 as: (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument. (b) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made. (surrender means to return to issuer/obligor) (iv) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or acceptance for failure of the presentment document to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

19. That Defendants Deutsche, Millsap, the American Home Trust and Ocwen are now scheming to foreclose on Plaintiffs' home. In order to foreclose the Defendants are obligated to

9

present the original and authentic Note belonging to the Obligor for his personal inspection. Despite Discovery requests for said presentment, Defendants have refused to do so, under a clear reading of Missouri statutes regarding negotiable instruments as mentioned above. Presentment of original note for Plaintiff's inspection is a necessary prerequisite for collection and a foreclosure sale is a collection effort.

20. That Plaintiffs are unaware of any statutory or case law excusing the Defendants from their obligations under the statutes heretofore cited.

21. That Plaintiffs have no other remedy to compel Defendants to comply with the statutes other than an order requiring Defendants to specifically perform their statutory obligations, before making claims of rights to collect, disburse, or declare default.

22. That in the interest of judicial economy and the economic interests of both the Plaintiffs and Defendants, granting Plaintiffs the remedy of specific performance is appropriate to wit: by putting to the fore the issues highlighted in the above referenced statutes, it will save time and therefore, costs. This immediate action will serve to clarify the most fundamental aspects of this instant case.

**(Ex G RSMo. 400.3.501, Presentment)**

WHEREFORE, Plaintiffs pray this Court for its Order requiring Defendant claimant American Home Trust, Ocwen, Deutsche or any other claimant of being the Holder in Due Course to immediately bring to court, the original and authentic, one and only Promissory Note with all proper and necessary endorsements, unaltered and unchanged having been held in safekeeping, for exhibit and examination as proof that any such alleged Promissory Note exists. If Defendant brings any example claiming it is the alleged Promissory Note, Plaintiffs further requests the court to permit a 3rd party expert examination of the document to vouch for authenticity if there is valid reasoning. This Presentment is necessary, so that Plaintiffs can once and for all see if a document having never been presented does exist. Without such immediate Presentment, Plaintiffs pray this court for an Order of Summary Judgment in favor of Plaintiff.

## COUNT IV

10

# BREACH OF FIDUCIARY DUTY

COMES NOW the Plaintiffs and, for their claim of Breach of Fiduciary Duty against Defendants Ocwen, Deutsche Bank National Trust Company, and the American Home Trust, state to the Court as follows:

1. That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to all Counts as though fully set forth herein.

2. That this Count pertains solely to Deutsche Bank National Trust Company, Ocwen, and The American Home Trust.

3. That Millsap acting as Successor Trustee of the loan and Deutsche as agent Trustee of the American Home Trust in the purported scheduling of a foreclosure sale referred to above.

4. That Millsap and Deutsche intend to sell the property at such purported foreclosure sale to American Home Trust using a fraudulent credit bid and may yet do it.

(Ex J RSMo 400-003.307, Notice of Breach of Fiduciary Duty)

5. That Millsap and Deutsche were to conduct such sale to American Home Trust using a non-existent credit bid from American Home Trust and not for cash or any cash equivalent.

6. That Millsap & Singer had a duty to conduct a sale that was fair and impartial to both the alleged foreclosing party as well as the party being foreclosed upon.

(Ex J RSMo  400-003.307,  Notice of Breach of Fiduciary Duty)

7. That Millsap & Singer failed to ascertain that Deutsche, as just an agent Trustee, or the American Home Trust, were neither one, in fact, the party entitled to enforce any note. The Correspondence to Plaintiffs from Defendants clearly shows that, even if the alleged note were to be valid, the party holding title to it was not American Home Trust. MERS was named on the alleged Security Instrument as a "beneficiary" of unknown agency and special powers. But MERS was never given these same powers or even mentioned on the alleged Promissory Note. This constitutes an intentional bifurcation, or splitting of the Note from the Security Instrument.

11

These two documents had very different terms creating a nullity of both documents. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.**

(Exhibit E Case U.S. Supreme Court <u>Carpenter v. Longan</u>, 83 U.S. 16 Wall. 271 271 (1872) (APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY)

8. That trying to conduct a foreclosure sale without making even the minimal determination of whether the party attempting to foreclose has the right to enforce the note can hardly be "fair" and "impartial" to the party whose property is being taken.

9. That Ocwen and Deutsche acted in conscious disregard of Plaintiffs' rights and that Plaintiffs were damaged thereby and should be awarded nominal actual damages as well as punitive damages sufficient to deter Ocwen, Deutsche Bank National Trust Company, and the American Home Trust any others likewise situated from such conduct in the future.

WHEREFORE, Plaintiffs pray this Court enter its Judgment against Deutsche National Trust Company, Ocwen Servicing and The American Home Trust for Breach of Fiduciary Duty and awarding Plaintiffs nominal actual damages as well as punitive damages in an amount sufficient to deter these Defendants and others similarly situated from such conduct in the future as well as for such other relief as the Court deems just.

## COUNT V

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

### INCLUDING PUNITIVE DAMAGES

COMES NOW the Plaintiffs and, for their claim of violations of the Missouri Merchandising Practices Act against Defendants Advance Mortgage Corporation, Ocwen Loan Servicing, LLC fka Homeward Residential, Inc. fka American Home Mortgage Servicing, hereinafter "Ocwen", Millsap & Singer, Deutsche Bank National Trust Company, and American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust" and state to the Court:

12

1. That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to all Counts as though fully set forth herein.

2. That Defendants working in concert created the illusion that an alleged loan contract which named Advance Mortgage Corporation as lender, had actually been funded by Advance Mortgage Corporation when it had not. Written requests for proof showing authentic documents from this transaction including copies of funding wires; cash; or other equivalent payment coming from Advance Mortgage Corporation to fund any alleged closing regarding Plaintiffs have gone unanswered by all Defendants.

**(Ex D  RSMo. 400.3-303, Value and Consideration)**

3. Defendants have employed deceptive practices rising to fraud, false pretense, false promises regarding a contract, misrepresentation, and the concealment, suppression and omission of material facts to use non-existent allegedly duly perfected contractual documents in an attempt to take Plaintiffs' home using a fraudulent Missouri non-judicial foreclosure sale while representing to Plaintiffs and the court that one of the Defendants, the American Home Trust was a Holder in Due Course of a certain alleged Promissory Note. Defendants all claim that the American Home Trust became so by purchasing the note legally with funds intended for that purpose. No such original legal document has been proffered.

**(Ex A RSMo. 432.010, Statute of Frauds-Contracts must be in writing), (Ex C RSMo. 400.3-501, Presentment), ( Ex G RSMo.400.3-404, Imposter/Fictitious Payee) (Ex D RSMo. 400.3-303, Value and Consideration)  (Ex I RSMo 400-003.306, Claims to an instrument)**

4. That the alleged January 11, 2012 assignment of the alleged subject 2007 loan by MERS, as Grantor, while acting as an alleged agent for Advance, to the Grantee American Home Trust can never have happened. This is because Advance Mortgage Corporation in 2006 was an originator or broker of home loans.   In this capacity Advance Mortgage Corporation took fees in compensation for introducing Borrowers and Lenders to each other, and never funding any loans with its own money.   This is in contrast to its being the named Lender on the loan documents. The Power of attorney or agency agreement between MERS and Advance was being used to assign an alleged loan 5 years after the closing.   MERS has repeatedly stated in public and on its website that it did not own or have equity in any loans at any time.   This "nominee" contract has never been presented to Plaintiff for inspection even though Plaintiff has requested this in writing and will again in Discovery.   Advance Mortgage has stated in sworn Discovery that it did

13

authorize the assignment, but in answer to the question elsewhere Advance states that it allegedly assigned the loan to American Home Mortgage on the day of closing March 18, 2007, but there is no such recorded assignment of the purchase of the loan by American Home Mortgage from Advance. The presentation that this assignment happened is misrepresentation and fraud by definition. A quick reading of the two documents will show this, if in fact, both authentic alleged documents can be found.

5. That even if Advance Mortgage Corporation could come up with some sort of document to present to the court proving it claim of funding the loan. The fact that the terms of the alleged Deed of Trust gives MERS powers to assign the Deed of Trust, however MERS is not given this power in the alleged Promissory Note, nor is MERS ever mentioned in the alleged Promissory Note copies from closing. This is an intentional bifurcation, or splitting of the two documents and cannot be repaired. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**

**(Ex A RSMo, 432.010, Statute of Frauds- Contracts to be in writing) (Ex H RSMo, 400-003.407, Alteration) (Ex A RSMo, 400-003.302 Holder in Due Course) (Ex E RSMo, 400-003.203, Transfer of instrument) (Ex I RSMo, 400-303.306, Claims to an Instrument) (Ex G RSMo. 400.3-404, Imposter/Fictitious Payee) ((Ex D RSMo. 400.3-303, Value and Consideration)**

6. Most importantly, all Mortgage Backed Securities with REMIC trusts are governed by a Pooling and Servicing Agreement which is a critical component of every Mortgage Backed Security registration with the SEC. Every Pooling and Servicing Agreement includes a Cutoff Date (the date which all loans to be purchased by the Trust are identified) and a Closing Date (the date which all loans to be purchased are deposited into the Trust. This date is also called the Startup Date of the Trust. After this date, no new loans can be placed into the Trust without drastic consequences to the investors who have purchased bonds issued by the Trust. Certain loss of the IRS tax haven status would follow. This 2007 loan must have been deposited into the Trust by the Closing Date of June 6th, 2007. However, the recorded assignment from MERS on behalf of Advanced Mortgage is transferred into the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 on January 13, 2013. This almost 6 years too late. This is an absolute rule. There are no special situations that would allow this transfer. If the loan was never in the Trust where was it? How does the Trust claim it is the Holder in Due Course? There is no possibility of reconciling these transactions. *For the Closing Date see the recent Moody's report attached with the Exhibits.*

14

7. Defendants and others contrived these illegal and impossible transactions to wrongfully take Plaintiffs home. None of these Defendants can prove they funded the loan or the subsequent purchases of the alleged loan. American Home Trust, and maybe others, was scheming to take a house without any investment. American Home Trust, or is master, was trying to get a home for free. This sale did not happen, but the threat of it has not been extinguished and this fact creates constant and unbearable anxiety for Plaintiffs.

WHEREFORE, Plaintiffs pray this Court enter its Judgment against Defendants Advance Mortgage Corporation, Ocwen Loan Servicing, LLC fka Homeward Residential, Inc.fka American Home Mortgage Servicing, Deutsche Bank National Trust Company, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, and Millsap & Singer, the Foreclosure Trustee, for violations of the Missouri Merchandising Practices Act, and awarding Plaintiffs nominal actual damages as well as punitive damages in an amount sufficient to deter Defendants and others similarly situated from such conduct in the future as well as for such other relief as the Court deems just.

Respectfully Submitted,

Barre Eugene Hunter Pro Se          Venda Marie Hunter Pro Se

15

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE

| | |
|---|---|
| **BARRE EUGENE HUNTER, et al.,** ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 1416-cv00681** |
| **v.** ) | |
| **ADVANCE MORTGAGE** ) | |
| **CORPORATION, et al.,** ) | **Division 13** |
| **Defendant.** ) | |

## MOTION OF ADVANCE MORTGAGE CORPORATION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Pursuant to S. Ct. R. 55.27(a)(6), defendant Advance Mortgage Corporation ("Advance"), moves to dismiss the **Petition Judgment Quiet Title, Petition for and Order for Specific Performance under Missouri Statute Governing Negotiable Instruments Conversion of Instrument and Unjust Enrichment Breach of Fiduciary Duty Including Punitive Damages Violations of the Missouri Merchandising Practices Act Including Punitive Damages** ("Petition"), filed January 9, 2014. This is a motion to dismiss for failure to state a claim upon which relief can be granted. The basis for this motion is res judicata. Matters outside the pleadings are presented in this motion, and Advance requests that this Court treat this motion as a motion for summary judgment.

1. These same two plaintiffs, Barre Eugene Hunter and Venda Marie Hunter, brought an earlier civil action in this Court against Advance in Case No. 1316-cv01602.

2. This Court dismissed the earlier case after Advance filed a motion to dismiss for failure to state a claim upon which relief can be granted, which was treated as a motion for summary judgment. The Order granting a dismissal to Advance was entered on December 16, 2013. It appears the dismissals in that case were effective as a final judgment on December 16, 2013.

3. The Hunters did not appeal the dismissals in Case No. 1316-cv01602.

1

4. The Hunters are attempting to bring a second civil action based on the same acts, contracts and transactions – the same facts and circumstances which constitute the foundation of the claim in Case No. 1316-cv01602.

5. The first case brought by the Hunters was the case in which the Hunters sought to assert the unenforceability of rights in the property at 3020 S. Fields Road, Oak Grove, Missouri, based on allegations about a Promissory Note and a Deed of Trust the Hunters had given to obtain financing for their residence.

6. Advance was the loan originator for residential loan made in 2006. Advance has no further role in any dispute plaintiffs have with the current holder of the Promissory Note and Deed of Trust.

7. Under the doctrines of res judicata and bar and merger, the petition must be dismissed against Advance.

8. A separate statement of uncontroverted facts is attached. Advance adopts by this reference as its suggestions supporting dismissal the briefing submitted by defendant Millsap & Singer, LLC in the form of the **Suggestions in Support of Motion to Dismiss by Millsap and Singer, LLC**.

ACCORDINGLY, for the reasons stated above, the Petition should be dismissed against Advance Mortgage Corporation for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Thomas M. Franklin*
Thomas M. Franklin, Mo. Bar 32358
THE FRANKLIN LAW FIRM
9140 Ward Parkway, Suite 200
Kansas City, Missouri 64114
816.941.2121 – telephone

2

816.822.8222 – telecopy
tom.franklin@tmflaw.com
ATTORNEY FOR
Advance Mortgage Corporation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion to Dismiss was deposited into the U.S. First Class Mail or served via the automatic notice function of the electronic filing system on this 15th day of April 2014 addressed to:

Barre Eugene Hunter
3020 S FIELD ROAD
OAK GROVE, MO 64075

Venda Marie Hunter
3020 S FIELD ROAD
OAK GROVE, MO 64075

Michael J. Wambolt
Millsap & Singer, LLC
612 Spirit Drive
St. Louis, MO 63005
Electronic service

*/s/ Thomas M. Franklin*
Thomas M. Franklin

3

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

BARRE E HUNTER, et al., )
                Plaintiffs, )     **Case No. 1416-CV00681**
                      )
v. )    **Division 13**
                      )
 ADVANCE MORTGAGE )
CORPORATION, )
              Defendant. )

## ORDER

NOW, on this 8th day of April, 2014, the Court takes up for consideration Defendant's

Motion for Enlargement of Time to Respond to Plaintiff's Petition, filed with the Court on

March 19, 2014. After full consideration of the matter, and being duly advised of the same, the

Court determines that Defendant's motion should be, and is hereby, **SUSTAINED.** Defendant

shall have until, and including April 22, 2014, to respond to Plaintiff's Petition.

      **IT IS SO ORDERED.**

**CHARLES H MCKENZIE**, Judge

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 393 of 491

**Certificate of Service**

This is to certify that a copy of the foregoing was hand
delivered/faxed/emailed/mailed and/or sent through
the eFiling system to the following on 4/8/2014.

BARRE E HUNTER, Plaintiff Acting Pro Se, 3020 S FIELDS RD, OAK GROVE, MO 64075
-,
VENDA M HUNTER, Plaintiff Acting Pro Se, 3020 S FIELDS RD, OAK GROVE, MO 64075
-,
MICHAEL ERNEST BOYD, Attorney for Defendant, THE BOYD LAW GROUP, L.C., 300
ST. PETERS CENTRE BLVD., STE. 230, SAINT PETERS, MO 63376
(636) 447-8505, mboyd@boydlawlc.com
THOMAS M FRANKLIN, Attorney for Defendant, 9140 WARD PARKWAY, SUITE 200,
KANSAS CITY, MO 64114
(816) 822-8222, tmflaw@swbell.net

Kathryn Cox, Law Clerk Division 13

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 394 of 491

Electronically Filed - Jackson - Independence - April 07, 2014 - 11:57 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

BARRE EUGENE HUNTER, et al., )
                                         )
Plaintiffs,                              )
                                         )
v.                                       )    Case No. 1416-CV00681
                                         )
ADVANCE MORTGAGE CORPORATION, et al.,)   Div. No. 13
CORPORATION, et al.,                     )
                                         )
Defendants.                              )

## SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANT MILLSAP & SINGER, LLC

Defendant Millsap & Singer, LLC, through the undersigned counsel and pursuant to Rule

55.27(a)(6)[1], 55.22, and Local Rule 37.4, states the following for its Suggestions in Support of

Motion to Dismiss Plaintiffs' Amended Petition:

A.    Procedural History:

1.    On January 24, 2013, Plaintiffs filed their first lawsuit, Case No. 1316-CV01602

which was assigned to this Court. Plaintiffs' Petition included claims for Quiet Title,

Declaratory Judgment, Malicious Prosecution, and Breach of Fiduciary Duty. The Defendants in

the 2013 lawsuit were Advance Mortgage Corporation; Deutsche Bank National Trust Company

as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage Backed Pass-Through

Certificates, Series 2007-3; Millsap & Singer, P.C.; and the residence at 3020 S. Field Road, Oak

Grove, Missouri 64075.

2.    On May 15, 2013, Plaintiffs amended their Petition in the 2013 lawsuit to include

claims for Quiet Title and Breach of Fiduciary Duty.

---

[1] Unless otherwise noted, all procedural references are to the 2014 Missouri Rules of Civil Procedure.

3. On December 16, 2013, this Court entered an Order granting Advance Mortgage Corporation's Motion to Dismiss and an Order granting Millsap & Singer, P.C.'s Motion for Summary Judgment. Plaintiffs did not appeal or otherwise challenge the above Orders.

4. Instead, on January 9, 2014, Plaintiffs filed the above captioned lawsuit with this Court. Plaintiffs' Petition identified claims for Quiet Title, Specific Performance, Conversion, Unjust Enrichment, Breach of Fiduciary Duty, and Missouri Merchandising Practices Act Violations. The Defendants named in the 2014 lawsuit are Advance Mortgage Corporation; Deutsche Bank National Trust Company; American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3; Ocwen Loan Servicing, LLC fka Homeward Residential, Inc., fka American Home Mortgage Servicing; Millsap & Singer, LLC; and the residence at 3020 S. Field Road, Oak Grove, Missouri 64075.

5. On February 11, 2014, Plaintiffs filed an Amended Petition which identified claims for Quiet Title, Conversion, Unjust Enrichment, Specific Performance, Breach of Fiduciary Duty, and Missouri Merchandising Practices Act Violations. The Defendants identified in the Amended Petition are the same as the ones named in Plaintiffs' original Petition filed on January 9, 2014.

6. According to Court records, Defendants American Home Mortgage Assets Trust 2007-3 and Deutsche Bank National Trust Company were personally served on March 12, 2014. To date, Plaintiffs have not requested summons for Millsap & Singer, LLC and have made no attempt to serve same.

B. Standard of Review:

(i). Claim/Issue Preclusion.

"When a motion to dismiss is predicated on res judicata, the trial court may take judicial notice of the prior judgment." *WEA Crestwood Plaza, L.L.C. v. Flamers Charburgers, Inc.,* 24

2

S.W.3d 1, 5 n.2 (Mo. App. E.D. 2000); see also *Lauber-Clayton, LLC v. Novus Properties Company,* 407 S.W.3d 612 (Mo. App. E.D. 2013). Res judicata, or claim preclusion, bars re-litigation of issues addressed by a prior judgment and all claims related to the subject matter of the prior lawsuit that the parties, exercising reasonable diligence, could have addressed in the prior action. See e.g. *Chesterfield Village, Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002); see also *Kesterson v. State Farm Fire & Cas. Co.,* 242 S.W.3d 712, 715-16 (Mo. banc 2008). In other words, if claim preclusion applies, a litigant cannot raise claims that should have been filed in the prior lawsuit. *Id.*, at 715. Claim preclusion is designed to prevent a multiplicity of lawsuits. *Am. Polled Hereford Ass'n v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo. 1982). For the doctrine to apply, the following must be shown: (1) identify of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made. *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). A person or party is identical for purposes of claim preclusion when it is the same party that litigated the prior suit or when the new party was in privity with the party that litigated the prior suit. See e.g. *Lomax v. Sewell*, 50 S.W.3d 804, 809 (Mo. App. W.D. 2001). "Privity" for purposes of determining whether parties are identical, "is premised on the proposition that the interests of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had his or her day in court." *Id.* In keeping with established tradition and practice, courts look to the caption of the prior lawsuit and the substance of the petition in same to determine whether privity exists. See *Watson v. Watson*, 562 S.W.2d 329, 331 n.2 (Mo. 1978). Claim preclusion encompasses the law of merger and bar. *Migra v. Warren City Sch. Dist. Db. of Educ.*, 465 U.S. 75, 77 n.1 (1984). "Merger" is the concept that, when a plaintiff prevails in a lawsuit arising from a particular transaction, all

3

claims that plaintiff raised or could have raised are merged into the judgment. *Lauber-Clayton*, at 618. "Bar" is the related concept that deems a judgment in favor of a defendant to act as a bar to subsequent actions by plaintiff against the defendant for claims that were litigated, or could have been litigated, in the prior lawsuit. *Id.*; see also *King Gen. Contractors*, at 501-02.

Similarly, the doctrine of collateral estoppel, or issue preclusion, prevents re-litigation of issues previously decided and incorporated into an earlier judgment. See e.g. *Sexton v. Jenkins & Assocs, Inc.,* 152 S.W.3d 270, 273 (Mo. banc 2004). "The doctrine requires that the issue was fully and fairly litigated, that the issue was essential to the earlier judgment, and that the earlier judgment be final and binding on the party against whom it is asserted." *Id.* Issue preclusion contains the following elements: (1) the issue decided in the prior action was identical to the issue presented in the current action; (2) the prior judgment resulted in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or in privity with the party in the prior action; and (4) the party had a full and fair opportunity to litigate the issues in the prior proceeding. *Woods v. Mehlville Chrysler-Plymouth*, 198 S.W.3d 165, 168 (Mo. App. E.D. 2006). "Specific findings on an issue are not required to preclude re-litigation of that issue on collateral estoppel principles." *Carr v. Holt,* 134 S.W.3d 647, 650 (Mo. App. E.D. 2004). "An issue that has been unambiguously, necessarily, and implicitly determined by a judgment cannot be litigated again." *Id.*

(ii). Failure to Prosecute.

Pursuant to Local Rule 37.4, "[i]f a party shall fail to prosecute an action with reasonable diligence, the court may on its own motion enter a judgment dismissing the action for want of prosecution with or without prejudice." *Id.* Local Rule 37.4 reflects the well-established principle that Missouri Courts have inherent authority, in the exercise of sound judicial discretion, to dismiss a case for failure to prosecute with due diligence. See e.g. *Branson Hills*

4

*Associates, L.P. v. First American Title Inc., Co.,* 258 S.W.3d 568, 573 (Mo. App. S.D. 2008). To come to the decision to dismiss for lack of prosecution, the Court may consider the length of delay, combined with other attendant circumstances, to determine whether the party opposing dismissal had a reasonable opportunity to bring the matter to trial. *State ex rel. Missouri Highway and Transp. Com'n v. McCann*, 685 S.W.2d 880, 886 (Mo. App. W.D. 1984). The policy behind dismissal due to lack of prosecution is one of fairness and effective management of judicial resources. *Roulhac v. Christian Hosp. Northeast-Northwest*, 902 S.W.2d 333, 338 (Mo. App. E.D. 1995). Pro se claimants are held to the same standards as litigants represented by counsel. See e.g. *Picerno v. Nichols-Fox*, 205 S.W.3d 883, 887 (Mo. App. W.D. 2006); see also *Kuenz v. Walker*, 244 S.W.3d 191, 193 (Mo. App. E.D. 2007). "It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy, and fairness to all parties." *Id.*

(iii). Failure to State a Claim.

In Missouri, facts plead in pleadings are liberally construed in favor of plaintiffs. *Adams v. One Park Place Investors*, LLC 315 S.W.3d 742 (Mo. App. W.D. 2010). If a petition sets forth any set of facts that, if proven, would entitle the Plaintiffs to relief, then the petition states a claim. *Id*. That said, under Missouri's "fact-pleading standard" as set out in Rule 55.05, a petition must "contain a short and plain statement of the facts showing that the pleader is entitled to relief. *Williams v. Barnes & Noble, Inc.*, 174 S.W.3d 556, 559 (Mo. App. W.D. 2005); see also *Charron v. Holden*, 111 S.W.3d 553, 555 (Mo. App. W.D. 2003). To properly meet Missouri's pleading requirements, [t]he plaintiff has to plead ultimate facts, *not conclusions*, which, if true, support each and every proof element of his claim." *Doyle v. Crane*, 200 S.W.3d 581, 590 (Mo. App. W.D. 2006) (*emphasis added*). Failure to plead facts showing entitlement to the relief sought deprives the trial court of jurisdiction to grant the requested relief. *Williams,* at

5

559. Consequently, "[w]here a petition contains only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted." *Westphal v. Lake Lotawana Ass'n, Inc.*, 95 S.W.3d 144, 152 (Mo. App. W.D. Mo. 2003); *see also State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009). Under Rule 55.22, "[w]hen a claim or defense is founded upon a written instrument, the same may be pleaded according to legal effect, or may be recited at length in the pleading, or a copy may be attached to the pleading as an exhibit." *Id.*

    C.    Argument:

    1. Plaintiffs' claims against Millsap & Singer, LLC are barred by Claim Preclusion.

A review of the Caption and substance of Plaintiffs' pleadings in Case No. 1316-CV01602 reveals that Plaintiffs' initial Petition identified claims for Quiet Title, Declaratory Judgment, Malicious Prosecution, and Breach of Fiduciary Duty against, among others, Millsap & Singer, P.C. A copy of the Petition is attached as Exhibit A and is incorporated by reference. Millsap & Singer, P.C. was named in its capacity as Trustee in the 2013 lawsuit which Plaintiffs filed to prevent a pending foreclosure on their home located at 3020 S. Fields Road, Oak Grove, Missouri 64075 (the Property) (identified in the caption for the 2013 and 2014 lawsuits as a "Defendant"). Exhibit A. Though Plaintiffs initially filed the 2013 lawsuit pro se, they subsequently retained counsel who filed an Amended Petition that identified claims for Quiet Title and Breach of Fiduciary Duty against the same Defendants identified in their initial pleading and for the same purpose of preventing foreclosure on the Property. A copy of the Amended Petition is attached as Exhibit B and is incorporated by reference. Millsap & Singer, LLC, as attorney of record for Millsap & Singer, P.C., moved for Summary Judgment in the 2013 lawsuit which the Court granted on December 16, 2013. A copy of the Court's Order is attached as Exhibit C and is incorporated by reference. That same day, the Court also granted a

6

Motion to Dismiss filed by Defendant Advance Mortgage Corporation, which is also named as a Defendant in Plaintiffs' current lawsuit. A copy of the Order is attached as Exhibit D and is incorporated by reference.

A review of Plaintiffs' current lawsuit reveals that it includes the same parties, seeks to prevent a foreclosure sale on the same property, and includes claims that were reasonably known to Plaintiffs at the time of the 2013 lawsuit and could easily have been included in same. In particular, Plaintiffs initial Petition and Amended Petition in the 2013 lawsuit identified two of the same claims listed in the current lawsuit, specifically Quiet Title and Breach of Fiduciary Duty. Exhibits A – B. Plaintiffs had a full and fair opportunity to litigate the claims identified in the prior lawsuit which resulted in entry of an Order granting Summary Judgment in Millsap & Singer, P.C.'s favor. Absent new facts or circumstances, which Plaintiffs fail to plead in the Current lawsuit, Plaintiffs' claims against Millsap & Singer, LLC are barred under Missouri law as they could have been addressed in the 2013 lawsuit. Under the circumstances, grounds exist to dismiss all claims against Millsap & Singer, LLC with prejudice.

2. Plaintiffs' claims against Millsap & Singer, LLC are barred by issue preclusion.

Plaintiffs' Quiet Title and Breach of Fiduciary Duty claims raise issues that were previously litigated in the 2013 lawsuit and resulted in an Order granting Summary Judgment in favor of Millsap & Singer, P.C. Exhibit C. Privity exists between Millsap & Singer, P.C. and Millsap & Singer, LLC as the latter was the attorney of record for Millsap & Singer, P.C. in the 2013 lawsuit. Plaintiffs had a full and fair opportunity to litigate the prior lawsuit but failed to either demonstrate contested fact issues that would prevent entry of Summary Judgment, or to challenge this Court's entry of Summary Judgment in Millsap & Singer, P.C.'s favor. The above facts demonstrate that Plaintiffs are barred under the doctrine of Issue Preclusion from re-litigating claims of Quiet Title and Breach of Fiduciary Duty against either Millsap entity.

7

Consequently, cause exists to dismiss Plaintiffs claims for Quiet Title and Breach of Fiduciary Duty against Millsap & Singer, LLC with prejudice.

    3. Dismissal is proper for lack of prosecution.

Dismissal is proper due to Plaintiffs' failure to prosecute this lawsuit with reasonable diligence against Millsap & Singer, LLC. Local Rule 37.4, states, in relevant part, "[i]f a party shall fail to prosecute an action with reasonable diligence, the court may on its own motion enter a judgment dismissing the action for want of prosecution with or without prejudice." *Id.* Local Rule 37.4 reflects the well-established principle that Missouri Courts have inherent authority, in the exercise of sound judicial discretion, to dismiss a case for failure to prosecute with due diligence. See e.g. *Branson Hills Associates, L.P. v. First American Title Inc., Co.*, 258 S.W.3d 568, 573 (Mo. App. S.D. 2008). To come to the decision to dismiss for lack of prosecution, the Court may consider the length of delay, combined with other attendant circumstances, to determine whether the party opposing dismissal had a reasonable opportunity to bring the matter to trial. *State ex rel. Missouri Highway and Transp. Com'n v. McCann*, 685 S.W.2d 880, 886 (Mo. App. W.D. 1984). The policy behind dismissal due to lack of prosecution is one of fairness and effective management of judicial resources. *Roulhac v. Christian Hosp. Northeast-Northwest*, 902 S.W.2d 333, 338 (Mo. App. E.D. 1995).

As noted above, Plaintiffs filed this lawsuit on January 9, 2014, and then filed an Amended Petition on February 11, 2014. Plaintiffs did not request summons for Millsap & Singer, LLC and have made no attempt to serve same. Rule 54.01 requires summons to issue upon the filing of any pleading that requires service of process. Rule 54.21 sets a thirty day deadline to obtain personal service and gives the Court leave to extend the time for service up to 90 days. Here, no attempt has been made to serve Millsap & Singer, LLC or otherwise prosecute this lawsuit against Millsap & Singer, LLC, or, for that matter, any of the other Defendants as it

8

has been more than three months since they filed this lawsuit and they have not even bothered to issue written discovery to any of the parties to this action. Plaintiffs' failure to prosecute this lawsuit reveals their true intent in filing same, namely to harass Defendants and unnecessarily delay foreclosure on their home. As noted above at length, Plaintiffs pursued a prior foreclosure lawsuit and lost. Rather than challenge this Court's Orders which dismissed the prior lawsuit, Plaintiffs simply filed a new lawsuit that asserts some of the same claims and adds new one for good measure. Plaintiffs' actions are inexcusable and provide the very attendant circumstances that this Court may consider when determining whether to dismiss for lack of prosecution under Local Rule 37.4. Based on the foregoing, dismissal is proper with respect to Millsap & Singer, LLC, due to Plaintiffs' failure to prosecute this lawsuit against said party, and Plaintiffs' bad faith motive in filing this lawsuit.

    4. Failure to State a Claim.

Even if Plaintiffs' current claims are not barred by the doctrines of Claim and Issue Preclusion, dismissal is still proper under Rule 55.27(a)(6) for failure to state a claim upon which relief can be granted. For starters, Plaintiffs' Quiet Title claim is deficient as it omits key elements of said claim and it fails to comply with Rule 55.22. In Quiet Title actions, the burden of establishing superior title falls on the party that brought the action and said party must "prevail on the strength of [his] own title and not on any weakness in the title of the other party." See *Robson v. Diem*, 317 S.W.3d 706 HN5 (Mo. App. W.D. 2011) (quoting *Jetz Serv. Co. v. K.C. Citadel Apartments, L.L.C.,* 59 S.W.3d 527, at 529 (Mo. App. W.D. 2001). To state a proper cause of action for Declaratory Judgment, a court must be presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake and subject to immediate or prospective

9

consequential relief; (3) a controversy that is ripe for judicial determination; and (4) an inadequate remedy at law. See *Lane v. Lensmeyer*, 158 S.W.3d 218, 222 (Mo. banc 2005).

Here, Plaintiffs' Quiet Title claim fails to demonstrate a justiciable controversy as they do not plead ultimate facts that establish their superior interest in the Property. Instead, they attack Defendants' interests in the Property through conclusory allegations which this Court is free to ignore. *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009). They also fail to plead or demonstrate the lack of an adequate remedy at law, and they make no attempt to comply with Rule 55.22. Rule 55.22 makes clear that "[w]hen a claim or defense is founded upon a written instrument, the same may be pleaded according to legal effect, or may be recited at length in the pleading, or a copy may be attached to the pleading as an exhibit." *Id.* Absent compliance with Rule 55.22, the Amended Petition fails to present the Court with evidence of a justiciable controversy in that neither the Court, nor Defendants can determine what, if any documents, Plaintiffs rely on to assert superior title. Moreover, compliance with Rule 55.22 would further illustrate a legally protectable interest in the Subject Property and the lack of an adequate remedy at law. As Plaintiffs have not complied with Rule 55.22, they fail to state a cause of action for Quiet Title upon which relief can be granted.

Plaintiffs' next claim is pure gibberish as it requests Specific Performance under "the Statutes of RSMO Chapter 400.30 Negotiable Instruments." Amended Petition, Count II. Chapter 400 of the Missouri Revised Statutes represents Missouri's adoption of the Uniform Commercial Code. The Negotiable Instruments portion of Missouri's UCC is found in Article 3 of Chapter 400, RSMo. and comprises the following statutes: §§ 400.3-101 – 400.3-119, RSMo. A review of the above statues does not reveal a provision that provides a cause of action for Specific Performance in relation to a Negotiable Instrument. In addition, Plaintiffs do not allege that they and Millsap & Singer, LLC are parties to a negotiable instrument, or that Millsap &

10

Singer, LLC has breached any of its duties to Plaintiffs under such an instrument. Under the circumstances, Plaintiffs' fail to state a viable cause of action for Specific Performance against Millsap & Singer, LLC.

Plaintiffs' Breach of Fiduciary Duty claim states that it is directed solely against Ocwen, Deutsche Bank National Trust Company, and American Home Trust. That said, Paragraphs 5 – 7 make specific reference to "Millsap" and could be construed to represent a claim against said Party. Amended Petition, pg. 11. Though Missouri courts recognize that a fiduciary relationship exists between a trustee and a named debtor in a Deed of Trust, see e.g. *Killion v. Bank Midwest*, 987 S.W.2d 801, 813 (Mo. App. W.D. 1998), in order for a trustee to be held liable for a breach of said duties, there must be a "showing of fraud, unfairness, or an abuse of discretion in his execution of the *sale.*" *Hoer v. Wurdack*, 766 S.W.2d 673, 674 (Mo. App. E.D. 1989) (emphasis added). "When requested by the creditor to foreclose, the trustee may proceed without making any affirmative investigation unless the trustee has actual knowledge of anything which should legally prevent the foreclosure." *Killion*, at 813 (Mo. App. W.D. 1998).

In this case, the Amended Petition alleges in Paragraph 5 that "Millsap," in conjunction with "Deutsche," intended to sell the Property at foreclosure via a credit bid instead of a cash bid. Amended Petition, pg. 11. Paragraph 6 asserts that "Millsap & Singer had a duty to conduct a sale that was fair and impartial to both the alleged foreclosing party as well as the party being foreclosed upon." Amended Petition, pg. 11. Finally Paragraph 7 asserts Millsap & Singer failed to ascertain who held the Promissory Note prior to foreclosure. Amended Petition, Pgs. 11 – 12.

It is clear that the above allegations reference perceived duties owed by Millsap & Singer, LLC acting as Trustee under the Deed of Trust, to Plaintiffs. Plaintiffs make no attempt to cite to the terms of the Deed of Trust or attach same to the Amended Petition, as required by

11

Rule 55.22. Recall, where a claim or defense is based on a written instrument, Rule 55.22 requires pleadings to state the legal effect of same, recite the terms of the instrument at length, or attach a copy of the instrument as an exhibit. *Id.* This is not some idle suggestion contained within the Missouri Supreme Court Rules. Missouri Courts have consistently affirmed that the substantial legal terms of such written agreements must be set forth in the pleading, or at least referenced therein as exhibits. See, and *Sparks v. PNC Bank*, 400 S.W.3d 454, 459 (Mo. App. E.D. 2013); and *Missouri Farmers Association, Inc. v. Todd*, 667 S.W.2d 736, 737 (Mo. App.E.D. 1984). Absent compliance with Rule 55.22, Plaintiffs cannot assert a claim for Breach of Fiduciary Duty against Millsap & Singer, LLC, as said claim is based on a written instrument that is not properly before the Court.

In addition, Plaintiffs make no attempt to plead with any degree of particularity, a "showing of fraud, unfairness, or an abuse of discretion in his execution of the *sale.*" *Hoer v. Wurdack*, 766 S.W.2d 673, 674 (Mo. App. E.D. 1989) (emphasis added). Of note, Plaintiffs fail to even allege that an actual sale took place. Instead, they simply allege, in conclusory fashion, that Millsap failed to properly investigate holder status. Amended Petition, pg. 11, ¶ 7. This allegation is without merit as Missouri law does not require a trustee to make an affirmative investigation prior to sale unless it has knowledge of a fact or event that would legally prevent foreclosure. *Killion*, at 813 (Mo. App. W.D. 1998). Plaintiffs do not allege that Millsap & Singer, LLC has knowledge of a type that would legally prevent foreclosure on the Property. Absent such knowledge, or compliance with Rule 55.22 for that matter, Plaintiffs' Breach of Fiduciary Duty claim fails to state a cause of action against Millsap & Singer, LLC upon which relief can be granted.

Plaintiffs' claim for conversion must fail as this lawsuit involves title to real property and Conversion actions are limited to disputes over personal property. See e.g. *Dwyer v. Unit Power,*

12

*Inc.*, 965 S.W.2d 301, 305 (Mo. App. 1998). Even if this lawsuit did concern the wrongful taking of Plaintiffs' personal property, they fail to describe or identify specific chattel acquired by Defendants in general, or Millsap & Singer, LLC in particular. Absent specific allegations that Millsap & Singer, LLC acquired personal property belonging to Plaintiffs, their Conversion claim fails as a matter of law.

Plaintiffs' Unjust Enrichment claim is also deficient as the Amended Petition fails to even plead the basic elements for such a cause of action which includes the following: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. See e.g. *White v. Pruiett,* 39 S.W.3d 857, 863 (Mo. App. W.D. 2001); see also *Pitman v. City of Columbia,* 309 S.W.3d 395, 402 (Mo. App. W.D. 2010). The last element, unjust retention of the benefit, is considered the most significant and most difficult of the elements to apply. See e.g. *Assoc. Eng'g. Co. v. Webbe,* 795 S.W.2d 606, 608 (Mo. App. E.D. 1990). Plaintiffs make no attempt to identify the benefit conferred upon Millsap & Singer, LLC, or state that said Defendant knew it was receiving a benefit, or allege that it accepted a benefit from Plaintiffs under unjust circumstances. Rule 55.05 requires Plaintiffs to set forth ultimate facts in support of each claim identified in their pleadings. Absent compliance with Rule 55.05, there is no basis for this Court to conclude that Plaintiffs properly state a claim for Unjust Enrichment against Millsap & Singer, LLC. As such, Plaintiffs' Unjust Enrichment claim fails as a matter of law.

Finally, Plaintiffs' Merchandising Practices Act Claim (MMPA) fails to state a claim as the Amended Petition omits key elements of same. Private MMPA claims must establish the following: (1) the use or employment of deception, fraud, false promise, misrepresentation, unfair practice, or the omission or concealment of a material fact; (2) in connection with the sale

or advertisement of merchandise in trade or commerce; (3) resulting in an ascertainable loss; and (4) the loss occurs to a person who purchased the merchandise primarily for personal, family, or household purposes. Section 407.025, RSMo. The MMPA defines "sale" as: "any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or credit." Section 407.010, RSMo. The MMPA defines "trade or commerce" as: "the advertising, offering or sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated..." Section 407.010(7), RSMo. Though the MMPA does not define the phrase "in connection with," courts have concluded that it references acts or representations occurring prior to or during the initial sale of merchandise. See e.g. *State ex rel. Koster v. Portfolio Recovery Associates, LLC,* 351 S.W.3d 661 (Mo. App. 2011); and *State ex rel. Koster v. Professional Debt Management, LLC,* 351 S.W.3d 668 (Mo. App. 2011).

Here, Plaintiffs do not allege Millsap & Singer, LLC made any representation regarding merchandise of any kind. The only transaction the Court could infer from the pleadings involves the sale of a mortgage loan to Plaintiffs. Plaintiffs do not allege Millsap & Singer, LLC was a party to the original loan transaction or had any involvement in same. Absent such allegations, Plaintiffs cannot establish that Millsap & Singer, offered or sold merchandise in trade or commerce as required by § 407.025, RSMo. In addition, Plaintiffs fail to plead sufficient facts to establish ascertainable loss, as they do not plead specific amounts paid to Millsap & Singer, LLC as a result of any conduct that violates the MMPA. Based on the foregoing, Plaintiffs fail to state a claim for MMPA violations against Millsap & Singer, LLC upon which relief can be granted.

14

Electronically Filed - Jackson - Independence - April 07, 2014 - 11:57 AM

C.      Conclusion

For the reasons set forth above, the Court should dismiss Plaintiffs' Amended Petition in its entirety pursuant to Rule 55.27(a)(6), Rule 55.22, and Local Rule 37.4.  Plaintiffs' Amended Petition should also be dismissed in its entirety as all claims are barred by the doctrine of Claim Preclusion and the claims for Quiet Title and Breach of Fiduciary Duty are further barred by the doctrine of Issue Preclusion.

Respectfully submitted,

MILLSAP & SINGER, LLC.

By: */s/ Michael J. Wambolt*
MICHAEL J. WAMBOLT
Missouri Bar No. 51231
11460 Tomahawk Creek Pkwy.
Suite 300
Leawood, KS 66211
(913) 339-9132
(913) 339-9045 FAX
mwambolt@msfirm.com

Attorney for Defendant
Millsap & Singer, LLC

15

Electronically Filed - Jackson - Independence - April 07, 2014 - 11:57 AM

CERTIFICATE OF SERVICE

On April 7, 2014, a copy of the foregoing pleading was sent via electronic mail or first class mail, postage prepaid to:

Barre E. Hunter
Venda M. Hunter
3020 S. Fields Road
Oak Grove, MO 64075

Thomas M. Franklin
9140 Ward Parkway, Ste. 200
Kansas City, MO 64114

Deutsche Bank National Trust Company
1761 East St.
Andrew Place
Santa Ana, CA 92705

Michael Ernest Boyd
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376

By: /s/ *Michael J. Wambolt*
Michael J. Wambolt

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

BARRE EUGENE HUNTER, et al.,           )
                                        )
Plaintiffs,                             )
                                        )
v.                                      )     Case No. 1416-CV00681
                                        )
ADVANCE MORTGAGE CORPORATION, et al., ) Div. No.  13
CORPORATION, et al.,                    )
                                        )
Defendants.                             )

### DEFENDANT MILLSAP & SINGER, L.L.C.'S MOTION TO DISMISS
### PLAINTIFFS' AMENDED PETITION

Defendant Millsap & Singer, LLC, through counsel, states the following for its Motion to

Dismiss Plaintiffs' Amended Petition:

1.      Under the doctrines of Issue Preclusion and Claim Preclusion, Plaintiffs are

barred from asserting claims against Millsap & Singer, LLC due to a prior order from this Court

granting Summary Judgment in favor of Millsap & Singer, P.C., a party in privity with movant.

The Order in question was granted by this Court on December 16, 2013 in Case No. 1316-

CV01602, which involved claims for Quiet Title and Breach of Fiduciary Duty that were

asserted in an effort to prevent a foreclosure sale scheduled for Plaintiffs' home located at 3020

S. Field Road, Oak Grove, MO 64075. Of note, the Court also granted a Motion to Dismiss filed

by Defendant Advance Mortgage Corporation in the prior lawsuit. Plaintiffs failed to challenge

either of the above Orders once they became final for purposes of appeal. Consequently,

Plaintiffs are barred from re-litigating the same issues in this lawsuit, or asserting claims in this

case that could have been raised in the prior suit.

2.      Dismissal is also proper under Local Rule 37.4, which states, in relevant part, "[i]f

a party shall fail to prosecute an action with reasonable diligence, the court may on its own

1

motion enter a judgment dismissing the action for want of prosecution with or without prejudice." *Id.* Here, grounds exist to dismiss Plaintiffs' claims against Millsap & Singer, LLC as Plaintiffs filed this lawsuit on January 9, 2014 but failed to issue summons for Millsap & Singer, LLC or obtain personal service on same. Under the principles of judicial fairness and conservation of judicial resources, dismissal is proper based on Plaintiffs' failure to diligently prosecute this lawsuit against Millsap & Singer, LLC.

3. Even if Plaintiffs' Claims are not barred by Claim or Issue Preclusion, they fail to state a claim upon which relief can be granted. The allegations in Plaintiffs' Amended Petition are conclusory and may be disregarded by this Court in its review of Plaintiffs' pleadings to determine whether they contain well plead facts or provide an inference of a viable cause of action. "Where a petition contains only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted."). *Westphal v. Lake Lotawana Ass'n, Inc.*, 95 S.W.3d 144, 152 (Mo. App. W.D. Mo. 2003); see also *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009). Moreover, Plaintiffs' Amended Petition fails to comply with Rule 55.22 which makes clear that "[w]hen a claim or defense is founded upon a written instrument, the same may be pleaded according to legal effect, or may be recited at length in the pleading, or a copy may be attached to the pleading as an exhibit." *Id.* Based on the deficiencies that plague Plaintiffs' Amended Petition, dismissal is proper with respect to Millsap & Singer, LLC.

WHEREFORE, Millsap & Singer, LLC requests that this Court enter an Order dismissing Plaintiffs' Amended Petition with prejudice, and provide any other relief that this Court deems proper.

2

Respectfully submitted,

Millsap & Singer, LLC

By: /s/ Michael J. Wambolt
Michael J. Wambolt, #51231
11460 Tomahawk Creek Pkwy, Suite 300
Leawood, KS 66211
(913) 339-9132
(913) 339-9045 FAX
mwambolt@msfirm.com

Attorneys for Defendant
Millsap & Singer, LLC

## CERTIFICATE OF SERVICE

On April 7, 2014, a copy of the foregoing pleading was sent via electronic mail or first class mail, postage prepaid to:

Barre E. Hunter
Venda M. Hunter
3020 S. Fields Road
Oak Grove, MO 64075

Thomas M. Franklin
9140 Ward Parkway, Ste. 200
Kansas City, MO 64114

Deutsche Bank National Trust Company
1761 East St.
Andrew Place
Santa Ana, CA 92705

Michael Ernest Boyd
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376

By: /s/ Michael J. Wambolt
Michael J. Wambolt

3

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

BARRE EUGENE HUNTER, et al.,          )
                                       )
Plaintiffs,                            )
                                       )
v.                                     )     Case No. 1416-CV00681
                                       )
ADVANCE MORTGAGE CORPORATION, et al., )     Div. No. 13
                                       )
Defendants.                            )

## ENTRY OF APPEARANCE

Michael J. Wambolt enters his appearance as the attorney of record in this lawsuit for

Millsap and Singer, LLC. Please direct all future pleadings and correspondence regarding this

lawsuit to my attention using the contact information contained in the signature block below.

Respectfully submitted,

MILLSAP & SINGER, L.L.C.

/s/ Michael J. Wambolt
MICHAEL J. WAMBOLT
Missouri Bar No. 51231
11460 Tomahawk Creek Parkway, Ste. 300
Leawood, Kansas 66211
(913) 339-9132
(913) 339-9045 FAX
mwambolt@msfirm.com

Attorneys for Millsap and Singer

1

CERTIFICATE OF SERVICE

On April 7, 2014, a copy of the foregoing pleading was sent via electronic mail or first class mail, postage prepaid to:

Barre E. Hunter
Venda M. Hunter
3020 S. Fields Road
Oak Grove, MO 64075

Thomas M. Franklin
9140 Ward Parkway, Ste. 200
Kansas City, MO 64114

Deutsche Bank National Trust Company
1761 East St.
Andrew Place
Santa Ana, CA 92705

Michael Ernest Boyd
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376

By: */s/ Michael J. Wambolt*
Michael J. Wambolt

2

| ATTORNEY (Name and Address): | SBN: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY (Name and Address):

Dept of Civil Records
308 W Kansas Ste 204, 2nd Fl
Independence, MO 64050

SBN:

No Phone

E-MAIL:

ATTORNEY FOR: in propria persona

NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:

No Such Party/All Parties

FOR COURT USE ONLY

FILED-CIRCUIT COURT
JACKSON CO. MO-1
14 MAR 21 AM 6:46

PLAINTIFF:
**Barre E Hunter**

DEFENDANT:
**Advance Mortgage Corporation**

COURT CASE NO.:
**1416-CV00681**

## Proof of Service - Summons

LEVYING OFFICER FILE NO.:
**2014502897**

1. At the time of the service I was at least 18 years of age and not a party to this action.

2. I served copies of the:

   f. other (specify documents): **Amended Petition, Exhibits, Notice, Petition for Judgment Quiet Title, Summons for Personal Service Outside the State of Missouri**

3. a. Party served: **American Home Mortgage Assets Trust 2007-3**

   b. Person (other than the party in item 3a) served on behalf of the entity or as an authorized agent (and not a person under item 5b on whom substituted service was made): **Suzanne Patton - Legal Asst.**

4. Address where party was served: **1761 East St Andrew Place
   Santa Ana, CA 92705**

5. I served the party:

   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of the process for the party (1) on: 03/12/2014 (2) at: 11:00 AM.

7. Person who served papers:

   a. Name: **B. DARSOW, #6000**
   b. Address: **Sheriff's Civil Division Suite 2 909 N. Main Street Santa Ana, CA 92701**
   c. Telephone Number: **(714) 569-3700**
   d. The fee for service was: **$35.00**

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Friday, March 14, 2014

Hearing: <No Information>

Remarks

*Kristi #8988*

Sheriff's Authorized Agent

Sandra Hutchens, Sheriff-Coroner

Judicial Council form POS-010

**Original**

0/230907



No Such Party/All Parties

,

---

*** This certificate ONLY for out of state courts ***
## CERTIFICATE OF ACKNOWLEDGEMENT

State of **California**
County of **Orange**

On _____ , before me _____ ,

personally appeared _____ , who proved to me on the basis

of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the

person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

(NOTARY SEAL)

WITNESS my hand and official seal.

_____



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 1416-CV00681 |
|---|---|
| Plaintiff/Petitioner:<br>BARRE E HUNTER | Plaintiff's/Petitioner's Attorney/Address:<br>BARRE E HUNTER<br>3020 S FIELDS RD<br>OAK GROVE, MO 64075 |
| vs. | |
| Defendant/Respondent:<br>ADVANCE MORTGAGE CORPORATION | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Quiet Title | |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: AMERICAN HOME MORTGAGE ASSETS TRUST 2007-3

1761 EAST ST
ANDREW PLACE
SANTA ANA, CA 92705

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*JACKSON COUNTY*

14-FEB-2014
Date

_____
Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
   ☐ the judge of the court of which affiant is an officer.
(Seal)   ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
   ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ _____ |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 14-SMOS-135  1 of 2  (1416-CV00681)

Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

Case 4:15-cv-00141-DW  Document 1-1  Filed 02/24/15  Page 418 of 491

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only.* Document ID# 14-SMOS-135    2 of 2      (1416-CV00681)          Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

| ATTORNEY (Name and Address): | SBN: | | FOR COURT USE ONLY |
|---|---|---|---|

Dept of Civil Records
308 W Kansas Ste 204, 2nd Fl
Independence, MO 64050

No Phone

E-MAIL:

ATTORNEY FOR: **in propria persona**

NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:

**No Such Party/All Parties**

,

PLAINTIFF:
**Barre E Hunter**

DEFENDANT:
**Advance Mortgage Corporation**

COURT CASE NO.:
**1416-CV00681**

## Proof of Service - Summons

LEVYING OFFICER FILE NO.:
**2014502897**

1. At the time of the service I was at least 18 years of age and not a party to this action.

2. I served copies of the:

   f. other (specify documents): **Amended Petition, Exhibits, Notice, Petition for Judgment Quiet Title, Summons for Personal Service Outside the State of Missouri**

3. a. Party served: **Deutsche Bank National Trust Company**

   b. Person (other than the party in item 3a) served on behalf of the entity or as an authorized agent (and not a person under item 5b on whom substituted service was made): **Suzanne Patton - Legal Asst.**

4. Address where party was served: **1761 East St Andrew Place**
   **Santa Ana, CA 92705**

5. I served the party:

   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of the process for the party (1) on: 03/12/2014 (2) at: 11:00 AM.

7. Person who served papers:

   a. Name: **B. DARSOW, #6000**

   b. Address: **Sheriff's Civil Division Suite 2 909 N. Main Street Santa Ana, CA 92701**

   c. Telephone Number: **(714) 569-3700**

   d. The fee for service was: **$35.00**

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Friday, March 14, 2014

Hearing: <No Information>

Remarks

*Kristi #8988*

Sheriff's Authorized Agent
Sandra Hutchens, Sheriff-Coroner

Judicial Council form POS-010

**Original**

0/230909

*SSCOV*

No Such Party/All Parties

*** This certificate ONLY for out of state courts ***
CERTIFICATE OF ACKNOWLEDGEMENT

State of **California**
County of **Orange**

On _____ , before me _____ ,

personally appeared _____ , who proved to me on the basis

of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the

person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

(NOTARY SEAL)

WITNESS my hand and official seal.

_____

 **IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI**

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 1416-CV00681 |
|---|---|
| Plaintiff/Petitioner:<br>BARRE E HUNTER<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>BARRE E HUNTER<br>3020 S FIELDS RD<br>OAK GROVE, MO 64075 |
| Defendant/Respondent:<br>ADVANCE MORTGAGE CORPORATION<br>Nature of Suit:<br>CC Quiet Title | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: DEUTSCHE BANK NATIONAL TRUST COMPANY

1761 EAST ST
ANDREW PLACE
SANTA ANA, CA 92705

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

14-FEB-2014
Date                                        Clerk

**JACKSON COUNTY**     Further Information:

---

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
    _____ (name) _____ (title).
    ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                   ☐ the judge of the court of which affiant is an officer.
*(Seal)*            ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                   ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ _____ |

See the following page for directions to clerk and to officer making return on service of summons.

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 422 of 491

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 14-SMOS-134   2 of 2     (1416-CV00681)          Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
INDEPENDENCE

| | | |
|---|---|---|
| BARRE EUGENE HUNTER, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1416-CV00681 |
| | ) | |
| ADVANCE MORTGAGE | ) | |
| CORPORATION | ) | Division 13 |
| Defendant. | ) | |

## DEFENDANT ADVANCE
## MORTGAGE CORPORATION'S MOTION FOR
## ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFF'S PETITION

Pursuant to S. Ct. R. 44.01(b), defendant Advance Mortgage Corporation moves this Court for an order enlarging for 30 days, to and including April 22, 2014, the time within which to serve an answer or other pleading responsive to the **Amended Petition for Judgment Quiet Title, Conversion of Instrument and Unjust Enrichment, Petition for an Order for Specific Performance Under Missouri Statute Governing Negotiable Instruments R.S.Mo. 400.300 Negotiable Instruments and 400.900, Breach of Fiduciary Duty Including Punitive Damages, Violations of the Missouri Merchandising Practices Act Including Punitive Damages**. In support of this motion, defendant states as follows:

1. The Petition was served on February 21, 2014.

2. Defendant seeks to file an answer or other responsive pleading and present meritorious defenses. Additional time is needed to prepare so that the undersigned may become familiar with the case and file a responsive pleading.

3. This motion is not sought for any wrongful purpose or delay, and the delay in the responsive pleading will not cause any prejudice.

4. Undersigned counsel has not contacted plaintiffs who are *pro se*.

WHEREFORE, defendant Advance Mortgage Corporation requests an enlargement of time up to and including April 22, 2014, within which to serve an Answer or other responsive pleading.

1

Respectfully submitted,


/s/Thomas M. Franklin
Thomas M. Franklin, Mo. Bar 32358
THE FRANKLIN LAW FIRM
9140 Ward Parkway, Suite 200
Kansas City, Missouri 64114
816.941.2121 – telephone
816.822.8222 – telecopy
Tom.Franklin@tmflaw.com
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Motion for Enlargement of Time** was deposited into the U.S. First Class Mail, and/or telecopied and/or sent electronically on this 19th day of March 2014 addressed to:

Barre Eugene and Venda Marie Hunter
3020 S Fields Road
Oak Grove, MO 64075

Michael J. Wambolt
Millsap & Singer, LLC
612 Spirit Drive
St. Louis, MO 63005
Facsimile (636) 537-0067

Michael E. Boyd
The Boyd Law Group, L.C.
300 St. Peters Centre Blvd., Ste 230
Saint Peters, MO 63376
mboyd@boydlawlc.com

/s/Thomas M. Franklin
Thomas M. Franklin

2

Electronically Filed - Jackson - Independence - March 18, 2014 - 03:02 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY
STATE OF MISSOURI

BARRE EUGENE HUNTER,                    )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        Case No. 1416-CV00681
                                         )
ADVANCE MORTGAGE CORP., ET AL.           )        Div. 13
                                         )
            Defendant.                   )
                                         )

## DEFENDANT OCWEN LOAN SERVICING, LLC'S ANSWER
## TO PLAINTIFF'S AMENDED PETITION

COME NOW Defendant Ocwen Loan Servicing, LLC ("Ocwen"), by and through the below signed attorneys, and for its Answer and Affirmative Defenses to Plaintiff's Amended Petition states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1.    Defendant admits that this Court has jurisdiction of this matter. Defendant denies the remaining allegations.

2.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

3.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

4.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

5.    Defendant denies the allegations.

### COUNT I

1.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

2.   Defendant denies the allegations.

3.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

## COUNT II

1.   No response is necessary.

2.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

3.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

4.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

5.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

6.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

7.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

8.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

9.   Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

10.  Defendant denies the allegations.

11.  Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

12.  Defendant lacks sufficient information to either admit or deny the allegations and therefore

denies them.

13. Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

14. Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

15. Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

16. Defendant admits that a promissory note is a negotiable instrument. Defendant lacks sufficient information to either admit or deny the remaining allegations and therefore denies them.

17. Defendant denies the allegations.

18. No response is necessary.

19. Defendant denies the allegations.

20. Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

21. Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

22. Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

## COUNT IV

1. Defendant hereby incorporates its responses above as if fully set forth herein.

2. No response is necessary.

3. Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

4. Defendant lacks sufficient information to either admit or deny the allegations and therefore

denies them.

5.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

6.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

7.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

8.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

9.    Defendant denies the allegations.

## COUNT V

1.    Defendant hereby incorporates its responses above as if fully set forth herein.

2.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

3.    Defendant denies the allegations.

4.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

5.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

6.    Defendant lacks sufficient information to either admit or deny the allegations and therefore denies them.

7.    Defendant denies the allegations.

WHEREFORE, Defendant respectfully requests this Court dismiss Plaintiff's Amended Petition with prejudice, award costs and reasonable attorneys' fees to Defendant for having to defend this matter and for any other relief as may be proper.

Electronically Filed - Jackson - Independence - March 18, 2014 - 03:02 PM

## AFFIRMATIVE DEFENSES

COMES NOW Defendant by and through its attorneys, and for its Affirmative Defenses states as follows:

1.  Plaintiff has failed to state a claim upon which relief can be granted.

2.  Some or all of Plaintiff's claims are barred by the doctrine of laches.

3.  Plaintiff's claims are barred by the doctrine of unclean hands.

4.  Plaintiff's claims are barred by the doctrine of estoppel.

5.  Plaintiff's claims are barred by the doctrine of judicial estoppel.

6.  Plaintiff's claims are barred by the doctrine of waiver.

7.  Plaintiff's claims are barred by the doctrine of release.

8.  Plaintiff's claims are barred by the failure of a condition precedent.

9.  Plaintiff's claims are barred by the failure of a condition subsequent.

10. Plaintiff's claims are barred by the Parol Evidence Rule.

11. Plaintiff has failed to mitigate her damages.

12. Plaintiff's damages are the sole result of her own negligence and/or breach of contracts.

13. Plaintiff is not entitled to any relief because of her actions, inactions, contributory negligence, and/or comparative negligence.

14. To the extent the Plaintiff was injured or damaged, such injury or damage was not the direct or proximate cause of Defendant's actions.

15. Plaintiff assumed the risk of non-compliance with contractual agreements.

16.     There is no genuine issue of material fact and Defendant is entitled to judgment or partial judgment as a matter of law.

17.     Defendant objects to any failure by Plaintiff to properly join all claims in the matter pursuant to the Missouri Court Rules.

18.     Defendant reserves the right to amend its affirmative defenses.

        WHEREFORE, Defendant respectfully requests this Court dismiss Plaintiff's Amended Petition with prejudice, award costs and reasonable attorneys' fees to Defendant for having to defend this matter and for any other relief as may be proper.

Respectfully Submitted,

THE BOYD LAW GROUP, L.C.

Michael E. Boyd, #53870
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376
Telephone: (636) 447-8500
Fax: (636) 447-8505
mboyd@boydlawlc.com
ATTORNEY FOR DEFENDANTS
OCWEN LOAN SERVICING, LLC

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the above and foregoing was served on this __12__ day of __March_____, 2014, by first-class mail, postage prepaid, addressed to:

Barre and Venda Hunter
3020 S. Fields Rd.
Oak Grove, MO 64075

Attorney for Defendants

## IN THE CIRCUIT COURT OF JACKSON COUNTY
## STATE OF MISSOURI

BARRE EUGENE HUNTER,        )
                          )
        Plaintiff,           )
                          )
v.                          )      Case No. 1416-CV00681
                          )
ADVANCE MORTGAGE CORP., ET AL.  )      Div. 13
                          )
        Defendant.      )
                          )

### ENTRY OF APPEARANCE

COMES NOW Attorney Michael E. Boyd of The Boyd Law Group, L.C. and hereby

enters their appearance as counsel on behalf of Defendant Ocwen Loan Servicing, LLC.

Respectfully Submitted,

THE BOYD LAW GROUP, L.C.

Michael E. Boyd, #53870
300 St. Peters Centre Blvd., Ste. 230
Saint Peters, MO 63376
Telephone: (636) 447-8500
Fax: (636) 447-8505
mboyd@boydlawlc.com
ATTORNEY FOR DEFENDANTS
OCWEN LOAN SERVICING, LLC

### CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the above and foregoing was served on this
18 day of March , 2014, by first-class mail, postage prepaid, addressed to:

Barre and Venda Hunter
3020 S. Fields Rd.
Oak Grove, MO 64075

Attorney for Defendants

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

Barre Eugene Hunter )
Venda Marie Hunter )
)
PLAINTIFFS ) Case No. *1416-CV00681*
V )
Advance Mortgage Corporation )
)
Deutsche Bank National Trust Company )
) Division *13*
American Home Mortgage Assets Trust )
2007-3, Mortgage-Backed Pass-Through )
Certificates, Series 2007-3 )
)
Ocwen Loan Servicing, LLC fka )
Homeward Residential, Inc., fka )
American Home Mortgage Servicing )
)
Millsap and Singer, LLC )
)
The Residence At:  3020 S Fields Road )
Oak Grove, MO 64075 )
)
DEFENDANTS )

FILED-CIRCUIT COURT
JACKSON CO., MO-1
2014 FEB 11 AM 11:45

## AMENDED PETITION FOR JUDGMENT QUIET TITLE

## CONVERSION OF INSTRUMENT AND UNJUST ENRICHMENT

## PETITION FOR AN ORDER FOR SPECIFIC PERFORMANCE UNDER MISSOURI STATUTE GOVERNING NEGOTIABLE INSTRUMENTS RSMO 400.300 NEGOTIABLE INSTRUMENTS AND 400.900

## BREACH OF FIDUCIARY DUTY INCLUDING PUNITIVE DAMAGES

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

## INCLUDING PUNITIVE DAMAGES

1

*FAMMF*    ⑮

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 433 of 491

COMES NOW the Plaintiffs and for their Petition seeking a Judgment Quieting Title, Petition for an Order for Specific Performance under Missouri Statute Governing Negotiable Instruments, Conversion of Instrument and Unjust Enrichment, Breach of Fiduciary Duty including Punitive Damages, and Violations of the Missouri Merchandising Practices Act including Punitive Damages, state to the Court as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiffs state that this Circuit Court is the proper venue for this action. The subject property is located in Jackson County, Missouri. Subject matter jurisdiction is governed by the Missouri Constitution which grants circuit courts "...original jurisdiction over *all* cases and matters, civil and criminal." Mo. Const. Article V, Sec.14. This case is a civil case, therefore this Court has subject matter jurisdiction over this case. *Webb v Wyciskalla*, 275 S.W.3d, 253-254 (Mo. En banc 2009). Federal Court is not the proper venue, for any reason. Federal courts have an independent obligation to evaluate their jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Any Party seeking removal bears the burden of proving subject matter jurisdiction. In re Business Men's Assur. Co. of America, 992 F .2d 181, 182 (8th Cir. 1993). Federal district courts are "required to resolve all doubts about federal jurisdiction in favor of remand." *Id.*

In the light of using fraudulent joinder as a means of removal, it is defined as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." Filla v. Norfolk Southern Ry. Col, 336 F.3d 806,809 (8th Cir. 2003). In analyzing fraudulent joinder, "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based on the facts involved." *Id.* at 811. So long as there is at least a "colorable" state law cause of action against the diversity-defeating defendant, joinder is not fraudulent. *Id. at 810.* In questionable areas of state law, "the better practice is for the federal court not to decide the doubtful question, but simply to remand the case and leave the question for the state courts to decide." Id. at 811 (quoting Iowa Public Ser. Co. v Medicine Bow Coal Co., 556 F .2d 400,406 ( 8th Cir. 1977).

2

This suit has been filed in state court. State court is the proper venue. The suit concerns a subject property located within this County and within the State of Missouri. Application of state law is primarily the responsibility of state courts. State court has jurisdiction.

2.    That Defendant Deutsche Bank National Trust Company hereinafter "Deutsche", while acting as an agent for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust", ordered Successor Trustee Millsap & Singer, hereinafter "Millsap", to initiate a foreclosure sale of the property commonly identified as 3020 S Fields Road, Oak Grove, MO   64075.

3.    That Ocwen and Deutsche are planning to schedule a foreclosure sale of the property at the order of Defendant American Home Trust. However, this is a violation of the Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2007-3. Deutsche Bank National Trust Company and other larger Trustee Corporations, such as US Bank National Association, New York Bank Mellon and many others represent themselves as the foreclosing party which is the Holder in Due Course. This is not true. Mortgage Backed Securities are governed by a document that was registered with the Securities Exchange Commission. The document is called the Pooling and Servicing Agreement and it is not flexible. In simple terms, the Pooling and Servicing Agreement defines the Trustee as a business manager for the Trust, but does not give the Trustee of the REMIC Trust the power, or even the right to inquire about Foreclosures. But that hasn't stopped Deutsche, US Bank National Association, New York Bank Mellon, or any of the other major Trustee for hire companies from claiming to be the foreclosing party in foreclosure actions

4. That such scheduling of an alleged sale date by American Home Trust was, to the best of Plaintiffs' knowledge, conducted in an attempt to enforce an alleged promissory note executed by Plaintiffs to Advance Mortgage Corporation in 2007. Plaintiffs contend, purely for the sake of argument, that were any note purported to be held by American Home Trust held to be otherwise legitimate, said note would be unenforceable for other reasons, including, but not necessarily limited to, the following:

>    a. That American Home Trust was not, at the time of the alleged
>       scheduling of the foreclosure, the party entitled to enforce the alleged note.

3

b. That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri.

(Ex P  RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act").

c. That any such alleged one and only true note was an offer by Plaintiffs to pay back money, if it was loaned to them to purchase a house by the Defendant Advance Mortgage Corporation, hereinafter "Advance" which did not "accept" the offer by funding the loan. Therefore no consideration was ever received by the Plaintiffs from Advance, or any other Party named herein, or by any party identified in any alleged assignments.

(See Exhibit D- RSMo 400-003.303, Value and Consideration) (Ex A- RSMo. 400-003.302, Holder in Due Course)

5.  That any Deed of Trust alleged to be associated with the purported note is also invalid for reasons including, but not necessarily limited to, the following:

a. That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri, including the lack of written permission from Plaintiffs to allow Defendants to negotiate the transaction of the sale and transfer of Plaintiffs' alleged loan using electronic replicas of Plaintiffs' loan instruments and signatures to be used as originals.

(Ex P  RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act").

b. That any alleged note or deed of trust, whether valid or not, has, at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., MERS was named as an agent with special

4

powers of sales and assignments in the terms of the alleged Deed of Trust, but MERS is never given these powers or even mentioned in the terms of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**

(Exhibit E Case U.S. Supreme Court <u>Carpenter v. Longan</u>, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY Bifurcation)

## COUNT I

## QUIET TITLE

COMES NOW the Plaintiffs and, for their Petition for an Order of this Court Quieting Title to the subject property in this matter and granting title in fee simple to them, their heirs, or assigns, states to the Court as follows:

That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to All Counts as though fully set forth herein.

1. That any claim to title of the subject property by any Defendant named herein is derived from title held previously by Plaintiffs and purported by that Defendant to have been passed to them, directly or indirectly, from the Plaintiffs.

2. That any purported note related to the property or title in question has been altered and is not original and/or authentic and/or has been transferred by an individual or entity not authorized to do so and cannot be enforced.

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration)

3. That no Defendant herein has now, or at any time, claimed a loss of its money on the alleged subject loan. No Defendant has claimed injury due to Plaintiffs' actions or Plaintiffs' loan documents. Without a pleading of injury there is no claim. If there were an alleged default, then the party injured must claim injury and prove how it was injured.

5

WHEREFORE, Plaintiffs pray this Court enter its Order directing that a Deed in Fee Simple to the Plaintiffs be entered into the records of Jackson County, Missouri and that any record purporting to show title vested in any other individual or entity as of March 13, 2007 or subsequent, be stricken from those property records and held as void and for such other relief as the Court deems appropriate.

<div align="center">

## COUNT II

### PETITION FOR AN ORDER FOR SPECIFIC PERFORMANCE UNDER THE STATUTES OF RSMO CHAPTER 400.30 NEGOTIABLE INSTRUMENTS

</div>

COMES NOW, the Plaintiffs and for their Petition for an Order Demanding Specific Performance under the Statutes of RSMo Chapter 400.30 Negotiable Instruments state the Court as follows:

1. That this Count pertains to Defendants Advance Mortgage Corporation, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, Am
Ocwen Loan Servicing, LLC fka Homeward Residential, Inc., fka American Home Mortgage Servicing and Deutsche Bank National Trust Company.

2. That Defendants have made it abundantly clear that they intend to foreclose on Plaintiffs' property.

3. That Defendants claim that the right to foreclose, (for one, or the other, or both), on alleged Borrower is "under the Deed of Trust". But, the mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872), "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

6

4. That Defendants are ignoring the fact that the Deed of Trust is a security document which is junior to a Promissory Note, which is evidence of the debt. While the language of right to sale is indeed in the Deed of Trust, the Deed of Trust is void if it has been bifurcated from the Promissory Note. The Security always follows the debt. The two instruments must always be assigned together and must always be owned in the same name. The Deed of Trust (mortgage) should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, *U.S. Supreme Court <u>Carpenter v. Longan</u>, 83 U.S. 16 Wall. 271 271 (1872)* "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.

5. That any alleged note and deed of trust in this instant case, whether valid or not, has at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., hereinafter "MERS" was named as an agent for Advance Mortgage with fantastic special powers of sales and assignments in the terms of the alleged Deed of Trust. However MERS is never given these powers by Advance Mortgage, or even mentioned at all in the terms of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. The mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court <u>Carpenter v. Longan</u>, 83 U.S. 16 Wall. 271 271 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

6. That Defendants stubbornly and illegally cling to the Deed of Trust as a superior interest that somehow gives them the right to foreclose. This is a lie that has been perpetuated for so long that it is now believed by many to be true. But, this lie is nothing more than myth and legend. It is untrue. Missouri has a very precise body of statute that parties must follow when negotiating and transacting Negotiable Instruments. The Statute RSMo Chapter 400. 300 is actually one chapter of the Uniform Commercial Code which has been adopted by all 50 states. UCC Chapter 3 is the Missouri RSMO 400.3 Negotiable Instruments, as adopted by the State of Missouri. UCC Chapter 9 is the Missouri RSMo 400.9 Secured Instruments.

7. That a Promissory Note belongs to the obligor or issuer of the Note. Plaintiffs's alleged Note was to be held by the actual lender which "funded" Plaintiff's alleged loan. The issuer here, the

7

Plaintiffs, are obliged to know who is holding their Note at any time. Defendants constantly claim in writing that the whereabouts of Plaintiffs' Note is "proprietary information". That is absurd. The Note is the property of Plaintiffs. Borrowers do not pay off their house. A Borrower buys back his Note through payments.

8. When Borrowers have paid off, or repurchased, their Note, the Deed of Trust is void. The Note is to be surrendered to the Borrower marked paid. This is not happening after collection in full. Claimants all over the country are foreclosing as alleged Holders in Due Course, yet are not able to exhibit the original Note with all proper endorsements, or surrender it when paid.

**(Ex I RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-003.303, Value and Consideration)**

9. That fact that Defendants are claiming to be Holder in Due Course means that they are claiming that they are the party who came by the loan by paying for it, obtained it legally and can prove it.

**(Ex A- RSMo. 400-003.302, Holder in Due Course)**

10. That, this is not the first time that Ocwen has wrongfully enforced the alleged Promissory Note of Plaintiffs. Defendant Ocwen has never recorded any purchase of the loan, or any assignment of the alleged Promissory Note and Deed of Trust, or either one separately. Yet, Ocwen has collected monies for payments,
which is an act of "enforcing the Note".

11. That MERS acting for Advance Mortgage claims that they "sold" the alleged loan of Plaintiffs to The American Home Trust and recorded the assignment on 1-11-2013. Plaintiffs question whether Advance even knows that MERS sold the loan to American Home Trust on its behalf, even though the sale took place 6 years after the closing date of the Trust.

12. That Ocwen under several different aka names, without any apparent claim of any kind to the alleged Promissory Note, then sent coupons and letters to Plaintiffs alleging that Plaintiffs had to send the payments worked out with Advance to Ocwen, but has insisted since that time that it did have the right to enforce the "Deed of Trust". But, Ocwen rarely speaks of the Promissory Note, that needed to be presented to Plaintiffs before acts of collection.

**(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration) Ex I RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-0033)**

13. That the named Lender on Plaintiffs' alleged Promissory Note is Advance Mortgage. Advance did not fund Plaintiff's loan. Advance Mortgage was a licensed broker or originator of

8

mortgage loans who received commissions and fees for arranging a loan, but did not use its own money to fund loans. Advance Mortgage has never answered claims that it has no evidence of funding, such as copies of wire transfers to closing, or copies of front and back of Cashier's Checks. There was no Consideration from Advance Mortgage and there is no proof differently.

**(Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex G RSMo. 400.3.501, Presentment) (Ex D- RSMo 400-003.303, Value and Consideration)**

14. Defendant Advance is using only a copy/replica of the front of the Plaintiffs' alleged Promissory Note for its claim. This is the 4th time since December 31, 2013 that this same front only copy/replica has been sent to Plaintiffs by Defendants.

15. That Plaintiffs are especially concerned that Defendant American Home Trust and Successor Trustee Millsap will again try soon to foreclose claiming to enforce the alleged Note for collection "with rights under the Deed of Trust". Defendants want to "assure" Plaintiffs and the court that they have possession of the Note and that this assurance of Defendants is enough under law. A ten year Treasury Bond is a negotiable instrument. A one hundred dollar bill is a negotiable instrument. Stock Certificates are negotiable instruments. You can't spend a copy of a $100 bill at Walmart. All of these instruments must be presented as originals to collect, surely no one will argue against that.

16. That a Promissory Note is also a negotiable instrument. It must be presented to its maker for exhibit (examination) for collection. There can be no secrets concerning the Plaintiffs as makers of the alleged note. It is not proprietary information.

**(Ex G RSMo. 400.3.501, Presentment)**

17. That this court is the only venue where Plaintiffs can exercise their right as issuers/obligors to have their Note presented to them for examination before collection.

18. That PRESENTMENT is defined by RSMo 400.3-501 as: (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument. (b) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made. (surrender means to return to issuer/obligor) (iv) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or acceptance for failure of the presentment document to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

9

19. That Defendants Deutsche, Millsap, the American Home Trust and Ocwen are now scheming to foreclose on Plaintiffs' home. In order to foreclose the Defendants are obligated to present the original and authentic Note belonging to the Obligor for his personal inspection. Despite Discovery requests for said presentment, Defendants have refused to do so, under a clear reading of Missouri statutes regarding negotiable instruments as mentioned above. Presentment of original note for Plaintiff's inspection is a necessary prerequisite for collection and a foreclosure sale is a collection effort.

20. That Plaintiffs are unaware of any statutory or case law excusing the Defendants from their obligations under the statutes heretofore cited.

21. That Plaintiffs have no other remedy to compel Defendants to comply with the statutes other than an order requiring Defendants to specifically perform their statutory obligations, before making claims of rights to collect, disburse, or declare default.

22. That in the interest of judicial economy and the economic interests of both the Plaintiffs and Defendants, granting Plaintiffs the remedy of specific performance is appropriate to wit: by putting to the fore the issues highlighted in the above referenced statutes, it will save time and therefore, costs. This immediate action will serve to clarify the most fundamental aspects of this instant case.

**(Ex G RSMo. 400.3.501, Presentment)**

WHEREFORE, Plaintiffs pray this Court for its Order requiring Defendant claimant American Home Trust, Ocwen, Deutsche or any other claimant of being the Holder in Due Course to immediately bring to court, the original and authentic, one and only Promissory Note with all proper and necessary endorsements, unaltered and unchanged having been held in safekeeping, for exhibit and examination as proof that any such alleged Promissory Note exists. If Defendant brings any example claiming it is the alleged Promissory Note, Plaintiffs further requests the court to permit a 3rd party expert examination of the document to vouch for authenticity if there is valid reasoning. This Presentment is necessary, so that Plaintiffs can once and for all see if a document having never been presented does exist. Without such immediate Presentment, Plaintiffs pray this court for an Order of Summary Judgment in favor of Plaintiff.

10

<center>COUNT IV</center>

<center>**BREACH OF FIDUCIARY DUTY**</center>

COMES NOW the Plaintiffs and, for their claim of Breach of Fiduciary Duty against Defendants Ocwen, Deutsche Bank National Trust Company, and the American Home Trust, state to the Court as follows:

1. That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to all Counts as though fully set forth herein.

2. That this Count pertains solely to Deutsche Bank National Trust Company, Ocwen, and The American Home Trust.

3. That Millsap acting as Successor Trustee of the loan and Deutsche as agent Trustee of the American Home Trust in the purported scheduling of a foreclosure sale referred to above.

4. That Millsap and Deutsche intend to sell the property at such purported foreclosure sale to American Home Trust using a fraudulent credit bid and may yet do it.

**(Ex J  RSMo 400-003.307,  Notice of Breach of Fiduciary Duty)**

5. That Millsap and Deutsche were to conduct such sale to American Home Trust using a non-existent credit bid from American Home Trust and not for cash or any cash equivalent.

6. That Millsap & Singer had a duty to conduct a sale that was fair and impartial to both the alleged foreclosing party as well as the party being foreclosed upon.

**(Ex J RSMo  400-003.307,  Notice of Breach of Fiduciary Duty)**

7. That Millsap & Singer failed to ascertain that Deutsche, as just an agent Trustee, or the American Home Trust, were neither one, in fact, the party entitled to enforce any note. The Correspondence to Plaintiffs from Defendants clearly shows that, even if the alleged note were to be valid, the party holding title to it was not American Home Trust. MERS was named on the alleged Security Instrument as a "beneficiary" of unknown agency and special powers. But

<center>11</center>

MERS was never given these same powers or even mentioned on the alleged Promissory Note. This constitutes an intentional bifurcation, or splitting of the Note from the Security Instrument. These two documents had very different terms creating a nullity of both documents. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.**

(Exhibit E Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) (APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY)

8. That trying to conduct a foreclosure sale without making even the minimal determination of whether the party attempting to foreclose has the right to enforce the note can hardly be "fair" and "impartial" to the party whose property is being taken.

9. That Ocwen and Deutsche acted in conscious disregard of Plaintiffs' rights and that Plaintiffs were damaged thereby and should be awarded nominal actual damages as well as punitive damages sufficient to deter Ocwen, Deutsche Bank National Trust Company, and the American Home Trust any others likewise situated from such conduct in the future.

WHEREFORE, Plaintiffs pray this Court enter its Judgment against Deutsche National Trust Company, Ocwen Servicing and The American Home Trust for Breach of Fiduciary Duty and awarding Plaintiffs nominal actual damages as well as punitive damages in an amount sufficient to deter these Defendants and others similarly situated from such conduct in the future as well as for such other relief as the Court deems just.

## COUNT V

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

### INCLUDING PUNITIVE DAMAGES

COMES NOW the Plaintiffs and, for their claim of violations of the Missouri Merchandising Practices Act against Defendants Advance Mortgage Corporation, Ocwen Loan Servicing, LLC fka Homeward Residential, Inc. fka American Home Mortgage Servicing, hereinafter "Ocwen", Millsap & Singer, Deutsche Bank National Trust Company, and American

12

Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust" and state to the Court:

1.    That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to all Counts as though fully set forth herein.

2.    That Defendants working in concert created the illusion that an alleged loan contract which named Advance Mortgage Corporation as lender, had actually been funded by Advance Mortgage Corporation when it had not. Written requests for proof showing authentic documents from this transaction including copies of funding wires; cash; or other equivalent payment coming from Advance Mortgage Corporation to fund any alleged closing regarding Plaintiffs have gone unanswered by all Defendants.

**(Ex D  RSMo. 400.3-303, Value and Consideration)**

3.    Defendants have employed deceptive practices rising to fraud, false pretense, false promises regarding a contract, misrepresentation, and the concealment, suppression and omission of material facts to use non-existent allegedly duly perfected contractual documents in an attempt to take Plaintiffs' home using a fraudulent Missouri non-judicial foreclosure sale while representing to Plaintiffs and the court that one of the Defendants, the American Home Trust was a Holder in Due Course of a certain alleged Promissory Note. Defendants all claim that the American Home Trust became so by purchasing the note legally with funds intended for that purpose.  No such original legal document has been proffered.

**(Ex A RSMo. 432.010, Statute of Frauds-Contracts must be in writing), (Ex C RSMo. 400.3-501, Presentment), ( Ex G RSMo.400.3-404, Imposter/Fictitious Payee) (Ex D RSMo. 400.3-303, Value and Consideration)  (Ex I RSMo 400-003.306, Claims to an instrument)**

4.    That the alleged January 11, 2012 assignment of the alleged subject 2007 loan by MERS, as Grantor, while acting as an alleged agent for Advance, to the Grantee American Home Trust can never have happened. This is because Advance Mortgage Corporation in 2006 was an originator or broker of home loans.   In this capacity Advance Mortgage Corporation took fees in compensation for introducing Borrowers and Lenders to each other, and never funding any loans with its own money.   This is in contrast to its being the named Lender on the loan documents. The Power of attorney or agency agreement between MERS and Advance was being used to assign an alleged loan 5 years after the closing.   MERS has repeatedly stated in public and on its website that it did not own or have equity in any loans at any time.  This "nominee" contract has never

13

been presented to Plaintiff for inspection even though Plaintiff has requested this in writing and will again in Discovery. Advance Mortgage has stated in sworn Discovery that it did authorize the assignment, but in answer to the question elsewhere Advance states that it allegedly assigned the loan to American Home Mortgage on the day of closing March 18, 2007, but there is no such recorded assignment of the purchase of the loan by American Home Mortgage from Advance. The presentation that this assignment happened is misrepresentation and fraud by definition. A quick reading of the two documents will show this, if in fact, both authentic alleged documents can be found.

5. That even if Advance Mortgage Corporation could come up with some sort of document to present to the court proving it claim of funding the loan. The fact that the terms of the alleged Deed of Trust gives MERS powers to assign the Deed of Trust, however MERS is not given this power in the alleged Promissory Note, nor is MERS ever mentioned in the alleged Promissory Note copies from closing. This is an intentional bifurcation, or splitting of the two documents and cannot be repaired. See, **U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)** **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**

(Ex A RSMo, 432.010, Statute of Frauds- Contracts to be in writing)  (Ex H RSMo, 400-003.407, Alteration) (Ex A RSMo, 400-003.302 Holder in Due Course) (Ex E RSMo, 400-003.203, Transfer of instrument) (Ex I RSMo, 400-303.306, Claims to an Instrument) (Ex G RSMo. 400.3-404, Imposter/Fictitious Payee) ((Ex D RSMo. 400.3-303, Value and Consideration)

6. Most importantly, all Mortgage Backed Securities with REMIC trusts are governed by a Pooling and Servicing Agreement which is a critical component of every Mortgage Backed Security registration with the SEC. Every Pooling and Servicing Agreement includes a Cutoff Date (the date which all loans to be purchased by the Trust are identified) and a Closing Date (the date which all loans to be purchased are deposited into the Trust. This date is also called the Startup Date of the Trust. After this date, no new loans can be placed into the Trust without drastic consequences to the investors who have purchased bonds issued by the Trust. Certain loss of the IRS tax haven status would follow. This 2007 loan must have been deposited into the Trust by the Closing Date of June 6th, 2007. However, the recorded assignment from MERS on behalf of Advanced Mortgage is transferred into the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 on January 13, 2013. This almost 6 years too late. This is an absolute rule. There are no special situations that would allow this transfer. If the loan was never in the Trust where was it? How does the Trust claim it is the

14

Holder in Due Course? There is no possibility of reconciling these transactions. *For the Closing Date see the recent Moody's report attached with the Exhibits.*

7. Defendants and others contrived these illegal and impossible transactions to wrongfully take Plaintiffs home. None of these Defendants can prove they funded the loan or the subsequent purchases of the alleged loan. American Home Trust, and maybe others, was scheming to take a house without any investment. American Home Trust, or is master, was trying to get a home for free. This sale did not happen, but the threat of it has not been extinguished and this fact creates constant and unbearable anxiety for Plaintiffs.

WHEREFORE, Plaintiffs pray this Court enter its Judgment against Defendants Advance Mortgage Corporation, Ocwen Loan Servicing, LLC fka Homeward Residential, Inc.fka American Home Mortgage Servicing, Deutsche Bank National Trust Company, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, and Millsap & Singer, the Foreclosure Trustee, for violations of the Missouri Merchandising Practices Act, and awarding Plaintiffs nominal actual damages as well as punitive damages in an amount sufficient to deter Defendants and others similarly situated from such conduct in the future as well as for such other relief as the Court deems just.

Respectfully Submitted,

Barre Eugene Hunter Pro Se          Venda Marie Hunter Pro Se

15

# IN THE 16th CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Barre Eugene Hunter<br>Venda Marie Hunter | )<br>)<br>) |
| PLAINTIFFS<br>V<br>Advance Mortgage Corporation | ) Case No. _____<br>)<br>)<br>) |
| Deutsche Bank National Trust Company | )<br>) Division _____ |
| American Home Mortgage Assets Trust<br>2007-3, Mortgage-Backed Pass-Through<br>Certificates, Series 2007-3 | )<br>)<br>) |
| Ocwen Loan Servicing, LLC fka<br>Homeward Residential, Inc., fka<br>American Home Mortgage Servicing | )<br>)<br>) |
| Millsap and Singer, LLC | )<br>) |
| The Residence At: 3020 S Fields Road<br>Oak Grove, MO 64075 | )<br>)<br>) |
| DEFENDANTS | )<br>) |

FILED-CIRCUIT COURT
JACKSON CO., MO-1
2014 JAN -9 PM 4: 47

## PETITION FOR JUDGMENT QUIET TITLE

## PETITION FOR AN ORDER FOR SPECIFIC PERFORMANCE UNDER MISSOURI STATUTE GOVERNING NEGOTIABLE INSTRUMENTS

## CONVERSION OF INSTRUMENT AND UNJUST ENRICHMENT

## BREACH OF FIDUCIARY DUTY INCLUDING PUNITIVE DAMAGES

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

## INCLUDING PUNITIVE DAMAGES

1

APTCC 44

COMES NOW the Plaintiffs and for their Petition seeking a Judgment Quieting Title, Petition for an Order for Specific Performance under Missouri Statute Governing Negotiable Instruments, Conversion of Instrument and Unjust Enrichment, Breach of Fiduciary Duty including Punitive Damages, and Violations of the Missouri Merchandising Practices Act including Punitive Damages, state to the Court as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiffs state that this Circuit Court is the proper venue for this action. The subject property is located in Jackson County, Missouri. Subject matter jurisdiction is governed by the Missouri Constitution which grants circuit courts "…original jurisdiction over *all* cases and matters, civil and criminal." Mo. Const. Article V, Sec.14. This case is a civil case, therefore this Court has subject matter jurisdiction over this case. *Webb v Wyciskalla*, 275 S.W.3d, 253-254 (Mo. En banc 2009). Federal Court is not the proper venue, for any reason. Federal courts have an independent obligation to evaluate their jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Any Party seeking removal bears the burden of proving subject matter jurisdiction. In re Business Men's Assur. Co. of America, 992 F .2d 181, 182 (8th Cir. 1993). Federal district courts are "required to resolve all doubts about federal jurisdiction in favor of remand." *Id.*

In the light of using fraudulent joinder as a means of removal, it is defined as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." Filla v. Norfolk Southern Ry. Col, 336 F.3d 806,809 (8th Cir. 2003). In analyzing fraudulent joinder, "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based on the facts involved." *Id.* at 811. So long as there is at least a "colorable" state law cause of action against the diversity-defeating defendant, joinder is not fraudulent. *Id. at 810.* In questionable areas of state law, "the better practice is for the federal court not to decide the doubtful question, but simply to remand the case and leave the question for the state courts to decide." Id. at 811 (quoting Iowa Public Ser. Co. v Medicine Bow Coal Co., 556 F .2d 400,406 ( 8th Cir. 1977).

2

This suit has been filed in state court. State court is the proper venue. The suit concerns a subject property located within this County and within the State of Missouri. Application of state law is primarily the responsibility of state courts. State court has jurisdiction.

2.    That Defendant Deutsche Bank National Trust Company hereinafter "Deutsche", while acting as an agent for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust", ordered Successor Trustee Millsap & Singer, hereinafter "Millsap", to initiate a foreclosure sale of the property commonly identified as 3020 S Fields Road, Oak Grove, MO 64075.

3.    That Ocwen and Deutsche are planning to schedule a foreclosure sale of the property at the order of Defendant American Home Trust. However, this is a violation of the Pooling and Servicing Agreement of the American Home Mortgage Assets Trust 2007-3. Deutsche Bank National Trust Company and other larger Trustee Corporations, such as US Bank National Association, New York Bank Mellon and many others represent themselves as the foreclosing party which is the Holder in Due Course. This is not true. Mortgage Backed Securities are governed by a document that was registered with the Securities Exchange Commission. The document is called the Pooling and Servicing Agreement and it is not flexible. In simple terms, the Pooling and Servicing Agreement defines the Trustee as a business manager for the Trust, but does not give the Trustee of the REMIC Trust the power, or even the right to inquire about Foreclosures. But that hasn't stopped Deutsche, US Bank National Association, New York Bank Mellon, or any of the other major Trustee for hire companies from claiming to be the foreclosing party in foreclosure actions

4.    That such scheduling of an alleged sale date by American Home Trust was, to the best of Plaintiffs' knowledge, conducted in an attempt to enforce an alleged promissory note executed by Plaintiffs to Advance Mortgage Corporation in 2007. Plaintiffs contend, purely for the sake of argument, that were any note purported to be held by American Home Trust held to be otherwise legitimate, said note would be unenforceable for other reasons, including, but not necessarily limited to, the following:

a. That American Home Trust was not, at the time of the alleged
   scheduling of the foreclosure, the party entitled to enforce the alleged note.

3

b. That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri.

(Ex P  RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act").

c. That any such alleged one and only true note was an offer by Plaintiffs to pay back money, if it was loaned to them to purchase a house by the Defendant Advance Mortgage Corporation, hereinafter "Advance" which did not "accept" the offer by funding the loan. Therefore no consideration was ever received by the Plaintiffs from Advance, or any other Party named herein, or by any party identified in any alleged assignments.

(See Exhibit D- RSMo 400-003.303, Value and Consideration) (Ex A- RSMo. 400-003.302, Holder in Due Course)

5.    That any Deed of Trust alleged to be associated with the purported note is also invalid for reasons including, but not necessarily limited to, the following:

a. That any such alleged note was transferred electronically without complying with the Uniform Electronic Transfers Act as adopted by the State of Missouri, including the lack of written permission from Plaintiffs to allow Defendants to negotiate the transaction of the sale and transfer of Plaintiffs' alleged loan using electronic replicas of Plaintiffs' loan instruments and signatures to be used as originals.

(Ex P  RSMO 432.200. Sections 432.200 to 432.295 shall be known and may be cited as the "Uniform Electronic Transactions Act").

b. That any alleged note or deed of trust, whether valid or not, has, at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., MERS was named as an agent with special

4

powers of sales and assignments in the terms of the alleged Deed of Trust, but MERS is never given these powers or even mentioned in the terms of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**

(Exhibit E Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY Bifurcation)

## COUNT I

## QUIET TITLE

COMES NOW the Plaintiffs and, for their Petition for an Order of this Court Quieting Title to the subject property in this matter and granting title in fee simple to them, their heirs, or assigns, states to the Court as follows:

That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to All Counts as though fully set forth herein.

1. That any claim to title of the subject property by any Defendant named herein is derived from title held previously by Plaintiffs and purported by that Defendant to have been passed to them, directly or indirectly, from the Plaintiffs.

2. That any purported note related to the property or title in question has been altered and is not original and/or authentic and/or has been transferred by an individual or entity not authorized to do so and cannot be enforced.

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration)

3. That no Defendant herein has now, or at any time, claimed a loss of its money on the alleged subject loan. No Defendant has claimed injury due to Plaintiffs' actions or Plaintiffs' loan documents. Without a pleading of injury there is no claim. If there were an alleged default, then the party injured must claim injury and prove how it was injured.

5

WHEREFORE, Plaintiffs pray this Court enter its Order directing that a Deed in Fee Simple to the Plaintiffs be entered into the records of Jackson County, Missouri and that any record purporting to show title vested in any other individual or entity as of March 13, 2007 or subsequent, be stricken from those property records and held as void and for such other relief as the Court deems appropriate.

## COUNT II

## PETITION FOR AN ORDER FOR SPECIFIC PERFORMANCE UNDER THE STATUTES OF RSMO CHAPTER 400.30 NEGOTIABLE INSTRUMENTS

COMES NOW, the Plaintiffs and for their Petition for an Order Demanding Specific Performance under the Statutes of RSMo Chapter 400.30 Negotiable Instruments state the Court as follows:

1. That this Count pertains to Defendants Advance Mortgage Corporation, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, Am

Ocwen Loan Servicing, LLC fka Homeward Residential, Inc., fka American Home Mortgage Servicing and Deutsche Bank National Trust Company.

2. That Defendants have made it abundantly clear that they intend to foreclose on Plaintiffs' property.

3. That Defendants claim that the right to foreclose, (for one, or the other, or both), on alleged Borrower is "under the Deed of Trust". But, the mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872), "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

6

4. That Defendants are ignoring the fact that the Deed of Trust is a security document which is junior to a Promissory Note, which is evidence of the debt. While the language of right to sale is indeed in the Deed of Trust, the Deed of Trust is void if it has been bifurcated from the Promissory Note. The Security always follows the debt. The two instruments must always be assigned together and must always be owned in the same name. The Deed of Trust (mortgage) should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.

5. That any alleged note and deed of trust in this instant case, whether valid or not, has at various times, been bifurcated or split, due to the fact that Mortgage Electronic Registration Systems, Inc., hereinafter "MERS" was named as an agent for Advance Mortgage with fantastic special powers of sales and assignments in the terms of the alleged Deed of Trust. However MERS is never given these powers by Advance Mortgage, or even mentioned at all in the terms of the alleged Promissory Note. The two documents have very different terms. The Note and Deed of Trust were split at closing. The mortgage should always follow the note. If it does not, then the note is separated from the mortgage and making both the note and the mortgage voidable. See, U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

6. That Defendants stubbornly and illegally cling to the Deed of Trust as a superior interest that somehow gives them the right to foreclose. This is a lie that has been perpetuated for so long that it is now believed by many to be true. But, this lie is nothing more than myth and legend. It is untrue. Missouri has a very precise body of statute that parties must follow when negotiating and transacting Negotiable Instruments. The Statute RSMo Chapter 400. 300 is actually one chapter of the Uniform Commercial Code which has been adopted by all 50 states. UCC Chapter 3 is the Missouri RSMO 400.3 Negotiable Instruments, as adopted by the State of Missouri. UCC Chapter 9 is the Missouri RSMo 400.9 Secured Instruments.

7. That a Promissory Note belongs to the obligor or issuer of the Note. Plaintiffs's alleged Note was to be held by the actual lender which "funded" Plaintiff's alleged loan. The issuer here, the

7

Plaintiffs, are obliged to know who is holding their Note at any time. Defendants constantly claim in writing that the whereabouts of Plaintiffs' Note is "proprietary information". That is absurd. The Note is the property of Plaintiffs. Borrowers do not pay off their house. A Borrower buys back his Note through payments.

8. When Borrowers have paid off, or repurchased, their Note, the Deed of Trust is void. The Note is to be surrendered to the Borrower marked paid. This is not happening after collection in full. Claimants all over the country are foreclosing as alleged Holders in Due Course, yet are not able to exhibit the original Note with all proper endorsements, or surrender it when paid.

(Ex 1 RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-003.303, Value and Consideration)

9. That fact that Defendants are claiming to be Holder in Due Course means that they are claiming that they are the party who came by the loan by paying for it, obtained it legally and can prove it.

(Ex A- RSMo. 400-003.302, Holder in Due Course)

10. That, this is not the first time that Ocwen has wrongfully enforced the alleged Promissory Note of Plaintiffs. Defendant Ocwen has never recorded any purchase of the loan, or any assignment of the alleged Promissory Note and Deed of Trust, or either one separately. Yet, Ocwen has collected monies for payments, which is an act of "enforcing the Note".

11. That MERS acting for Advance Mortgage claims that they "sold" the alleged loan of Plaintiffs to The American Home Trust and recorded the assignment on 1-11-2013. Plaintiffs question whether Advance even knows that MERS sold the loan to American Home Trust on its behalf, even though the sale took place 6 years after the closing date of the Trust.

12. That Ocwen under several different aka names, without any apparent claim of any kind to the alleged Promissory Note, then sent coupons and letters to Plaintiffs alleging that Plaintiffs had to send the payments worked out with Advance to Ocwen, but has insisted since that time that it did have the right to enforce the "Deed of Trust". But, Ocwen rarely speaks of the Promissory Note, that needed to be presented to Plaintiffs before acts of collection.

(Ex G RSMo 400-303.404, Imposters—fictitious payees) (Ex H RSMo 400-003.407, Alteration) Ex I RSMo 400-303.306, Claims to an instrument) (Exhibit B RSMo 432.010 Statute of Frauds—Contracts must be in writing) (Ex G RSMo. 400.3.501, Presentment) (Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex D- RSMo 400-0033)

13. That the named Lender on Plaintiffs' alleged Promissory Note is Advance Mortgage. Advance did not fund Plaintiff's loan. Advance Mortgage was a licensed broker or originator of mortgage loans who received commissions and fees for arranging a loan, but did not use its own

8

money to fund loans. Advance Mortgage has never answered claims that it has no evidence of funding, such as copies of wire transfers to closing, or copies of front and back of Cashier's Checks. There was no Consideration from Advance Mortgage and there is no proof differently.

**(Ex G RSMo. 400.3.404, Imposter/Fictitious Payee) (Ex A- RSMo. 400-003.302, Holder in Due Course) (Ex G RSMo. 400.3.501, Presentment) (Ex D- RSMo 400-003.303, Value and Consideration)**

14. Defendant Advance is using only a copy/replica of the front of the Plaintiffs' alleged Promissory Note for its claim. This is the 4th time since December 31, 2013 that this same front only copy/replica has been sent to Plaintiffs by Defendants.

15. That Plaintiffs are especially concerned that Defendant American Home Trust and Successor Trustee Millsap will again try soon to foreclose claiming to enforce the alleged Note for collection "with rights under the Deed of Trust". Defendants want to "assure" Plaintiffs and the court that they have possession of the Note and that this assurance of Defendants is enough under law. A ten year Treasury Bond is a negotiable instrument. A one hundred dollar bill is a negotiable instrument. Stock Certificates are negotiable instruments. You can't spend a copy of a $100 bill at Walmart. All of these instruments must be presented as originals to collect, surely no one will argue against that.

16. That a Promissory Note is also a negotiable instrument. It must be presented to its maker for exhibit (examination) for collection. There can be no secrets concerning the Plaintiffs as makers of the alleged note. It is not proprietary information.

**(Ex G RSMo. 400.3.501, Presentment)**

17. That this court is the only venue where Plaintiffs can exercise their right as issuers/obligors to have their Note presented to them for examination before collection.

18. That PRESENTMENT is defined by RSMo 400.3-501 as: (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument. (b) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made. (surrender means to return to issuer/obligor) (iv) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or acceptance for failure of the presentment document to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

9

19. That Defendants Deutsche, Millsap, the American Home Trust and Ocwen are now scheming to foreclose on Plaintiffs' home. In order to foreclose the Defendants are obligated to present the original and authentic Note belonging to the Obligor for his personal inspection. Despite Discovery requests for said presentment, Defendants have refused to do so, under a clear reading of Missouri statutes regarding negotiable instruments as mentioned above. Presentment of original note for Plaintiff's inspection is a necessary prerequisite for collection and a foreclosure sale is a collection effort.

20. That Plaintiffs are unaware of any statutory or case law excusing the Defendants from their obligations under the statutes heretofore cited.

21. That Plaintiffs have no other remedy to compel Defendants to comply with the statutes other than an order requiring Defendants to specifically perform their statutory obligations, before making claims of rights to collect, disburse, or declare default.

22. That in the interest of judicial economy and the economic interests of both the Plaintiffs and Defendants, granting Plaintiffs the remedy of specific performance is appropriate to wit: by putting to the fore the issues highlighted in the above referenced statutes, it will save time and therefore, costs. This immediate action will serve to clarify the most fundamental aspects of this instant case.

(Ex G RSMo. 400.3.501, Presentment)

WHEREFORE, Plaintiffs pray this Court for its Order requiring Defendant claimant American Home Trust, Ocwen, Deutsche or any other claimant of being the Holder in Due Course to immediately bring to court, the original and authentic, one and only Promissory Note with all proper and necessary endorsements, unaltered and unchanged having been held in safekeeping, for exhibit and examination as proof that any such alleged Promissory Note exists. If Defendant brings any example claiming it is the alleged Promissory Note, Plaintiffs further requests the court to permit a 3rd party expert examination of the document to vouch for authenticity if there is valid reasoning. This Presentment is necessary, so that Plaintiffs can once and for all see if a document having never been presented does exist. Without such immediate Presentment, Plaintiffs pray this court for an Order of Summary Judgment in favor of Plaintiff.

10

## COUNT IV

## BREACH OF FIDUCIARY DUTY

COMES NOW the Plaintiffs and, for their claim of Breach of Fiduciary Duty against Defendants Ocwen, Deutsche Bank National Trust Company, and the American Home Trust, state to the Court as follows:

1. That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to all Counts as though fully set forth herein.

2. That this Count pertains solely to Deutsche Bank National Trust Company, Ocwen, and The American Home Trust.

3. That Millsap acting as Successor Trustee of the loan and Deutsche as agent Trustee of the American Home Trust in the purported scheduling of a foreclosure sale referred to above.

4. That Millsap and Deutsche intend to sell the property at such purported foreclosure sale to American Home Trust using a fraudulent credit bid and may yet do it.

(Ex J   RSMo 400-003.307,   Notice of Breach of Fiduciary Duty)

5. That Millsap and Deutsche were to conduct such sale to American Home Trust using a non-existent credit bid from American Home Trust and not for cash or any cash equivalent.

6. That Millsap & Singer had a duty to conduct a sale that was fair and impartial to both the alleged foreclosing party as well as the party being foreclosed upon.

(Ex J RSMo   400-003.307,   Notice of Breach of Fiduciary Duty)

7. That Millsap & Singer failed to ascertain that Deutsche, as just an agent Trustee, or the American Home Trust, were neither one, in fact, the party entitled to enforce any note.  The

11

Correspondence to Plaintiffs from Defendants clearly shows that, even if the alleged note were to be valid, the party holding title to it was not American Home Trust. MERS was named on the alleged Security Instrument as a "beneficiary" of unknown agency and special powers. But MERS was never given these same powers or even mentioned on the alleged Promissory Note. This constitutes an intentional bifurcation, or splitting of the Note from the Security Instrument. These two documents had very different terms creating a nullity of both documents. See, *U.S. Supreme Court* <u>*Carpenter v. Longan*</u>, *83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.**

(Exhibit E Case U.S. Supreme Court <u>Carpenter v. Longan</u>, 83 U.S. 16 Wall. 271 271 (1872) (APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY)

8. That trying to conduct a foreclosure sale without making even the minimal determination of whether the party attempting to foreclose has the right to enforce the note can hardly be "fair" and "impartial" to the party whose property is being taken.

9. That Ocwen and Deutsche acted in conscious disregard of Plaintiffs' rights and that Plaintiffs were damaged thereby and should be awarded nominal actual damages as well as punitive damages sufficient to deter Ocwen, Deutsche Bank National Trust Company, and the American Home Trust any others likewise situated from such conduct in the future.

WHEREFORE, Plaintiffs pray this Court enter its Judgment against Deutsche National Trust Company, Ocwen Servicing and The American Home Trust for Breach of Fiduciary Duty and awarding Plaintiffs nominal actual damages as well as punitive damages in an amount sufficient to deter these Defendants and others similarly situated from such conduct in the future as well as for such other relief as the Court deems just.

## COUNT V

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

### INCLUDING PUNITIVE DAMAGES

COMES NOW the Plaintiffs and, for their claim of violations of the Missouri Merchandising Practices Act against Defendants Advance Mortgage Corporation, Ocwen Loan

12

Servicing, LLC fka Homeward Residential, Inc. fka American Home Mortgage Servicing, hereinafter "Ocwen", Millsap & Singer, Deutsche Bank National Trust Company, and American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, hereinafter "American Home Trust" and state to the Court:

1. That Plaintiffs incorporate the allegations contained in the section headed Allegations Common to all Counts as though fully set forth herein.

2. That Defendants working in concert created the illusion that an alleged loan contract which named Advance Mortgage Corporation as lender, had actually been funded by Advance Mortgage Corporation when it had not. Written requests for proof showing authentic documents from this transaction including copies of funding wires; cash; or other equivalent payment coming from Advance Mortgage Corporation to fund any alleged closing regarding Plaintiffs have gone unanswered by all Defendants.

**(Ex D RSMo. 400.3-303, Value and Consideration)**

3. Defendants have employed deceptive practices rising to fraud, false pretense, false promises regarding a contract, misrepresentation, and the concealment, suppression and omission of material facts to use non-existent allegedly duly perfected contractual documents in an attempt to take Plaintiffs' home using a fraudulent Missouri non-judicial foreclosure sale while representing to Plaintiffs and the court that one of the Defendants, the American Home Trust was a Holder in Due Course of a certain alleged Promissory Note. Defendants all claim that the American Home Trust became so by purchasing the note legally with funds intended for that purpose. No such original legal document has been proffered.

**(Ex A RSMo. 432.010, Statute of Frauds-Contracts must be in writing), (Ex C RSMo. 400.3-501, Presentment), ( Ex G RSMo.400.3-404, Imposter/Fictitious Payee) (Ex D RSMo. 400.3-303, Value and Consideration) (Ex I RSMo 400-003.306, Claims to an instrument)**

4. That the alleged January 11, 2012 assignment of the alleged subject 2007 loan by MERS, as Grantor, while acting as an alleged agent for Advance, to the Grantee American Home Trust can never have happened. This is because Advance Mortgage Corporation in 2006 was an originator or broker of home loans. In this capacity Advance Mortgage Corporation took fees in compensation for introducing Borrowers and Lenders to each other, and never funding any loans with its own money. This is in contrast to its being the named Lender on the loan documents. The Power of attorney or agency agreement between MERS and Advance was being used to assign

13

an alleged loan 5 years after the closing. MERS has repeatedly stated in public and on its website that it did not own or have equity in any loans at any time. This "nominee" contract has never been presented to Plaintiff for inspection even though Plaintiff has requested this in writing and will again in Discovery. Advance Mortgage has stated in sworn Discovery that it did authorize the assignment, but in answer to the question elsewhere Advance states that it allegedly assigned the loan to American Home Mortgage on the day of closing March 18, 2007, but there is no such recorded assignment of the purchase of the loan by American Home Mortgage from Advance. The presentation that this assignment happened is misrepresentation and fraud by definition. A quick reading of the two documents will show this, if in fact, both authentic alleged documents can be found.

5. That even if Advance Mortgage Corporation could come up with some sort of document to present to the court proving it claim of funding the loan. The fact that the terms of the alleged Deed of Trust gives MERS powers to assign the Deed of Trust, however MERS is not given this power in the alleged Promissory Note, nor is MERS ever mentioned in the alleged Promissory Note copies from closing. This is an intentional bifurcation, or splitting of the two documents and cannot be repaired. See, *U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)* **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."**

(Ex A RSMo, 432.010, Statute of Frauds- Contracts to be in writing) (Ex H RSMo, 400-003.407, Alteration) (Ex A RSMo, 400-003.302 Holder in Due Course) (Ex E RSMo, 400-003.203, Transfer of instrument) (Ex I RSMo, 400-303.306, Claims to an Instrument) (Ex G RSMo. 400.3-404, Imposter/Fictitious Payee) ((Ex D RSMo. 400.3-303, Value and Consideration)

6. Most importantly, all Mortgage Backed Securities with REMIC trusts are governed by a Pooling and Servicing Agreement which is a critical component of every Mortgage Backed Security registration with the SEC. Every Pooling and Servicing Agreement includes a Cutoff Date (the date which all loans to be purchased by the Trust are identified) and a Closing Date (the date which all loans to be purchased are deposited into the Trust. This date is also called the Startup Date of the Trust. After this date, no new loans can be placed into the Trust without drastic consequences to the investors who have purchased bonds issued by the Trust. Certain loss of the IRS tax haven status would follow. This 2007 loan must have been deposited into the Trust by the Closing Date of June 6th, 2007. However, the recorded assignment from MERS on behalf of Advanced Mortgage is transferred into the American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3 on January 13, 2013. This almost 6

14

years too late. This is an absolute rule. There are no special situations that would allow this transfer. If the loan was never in the Trust where was it? How does the Trust claim it is the Holder in Due Course? There is no possibility of reconciling these transactions. *For the Closing Date see the recent Moody's report attached with the Exhibits.*

7. Defendants and others contrived these illegal and impossible transactions to wrongfully take Plaintiffs home. None of these Defendants can prove they funded the loan or the subsequent purchases of the alleged loan. American Home Trust, and maybe others, was scheming to take a house without any investment. American Home Trust, or is master, was trying to get a home for free. This sale did not happen, but the threat of it has not been extinguished and this fact creates constant and unbearable anxiety for Plaintiffs.


WHEREFORE, Plaintiffs pray this Court enter its Judgment against Defendants Advance Mortgage Corporation, Ocwen Loan Servicing, LLC fka Homeward Residential, Inc.fka American Home Mortgage Servicing, Deutsche Bank National Trust Company, American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates, Series 2007-3, and Millsap & Singer, the Foreclosure Trustee, for violations of the Missouri Merchandising Practices Act, and awarding Plaintiffs nominal actual damages as well as punitive damages in an amount sufficient to deter Defendants and others similarly situated from such conduct in the future as well as for such other relief as the Court deems just.



Respectfully Submitted,

Barre Eugene Hunter Pro Se          Venda Marie Hunter Pro Se

15

# Exhibits of Relevant Missouri UCC Law

Page

2    (Ex A, RSMo 400-003.302 Holder in Due Course)

4    (Ex B, RSMo 432.010 Statute of Frauds-Contracts Required to be in Writing)

5    (Ex C, RSMo 400-003.501 Presentment)

7    (Ex D, RSMo 400-003.303 Value and Consideration)

8    (Ex E, RSMo 400-003.203 Transfer of Instrument—rights acquired by transfer)

9    (Ex F, Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872) APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY)

15    (Ex G, RSMo 400-003. 404 Imposters –fictitious payees)

17    (Ex H, RSMo 400-003.407 Alteration)

18    (Ex I, RSMo 400-303.306 Claims to an Instrument)

19    (EX J RSMo 400-003.307 Notice of breach of fiduciary duty)

21    (Ex K RSMo 400-003.309   Enforcement of lost, destroyed, or stolen instrument)

22    (Ex L, RSMo 400-003.405 Employer's responsibility for fraudulent endorsement by employee)

24    (Ex M, RSMo 400-003.420 Conversion of Instrument)

    (Ex N Critical assignments the Deed of Trust)

    (Ex O Mortgage Backed Security Information, this case)

1

# Exhibit A

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.302*

August 28, 2013

### Holder in due course.

400.3-302. (a) Subject to subsection (c) and Section 400.3-106(d), "holder in due course" means the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 400.3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 400.3-305(a).

2

# EXHIBIT B

# *Missouri Revised Statutes*

## Chapter 432
## Contracts Required to Be in Writing
## Section *432.010*

August 28, 2013

### Statute of frauds--contracts to be in writing.

432.010. No action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

(RSMo 1939 § 3354)

Prior revisions: 1929 § 2967; 1919 § 2169; 1909 § 2783

CROSS REFERENCES:

Actions on contract barred, revived by written promise, 516.320

Marriage contracts affecting property to be in writing, acknowledged, 451.220

4

(b) Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under subsection (a), but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment, or claim to the instrument.

(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.

(d) If, under Section 400.3-303(a)(1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

(e) If (i) the person entitled to enforce an instrument has only a security interest in the instrument and (ii) the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

(f) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

(g) This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

(L. 1963 p. 503 § 3-302, A.L. 1992 S.B. 448)

---

© Copyright

Missouri General Assembly

3

# Exhibit C

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.501*

August 28, 2013

**Presentment.** 400.3-501. (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

(b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:

(1) Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.

(2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

(3) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or

5

# Exhibit D

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.303*

August 28, 2013

**Value and consideration.**

400.3-303. (a) An instrument is issued or transferred for value if:

(1) the instrument is issued or transferred for a promise of performance, to the extent the promise has been performed;

(2) the transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;

(3) the instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due;

(4) the instrument is issued or transferred in exchange for a negotiable instrument; or

(5) the instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.

(b) "Consideration" means any consideration sufficient to support a simple contract. The drawer or maker of an instrument has a defense if the instrument is issued without consideration. If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed. If an instrument is issued for value as stated in subsection (a), the instrument is also issued for consideration.

7

acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

(4) The party to whom presentment is made may treat presentment as occurring on the next business day after the day of presentment if the party to whom presentment is made has established a cut-off hour not earlier than 2 p.m. for the receipt and processing of instruments presented for payment or acceptance and presentment is made after the cut-off hour.

(L. 1992 S.B. 448)

*No continuity with § 400.3-501 as repealed by L. 1992 S.B. 448.

---

© Copyright

 Missouri General Assembly

6

# EXHIBIT E

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.203*

August 28, 2013

**Transfer of instrument—right acquired by transfer.** 400.3-203. (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this Article and has only the rights of a partial assignee.

(L. 1992 S.B. 448)

*No continuity with § 400.3-203 as repealed by L. 1992 S.B. 448.

8

# Exhibit F

## Carpenter v. Longan - 83 U.S. 271 (1872)

Syllabus

Case U.S. Supreme Court Carpenter v. Longan, 83 U.S. 16 Wall. 271 271 (1872)

APPEAL FROM THE SUPREME COURT OF COLORADO TERRITORY

Syllabus

1. The assignment of a negotiable note before its maturity raises the presumption of a want of notice of any defense to it, and this presumption stands till it is overcome by sufficient proof.

2. When a mortgage given at the same time with the execution of a negotiable note and to secure payment of it, is subsequently, but before the maturity of the note, transferred bona fide for value, with the note, the holder of the note when obliged to resort to the mortgage is unaffected by any equities arising between the mortgagor and mortgagee subsequently to the transfer, and of which he, the assignee, had no notice at the time it was made. He takes the mortgage as he did the note.

MR. JUSTICE SWAYNE stated the case, and delivered the opinion of the Court.

On the 5th of March, 1867, the appellee, Mahala Longan, and Jesse B. Longan, executed their promissory note to Jacob B. Carpenter, or order, for the sum of $980, payable six months after date, at the Colorado National Bank, in Denver City, with interest at the rate of three and a half percent per month until paid. At the same time Mahala Longan executed to Carpenter a mortgage upon certain real estate

Page 83 U. S. 272

therein described. The mortgage was conditioned for the payment of the note at maturity, according to its effect.

9

# Exhibit G

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.404*

August 28, 2013

**Impostors--fictitious payees.** 400.3-404. (a) If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the payee, an endorsement of the instrument by any person in the name of the payee is effective as the endorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) If (i) a person whose intent determines to whom an instrument is payable (Section 400.3-110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special endorsement:

(1) Any person in possession of the instrument is its holder.

(2) An endorsement by any person in the name of the payee stated in the instrument is effective as the endorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

(c) Under subsection (a) or (b), an endorsement is made in the name of a payee if (i) it is made in a name substantially similar to that of the payee or (ii) the instrument, whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to that of the payee.

15

Bloomer v. Henderson, 8 Mich. 395; Potts v. Blackwell, 4 Jones 58; Cicotte v. Gagnier, 2 Mich. 381; Pierce v. Faunce, 47 Me. 507; Palmer v. Yates, 3 Sandford 137; Taylor v. Page, 6 Allen 86; Croft v. Bunster, 9 Wis. 503; Cornell v. Hilchens, 11 id. 353.

[Footnote 2]

Hern v. Nichols, 1 Salkeld 289.

[Footnote 3]

Jackson v. Blodget, 5 Cowan 205; Jackson v. Willard, 4 Johnson 43.

[Footnote 4]

14 Ohio St. 396.

[Footnote 5]

47 Me. 513.

[Footnote 6]

4 Vesey 126.

14

"A mortgage is pro tanto a purchase, and a bona fide mortgagee is equally entitled to protection as the bona fide grantee. So the assignee of a mortgage is on the same footing with the bona fide mortgagee. In all cases the reliance of the purchaser is upon the record, and when that discloses an unimpeachable title he receives the protection of the law as against unknown and latent defects."

Matthews v. Wallwyn [Footnote 6] is usually much relied upon by those who maintain the infirmity of the assignee's title. In that case, the mortgage was given to secure the payment of a nonnegotiable bond. The mortgagee assigned the bond and mortgage fraudulently and thereafter received large sums which should have been credited upon the debt. The assignee sought to enforce the mortgage for the full amount specified in the bond. The Lord Chancellor was at first troubled by the consideration that the mortgage deed purported to convey the legal title, and seemed inclined to think that might take the case out of the rule of liability which would be applied to the bond if standing alone. He finally came to a different conclusion, holding the mortgage to be a mere security. He said, finally:

"The debt therefore is the principal thing, and it is obvious that if an action was brought on the bond in the name of the mortgagee, as it must be, the mortgagor shall pay no more than what is really due upon the bond; if an action of covenant was brought by the covenantee, the account must be settled in that action. In this Court, the condition of the assignee cannot be better than it would be at law in any mode he could take to recover what was due upon the assignment."

The principle is distinctly recognized that the measure of liability upon the instrument secured is the measure of the liability chargeable upon the security. The condition of the assignee cannot be better in law than it is in equity.

Page 83 U. S. 277

So neither can it be worse. Upon this ground we place our judgment.

We think the doctrine we have laid down is sustained by reason, principle, and the greater weight of authority.

Decree reversed and the case remanded with directions to enter a decree in conformity with this opinion.

[Footnote 1]

Powell on Mortgages 908; 1 Hilliard on Mortgages 572; Coot on Mortgages 304; Reeves v. Scully, Walker's Chancery 248; Fisher v. Otis, 3 Chandler 83; Martineau v. McCollum, 4 id. 153;

13

The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. [Footnote 3]

Page 83 U. S. 275

It must be admitted that there is considerable discrepancy in the authorities upon the question under consideration.

In Baily v. Smith [Footnote 4] -- a case marked by great ability and fullness of research -- the Supreme Court of Ohio came to a conclusion different from that at which we have arrived. The judgment was put chiefly upon the ground that notes, negotiable, are made so by statute, while there is no such statutory provision as to mortgages, and that hence the assignee takes the latter as he would any other chose in action, subject to all the equities which subsisted against it while in the hands of the original holder. To this view of the subject there are several answers.

The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity. When the amount due on the note is ascertained in the foreclosure proceeding, equity recognizes it as conclusive, and decrees accordingly. Whether the title of the assignee is legal or equitable is immaterial. The result follows irrespective of that question. The process is only a mode of enforcing a lien.

All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action,

Page 83 U. S. 276

where no such relation of dependence exists. Accessorium non ducit, sequitur principale.

In Pierce v. Faunce, [Footnote 5] the court said:

12

have been liable in the hands of the payee. The mortgage was conditioned to secure the fulfillment of that contract. To let in such a defense against such a holder would be a clear departure from the agreement of the mortgagor and mortgagee, to which the assignee subsequently, in good faith, became a party. If the mortgagor desired to reserve such an advantage, he should have given a nonnegotiable instrument. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who "puts trust and confidence in the deceiver should be a loser rather than a stranger." [Footnote 2]

Upon a bill of foreclosure filed by the assignee, an account must be taken to ascertain the amount due upon the instrument secured by the mortgage. Here the amount due was the face of the note and interest, and that could have been recovered in an action at law. Equity could not find that

Page 83 U. S. 274

less than due. It is a case in which equity must follow the law. A decree that the amount due shall be paid within a specified time, or that the mortgaged premises shall be sold, follows necessarily. Powell, cited supra, says:

"But if the debt were on a negotiable security, as a bill of exchange collaterally secured by a mortgage, and the mortgagee, after payment of part of it by the mortgagor, actually negotiated the note for the value, the endorsee or assignee would, it seems, in all events, be entitled to have his money from the mortgagor on liquidating the account, although he had paid it before, because the endorsee or assignee has a legal right to the note and a legal remedy at law, which a court of equity ought not to take from him, but to allow him the benefit of on the account."

A different doctrine would involve strange anomalies. The assignee might file his bill and the court dismiss it. He could then sue at law, recover judgment, and sell the mortgaged premises under execution. It is not pretended that equity would interpose against him. So if the aid of equity were properly invoked to give effect to the lien of the judgment upon the same premises for the full amount, it could not be refused. Surely such an excrescence ought not to be permitted to disfigure any system of enlightened jurisprudence. It is the policy of the law to avoid circuity of action, and parties ought not to be driven from one forum to obtain a remedy which cannot be denied in another.

The mortgaged premises are pledged as security for the debt. In proportion as a remedy is denied the contract is violated, and the rights of the assignee are set at naught. In other words, the mortgage ceases to be security for a part or the whole of the debt, its express provisions to the contrary notwithstanding.

11

On the 24th of July, 1867, more than two months before the maturity of the note, Jacob B. Carpenter, for a valuable consideration, assigned the note and mortgage to B. Platte Carpenter, the appellant. The note not being paid at maturity, the appellant filed this bill against Mahala Longan, in the District Court of Jefferson County, Colorado territory, to foreclose the mortgage.

She answered and alleged that when she executed the mortgage to Jacob B. Carpenter, she also delivered to him certain wheat and flour, which he promised to sell, and to apply the proceeds to the payment of the note; that at the maturity of the note she had tendered the amount due upon it, and had demanded the return of the note and mortgage and of the wheat and flour, all which was refused. Subsequently she filed an amended answer, in which she charged that Jacob B. Carpenter had converted the wheat and flour to his own use, and that when the appellant took the assignment of the note and mortgage, he had full knowledge of the facts touching the delivery of the wheat and flour to his assignor. Testimony was taken upon both sides. It was proved that the wheat and flour were in the hands of Miller & Williams, warehousemen, in the City of Denver, that they sold, and received payment for, a part, and that the money thus received and the residue of the wheat and flour were lost by their failure. The only question made in the case was, upon whom this loss should fall, whether upon the appellant or the appellee. The view which we have taken of the case renders it unnecessary to advert more fully to the facts relating to the subject. The district court decreed in favor of the appellant for the full amount of the note and interest. The supreme court of the territory reversed the decree, holding that the value of the wheat and flour should be deducted. The complainant thereupon removed the case to this Court by appeal.

It is proved and not controverted that the note and mortgage were assigned to the appellant for a valuable consideration

Page 83 U. S. 273

before the maturity of the note. Notice of anything touching the wheat and flour is not brought home to him.

The assignment of a note underdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was nonnegotiable, or had been assigned after maturity. The question presented for our determination is, whether an assignee, under the circumstances of this case, takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative. [Footnote 1] The contract as regards the note was that the maker should pay it at maturity to any bona fide endorsee, without reference to any defenses to which it might

10

# Exhibit H

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.407*

August 28, 2013

**Alteration.**

400.3-407. (a) "Alteration" means (i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.

(b) Except as provided in subsection (c), an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.

(c) A payor bank or drawee paying a fraudulently altered instrument or a person taking it for value, in good faith and without notice of the alteration, may enforce rights with respect to the instrument (i) according to its original terms, or (ii) in the case of an incomplete instrument altered by unauthorized completion, according to its terms as completed.

(L. 1963 p. 503 § 3-407, A.L. 1992 S.B. 448)

© Copyright

 Missouri General Assembly

17

(d) With respect to an instrument to which subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(L. 1992 S.B. 448)

*No continuity with § 400.3-404 as repealed by L. 1992 S.B. 448.

16

# Exhibit I

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.306*

August 28, 2013

### Claims to an instrument.

400.3-306. A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

(L. 1963 p. 503 § 3-306, A.L. 1992 S.B. 448)

© Copyright

   Missouri General Assembly

Case 4:15-cv-00141-DW   Document 1-1   Filed 02/24/15   Page 480 of 491

# Exhibit J

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.307*

August 28, 2013

**Notice of breach of fiduciary duty.**

400.3-307. (a) In this section:

(1) "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

(2) "Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.

(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(1) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.

(2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary.

(3) If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.

19

(4) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary.

(L. 1992 S.B. 448, A.L. 1994 S.B. 701)

*No continuity with § 400.3-307 as repealed by L. 1992 S.B. 448.

© Copyright

 Missouri General Assembly

# *Exhibit K*

# *Missouri Revised Statutes*

## Chapter 400
## Uniform Commercial Code
## Section *400-003.309*

August 28, 2013

**Enforcement of lost, destroyed, or stolen instrument.**

400.3-309. (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section 400.3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

(L. 1992 S.B. 448)

 © Copyright    Missouri General Assembly

# Exhibit L

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.405*

August 28, 2013

**Employer's responsibility for fraudulent endorsement by employee.** 400.3-405.
(a) In this section:

(1) "Employee" includes an independent contractor and employee of an independent contractor retained by the employer.

(2) "Fraudulent endorsement" means (i) in the case of an instrument payable to the employer, a forged endorsement purporting to be that of the employer, or (ii) in the case of an instrument with respect to which the employer is the issuer, a forged endorsement purporting to be that of the person identified as payee.

(3) "Responsibility" with respect to instruments means authority (i) to sign or endorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the

22

# Exhibit M

# Missouri Revised Statutes

## Chapter 400
## Uniform Commercial Code
## Section *400-003.420*

August 28, 2013

**Conversion of instrument.**

400.3-420. (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

(c) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable to conversion to that person beyond the amount of any proceeds that it has not paid out.

(L. 1992 S.B. 448)

© Copyright

 Missouri General Assembly

24

employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(c) Under subsection (b), an endorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.

(L. 1992 S.B. 443)

*No continuity with § 400.3-405 as repealed by L. 1992 S.B. 448.

© Copyright

 Missouri General Assembly

23

# EXHIBIT N

ELECTRONICALLY RECORDED
JACKSON COUNTY, MISSOURI
**01/11/2013 02:59:03 PM**
ASDT      FEE: $ 24.00    2    Pages

INSTRUMENT NUMBER:
**2013E0003758**

Millsap & Singer, LLC
612 Spirit Drive
St. Louis, Missouri 63005.
Barre Eugene Hunter, a married person and Venda Marie Hunter, His Wife
MS# 146420.100912.291683 FC

## ASSIGNMENT OF DEED OF TRUST

**Date of Document:** 10-1-12

**Affecting Deed of Trust Recorded: as Instrument No. 2007E0038241**

**MERS Phone Number:**   1-888-679-6377

**MIN:**   1004594-5000702366-7

**Grantor (Assignor):**   Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage Corporation, its successors and assigns

**Grantor Address:**   P.O. Box 2026, Flint, MI 48501-2026

**Grantee (Assignee):**   Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3

**Grantee Address:**   6501 Irvine Center Dr., Irvine, CA 92618

**Legal Description:**   LOT 1, SMITH'S LAKE VIEW, A SUBDIVISION OF LAND IN JACKSON COUNTY, MISSOURI.

For Value Received, Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns, (herein "Assignor") whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, sell, assign, transfer and convey, unto Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 (herein "Assignee"), whose address is 6501 Irvine Center Dr., Irvine, CA 92618 all beneficial interest under a certain Deed of Trust recorded on March 22, 2007, made and executed by Barre Eugene Hunter, a married person and Venda Marie Hunter, His Wife, to Mortgage Electronic Registration Systems, Inc. as nominee for Advance Mortgage Corporation, its successors and assigns, upon the above described property situated in Jackson County, State of Missouri.

MS File No. 146420.100912.291683 FC

Such Deed of Trust having been given to secure payment of $186,350.00, which Deed of Trust is of record as Instrument No. 2007E0038241, the Recorder of Deeds for Jackson County, State of Missouri, and all rights, title and interest accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust.

Assignor: Mortgage Electronic Registration Systems, Inc, as nominee for Advance Mortgage Corporation, its successors and assigns

By:

Print Name:  Rolanda Wagner

Title:  Assistant Secretary

State of ___Florida___ )
                                    ) SS.
County of ___Duval___ )

Produced Florida Drivers License as identification

On _10-01-12_ before me, _____Brenda L Frazier_____, a Notary Public in and for said State, appeared _____Rolanda Wagner_____

_____Assistant Secretary_____ (Official Title) known to me to be the person who executed the within Assignment of Deed of Trust on behalf of Mortgage Electronic Registration Systems, Inc., as nominee for Advance Mortgage Corporation, its successors and assigns and acknowledged to me that he or she executed the same for the purposes therein stated.

Notary Public  Brenda L Frazier

My term expires: 4.30.2013

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission #DD885641
Expires:  APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

MS File No. 146420.100912.291683 FC

# EXHIBIT O

# American Home Mortgage Assets Trust 2007-3

Moody's Org ID: 720175142

Closing Date: 06 Jun 2007
Current Total Deal Size (Mil): 367.0
Pay Frequency: Monthly

Market Segment: Structured Finance
Collateral Type: MBS - Alt-A
Location of Assets (at issuance): UNITED STATES

Analyst

Lead Monitoring Analyst: Samuel Ukrainsky

Originator: American Home Mortgage Corp.
Trustee: Deutsche Bank National Trust Company
Primary Servicer: Homeward Residential Holdings, Inc., Ocwen Loan Servicing, LLC
Underwriter: BEAR, STEARNS & CO. INC., Greenwich Capital Markets, Inc. ...More

**Research**  Ratings  Related Parties

Deal Research  Industry Research  Performance  Methodology

Go to RMBS Industry Page

Results 1 - 18 Of 18

Page 1 Of 1

| Date | Document Type - All | Title |
|---|---|---|
| 01 Apr 2013 | Announcement | Moody's: Servicing transfer to Ocwen Loan Servicing,LLC from Homeward Residential, Inc. has no negative ratings impact on Seventy One US RMBS Transactions |
| 18 Jan 2013 | Rating Action | Moody's downgrades 225 US structured finance securities guaranteed by Assured Guaranty |
| 21 Mar 2012 | Announcement | Moody's places on review for possible downgrade US structured finance securities guaranteed by Assured Guaranty |
| 21 Apr 2011 | Rating Action | Moody's takes action on six second lien RMBS transactions from various issuers |
| 12 Nov 2010 | Rating Action | Moody's takes action on $718 million of Alt-A RMBS issued by American Home Mortgage Securities in 2007 |
| 18 Mar 2010 | Rating Action | Moody's updates loss projections for US second lien RMBS |
| 14 Jan 2010 | Rating Action | Moody's updates loss projections for US Alt-A RMBS issued in 2005-2007 |
| 09 Dec 2009 | Announcement | Moody's: No Negative Ratings Impact to the Affected RMBS Transactions as a Result of Increases in the limit of Mortgage Loan Modifications |
| 31 Jul 2009 | Announcement | Moody's: No Negative Ratings Impact to the Affected Transactions for the Amendments to the American Home Mortgage Servicing Agreements |
| 09 Feb 2009 | Rating Action | Correction to the ratings of Classes II-A-1, II-A-2, II-A-3, and II-A-3 from American Home Mortgage Investment Trust 2005-3 , February 2, 2009 Release: Moody's Takes Action on Certain American Home deals issued in 2005 and 2007 |
| 17 Dec 2008 | Rating Action | Moody's takes action on American Home Mortgage Transactions |
| 23 Nov 2008 | Rating Action | Moody's takes rating actions on structured finance bonds insured by Assured Guaranty Corporation |
| 24 Apr 2008 | Rating Action | Moody's Takes Action on Certain American Home Alt-A deals |
| 26 Feb 2008 | Rating Action | Moody's Takes Action on AHM Transactions |
| 11 Jan 2008 | Rating Action | Moody's downgrades American Home Alt-A deals |
| 07 Nov 2007 | Rating Action | Moody's takes negative rating actions on early 2007 closed-end second lien deals |
| 20 Jul 2007 | Rating Action | Moody's upgrades the Class III-A-2 certificates issued by American Home Mortgage Assets Trust 2007-3 |
| 14 Jun 2007 | Rating Action | Moody's Rates American Home Mortgage Assets Trust 2007-3 Mortgage Deal |

Results 1 - 18 Of 18

Page 1 Of 1

This date does not capture any Confirmations or Watch actions. Please refer to the rating history section for additional information.

Terms of Use  Privacy Policy  Proprietary Rights  Home  Research & Ratings  Products & Solutions  News & Events  Careers  Contact Us

2014 Moody's Investors Service, Inc., Moody's Analytics, Inc. and/or their affiliates and licensors. All rights reserved.

Regional Sites: Global